UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARU DESAI,
    Plaintiff,

v.

UNIVERSITY OF MASSACHUSETTS,
MEMORIAL MEDICAL CENTER, INC.
UNIVERSITY OF MASSACHUSETTS
MEMORIAL MEDICAL GROUP,
UNIVERSITY OF MASSACHUSETTS
MEDICAL SCHOOL, UMASS
MEMORIAL HOSPITAL, MAX ROSEN,
M.D., DARREN BRENNAN, M.D.,
STEPHEN TOSI, M.D., KARIN DILL,
M.D.,
    Defendants.

Civil Action No. 4:19-cv-10520-TSH

### UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant University of Massachusetts Medical School ("Medical School") submits this memorandum in support of its Fed. R. Civ. P. 8 and 12(b)(6) motion to dismiss the complaint in which Dr. Desai named it.

None of the allegations Dr. Desai makes in her 108 paragraph complaint relate to any action taken by, at, or on behalf of the Medical School. Rather, her eight claims are pinned only to alleged facts concerning her work at UMass Memorial Medical Center, Inc. ("UMass Memorial") and her termination from UMass Memorial.

Because Dr. Desai does not make any cognizable claims against the Medical School, Fed. R. Civ. P. 8 counsels dismissal of her complaint. Because Dr. Desai fails to state any claim against the Medical School upon which relief could be granted, Fed. R.

1

Civ. P. 12(b)(6) likewise supports dismissal. For the reasons that follow, the Medical School respectfully submits that dismissal of Dr. Desai's complaint is warranted.[1]

I. **Background Information.**

A. **The Medical School and UMass Memorial are Distinct Entities.**

As set forth in M.G.L. c. 75, et seq., the Medical School is a public state entity and is one of the five campuses of the University of Massachusetts educational system. The First Circuit and this Court have recognized, as a matter of public record, that the Medical School and UMass Memorial are – and have been for more than two decades – separate and distinct entities. See U.S. v. Univ. of Mass., Worcester, 812 F.3d 35 n.5 (D.

---

[1] The Medical School reserves its right to seek Fed. R. Civ. P. 12(b)(1) relief, as the Eleventh Amendment to the United States Constitution bars several counts from proceeding against the Medical School. See, e.g., (as to Count 4) Kimel v. Florida Board of Regents, 528 U.S. 62, 91-92 (2000) (dismissing employee's ADEA claims against state employer on sovereign immunity grounds); see also Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 60-61 (D. Mass. 2002) (holding that the Eleventh Amendment bars claims against the University of Massachusetts, including ADEA claims) and Davis v. Massachusetts, 2014 WL 3965182 *3 (D. Mass., Aug. 12, 2014) (unreported) (dismissing ADEA claims against Commonwealth as barred by the Eleventh Amendment). Counts 3 and 4 (ADA and 151B) are likewise barred, Murphy v. Massachusetts – Executive Office of the Trial Court, 335 F. Supp. 3d 137, 144 (D. Mass. 2018). "Rule 12(b)(1) is '[t]he proper vehicle for challenging a court's subject-matter jurisdiction,' including on the basis of sovereign immunity." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). "The motion may be raised at any time during the course of the litigation." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 n.8 (1984); see also Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006). Federal courts have consistently held that the University of Massachusetts, specifically including its Medical School, is an arm of the state entitled to Eleventh Amendment immunity. See, e.g., U.S. v. Univ. of Mass., Worcester, 812 F.3d 35, 39-43 (1st Cir. 2016); Neo Gen Screening, Inc. v. New England Newborn Screening Program, 187 F.3d 24, 27 (1st Cir. 1999). In U.S. v. Univ. of Mass., Worcester, the First Circuit upheld the district court's determination, "by reference to the Eleventh Amendment arm-of-the-state test," that the University of Massachusetts is an arm of the state. U.S. ex. rel. Willette, 812 F. 3d at 39-43 (analyzing de novo); see also Neo Gen Screening, Inc. v. New England Newborn Screening Program, 1998 WL 35278283, *2-3 (D. Mass. 1998) (unpublished decision).

Mass. 2015) and U.S. v. Univ. of Mass., Worcester, 80 F. Supp. 3d 296 n.5 (1st Cir. 2016) ("In 1997, the Massachusetts Legislature 'separate[d] the operations, assets, liabilities and obligations of the existing clinical division of the [Medical School], known as UMass Medical Center, thereby privatizing the clinical division so that it could 'operate as a self-supporting entity.'") See also Dkt. 17, ¶ 8 ("Defendants deny that a partnership exists between the Medical School and either the Medical Group of the Medical Center).

The First Circuit and this Court impliedly recognized, in U.S. v. Univ. of Mass., Worcester, that a court may take judicial notice of public records specifically on this core issue. Id. Courts routinely take notice of other courts' findings, as they are "capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1) and (2).[2]

Not only are the documents and legislation reflecting the central "separate entity" fact part of the court and public record (see, e.g., 1997 Mass. Acts Ch. 163 § 1(i)), a summary of this information has been included in court opinions:

> The University of Massachusetts ("the University") operates the University of Massachusetts School of Medicine ("the Medical School"), which is an agency of the Commonwealth. The University also operated UMass Medical Center as a state facility until April 1, 1998, when UMass Medical Center merged with Memorial Health Care, a private nonprofit corporation. The merger resulted in two new private non-profit corporations, UMass Memorial Health Care, Inc. and UMMC.

