PATRICIA A. WASHIENKO (BBO 641615)
pwashienko@fwlawboston.com
BRENDAN T. SWEENEY (BBO 703992)
bsweeney@fwlawboston.com
FREIBERGER & WASHIENKO, LLC
211 Congress Street, Suite 720
Boston, Massachusetts 02110
Telephone:  617-723-0008
Fax:  617-723-0009

Attorneys for Plaintiff Charu Desai

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | **4:19-cv-10520-TSH** |
| UMASS MEMORIAL MEDICAL ) | |
| CENTER, INC.; UMASS MEMORIAL ) | |
| MEDICAL GROUP; UNIVERSITY OF ) | |
| MASSACHUSETTS MEDICAL SCHOOL, ) | |
| UMASS MEMORIAL MARLBOROUGH ) | |
| HOSPITAL, MAX ROSEN, M.D., ) | |
| DARREN BRENNAN, M.D., ) | |
| STEPHEN TOSI, M.D., ) | |
| AND KARIN DILL, M.D., ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

For over twenty-six years, Dr. Charu Desai worked at and for the UMass Memorial

Medical Center, Inc., the UMass Memorial Medical Group, the University of Massachusetts

Medical School, and UMass Memorial Marlborough Hospital.  She was an extremely highly-

regarded radiologist, respected by students, trainees, department colleagues and physicians

across those institutions. Beginning in approximately 2016, however, she was subjected to disparate treatment compared to her white, male, younger, U.S.-born and non-disabled colleagues who performed the same or substantially similar work. Then, in 2018, she was falsely accused of performance deficiencies, terminated, and will be replaced by a white, younger, U.S.-born and non-disabled radiologist with less experience, Maria Barile, M.D.

As a result of this treatment, Dr. Desai brings this action for damages against the UMass Memorial Medical Center, Inc., the UMass Memorial Medical Group, the University of Massachusetts Medical School, UMass Memorial Marlborough Hospital, Dr. Max Rosen, Dr. Darren Brennan, Dr. Stephen Tosi, and Dr. Karin Dill for unlawful employment discrimination against her on the basis of age, race, national origin, gender/sex and/or disability, and/or for aiding and abetting discrimination, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1(k); the Americans with Disabilities Act, 42 U.S.C. § 12132, the Age Discrimination in Employment Act, 29 U.S.C. § 216(b), the Massachusetts Fair Employment Practices Law, M.G.L. c. 151B, § 4 and/or the Massachusetts Equal Pay Act, M.G.L. c. 149, § 105A. She also brings claims against them for breach of her employment contract and defamation. Finally, she brings claims against Drs. Rosen, Brennan, Tosi, and Dill for tortious interference with advantageous relations and defamation.

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Charu Desai, M.D. (hereinafter "Dr. Desai") is an adult female resident of Worcester, Massachusetts.

2. Defendant UMass Memorial Medical Center, Inc. (the "Medical Center") is a Massachusetts not-for-profit corporation and the successor to the University of Massachusetts Medical Center ("UMMC"). The Medical Center is the clinical partner of the University of

Massachusetts Medical School, and has administrative offices in Worcester, Massachusetts. The Medical Center employed more than fifty employees within seventy-five miles of Dr. Desai's worksite at all relevant times.

3. At all relevant times, Dr. Desai was an employee of the Medical Center and/or UMMC.

4. Defendant UMass Memorial Medical Group (the "Medical Group") is a not-for-profit organization of physicians who practice at the Medical Center and its affiliated hospitals and facilities.  It is located in Worcester, Massachusetts.

5. At all relevant times Dr. Desai was a member of the Medical Group.

6. Defendant UMass Memorial Marlborough Hospital ("Marlborough Hospital") is a hospital affiliate of the Medical Center.  It has administrative offices in Marlborough, Massachusetts.

7. At all relevant times, as part of her job responsibilities, Dr. Desai worked for Marlborough Hospital, interpreting radiology studies originating from Marlborough Hospital.

8. Defendant University of Massachusetts Medical School ("Medical School") is a research and teaching institution partnered with the Medical Group and Medical Center with its main administrative office located in Worcester, Massachusetts.

