UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**CHARU DESAI,**                    )
            **Plaintiff,**    )
                                    )
            **v.**            )        **CIVIL ACTION**
                                    )        **NO. 4:19-10520-TSH**
**UNIVERSITY OF MASSACHUSETTS,**    )
**MEMORIAL MEDICAL CENTER, INC.,**  )
**UNIVERSITY OF MASSACHUSETTS**     )
**MEMORIAL MEDICAL GROUP,**         )
**UNIVERSITY OF MASSACHUSETTS**     )
**MEDICAL SCHOOL, UMASS**           )
**MEMORIAL HOSPITAL, MAX ROSEN,**   )
**M.D., DARREN BRENNAN, M.D.,**     )
**STEPHEN TOSI, M.D., & KARIN DILL,**)
**M.D.,**                           )
            **Defendants.**   )
_____ )

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS (Docket No. 25)

**November 12, 2019**

**HILLMAN, D.J.**

      Charu Desai ("Plaintiff") filed this action for discrimination and defamation against the University of Massachusetts, Memorial Medical Center, Inc., University of Massachusetts Memorial Medical Group, University of Massachusetts Medical School, UMass Memorial Hospital, Max Rosen, M.D., Darren Brennan, M.D., Stephen Tosi, M.D., and Karin Dill, M.D. The University of Massachusetts Medical School ("Defendant Medical School") moves to dismiss all claims against it. (Docket No. 15). Because Plaintiff has established plausible entitlement to relief on her discrimination claims, the Court ***denies*** Defendant Medical School's motion to dismiss these claims. Because Plaintiff has failed to allege any facts showing that Dr. Rosen

defamed her in the context of her employment with Defendant Medical School, the Court ***grants*** Defendant Medical School's motion to dismiss the defamation claim.

## Background

The following facts are taken from Plaintiff's complaint and assumed true for the purposes of this motion. Plaintiff worked at the University of Massachusetts Memorial Medical Center, Inc. ("UMMC") for twenty-six years. (Docket No. 23 at 1, 3). Her employment agreement with UMMC required Plaintiff to "receive, and maintain, a faculty appointment" with Defendant Medical School under a "Dual-Employment" arrangement. (Docket No. 23-2 at 2–3, 5). Her agreement also specified that, if UMMC terminated Plaintiff "for any reason, the related employment relationship with the Medical School shall also terminate unless [Plaintiff] has a new or continuing agreement with the Medical School or is a tenured faculty member." (Docket No. 23-2 at 5–6).

In 2012, Max Rosen, M.D. ("Dr. Rosen") became the Chairman of the Department of Radiology at UMMC and Defendant Medical School. (Docket No. 23 at 3, 6). The following year, a group of senior radiologists complained to Dr. Rosen that they were being paid less than younger and less experienced employees performing substantially the same work. (Docket No. 23 at 6). Dr. Rosen did not address these concerns, and several radiologists over the age of 40 subsequently left UMMC. (Docket No. 23 at 6, 7).

In March 2016, Dr. Rosen hired Karin Dill, M.D. ("Dr. Dill"), a white woman with less experience than Plaintiff, to serve as the Division Chief of Chest Radiology. (Docket No. 23 at 7). Plaintiff believes that Dr. Dill received a "significantly greater" rate of compensation than she. (Docket No. 23 at 7). She also alleges that other newly hired young, white radiologists

performing substantially the same work as Plaintiff received a higher rate of compensation than she despite having less experience. (Docket No. 23 at 8).

In 2017, Plaintiff asked for twelve "academic days" (i.e., days in which she would have no clinical duties) a year to accommodate her cardiac arrhythmia, which still caused her to suffer from shortness of breath. (Docket No. 23 at 8). Dr. Rosen refused this request, even though he had allowed younger and less-experienced employees to designate up to one and a half days per week as academic days. (Docket No. 23 at 8). Plaintiff also asked for a home workstation for weekends when she was on-call. (Docket No. 23 at 8). Again, Dr. Rosen refused this request despite allowing younger and less-experienced employees to work from home on UMMC workstations on weekends and weekdays. (Docket No. 23 at 8–9). Finally, Plaintiff asked to have fewer days on-call. Dr. Rosen denied her request and began to pressure her to leave or reduce her work schedule to part-time or locum tenens. (Docket No. 23 at 9).

On March 14, 2018, Dr. Rosen gave Plaintiff a letter informing her that her "employment with UMass Memorial Medical Group[1] and the University of Massachusetts Medical School will terminate on March 17, 2019." (Docket Nos. 23 at 10, 23-3 at 2). The letter was on joint letterhead from the UMMC and Defendant Medical School and thanked Plaintiff for "efforts and contributions on behalf of the Medical Group and the Medical School." (Docket No. 23-3 at 2). Dr. Rosen cited Plaintiff's poor quality of work as the reason for her termination. (Docket No. 23 at 10).

