UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

| | |
|---|---|
| CHARU DESAI,<br>    Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL CENTER, INC., et al.,<br>    Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, MARLBOROUGH HOSPITAL** |

Defendant, Marlborough Hospital, pursuant to Fed. R. Civ. P. Rule 56 and Local Rule 7.1, submit its Memorandum of Law in Support of its Motion for Summary Judgment.

## I.   Summary Judgment Standard

As the Court well knows, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact … that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "On issues where the nonmovant bears the ultimate burden of proof, [s]he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory

allegations, improbable inferences, and unsupported speculation." Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (internal quotations omitted).[1]

**II.      Argument**

Plaintiff brings several claims against Marlborough Hospital, including those for sex, age, and disability discrimination under state and federal law (Counts I, III, IV, and V), violations of the state and federal Equal Pay Acts (Counts II and VI), and for defamation (Count VIII). In doing so, Plaintiff simply lumps Marlborough Hospital into her various claims directed at her employer and its decision-makers, without discretion. However, two indisputable facts dispose of Plaintiff's claims: A) Plaintiff was never employed by Marlborough Hospital, and B) Plaintiff does not allege any unlawful act committed by Marlborough Hospital.

A.      Plaintiff was not employed by Marlborough Hospital.

In her Amended Complaint, Plaintiff alleges that she "worked for Marlborough Hospital." Amended Complaint, at ¶ 7. However, as Plaintiff is well-aware, she never worked for Marlborough Hospital, but was employed by UMass Memorial Medical Group, Inc.[2] M.H. S.O.F., ¶¶ 1, 5-7.[3] In 2015, the Medical Group contracted with Marlborough Hospital to read radiological images for its patients. M.H. S.O.F., ¶ 9. It was under this contract that in the course

---

[1]   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (internal citations omitted). "Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The "genuine issue" standard requires an inquiry "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

[2]   Plaintiff was dually-employed by the Medical Group and Defendant, University of Massachusetts Medical School. M.H. S.O.F., ¶ 1.

[3]   Citations to "M.H. S.O.F." are to the Statement of Material Facts in Support of Motion for Summary Judgment by Defendant, Marlborough Hospital, filed contemporaneously herewith.

of her duties with the Medical Group, Plaintiff would read images originating from Marlborough Hospital, in addition to the images she read originating from other hospitals, including multiple UMass Memorial Medical Center facilities and Clinton Hospital. M.H. S.O.F., ¶¶ 3, 9. In order to practice medicine at Marlborough Hospital and treat its patients, all physicians, including Plaintiff, are required to be credentialed as members of its medical staff. M.H. S.O.F., ¶ 45. Neither Plaintiff nor any of the other physicians with medical staff privileges to practice at Marlborough Hospital are employees of Marlborough Hospital. M.H. S.O.F., ¶ 46.

In fact, Marlborough Hospital does not employ <u>any</u> physicians who provide medical care at Marlborough Hospital. M.H. S.O.F., ¶ 8. With respect to radiology services, Marlborough Hospital contracts with the Medical Group to provide that care to its patients. M.H. S.O.F., ¶ 9. Pursuant to the Professional Services Agreement, the Medical Group's radiologists "shall not be employees of Marlborough Hospital" and "the [Medical] Group and the employees and independent contractors engaged by the Group shall at all times act as independent contractors with respect to Marlborough Hospital and as an independent private radiologist practice, and <u>not as employees</u> or agents of Marlborough Hospital." M.H. S.O.F., ¶¶ 10-11 (emphasis supplied). The Medical Group alone is responsible for all compensation to its physicians, including Plaintiff, and Marlborough Hospital played no role in setting compensation. M.H. S.O.F., ¶¶ 12, 14. Moreover, Marlborough Hospital did not have the power to hire, fire, or discipline Plaintiff or any other member of the Medical Group, and did not set the work schedules or direct the work of Plaintiff or any other member of the Medical Group. M.H. S.O.F., ¶¶ 4-5, 13, 15.

