UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

| | |
|---|---|
| CHARU DESAI,<br>      Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL<br>CENTER, INC., et al.,<br>      Defendants. | **STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, MARLBOROUGH HOSPITAL** |

Pursuant to D. Mass. Local Rule 56.1, Defendant, Marlborough Hospital, submits the following Statement of Material Facts in support of its Motion for Summary Judgment.[1]

**A.     Plaintiff's Employment Status**

1.     Plaintiff, Charu Desai, was employed by UMass Memorial Medical Group, Inc. (the "Medical Group"), and the University of Massachusetts Medical School. See Deposition Transcript for Charu Desai, M.D. ("Desai Dep."), at 96:22-97:15, attached as **Exhibit A** to Affidavit of Reid Wakefield, Esq. ("Wakefield Aff."); Agreement between UMass Memorial Medical Group, Inc., and Charu Desai, M.D., attached as **Exhibit B** to Wakefield Aff.

2.     Plaintiff was located and physically performed her duties at UMass Memorial Medical Center. See Affidavit of Max Rosen, M.D., M.P.H. ("Rosen Aff."), at ¶ 9, attached as **Exhibit C** to Wakefield Aff.

---

[1]     This Statement of Material Facts is offered for the purposes of Defendant's Motion only. The facts recited herein are accepted for this purpose only, and they do not constitute admissions or stipulations for trial.

3. In the course of her duties, Plaintiff read radiological images originating from multiple hospitals, including campuses of UMass Memorial Medical Center, Marlborough Hospital, and Clinton Hospital. Ex. C, Rosen Aff. at ¶ 10.

4. The Medical Group was responsible for staffing radiologists to review images originating from different hospitals, and the Medical Group directed radiologists' assignments. Ex. C, Rosen Aff. at ¶ 11.

5. Marlborough Hospital did not direct Plaintiff or any other radiologist with respect to the reading of images or in any other job duties. Plaintiff was supervised by Medical Group employees. Ex. C, Rosen Aff. at ¶ 12.

6. Plaintiff did not have an employment agreement with Marlborough Hospital. Ex. A, Desai Dep. at 99:5-7.

7. Plaintiff has never been employed by Marlborough Hospital. See Affidavit of Michael J. Paruta ("Paruta Aff.") at ¶ 3, attached as **Exhibit D** to Wakefield Aff.; Affidavit of Steven P. Roach ("Roach Aff.") at ¶ 4, attached as **Exhibit E** to Wakefield Aff.

8. Marlborough Hospital does not employ any physicians who provide medical care at Marlborough Hospital. Ex. D, Paruta Aff. at ¶ 4; Ex. E, Roach Aff. at ¶ 2.

9. For a period, Plaintiff had performed professional radiology services at Marlborough Hospital pursuant to a Professional Services Agreement By and Between Marlborough Hospital and UMass Memorial Medical Group, Inc. (the "Professional Services Agreement"). Ex. D, Paruta Aff. at ¶ 12; Professional Services Agreement, attached as **Exhibit F** to Wakefield Aff.

10. Pursuant to the Professional Services Agreement, "Radiologists shall not be employees of the Hospital." Instead, the radiologists who perform services at Marlborough

Hospital are employed by UMass Memorial Medical Group, Inc. Ex. D, Paruta Aff. at ¶ 13, Ex. E, Roach Aff. at ¶ 3; Ex. F, at ¶ 12.

11. The Professional Services Agreement also states: "It is expressly understood and agreed that, in the performance of services under this Agreement, the [Medical] Group and the employees and independent contractors engaged by the Group shall at all times act as independent contractors with respect to the Hospital and as an independent private radiologist practice, and not as employees or agents of the Hospital." Ex. F, at ¶ 18; Ex. D, Paruta Aff. at ¶ 14.

12. Under the Professional Services Agreement, "[t]he [Medical] Group shall be responsible for paying compensation to all Group Radiologists." Ex. F, at ¶ 12; Ex. D, Paruta Aff. at ¶ 15.