---

[2] See also See Peter Pan Bus Lines, Inc. v. Greyhound Lines, Inc., 189 F. Supp.3d 217, 219 (D. Mass. 2016); In re: Polaroid Corporate Sec. Litig., 134 F. Supp. 2d 176, 182, n. 10 (D. Mass. 2001), Koelsch v. Town of Amesbury, 851 F. Supp. 497, 499 (D. Mass. 1994).

Martinez v. UMass Memorial Healthcare Inc., 21 Mass. L. Rptr. 103 (Worc. Super, May 12, 2006) (not reported).

The courts and the public record have made this point clear: the Medical School (a public entity) and UMass Memorial (a private entity) are separate and distinct.

### B. Dr. Desai Admits She Was An Employee of UMass Memorial.

Dr. Desai admits that "[a]t all relevant times, Dr. Desai was an employee of the Medical Center and/or UMMC. Dkt. 1, ¶ 3; see also Dkt. 17, ¶ 3 and 5. Those entities are not the Medical School, nor are they part of the Medical School: they are separate and distinct from the Medical School. See § I(A), infra.

While Dr. Desai taught students at the Medical School in accord with faculty appointment requirements set forth in the documents concerning 1997 Mass. Acts Ch. 163 § 1(i), she practiced medicine at UMass Memorial, her employment contract was between her and UMass Memorial, she reported to UMass Memorial's Chair of the Department of Radiology, Dr. Rosen, and she was informed by Dr. Rosen that UMass Memorial was terminating her employment without cause and pursuant to her contract for reasons solely concerning her performance of her UMass Memorial job duties. See, e.g., Dkt 1, ¶¶ 3, 9, 18, 19, and 21; see also Dkt. 17, ¶¶ 3 and 41 ("Dr. Desai was employed by UMass Memorial Medical Group"), p. 2 (Dr. Desai's employment was terminated by UMass Memorial), and ¶ 41 ("[p]laintiff was informed by Dr. Rosen that her employment was being terminated without cause pursuant to her contract . . . that

4

her work was of poor quality and that ongoing professional practice evaluations reference quality concerns").

Dr. Desai's allegations and claims relate <u>only</u> to her work for and employment by UMass Memorial and her termination from UMass Memorial employment, even though she nominally includes the Medical School in a few of her non-specific-actor allegations. <u>See, e.g.,</u> Dkt. 1, ¶¶ 23-65, 73-75 (Count 1), 77-79 (Count 2), 82-84 (Count 3), 87-89 (Count 4), 92-96 (Count 5), 98-99 (Count 6), 101-104 (Count 7), and 106-108 (Count 8) and § II, <u>supra</u>.

## II.    **Rule 8 Dismissal is Warranted.**

Even a "generous reading" of Dr. Desai's complaint does not reveal a cognizable claim against the Medical School "as there are no factual allegations concerning actions by" the Medical School. <u>Nuzzo v. O'Brien</u>, 2018 WL 615665 (D. Mass., Jan. 29. 2018) (not reported), <u>citing</u> <u>Bagheri v. Galligan</u>, 160 Fed. Appx. 4 (1st Cir. 2005); <u>see</u> <u>infra</u> § I (B). Rule 8 requires Dr. Desai's complaint to plead factual content which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-679 (2009) <u>citing</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-557 (2007).

"When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Twombly</u>, 550 U.S. at 559

(cleaned up).  As Dr. Desai has not pleaded a single fact concerning the Medical School that plausibly suggests she is entitled to relief, her complaint should be dismissed.  See Davis v. Massachusetts, 2014 WL 3965182 *3 (D. Mass, Aug. 12, 2014) (not reported).

### III.    Rule 12(b)(6) Dismissal is Warranted.

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Dr. Desai's factual allegations must be enough to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir. 2014).  In response to such a motion, a plaintiff must show "more than a sheer possibility of success."  Butler v. Balolia, 736 F.3d 609, 616 (1st Cir. 2013) (cleaned up).

In deciding the motion, the court is to assume that Dr. Desai's factual allegations are true and make all reasonable inferences in her favor, keeping in mind that her obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions and that a formulaic recitation of the elements of a cause of action will not suffice.  See Hayes v. Mirick, -- F. Supp. 3d --, 2019 WL 2085411 *1-2 (D. Mass., May 13, 2019).  In resolving the motion, a court need not credit conclusory legal allegations: "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.  Id. (cleaned up).

The Medical School seeks to dismiss Dr. Desai's complaint because her allegations (see, infra § I (B)), even when examined under this generous standard, fail to state claims that have "facial plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is]… a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

**IV.    Conclusion.**

For the foregoing reasons, Dr. Desai's complaint against the Medical School should be dismissed in its entirety.

Respectfully submitted this 24th day of June, 2019.

>UNIVERSITY OF MASSACHUSETTS
>MEDICAL SCHOOL
>By its attorney,
>
>*/s/ Denise Barton*
>Denise Barton, BBO No. 675245
>Senior Litigation Counsel
>University of Massachusetts
>Office of the General Counsel
>333 South Street, 4th Floor
>Shrewsbury, MA 01545
>(774) 455-7300
>dbarton@umassp.edu

**LR 7.1 CERTIFICATION**

In accord with LR 7.1(a)(2), I certify that the Medical School and I have attempted to resolve this matter with Dr. Desai's counsel, to no avail.

/s/ *Denise Barton*
Denise Barton

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true copy of the above document on all counsel of record by the Electronic Court Filing System (ECF) of the United States District Court for the District of Massachusetts.

/s/ *Denise Barton*
Denise Barton