9. At all relevant times, Dr. Desai held a faculty appointment at the Medical School.

10. Defendant Max Rosen, M.D. ("Dr. Rosen") is an adult male resident of Massachusetts.  Dr. Rosen was at all times relevant hereto the Chairman of the Department of Radiology at the Medical Center and the Medical School ("Department of Radiology").  A true and accurate screenshot of the website of the Department of Radiology, displaying a welcome message from Dr. Rosen stating, "*Welcome to the Department of Radiology at UMass Medical School*

*and UMass Memorial Medical Center*," with metadata evidencing it was taken on June 27, 2019, is attached hereto at **Exhibit A**.[1]

11. Defendant Dr. Stephen Tosi ("Dr. Tosi") is an adult male resident of Massachusetts.  Dr. Tosi was at all times relevant hereto the Chief Medical Officer of the Medical Center and President of the Medical Group.

12. Defendant Darren Brennan, M.D. ("Dr. Brennan") is an adult male resident of Massachusetts.  Dr. Brennan was at all times relevant hereto the Chief of Radiology at Marlborough Hospital ("Marlborough Radiology").

13. Defendant Karin Dill, M.D. ("Dr. Dill") is an adult female resident of Massachusetts.  Dr. Dill was at times relevant hereto the Division Chief of Chest Radiology with the Medical Group at the Medical Center.  In that capacity, Dr. Dill supervised Dr. Desai's work with Medical Group at the Medical Center and Marlborough Hospital at times relevant hereto.

14. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States, and pendent jurisdiction for the related claims arising under state law.

## STATEMENT OF FACTS

### *Background Regarding Dr. Desai*

15. Dr. Desai is a woman of Indian national origin.  She was born on July 6, 1950.  She suffers from a cardiac arrhythmia, a serious heart condition that substantially limits her major life activities and that required the implantation of a pacemaker in 2001.

---

[1] This welcome message from Dr. Rosen is also available at
https://www.umassmed.edu/radiology/about-us/message-from-the-chair/

16. Dr. Desai is a physician and, specifically, a board certified radiologist.  She graduated from Government Medical College at the South Gujarat University School of Medicine, in Surat, Gujarat, India in 1972.  She immigrated to the United States in 1974.

17. Dr. Desai first became affiliated with the University of Massachusetts when she became a Resident in Diagnostic Radiology at UMMC in 1978.  She served as Chief Resident from 1979 to 1981. She was the first person to complete the Diagnostic Radiology residency at UMMC.   Following her residency, she completed a fellowship in Computed Body Tomography / Ultrasound, also at UMMC.  Dr. Desai left UMMC to work in private practice in the Worcester area in 1983.

18. Dr. Desai returned to UMMC in January 1992 as an Assistant Professor of Radiology at the Medical School and as an attending physician in the Division of Thoracic (Chest) Radiology at UMMC.

19. Dr. Desai later became a member of the Medical Group and had a "Dual-Employment" relationship with the Medical School and the Medical Group.  A true and accurate copy of Dr. Desai's Employment Agreement is attached hereto at **Exhibit B** (see Section 1.14).

20. Dr. Desai was promoted to Clinical Associate Professor of Radiology at the Medical School on or about September 1, 2001.  She continued to serve as an attending physician at the Medical Group (the successor to UMMC) and Medical Center.

21. Dr. Desai's radiology duties included reading plain radiographs, CT scans, and Ultrasounds for the Medical Center and Marlborough Hospital, consulting with clinicians regarding patient studies, and providing call coverage for the radiology service.  Dr. Desai's teaching duties as a member of the faculty of the Medical School included training medical students while they were completing their clinical rotations in the Department of Radiology.

22. Throughout Dr. Desai's tenure at UMMC, the Medical Group, Medical Center, Medical School, and Marlborough Hospital, her work was highly regarded.  None of Dr. Desai's performance reviews, including her most recent reviews in June 2017 and June 2018, indicated any performance related deficiencies.  On the contrary, her reviews were positive. She was awarded the Teacher of the Year Award in 2017.

23. Dr. Desai is unaware of any complaint about her performance, clinical skills, CT scan readings and/or any other radiological readings or procedures throughout her entire career. On the contrary, her performance reviews were consistently strong, and her expertise in radiology was regularly sought by other physicians.  To her knowledge, her cases have never been the subject of a quality assurance review nor a morbidity and mortality conference.  She has never been sued for malpractice.