After exhausting her administrative remedies before the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission, Plaintiff filed a

---

[1] The UMass Memorial Medical Group ("Medical Group") is the successor to UMMC. (Docket No. 23 at 5).

complaint with this Court. Defendant Medical School moves to dismiss for failure to state any claim against it upon which relief may be granted. (Docket No. 25).

## Legal Standard

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## Discussion

Defendant Medical School contends that Federal Rules of Civil Procedure 8 and 12(b)(6) compel dismissal because Plaintiff has failed to allege facts "reveal[ing] a cognizable claim against" it. (Docket No. 25 at 6). Plaintiff has raised seven claims against Defendant Medical School: (1) discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e-1 et seq.; (2) discrimination regarding wages in violation of the federal Equal Pay Act, 29 U.S.C. §§ 206(d), 216; (3) discrimination based on disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132; (4) discrimination based on

4

age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 216(b); (5) discrimination based on race, national origin, age, and disability in violation of the Massachusetts' Fair Employment Practices Act, M.G.L. c. 151B § 4; (6) discrimination regarding wages in violation of the Massachusetts Equal Pay Act, M.G.L. c. 149 § 105A; and (7) defamation.  Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court determines that Plaintiff has stated plausible discrimination claims against Defendant Medical School but has failed to state a plausible defamation claim.

*1.  Discrimination Claims*

To establish her discrimination claims, Plaintiff must demonstrate that Defendant Medical School took adverse action against her based on her membership in a protected classification.  *See, e.g.*, *Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 126 (1st Cir. 2017); *Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc.*, 804 F.3d 127, 130 (1st Cir. 2015); *McMillan v. Massachusetts Soc. for Prevention of Cruelty to Animals*, 880 F. Supp. 900, 905 (D. Mass. 1995), *on reconsideration in part*, 168 F.R.D. 94 (D. Mass. 1995).  Defendant Medical School contends that none of Plaintiff's allegations of adverse action relate to its conduct.  (Docket No. 26 at 6).  But according to Plaintiff, UMMC and Defendant Medical School jointly employed Dr. Rosen as the Chairman of the Department of Radiology beginning in 2012.  Thus, as Dr. Rosen's employer, Defendant Medical School may be liable for actions Dr. Rosen took in his official capacity at the medical school.

Plaintiff has pled at least three adverse actions plausibly related to Dr. Rosen's employment with Defendant Medical School.  First, Plaintiff alleges that, despite granting as many as seventy days (i.e., one and a half days a week) to younger, less-experienced, non-

disabled employees, Dr. Rosen refused Plaintiff's request for twelve academic days in 2017. (Docket No. 23 at 8).  Second, Plaintiff alleges that she received a lower compensation rate than her younger, less-experienced, non-disabled colleagues.[2]  Third, Plaintiff alleges that, when Dr. Rosen terminated Plaintiff on March 14, 2018, he did so on behalf of UMMC and Defendant Medical School.  (Docket No. 23-3 at 2).  Because any discriminatory motivation underlying these actions may be attributable to Defendant Medical School, the Court finds that Plaintiff has shown a plausible entitlement to relief on her discrimination claims.  The Court thus ***denies*** the motion to dismiss as to Plaintiff's discrimination claim.

### 2. *Defamation Claim*

To establish her defamation claim, Plaintiff must show that (1) "[t]he defendant made a statement, concerning the plaintiff, to a third party," (2) "[t]he statement could damage the plaintiff's reputation in the community," and (3) "[t]he defendant was at fault in making the statement." *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629–30 (2003).  Plaintiff has not shown that any allegedly defamatory comments made by Dr. Rosen occurred in the context of her employment with Defendant Medical School.  Although Dr. Rosen accused Plaintiff of producing poor quality work, the alleged deficiencies he cited related only to CT scan readings, which she performed in the context of her work for UMMC.  (Docket No. 23 at 12–15).  In the absence of any connection to Plaintiff's employment with Defendant Medical School, the Court finds that she has not shown a plausible entitlement to relief on his defamation claim.  The Court thus ***grants*** the motion to dismiss as to Plaintiff's defamation claim.

---

[2] Because Appendix B of Plaintiff's employment agreement with UMMC indicates that her salary may come from both UMMC and Defendant Medical School (Docket No. 23-2 at 14), the Court cannot say that Plaintiff's Equal Pay Act claims do not apply Defendant Medical School as well as UMMC.

## Conclusion

For the reasons stated above, the Court _**grants**_ in part and _**denies**_ in part Defendant Medical School's motion to dismiss. (Docket No. 25). Count VIII is dismissed. Counts I through VI survive this motion.

**SO ORDERED**

                                                  _/s/ Timothy S. Hillman_
                                                  **TIMOTHY S. HILLMAN**
                                                  **DISTRICT JUDGE**