Under both state and federal discrimination law, it is unlawful for "an employer" to discriminate against an employee. See 42 U.S.C. § 2000e-2; 42 U.S.C. § 12112; 29 U.S.C. § 623; M.G.L. c. 151B, § 4, ¶¶ 1, 1B, 16; 29 U.S.C. § 206(d); M.G.L. c. 149, § 105A. Plaintiff can

proffer no competent, admissible evidence in support of her claim that she was employed by Marlborough Hospital. To the extent Plaintiff asserts that Marlborough Hospital should nevertheless be liable as her "joint employer," she can offer no evidence at all to support such a claim.[4] "[J]oint employment exists only when there is an actual employment relationship between the employee and each joint employer." Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 379, 390 (D. Mass. 2016). Courts look to four factors to evaluate whether such an employment relationship exists: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998).

It is undisputed that Marlborough Hospital did not have the power to hire and fire employees of the Medical Group, including Plaintiff. M.H. S.O.F., ¶ 13. It is further undisputed that Marlborough Hospital did not determine the rate and method of payment of Plaintiff and did not maintain employment records regarding Plaintiff. M.H. S.O.F., ¶¶ 14, 17. There is further no evidence that Marlborough Hospital supervised or controlled Plaintiff's work schedule or conditions of employment. M.H. S.O.F., ¶¶ 5, 15, 16.

While Plaintiff alleges that Marlborough Hospital "exercised substantial control over the terms and conditions of her employ," M.H. S.O.F., ¶ 54, she can proffer no evidence to support

---

[4] Likewise, there are no facts to support an allegation, to the extent Plaintiff makes such a claim, that the Medical Group and Marlborough Hospital are integrated as a "single employer." Under the integrated enterprise test, multiple entities can be determined to be a single employer where there exists "(1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership." Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 42 (1st Cir. 2007). The focus of this test is "on the control of employment decisions." Id. There are no facts in the record to support any of these elements, and the undisputed facts make clear that Marlborough Hospital had no control over the employment decisions of the Medical Group.

such a claim. Plaintiff was not physically located at Marlborough Hospital, was not supervised by anyone at Marlborough Hospital, and the Medical Group was responsible for staffing assignments to ensure review of images originating from Marlborough Hospital. M.H. S.O.F., ¶¶ 2, 4-5. Marlborough Hospital did not direct Plaintiff in performing her job duties, but Plaintiff was supervised by Medical Group employees. M.H. S.O.F., ¶ 4-5.

Plaintiff cites to Dr. Darren Brennan's role as Chief of Radiology for Marlborough Hospital to suggest that Marlborough Hospital controlled and directed her work assignments. M.H. S.O.F., ¶ 54. However, Dr. Brennan was also <u>not</u> an employee of Marlborough Hospital, but was a member of the Medical Group's clinical radiology staff. M.H. S.O.F., ¶¶ 18-19, 21, 24-29. Dr. Brennan was appointed <u>by the Medical Group</u> for a period as Chief of Radiology for Marlborough Hospital, which is an administrative role for the purpose of serving as a liaison with Marlborough Hospital and to ensure that the Medical Group is performing its obligations under its contract. M.H. S.O.F., ¶¶ 18, 20-22. Dr. Brennan was not the supervisor of Plaintiff, but simply oversaw staffing coverage for the Medical Group's reading of studies from Marlborough Hospital.[5] M.H. S.O.F., ¶ 23.

Plaintiff further appears to conflate the fact that she was credentialed as a member of Marlborough Hospital's medical staff with the existence of an employment relationship.[6] As

---

[5] In her Answers to Interrogatories, Plaintiff points to an occasion where Dr. Brennan was involved in investigating a dispute between Plaintiff and Dr. Dill to suggest that he was somehow exercising supervision on behalf of Marlborough Hospital. M.H. S.O.F., ¶ 54. However, Dr. Brennan's actions on this occasion had nothing to do with Marlborough Hospital. Dr. Brennan also served as the Medical Group's Vice Chair, and while Dr. Rosen, the Chair of the Medical Group's Radiology Department, was out of the office, he had designated Dr. Brennan to handle Department matters in his absence. M.H. S.O.F., ¶¶ 30-31.