13. Marlborough Hospital does not have, and has not had, the power to hire, fire or discipline Plaintiff or any other physician member of the Medical Group. Ex. D, Paruta Aff. at ¶ 19.

14. Marlborough Hospital has never had the power to set the compensation for Plaintiff or any other physician member of the Medical Group, nor has it played any role in setting such compensation. Ex. D, Paruta Aff. at ¶ 20.

15. Marlborough Hospital has never set the work schedules for Plaintiff. Ex. D, Paruta Aff. at ¶ 21.

16. Marlborough Hospital did not direct Plaintiff in the performance of her job duties and responsibilities. Ex. D, Paruta Aff. at ¶ 23.

17. Marlborough Hospital does not maintain employment records for Plaintiff. Ex. D, Paruta Aff. at ¶ 22.

**B.      Chief of Radiology**

18.     Darren Brennan, M.D., served as the Chief of Radiology for Marlborough Hospital from 2015 to 2018. Ex. C, Rosen Aff. at ¶ 15.

19.     Dr. Brennan has never been employed by Marlborough Hospital. Ex. D, Paruta Aff. at ¶ 3.

20.     Under the Professional Services Agreement, the Medical Group, with the approval of Marlborough Hospital's President, selects one of its Medical Group physician-employees as the Chief of Radiology for Marlborough Hospital, to perform various administrative duties as set forth in the Agreement. Ex. D, Paruta Aff. at ¶ 16; Ex. F, at ¶ 8.

21.     The physician appointed as Chief of Radiology for Marlborough Hospital is not an employee of Marlborough Hospital. Ex. D, Paruta Aff. at ¶ 17.

22.     As Chief of Radiology, Dr. Brennan performed an administrative role which involved serving as a representative of the Medical Group's Radiology Department, serving as a liaison with Marlborough Hospital, and ensuring that the Medical Group was performed its obligations under its contract with Marlborough Hospital. Ex. C, Rosen Aff. at ¶ 16.

23.     In Dr. Brennan's capacity as Chief of Radiology, he oversaw staffing coverage for the Medical Group's reading of studies originating from Marlborough Hospital. Ex. C, Rosen Aff. at ¶ 16.

24.     The physician appointed as Chief of Radiology for Marlborough Hospital does not have the authority to act on behalf of Marlborough Hospital, except to the extent reflected in the Professional Services Agreement. Ex. D, Paruta Aff. at ¶ 18.

25.     Marlborough Hospital has never had the power to hire, fire or discipline Dr. Brennan. Ex. D, Paruta Aff. at ¶ 19.

26. Marlborough Hospital has never had the power to set the compensation for Dr. Brennan, nor has it played any role in setting such compensation. Ex. D, Paruta Aff. at ¶ 20.

27. Marlborough Hospital has never set the work schedules for Dr. Brennan. Ex. D, Paruta Aff. at ¶ 21.

28. Marlborough Hospital does not maintain employment records for Dr. Brennan. Ex. D, Paruta Aff. at ¶ 22.

29. Marlborough Hospital has not directed Dr. Brennan in the performance of his job duties and responsibilities. Ex. D, Paruta Aff. at ¶ 24.

30. Dr. Brennan served as the Vice Chair for Enterprise Operations and Community Radiology from 2015 to 2019. Ex. C, Rosen Aff. at ¶ 17.

31. Dr. Brennan addressed a concern raised between Plaintiff and Dr. Karin Dill that occurred on September 21, 2017, in his role as Vice Chair of the Medical Group's Radiology Department, as he was required to do so in the absence of the Department Chair, Dr. Max Rosen. Ex. C, Rosen Aff. at ¶ 17; E-mail dated September 21, 2017, from D. Brennan to C. Desai, attached as **Exhibit G** to Wakefield Aff.

C.  **Dr. Kimberly Robinson**

32. The sole basis upon which Plaintiff is making a claim against Marlborough Hospital is that a complaint about Plaintiff's quality was made by Kimberly Robinson, M.D. Ex. A, Desai Dep. at 217:9-22.