### *Defendants' Discriminatory Practices Motivated by Plaintiff's Age, Race, National Origin, And/Or Gender, and Discriminatory Failure to Accommodate Her Disability*

24. In approximately 2012, Dr. Rosen became the Chairman of the Department of Radiology.

25. In or about 2013 (*i.e.*, shortly after Dr. Rosen became Chairman of the Department of Radiology), a group of senior radiologists including Drs. Adib Karam, Gopal Vijayaraghanavan, Joseph Makris, and Christopher Cerniglia complained to Dr. Rosen that they were being paid less than younger, less experienced radiologists who performed the same or substantially similar work.  Dr. Rosen did not address their concerns.  Dr. Desai was among those radiologists who were being compensated at a lower rate than younger, less experienced radiologists who performed the same or substantially similar work.

26. Since Dr. Rosen became Chair of the Department of Radiology, a number of radiologists over the age of 40 left and/or were forced out of the Medical Center, including Dr. Joseph Makris, Dr. Abhijit Roychowdhury, Dr. Adib Karam, and Dr. Padmaja Surapaneni.

27. Upon information and belief, Dr. Joseph Makris is in his 50s; Dr. Abhijit Roychowdhury is in his late 50s or early 60s (as he has approximately 36 years of experience at the Medical Center); and Dr. Adib Karam is in his late 40s or 50s (as he has approximately 20 years of experience at the Medical Center). Dr. Rosen recently hired Dr. Maria Barile to replace Dr. Desai. Upon information and belief Dr. Barile is in her early 40s (approximately 25 years younger than Dr. Desai) and is white.

28. In addition, upon information and belief, Dr. Rosen stated to Dr. Roychowdhury, who is Indian, "you don't fit my vision of the Department" (or words to that effect). Also upon information and belief, Dr. Rosen stated to Dr. Padmaja Surapaneni, who is of Indian descent, "you are useless" (or words to that effect).

29. In or about March 2016, Dr. Rosen hired Dr. Dill, who is white, less experienced and younger than Dr. Desai to serve as Division Chief of Chest Radiology for Medical Group at Medical Center. In that capacity, Dr. Dill supervised Dr. Desai's work at Medical Center and Marlborough Hospital. Upon information and belief, Dr. Dill receives a rate of compensation that is significantly greater than Dr. Desai.

30. Upon information and belief, in or around October or November 2016, Drs. Karam, Vijayaraghanavan, Makris, and Cerniglia met with Dr. Tosi, the Chief Medical Officer of the Medical Center and President of the Medical Group, to complain that under Dr. Rosen's Chairmanship of the Department of Radiology, they were paid a lower rate of compensation than younger radiologists who performed the same or substantially similar work.

31. Upon information and belief, after their meeting Dr. Tosi reprimanded Dr. Rosen for the salary disparity and ordered the salaries to be adjusted. Dr. Desai was among those radiologists who were being compensated at a lower rate than newly hired radiologists who performed the same or substantially similar work as she did.

32. The Medical Group and Medical Center recently hired Dr. Aaron Harman, a younger male radiologist, to perform the same or substantially similar work as Dr. Desai. Upon information and belief, Dr. Harman was paid $365,000 per year. Despite Dr. Desai's greater experience, the Medical Group and Medical Center paid Dr. Desai only $340,000 per year.

### *Dr. Desai's Serious Health Condition*

33. In 2001, Dr. Desai required the implantation of a pacemaker to manager her cardiac arrhythmia. Despite the surgery, she occasionally still suffered from episodes of extreme shortness of breath. Given the ongoing nature of her condition and need for recovery time in order to treat that condition when such episodes occurred, she requested and was granted intermittent FMLA leave.

34. Because her condition had deteriorated over the years, in or about 2017, Dr. Desai asked Dr. Rosen for twelve "academic days" per year (days when no additional clinical duties were required) as an accommodation for her heart condition. Dr. Rosen refused. However, Dr. Rosen allowed younger physicians, including those newly hired with vastly less experience and who were not disabled (including Dr. Dill), to designate one and half days per week (i.e., approximately 70 days per year) as academic days.