[6] In her Answers to Interrogatories, Plaintiff disingenuously claims that she was an employee of Marlborough Hospital because its President sent her a letter "accepting her resignation." M.H. S.O.F., ¶ 54. However, as Plaintiff well-knows, Marlborough Hospital was referring to the termination of her membership in the hospital's medical staff. M.H. S.O.F., ¶¶ 45-51.

with every other hospital, in order for a physician to provide medical care to its patients, a physician is required to be credentialed and conferred privileges to practice within the scope of the services they are providing to patients.[7] M.H. S.O.F., ¶¶ 45-47. A hospital does not form an employment relationship with every (or any) physician it credentials to practice, including Marlborough Hospital. See Perry v. VHS San Antonio Partners, L.L.C., 990 F.3d 918, 929 (5th Cir. 2021), cert. denied, U.S., No. 21-172 (Nov. 22, 2021) (holding that "[a] physician with hospital privileges is not a hospital employee for purposes of federal antidiscrimination law," citing cases); Rafik Benaissa, M.D., v. Salina Regional Health Center, Inc., 2021 WL 5710033, at *3-5, No. 20-3236, (10th Cir. Dec. 2, 2021).[8] The fact that Plaintiff had medical staff privileges at Marlborough Hospital does not further her ability to meet any element for the test to establish the existence of an employment relationship.

Because Marlborough Hospital was not Plaintiff's employer, it cannot be liable for the alleged discrimination against her.

      B.     <u>Plaintiff alleges no facts to support her claims against Marlborough Hospital.</u>

Regardless of the status of her relationship with Marlborough Hospital, Plaintiff fails to allege any action taken by Marlborough Hospital against her <u>at all</u>, let alone any action which was discriminatory or defamatory.

---

[7] In her answers to Interrogatories, Plaintiff points to the fact that Plaintiff was "also regularly required to pay dues as a member of the medical staff." M.H. S.O.F., ¶ 54. However, the fact that Plaintiff paid dues to Marlborough Hospital for the privilege of providing care to its patients emphasizes the fact that she was not an employee of Marlborough Hospital.

[8] The fact that Plaintiff was required to abide by the Hospital's bylaws and policies also does not establish the requisite amount of control to create an employment relationship. See Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 262 (4th Cir. 1997); Wojewski v. Rapid City Reg'l Hosp., Inc., 450 F.3d 338, 343-44 (8th Cir. 2006).

To the extent Plaintiff alleges that Marlborough Hospital aided and abetted UMass Memorial Medical Group's discrimination against her,[9] Plaintiff cannot establish such a claim, because Marlborough Hospital took no action against her. To make a claim, "a plaintiff must show (1) that the defendant committed a wholly individual and <u>distinct wrong separate and distinct from the claim in main</u>; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive the plaintiff of a right guaranteed him or her under G.L. c. 151B." <u>Saari v. Allegro Microsystems, LLC</u>, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (<u>quoting</u> <u>Lopez v. Com.</u>, 463 Mass. 696, 713 (2012)) (emphasis added).

Plaintiff cannot allege with any factual support that Marlborough Hospital made or participated in any decision regarding her employment. Plaintiff cannot allege that it denied her academic time, declined to exempt her from call as she had requested, or failed to provide her with a home workstation. She can further not allege that Marlborough Hospital was involved in Plaintiff's leave, that she requested an accommodation for a disability from Marlborough Hospital, or that Marlborough Hospital denied her an accommodation. Marlborough Hospital was not involved in the decision to hire Dr. Dill as Division Chief. M.H. S.O.F., ¶ 58.