33. Dr. Robinson has made complaints about a lot of other physicians. Ex. A, Desai Dep. at 233:19-234:1.

34. Dr. Robinson has never been employed by Marlborough Hospital. Ex. D, Paruta Aff. at ¶¶ 3, 25-26.

35. Dr. Kimberly Robinson has served as an independent contractor to Marlborough Hospital in the role of Medical Director of the Intensive Care Unit. Dr. Robinson's independent contractor arrangement with Marlborough Hospital in this role is subject to an independent contractor agreement. Ex. D, Paruta Aff. at ¶ 5; Independent Contractor Agreement as Medical Director for Marlborough Hospital's Intensive Care Unit, attached as **Exhibit H** to Wakefield Aff.

36. Dr. Kimberly Robinson has also served as an independent contractor to Marlborough Hospital in the role of Medical Director for Respiratory Care Services. Dr. Robinson's independent contractor arrangement with Marlborough Hospital in this role is subject to an independent contractor agreement. Ex. D, Paruta Aff. at ¶ 6; Independent Contractor Agreement as Medical Director for Respiratory Care Services for Marlborough Hospital, attached as **Exhibit I** to Wakefield Aff.

37. The two independent contractor agreements between Dr. Robinson and Marlborough Hospital state: "Physician shall perform all services hereunder as an independent contractor. Physician and its employees, agents, and subcontractors are not employees or agents of the Hospital, and shall not hold themselves out as, or claim to be, officers or employees of Hospital, and will not make any claim, demand, or application to or for any right or privilege applicable to an officer or employee of Hospital, including, but not limited to, worker's compensation coverage, unemployment insurance benefits, social security benefits, or retirement membership or credit." Ex. D, Paruta Aff. at ¶ 7; Ex. H, at ¶ 19; Ex. I, at ¶ 19.

38. Dr. Robinson provides on-site shift coverage on an independent contractor basis to the Intensive Care Unit of Marlborough Hospital, with such services being subject to a

Physician Consultant Contract. Ex. D, Paruta Aff. at ¶ 8; Physician Consultant Contract, attached as **Exhibit J** to Wakefield Aff.

39. The Physician Consultant Contract states: "Contractor shall perform all services under this Contract as an independent contractor. The Contractor is not an employee or agent of the Hospital, and shall not hold him/herself out as, nor claim to be, an officer or employee of the Hospital and will not make any claim, demand, or application to or for any right or privilege applicable to an officer or employee of Hospital, including, but not limited to, worker's compensation coverage, unemployment insurance benefits, social security benefits, or retirement membership or credit." Ex. D, Paruta Aff. at ¶ 9; Ex. J, at ¶ 10.

40. Dr. Kimberly Robinson is a member of Mass Lung and Allergy, P.C., a professional corporation that is unaffiliated with Marlborough Hospital. Mass Lung and Allergy, P.C., provides intensivist critical care coverage through its member physicians on an independent contractor basis at Marlborough Hospital, pursuant to an Intensivist Coverage Agreement. Ex. D, Paruta Aff. at ¶ 10; Intensivist Coverage Agreement, attached as **Exhibit K** to Wakefield Aff.

41. Dr. Robinson has served for a period as the President of the Marlborough Hospital Medical Staff, which is a position selected by the physicians of the medical staff and not Marlborough Hospital, and the President of the Medical Staff is not an employee of Marlborough Hospital and does not act on its behalf. Ex. D, Paruta Aff. at ¶ 11.

42. Marlborough Hospital does not maintain employment records for Dr. Robinson. Ex. D, Paruta Aff. at ¶ 22.

43. Marlborough Hospital does not direct Dr. Robinson in the performance of her job duties and responsibilities, except within the scope of the agreements governing her independent contractor roles as set forth in those agreements. Ex. D, Paruta Aff. at ¶¶ 23, 25.

44. The terms of Dr. Robinson's compensation as an independent contractor, her work schedule, and Marlborough Hospital's ability to terminate the independent contractor relationship are set forth in the respective agreements. Ex. D, Paruta Aff. at ¶ 26.