35. Dr. Desai also asked Dr. Rosen for a workstation so that she could perform work at home on the weekend when she was on-call as an accommodation for her heart condition. Dr. Rosen again refused the request. However, Dr. Rosen allowed younger physicians and those

without disabilities (including Dr. Dill) to work from home with a Medical Center provided personal workstation on both weekdays and/or weekends.

36. In May 2016, Dr. Desai complained to Dr. Rosen about his disparate allotment of academic days compared to her younger and/or non-disabled colleagues. Dr. Rosen again refused to accommodate Dr. Desai with academic days, while upon information and belief, he provided them to other younger attending physicians.

37. Due to episodes of extreme shortness of breath resulting from her heart condition, Dr. Desai was, on rare occasions, late to work. Dr. Rosen was aware of this condition. Yet, despite Dr. Desai's notification to Dr. Rosen when she was suffering from such episodes, he still reprimanded her in May 2016 for being tardy. (Dr. Desai was granted FMLA leave, but rarely used it when she had a flare up of her cardiac condition out of fear of such reprisals from Dr. Rosen).

38. Upon information and belief, when Dr. Desai's younger, white, and/or non-disabled colleges, including Dr. Dill, called Dr. Rosen to inform him that they would not be attending work, or working from home, with no advance notice, Dr. Rosen did not similarly reprimand them.

39. When Dr. Desai again asked to be accommodated for her condition by being assigned fewer days on-call in the Department of Radiology, he again refused. Instead, Dr. Rosen told her she could leave her current position and began working part time or as a locum tenens (i.e., as a physician who temporarily fills in for other absent physicians). She refused.

40. Through others, Dr. Rosen continued thereafter to press Dr. Desai to leave the Medical Center or switch to a part time or locum position. For example, Dr. Desai is reliably informed and believes that in or around late 2017, Dr. Rosen asked Dr. Ferrucci to convince her to accept a part-time or locum position. She again refused.

*__Defendants Falsely Criticize Dr. Desai's Performance, Defame and Terminate Her__*

41. On or about March 14, 2018, Dr. Rosen gave to Dr. Desai a letter informing her that her employment would be terminated effective March 17, 2019.  The letter gave no reason for her termination.  A true and accurate copy of Dr. Rosen's termination letter to Dr. Desai is attached hereto at **Exhibit C**.

42. When Dr. Desai asked Dr. Rosen the reasons for her termination, he first stated that he did not need a reason.  He then stated that he was terminating her because her work was of poor quality.  None of Dr. Desai's performance reviews, including her most recent performance reviews in June 2017 and June 2018, however, made any mention of any deficiencies in her performance nor did any review mention poor quality work.

43. When Dr. Desai asked Dr. Rosen to provide any examples, he was unable to do so.

44. When Dr. Desai continued to press Dr. Rosen for any proof of his assertion that her work was of poor quality, he claimed that he had conducted his own "independent review."  At no time had he (or anyone else) brought to Dr. Desai's attention any problems or complaints or concerns about her work, however, nor had he or anyone else spoken with her in connection with any investigation into her work.

45. Dr. Rosen then told Dr. Desai that effective immediately following the meeting in which she was given the letter informing her of the termination of her employment effective March 2019, that she could no longer read any Chest CT scans.  He told Dr. Desai that she could still read chest x-rays, but that he was "going to keep a close eye on her (or words to that effect).  Again, at no prior point had he (or anyone else) brought to Dr. Desai's attention any problems or complaints or concerns about her reviews of Chest CT scans or x-rays.

46. As she did not believe Dr. Rosen's allegations about her performance, shortly after the meeting on March 14, 2018, Dr. Desai asked Dr. Steven Baccei, the Vice-Chair of Quality, Patient Safety, and Process Improvement for the Department of Radiology at for the Medical Group, Medical Center, and Marlborough Hospital, if there had been any issues with her readings.  He stated that he was not aware of any.

47. By email on March 24, 2018, Dr. Desai again asked Dr. Rosen to provide evidence of her purportedly poor quality work.  It was not until three weeks later, on April 17, 2018, that he responded.

48. In the meantime, although she was absolutely humiliated to do so, Dr. Desai nevertheless complied with Dr. Rosen's order, and turned down colleagues' requests to read CT scans.