Marlborough Hospital did not pay Plaintiff and had no involvement in the setting of her salary or any other terms of compensation. M.H. S.O.F., ¶¶ 12-14. Plaintiff admits that she is not claiming that Marlborough Hospital violated the Equal Pay Act, and admits Marlborough Hospital did not make any decisions to pay her differently than male employees. M.H. S.O.F., ¶¶ 55-56. These admissions dispose of her equal pay claims under Counts II and VI.

---

[9] M.G.L. Chapter 151B, § 4(5) provides that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

Further, Marlborough Hospital did not restrict Plaintiff's CT privileges. M.H. S.O.F., ¶ 52. Likewise, Marlborough Hospital did not play any role in the decision to end Plaintiff's employment. M.H. S.O.F., ¶ 53. And, Plaintiff has not alleged that Marlborough Hospital made any false or defamatory statements about Plaintiff.[10]

Plaintiff testified that the sole basis for her claim against Marlborough Hospital is a complaint about her quality was made by Kimberly Robinson, M.D., which she argues is a complaint by Marlborough Hospital. M.H. S.O.F., ¶ 32. Notably, Dr. Robinson was also <u>not</u> an employee of Marlborough Hospital, but was, like Plaintiff, a member of a private medical practice who treated patients of Marlborough Hospital. M.H. S.O.F., ¶¶ 34-44.[11] Thus, Complaints originating from Dr. Robinson relating to her patients (or the patients of fellow physicians) do not constitute complaints by Marlborough Hospital and are not made on behalf of Marlborough Hospital.

Regardless, the fact that complaints about quality originated from a physician with credentialing privileges as a member of the medical staff of Marlborough Hospital does nothing to support Plaintiff's claims for discrimination or defamation. Plaintiff can allege no facts whatsoever to suggest that Dr. Robinson, Marlborough Hospital, or anyone else reported concerns with her quality based on discriminatory animus. In fact, Plaintiff admits that Dr. Robinson complained about many physicians; not just her. M.H. S.O.F., ¶ 33.

---

[10] In Plaintiff's Answers to Interrogatories, when Plaintiff was asked to identify every defamatory statement she alleges was made, she does not identify any statement made by or on behalf of Marlborough Hospital. M.H. S.O.F., ¶ 59.

[11] Dr. Robinson served as President of Marlborough Hospital's Medical Staff for a period, a (non-employee) role selected by the (non-employee) physicians serving Marlborough Hospital who has no authority to act behalf of Marlborough Hospital, and has additionally served in an independent contractor relationship in other roles with Marlborough Hospital. M.H. S.O.F., ¶ 41.

Simply put, Plaintiff can offer no evidence to support a claim that Marlborough Hospital took any action that was motivated by discriminatory animus or was defamatory, and, therefore, Marlborough Hospital is entitled to summary judgment as a matter of law.[12]

### III.     Conclusion

There are no facts to support liability on the part Marlborough Hospital, but Plaintiff simply folds Marlborough Hospital into her claims against her employer, the Medical Group. It is undisputable that Marlborough Hospital was not her employer, and regardless, there is no evidence that Marlborough Hospital took any unlawful action against her. Because there is no genuine dispute as to any material fact as to any claim against Marlborough Hospital, it is entitled to summary judgment.

Respectfully submitted,

**MARLBOROUGH HOSPITAL**

By its attorneys,

/s/ Reid M. Wakefield
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone 508.860.1474
Fax 508.983.6261
rkilroy@mirickoconnell.com
rwakefield@mirickoconnell.com

Dated:  December 17, 2021

---

[12]  To the extent the Court finds that Marlborough Hospital is somehow liable for the alleged discrimination and defamation alleged against the UMass Memorial Medical Group or any of the other Defendants, Marlborough Hospital incorporates by reference the arguments set forth in the remaining Defendants' Motion for Summary Judgment and accompanying Memorandum of Law.

CERTIFICATE OF SERVICE

      I, Reid M. Wakefield, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

                                                          /s/ Reid M. Wakefield
                                                          Reid M. Wakefield, Esq.

Dated: December 17, 2021