**D.   Hospital Privileges**

45. All physicians are required to be credentialed and appointed as members of the medical staff in order to have privileges to provide medical care to patients at Marlborough Hospital. Ex. E, Roach Aff. at ¶ 5.

46. Physicians who are credentialed and appointed as members of the medical staff are not employees of Marlborough Hospital. Ex. E, Roach Aff. at ¶ 6.

47. Plaintiff formerly served as a member of Marlborough Hospital's medical staff, providing radiology services for patients of Marlborough Hospital as a member of its medical staff. Ex. E, Roach Aff. at ¶ 7.

48. On April 4, 2019, the President of Marlborough Hospital, Steve Roach, signed a letter addressed to Charu S. Desai, M.D., in which he stated: "Marlborough Hospital has accepted your resignation as a member of the Department of Radiology with regret. Thank you very much for your service to Marlborough Hospital." Ex. E, Roach Aff. at ¶ 8; Letter dated April 4, 2019, from Steven P. Roach to Charu S. Desai, M.D., attached as **Exhibit L** to Wakefield Aff.

49. This letter was in reference to Plaintiff's resignation as a member of Marlborough Hospital's medical staff, and was thanking her for her service to Marlborough Hospital as a member of its medical staff. Ex. E, Roach Aff. at ¶ 9.

50. This letter was generated as a result of the Medical Staff Services Office being notified that Plaintiff's employment with UMass Memorial Medical Group, Inc., was ending, and

was sent to Plaintiff as confirmation of the corresponding termination of her medical staff privileges at Marlborough Hospital. Ex. E, Roach Aff. at ¶ 10.

51.     This letter was not in reference to Plaintiff's resignation of employment by Marlborough Hospital, as she was never employed by Marlborough Hospital, nor did she have any other relationship with Marlborough Hospital other than providing radiology services under Marlborough Hospital's Professional Services Agreement with Plaintiff's employer, UMass Medical Group, Inc. Ex. E, Roach Aff. at ¶ 11.

52.     At no time did Marlborough Hospital restrict the privileges of Plaintiff to perform reads of CT images. Ex. E, Roach Aff. at ¶ 12.

53.     Marlborough Hospital did not participate in the decision to end Plaintiff's employment. Ex. E, Roach Aff. at ¶ 13.

E.     **Plaintiff's Allegations and Admissions**

54.     Plaintiff alleges that Marlborough Hospital exercised substantial control over the terms and conditions of her employ, because Plaintiff was a member of its medical staff with clinical privileges and because Dr. Brennan exercised some authority over her work. See Plaintiff's Answers to Marlborough Hospital's Interrogatories, at Interrogatory 1, attached as **Exhibit M** to Wakefield Aff.

55.     Plaintiff is not claiming that Marlborough Hospital did not pay her correctly under the Equal Pay Act. Ex. A, Desai Dep. at 174:24-175:2.

56.     Plaintiff cannot identify anyone with Marlborough Hospital who made a decision to pay her differently than white males. Ex. A, Desai Dep. at 128:15-18.

57.     Plaintiff admits Marlborough Hospital did not make any decision to deny Plaintiff a home workstation. Ex. A, Desai Dep. at 159:20-160:11.

58. Marlborough Hospital did not make the decision to hire Dr. Dill. Ex. A, Desai Dep. at 168:20-23.

59. Marlborough Hospital did not make any verbal or written statements about Plaintiff which are defamatory. **Exhibit N**, Plaintiff's Answers to UMass Memorial Medical Center, Inc.'s Interrogatories, at Interrogatory 8.

Respectfully submitted,

**MARLBOROUGH HOSPITAL**

By its attorneys,

/s/ Reid M. Wakefield
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone 508.860.1474
Fax 508.983.6261
rkilroy@mirickoconnell.com
rwakefield@mirickoconnell.com

Dated:  December 17, 2021

CERTIFICATE OF SERVICE

I, Reid M. Wakefield, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

/s/ Reid M. Wakefield
Reid M. Wakefield, Esq.

Dated: December 17, 2021