49. Dr. Desai is reliably informed and believes that Dr. Maria Barile, who is white and in her 40s, has been hired to work full time in the Chest Division with her start date to be in or around the time of Dr. Desai's exit.

50. Dr. Desai is reliably informed and believes that on or about April 7, 2018, Dr. Darren Brennan, the Vice Chair of Community Radiology at UMass and Chief of Radiology at Marlborough Hospital, stated to Dr. Ferrucci, "we feel bad about what we had to do to Charu" (or words to that effect).

51. Dr. Desai is also reliably informed and believes that Dr. Rosen told Dr. Ferrucci that he fired her as a result of issues/complaints that originated from Marlborough Hospital.  At no prior point, however, had he (or anyone else) brought to Dr. Desai's attention any problems or complaints or concerns about her interpretation of radiographs from Marlborough Hospital.

52. By email dated April 17, 2018, Dr. Rosen finally responded to Dr. Desai's March 24 email asking for evidence of her purportedly poor quality work.  In his email response, Dr. Rosen

stated that he would be happy to set up a meeting to discuss the results of the "independent review" he had performed on her work.  He told Dr. Desai that she could bring a colleague. When Dr. Desai asked to bring an independent expert instead of a colleague (who reported directly to him) to assess the concerns he raised, Dr. Rosen refused to permit her to do so.

53. In a separate email to Dr. Desai, also on April 17, 2018, Dr. Rosen stated that it was inappropriate for her to speak with residents about her employment:  "I want to confirm your understanding that it is inappropriate for you to discuss ANY issues related to your UMMMG [the Medical Group] or UMMS [the Medical School] employment with the Radiology residents, and that you will avoid doing so going forward."  (Emphasis added; explanation of UMMMG and UMMS supplied.)

54. On April 24, 2018, Dr. Desai met with Dr. Rosen about her purportedly poor quality work. Dr. Desai's colleague Dr. Sarwat Hussain (who reports to Rosen) accompanied her, instead of the independent reviewer she had requested, in light of Dr. Rosen's refusal to permit her to have an independent reviewer join her.

55. At the meeting, Dr. Rosen projected on a screen, information about the alleged deficiencies in the quality of Dr. Desai's CT scan readings.  The information was presented in a manner that Dr. Desai found nebulous, disorganized and extremely difficult to comprehend.  The information seemed, however, to include reports and/or readings done by several other radiologists.  Given the limited information that was "presented" and the very little time Dr. Desai was given to review it, it was not clear if any of the purported poor quality readings were indeed hers.  At the end of the meeting, Dr. Desai requested a written copy of the information presented.  Dr. Rosen denied this request.

56. In or around August 2018, Dr. Desai discovered a "peer review" evaluation that Dr. Karin
Dill performed assessing the quality of Dr. Desai's work from July 2016 to June 2017.  Dr.
Dill reported that Dr. Desai made errors that were "likely to be significant" in the readings
that she purportedly reviewed.  However, upon review of Dr. Dill's "peer review" results, Dr.
Desai discovered that the cases that Dr. Dill claimed showed errors did not in fact show any
error on Dr. Desai's part, much less significant ones.  Indeed, one case that Dr. Dill claimed
showed a deficiency was actually a reading done by Dr. Dill, not Dr. Desai.  Dr. Dill had
falsely asserted that a case that she herself had personally interpreted and signed, which she
reported as having a significant error, was actually attributable to Dr. Desai.

57. Given Dr. Dill's incorrect attribution to Dr. Desai of errors and misreads in a number of
cases, and her consequent misrepresentation of Dr. Desai's work, her actions support an
inference that her "peer review" was a deliberate attempt to sabotage Dr. Desai.  In doing so,
she aided in prematurely derailing Dr. Desai's illustrious career and caused significant harm
to her professional reputation.

58. Upon information and belief, Dr. Dill did not similarly misrepresent the work of younger,
male, non-disabled, and/or white radiologists within Medical Group at Medical Center and/or
Marlborough Hospital.

59. It is routine practice within the Department of Radiology to send emails to the radiologist
who conducted a reading in which significant misreads or concerns are detected during the
"peer review" process.  Dr. Desai never received any such correspondence regarding the
purportedly "significant errors" documented on Dr. Dill's purported peer review of her.
Further, Dr. Desai never received any correspondence concerning misreads from any of her

peer reviews, throughout her entire employment at Medical Group, Medical Center, and Marlborough Hospital.

60. Upon information and belief, Dr. Dill's targeted and factually incorrect "peer review" of certain of Dr. Desai's cases was used by Dr. Rosen as grounds to terminate Dr. Desai's employment.  (Dr. Rosen included the "incorrect readings" from Dr. Dill's peer review as part of his purportedly "independent" review that concluded Dr. Desai's work was "of poor quality.")

61. When Dr. Desai asked Dr. Rosen when the "independent review" was conducted, he initially stated that he did not know.  He then checked his computer and stated that he began investigating Dr. Desai's work at the end of 2016 and did so through the first quarter of 2017.

62. When Dr. Desai asked Dr. Rosen the name of the independent reviewer he used to review her work and the hospital at which the reviewer worked, he refused to tell her.

63. When Dr. Desai asked Dr. Rosen for all the patient records and other pertinent information regarding her purported deficiencies, he refused to provide it.

64. When Dr. Desai asked Dr. Rosen for a written copy of the information that he projected on a screen that purportedly evidenced deficiencies in the quality of her CT scan readings, he refused to give it to her.  Instead, he gave her only a vague statistical summary of her readings as compared to her peer group.

65. The summary report did not include any concrete examples of Dr. Desai's deficiencies; it simply cited "statistics" from the investigation.  Dr. Desai was given no opportunity to analyze any information Dr. Rosen allegedly used, and therefore had no ability whatsoever to rebut / refute these assertions that her work is of "poor quality."

14

66. Remarkably, although Defendants claim that the review which concluded that Dr. Desai's CT scan readings were of poor quality began in 2016, Dr. Rosen nevertheless continued to permit her to perform CT scan readings through March 2018.

### *Exhaustion of Administrative Remedies*

67. On May 4, 2018, Dr. Desai filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC") (MCAD Docket No. 18WEM01247, EEOC Number 16C-2018-01520) naming the University of Massachusetts Memorial Medical Center, UMass Memorial Medical Group, the University of Massachusetts Medical School, Max Rosen, M.D., Darren Brennan, M.D., and Stephen E. Tosi, M.D., as Respondents.  A copy of Dr. Desai's original Charge is attached hereto as **Exhibit D**.

68. On November 29, 2018, Dr. Desai moved to amend her complaint before the MCAD and EEOC to name Karin Dill, M.D., and UMASS Memorial Marlborough Hospital as Respondents.  Dr. Desai's Motion to Amend was allowed on January 7, 2019.  A copy of the MCAD decision granting Dr. Desai's Motion to Amend is attached hereto as **Exhibit E**.

69. On January 7, 2019, Dr. Desai filed a second Charge of Discrimination with the MCAD and EEOC (MCAD Docket No. 19WEM00371, EEOC Number 16C-2019-00939) naming UMASS Memorial Marlborough Hospital and Dr. Karin Dill, as Respondents.  A copy of Dr. Desai's second Charge is attached hereto as **Exhibit F**. (The document was mistakenly dated January 7, 2018. It was filed with the MCAD on January 7, 2019.)

70. By letter dated March 4, 2019, a true and accurate copy of which is attached hereto as **Exhibit G**, Dr. Desai withdrew her Charge of Discrimination from the MCAD and EEOC in order to file a private cause of action in civil court.

71. By letters dated March 15, 2019, true and accurate copies of which are attached hereto as **Exhibits H and I**, the MCAD and EEOC dismissed the Plaintiff's complaint pursuant to Mass. Gen. Laws c. 151B, § 9 based on Plaintiff's request to file an action in civil court.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF RACE, NATIONAL ORIGIN AND GENDER**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §**
**2000e-1 et seq.**
**(Against Defendants Medical Center, Medical School, Medical Group, Marlborough**
**Hospital, Dr. Rosen, And Dr. Tosi)**

72. Plaintiff Dr. Desai re-alleges paragraphs 1 through 71 above and further alleges:

73. Dr. Desai timely met each of the administrative prerequisites to suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 et seq. ("Title VII").

74. By their actions described above, including but not limited to, paying white and/or male radiologists at a greater rate of compensation than Dr. Desai; Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, and Dr. Tosi, discriminated against Dr. Desai in terms of her compensation as a result of her race, national origin, and gender in violation of Title VII.

75. By their actions described above, including but not limited to, providing more academic days and permission and personal workstations to work from home on call days and regular workdays to her white colleagues; promoting a white radiologist to serve as Division Chief of Chest Radiology instead of Dr. Desai; and hiring a white radiologist to replace Dr. Desai; Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, and Dr. Tosi, discriminated against Dr. Desai in the terms and conditions of her employment as a result of her race and national origin in violation of Title VII.

76. As a direct and proximate result of the actions of the Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and

professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT II
## VIOLATION OF THE FEDERAL EQUAL PAY ACT, 29 U.S.C. §§ 206(d), 216.
### (Against Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, And Dr. Tosi)

77. Plaintiff Dr. Desai re-alleges paragraphs 1 through 76 above and further alleges:

78. By paying Dr. Desai at a rate less than the rate at which Defendants paid male employees, including but not limited to Dr. Harman, for equal, substantially equal, or lesser work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, and Dr. Tosi violated the Federal Equal Pay Act, 29 U.S.C. §§ 206(d), 216.

79. Defendants' violation of 29 U.S.C. § 206(d) was willful.

80. As a direct and proximate result of the actions of the Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132
### (Against All Defendants)

81. Plaintiff Dr. Desai re-alleges paragraphs 1 through 80 above and further alleges:

82. Dr. Desai timely met all of the administrative prerequisites to suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

83. By their actions described above, including but not limited to, refusing to provide academic days, fewer on-call days and/or a personal workstation for Dr. Desai to work from home,

while providing same for her non-disabled colleagues, Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, and Dr. Tosi, have discriminated against Dr. Desai in the terms and conditions of her employment and refused to accommodate her disability in violation of the ADA.

84. By their actions described above, including but not limited to, restricting Dr. Desai's CT scan privileges and terminating her based on a fraudulent investigation motivated by her disability, Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, Dr. Brennan, Dr. Tosi, and Dr. Dill have discriminated against Dr. Desai in the terms and conditions of her employment because of her disability in violation of the ADA.

85. As a direct and proximate result of the actions of Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT IV
## AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 216(b)
### (Against All Defendants)

86. Plaintiff Dr. Desai re-alleges paragraphs 1 through 85 above and further alleges:

87. Dr. Desai timely met all of the administrative prerequisites to suit under the Age Discrimination in Employment Act ("ADEA"), 29 USC § 216(b).

88. By their actions described above, including but not limited to, paying younger radiologists at a greater rate of compensation than Dr. Desai, Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, and Dr. Tosi have discriminated against Dr. Desai in terms of her compensation as a result of her age in violation of the ADEA.

89. By their actions described above, including but not limited to, restricting Dr. Desai's CT scan privileges, terminating her based on a fraudulent investigation motivated by her age, and hiring a younger radiologist to replace Dr. Desai, Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, Dr. Brennan, Dr. Tosi, and Dr. Dill have discriminated against Dr. Desai in terms of her conditions of employment as a result of her age in violation of the ADEA.

90. As a direct and proximate result of the actions of the Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT V
## VIOLATION OF MASSACHUSETTS' FAIR EMPLOYMENT PRACTICES ACT,
## M.G.L. c. 151B, § 4
## (Against All Defendants)

91. Plaintiff Dr. Desai re-alleges paragraphs 1 through 90 above and further alleges:

92. Dr. Desai timely met each of the administrative prerequisites to suit under M.G.L. c. 151B.

93. By their actions described above, including but not limited to, paying younger, white, and/or male radiologists at a greater rate of compensation than Dr. Desai; refusing to provide academic days, less on-call time, and/or a personal workstation for Dr. Desai to work from home, while providing same for her younger, non-disabled, and/or white colleagues; restricting Dr. Desai's CT scan privileges and terminating her based on a fraudulent investigation motivated by her age and/or disability; and hiring a younger, white radiologist to replace Dr. Desai; the Defendants Medical Center, Medical Group, Medical School,

Marlborough Hospital, Dr. Rosen, Dr. Tosi, Dr. Brennan and Dr. Dill discriminated against Dr. Desai in terms of her compensation and in the terms and conditions of her employment as a result of her race, national origin, sex, and age in violation of M.G.L. c. 151B, § 4.

94. By his role in refusing to correct Dr. Rosen and Dr. Dill's discriminatory behavior and disparate treatment based on her race, national origin, age, and disability, despite knowledge of same, Defendant Dr. Tosi aided and abetted discrimination against Dr. Desai in violation of M.G.L. c. 151B, § 4(5).

95. By their roles in denying Dr. Desai accommodations for her disability, restricting Dr. Desai's CT scan privileges, and terminating her based on a fraudulent investigation motivated by her age and/or disability, Defendants Dr. Rosen, Dr. Brennan, and Dr. Dill, and Marlborough Hospital aided and abetted discrimination against Dr. Desai in violation of M.G.L. c. 151B, § 4(5).

96. By his role in restricting Dr. Desai's CT scan privileges and terminating her based on a fraudulent investigation motivated by her age and/or disability, Defendant Dr. Brennan aided and abetted discrimination against Dr. Desai in violation of M.G.L. c. 151B, § 4(5).

97. As a direct and proximate result of the actions of the Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT VI
## VIOLATION OF MASSACHUSETTS' EQUAL PAY ACT M.G.L. c. 149, § 105A
(Against Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, And Dr. Tosi)

98. Plaintiff Dr. Desai re-alleges paragraphs 1 through 97 above and further alleges:

99. By paying Dr. Desai a wage rate less than Dr. Harman and other male radiologists for work that is substantially similar and requires substantially similar skill, effort, and responsibility, and that is performed under similar working conditions, despite Dr. Desai's greater seniority, and experience, Defendants Medical Center, Medical Group, Medical School, Marlborough Hospital, Dr. Rosen, and Dr. Tosi violated the Massachusetts Equal Pay Act, M.G.L. c. 149, § 105a.

100. As a direct and proximate result of the actions of the defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT VII
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONS
### (Against Defendants Dr. Rosen, Dr. Brennan, Dr. Tosi, And Dr. Dill)

101. Plaintiff Dr. Desai re-alleges paragraphs 1 through 100 above and further alleges:

102. Dr. Desai had contractual/advantageous relationships with Defendants Medical Group, Medical Center, Medical School, and Marlborough Hospital.

103. Defendants Drs. Rosen, Brennan, Tosi, and Dill had knowledge of these relationships.

104. Defendants Drs. Rosen, Brennan, Tosi, and Dill acted with malice when they discriminated against Dr. Desai because of her race, national origin, age, and disability and interfered with these relationships.

105. As a direct and proximate result of the actions of the Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

## COUNT VIII
## DEFAMATION
### (Against All Defendants)

106. Plaintiff Dr. Desai re-alleges paragraphs 1 through 105 above and further alleges:

107. Defendants, Medical Center, Medical School, Medical Group, Marlborough Hospital, Dr. Rosen, Dr. Tosi, Dr. Brennan and Dr. Dill made false statements about Dr. Desai's performance to her peers, superiors and subordinates.

108. Defendants, Medical Center, Medical School, Medical Group, Marlborough Hospital, Dr. Rosen, Dr. Tosi, Dr. Brennan and Dr. Dill's statements impugned Dr. Desai's professional reputation by wrongfully demeaning her competence.

109. As a direct and proximate result of the actions of Defendants, Dr. Desai has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering.

**WHEREFORE**, plaintiff Charu Desai requests that this Court to enter judgment against the defendants and to award her all damages, fees, costs, interest and further relief to which she is entitled.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all of her claims so triable.

Respectfully submitted,

CHARU DESAI
By her attorneys,


/s/ Patricia A. Washienko
PATRICIA A. WASHIENKO (BBO 641615)
pwashienko@fwlawboston.com
BRENDAN T. SWEENEY (BBO 703992)
bsweeney@fwlawboston.com
FREIBERGER & WASHIENKO, LLC
211 Congress Street, Suite 720
Boston, Massachusetts 02110
Telephone:  617-723-0008
Fax:  617-723-0009

Dated: July 2, 2019