UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

| | |
|---|---|
| CHARU DESAI,<br>    Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL<br>CENTER, INC., et al.,<br>    Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, KARIN DILL, M.D.** |

Defendant, Karin Dill, M.D. ("Dr. Dill"), pursuant to Fed. R. Civ. P. Rule 56 and Local Rule 7.1, submits her Memorandum of Law in Support of her Motion for Summary Judgment.

### I.     Summary Judgment Standard

As the Court well knows, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact … that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). "On issues where the nonmovant bears the ultimate burden of proof, [s]he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory

allegations, improbable inferences, and unsupported speculation." Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (internal quotations omitted).[1]

## II.     Discrimination (Count V)

Plaintiff brings claims against all Defendants for discrimination on the basis of sex, age, and disability. While she asserts that her employment was unlawfully terminated, she was denied accommodations for her disability, and she was discriminated against in the terms and conditions of her employment, Plaintiff indiscriminately includes Karin Dill, M.D., in her claims despite that fact that Dr. Dill was not a decision-maker. Indeed, Dr. Dill played no role in any decisions regarding Plaintiff's employment, and Plaintiff can put forth no evidence at all to support a claim that Dr. Dill took any action motivated by discriminatory animus.

Because Dr. Dill was not Plaintiff's employer, the basis of Plaintiff's claim against Dr. Dill is limited to that of aiding and abetting discrimination. M.G.L. Chapter 151B, § 4(5) provides that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." To establish such a claim, "a plaintiff must show (1) that the defendant committed a wholly individual and distinct wrong separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an

---

[1] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). "Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The "genuine issue" standard requires an inquiry "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

enterprise designed to deprive the plaintiff of a right guaranteed him or her under G.L. c. 151B." Saari v. Allegro Microsystems, LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (quoting Lopez v. Com., 463 Mass. 696, 713 (2012)) (emphasis added).

Plaintiff cannot allege facts to support any of these elements. It is indisputable that Dr. Dill did not participate in any decision regarding Plaintiff's employment. Dr. Dill did not participate in the decision to terminate Plaintiff's employment. Dill S.O.F., ¶¶ 6-7.[2] Dr. Dill had no knowledge of the independent review arranged for by Dr. Rosen, did not participate in it, and was not provided the results of the independent review. Dill S.O.F., ¶¶ 8-11. Dr. Dill did not make or participate in any decision to limit Plaintiff's privileges, including the restriction on Plaintiff's reading of CT studies. Dill S.O.F., ¶ 16. Dr. Dill did not participate in or make any decisions regarding Plaintiff's academic time, exemption from call, or denial of a home workstation. Dill S.O.F., ¶ 12. Dr. Dill did not participate in or make any decisions regarding any accommodation for a disability Plaintiff may have had, nor did Plaintiff ever request an accommodation due to a disability to Dr. Dill. Dill S.O.F., ¶¶ 13-15.

Plaintiff may point to the fact that Dr. Dill expressed concerns, and relayed concerns from providers, to Dr. Rosen regarding Plaintiff's quality of work. Dill S.O.F., ¶ 34. However, as Division Chief, Dr. Dill was both Plaintiff's supervisor and was responsible for the quality of the Chest Division, and she addressed quality concerns in the normal course of her duties. Dill S.O.F., ¶¶ 3, 5, 18, 30-35. While Plaintiff contends that Dr. Dill conducted a targeted peer review

---

[2] Citations to "Dill S.O.F." are to the Statement of Material Facts in Support of Motion for Summary Judgment by Defendant, Karin Dill, M.D., filed contemporaneously herewith.

of her radiological reads, and alleges that she later discovered this peer review,[3] the document she refers to is simply a report generated from the Department's quality assurance system which was provided by Dr. Rosen to Plaintiff at her annual review. Dill S.O.F., ¶ 24. Dr. Dill did not ever perform a targeted review of Plaintiff's CT reads, and did not produce or generate the "peer review" document upon which Plaintiff anchors her claims against Dr. Dill. Dill S.O.F., ¶¶ 17, 28. While the document does reflect cases that Dr. Dill cited as errors in her opinion, Dr. Dill entered this information in good faith and in the normal course of her duties (at varying times) in compliance with the quality assurance process, as she did for many other radiologists in the Department. Dill S.O.F., ¶¶ 30-33. Further, Dr. Dill was obligated to perform these duties in the interests of patient safety, and all of her actions were taken as part of the Department's peer-review privileged program, protected under M.G.L. c. 111, §§ 203 and 204. Dill S.O.F., ¶¶ 18-21, 33.

Critically, even if Dr. Dill did take some sort of distinct action against Plaintiff in performing her routine job duties to evaluate employees' work and protect patient safety, Plaintiff can offer no evidence at all that Dr. Dill had an intent to discriminate against her for any reason. Plaintiff testified that Dr. Dill made untrue statements about other physicians too and not just her. Dill S.O.F., ¶ 27. Plaintiff admits that she does not know whether the peer review document or the information contained within is related to discrimination. Dill S.O.F., ¶ 26.

There is further no evidence to show that Dr. Dill would have been aware of some discriminatory enterprise which she could have been furthering. Dr. Dill was not informed and

---

[3] Plaintiff alleges in the Amended Complaint that "[i]n or around August 2018, Dr. Desai discovered a 'peer review' evaluation that Dr. Karin Dill performed assessing the quality of Dr. Desai's work from July 2016 to June 2017." Amended Complaint, ¶ 56. Plaintiff believes that Dr. Dill produced the Peer Review Summary, she has "no idea" how she got it, and believes she found it when cleaning her office. Dill S.O.F., ¶ 25.

did not know that Plaintiff's employment would be terminated until after Plaintiff was given notice of her termination. Dill S.O.F., ¶ 7. Likewise, Dr. Dill did not know that an independent review was conducted of Plaintiff's quality until after Plaintiff was given notice of her termination. Dill S.O.F., ¶ 9.

Based on the foregoing, Plaintiff is unable to meet the elements of a discrimination claim, and Dr. Dill is entitled to summary judgment.[4]

### III. Tortious Interference with Advantageous Business Relations (Count VII)

Plaintiff alleges that Dr. Dill tortiously interfered with her business relations, namely her employment with the UMass Memorial Medical Group. See Amended Complaint, ¶¶ 102-104. To establish a claim for tortious interference, Plaintiff must prove that "(1) [s]he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007).

The basis for Plaintiff's claim is that she was terminated due to discrimination. As described above, Dr. Dill did not play any role in Plaintiff's employment termination, and to the extent Plaintiff argues that Dr. Dill's reporting of concerns with her work performance in the course of her job duties induced her termination, there is no evidence whatsoever that Dr. Dill knowingly expressed concerns toward this end. Further, Plaintiff can offer no evidence to

---

[4] To the extent the Court finds that Dr. Dill may be liable for alleged discrimination by UMass Memorial Medical Group or any of the other Defendants, Dr. Dill incorporates by reference the arguments set forth in the remaining Defendants' Motion for Summary Judgment and accompanying Memorandum of Law.

establish that Dr. Dill's alleged interference was intentional or done with improper motive or means.

While there is no evidence to meet any standard of motive, Dr. Dill was Plaintiff's supervisor, and thus, in order for Plaintiff to prevail, she must show that "that the 'controlling factor' in the alleged interference was 'actual' malice." See Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 782 (2001). Courts have stressed that "'implied' malice is not sufficient," and they "have defined the requisite 'malice' in this context as 'a spiteful, malignant purpose, unrelated to the legitimate corporate interest' of the employer." Id. at 781-82. This "actual malice" standard is intended to "provide[] a measure of protection to corporate supervisors, who must necessarily make adverse employment decisions from time to time and who otherwise would be unduly exposed to the tortious interference claims of disgruntled former employees," and to "prevent[s] such an employee from simply recasting a nonexistent wrongful discharge claim as a tort claim for wrongful interference with advantageous business relations." Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 54-55 (2020), review denied, 486 Mass. 1104 (2020). This rule exists because officials' "freedom of action directed toward corporate purposes should not be curtailed by fear of personal liability." See Blackstone, 448 Mass. at 261 (quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663-64 (1981)); Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass. App. Ct. 550, 554-55 (2003) (noting that a supervisor is "privileged to interfere with the employee's advantageous relationship").

Motive is the crux of a tortious interference claim, and it cannot be established "if the plaintiff can show nothing more than an adverse impact or a 'laundry list' of facts which may or may not indicate the defendant acted out of actual malice." See Sklar, 59 Mass. App. Ct. at 555. Instead, Plaintiff must "demonstrate a link between the defendant's conduct and evidence of a

spiteful purpose or personal hostility." Id. A claim for tortious interference fails when the allegations consist, as here, of "mere legal conclusions cast in the form of factual allegations." See Kelleher, 98 Mass. App. Ct. at 55 (internal quotations omitted). Instead, a plaintiff "must allege specific facts from which a plausible inference of malice can be drawn. A bare allegation that the defendant's interference was 'improper in motive or means' is not sufficient." Id.; Gram, 384 Mass. at 664 ("Any reasonable inference of malice must … be based on probabilities rather than possibilities." (internal quotations omitted)).

Plaintiff can proffer no evidence in support of her claim of tortious interference, nor to establish actual malice. Accordingly, Plaintiff's claim of tortious interference should be summarily dismissed.

## IV.   Defamation (Count VIII)

In order to establish a claim for defamation, Plaintiff must prove that "(1) the defendant published a false statement regarding the plaintiff – that is, the defendant communicated the statement concerning the plaintiff to a third party; (2) the statement could damage the plaintiff's reputation in the community; and (3) the statement caused economic loss or is otherwise actionable without proof of economic loss." Flagg v. AliMed, Inc., 466 Mass. 23, 37 (2013). "The publication element of defamation requires that the defendant communicate the defamatory statement to a third party." White v. Blue Cross & Blue Shield of Massachusetts, Inc., 442 Mass. 64, 66 (2004).

Further, statements of opinion are not actionable as defamation under Massachusetts law. Saad v. Am. Diabetes Ass'n, 123 F. Supp. 3d 175, 177 (D. Mass. 2015) (citing HipSaver, Inc. v. Kiel, 464 Mass. 517, 526 n. 11 (2013)). To be defamatory, "a statement generally must contain an objectively verifiable assertion," and "a statement cannot be defamatory if it is plain that the

speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Id. (internal quotations omitted).

Plaintiff cites two statements by Dr. Dill which she alleges constitute defamation. First, Plaintiff alleges that Dr. Dill falsely reported to Dr. Rosen and Dr. Brennan that Plaintiff had been rude to her on one occasion. Dill S.O.F., ¶¶ 40-41, 45. Plaintiff admits that, in this exchange she had with Dr. Dill, she had also called Dr. Dill rude. Dill S.O.F., ¶ 43. Dr. Dill's assessment of Plaintiff's behavior as "rude" is unequivocally a statement of pure opinion, as Plaintiff readily admitted at deposition, Dill S.O.F., ¶ 44, and is therefore not actionable.

Second, Plaintiff contends that Dr. Dill created a "July 1, 2016 - June 30, 2017 Peer Review of Dr. Desai by K. Dill." Dill S.O.F., ¶¶ 45, 46. However, Dr. Dill did not create this document, did not possess a copy, and did not disseminate it. Dill S.O.F., ¶¶ 28-29. To the extent Plaintiff claims that some of the information contained within the document had previously been entered in the quality assurance system falsely by Dr. Dill as part of some kind of scheme to have the several entries, entered at various times, uncovered at a later date, she cannot show that these entries constituted defamation. These entries were made by Dr. Dill in the normal course of her job duties in a good faith effort to comply with her obligation to ensure patient safety, as discussed above in Section II.

A supervisor's assessments of an employee's work quality do not constitute defamation, no matter how much second-guessing is done by the employee. First, Dr. Dill's reviews of Plaintiff's CT reads in the system and her reporting of concerns regarding Plaintiff's quality are statements of opinion, and are not statements of fact which could be defamatory. See Saad, 123 F. Supp. 3d at 177. Second, any of Dr. Dill's opinions expressed in the peer review

privileged system or to Dr. Rosen are privileged.[5] An employer and its supervisors and officials have the conditional privilege to "disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 335 (2014), aff'd in part, 473 Mass. 672 (2016). Further, a privilege exists where "the publisher and the recipient share a common interest and the communication is of a kind reasonably calculated to protect or further it." Sklar, 59 Mass. App. Ct. at 558. This privilege is lost only where the publisher "(1) knew the information was false, (2) had no reason to believe it to be true, (3) recklessly published the information unnecessarily, unreasonably, or excessively, or (4) that it acted out of malice." Bulwer, 86 Mass. App. Ct. at 335; see also Sklar, 59 Mass. App. Ct. at 558.

Concerns regarding the quality of an employee's work raised by the Division Chief are clearly privileged, as they are reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job, and the recipients of that information, including Dr. Rosen, all shared the Department's interest in ensuring patient safety and quality of care.[6] There is simply no evidence that concerns raised by Dr. Dill were known to be false or that she had reason to believe they were false, or that the concerns were raised in anything but a discrete, confidential, and peer-review protected manner; entered internally within a peer-review

---

[5] There is no dispute that Dr. Dill only communicated this information within the organization.

[6] Critically, the communications at issue dealt with issues of quality and patient care. As such, Dr. Dill's communications constituted medical peer review information privileged under state law. See M.G.L. c. 111, §§ 203, 204; Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 396 (2005); Miller v. Milton Hosp. & Med. Ctr., Inc., 54 Mass. App. Ct. 495, 501 (2002) ("The peer review privilege … is designed to foster a candid exchange of information regarding the quality of medical care.").

confidential system or raised privately to the Department Chair. Plaintiff is simply second-guessing legitimate critiques of her work performance by her supervisor.

As Plaintiff cannot offer any facts to establish a claim for defamation against Dr. Dill, Dr. Dill is entitled to summary judgment.

## V.      Conclusion

There are no facts to support a claim that Dr. Dill took any action against Plaintiff that was motivated by discriminatory animus, or that she took any action at all that was intentionally harmful, malicious, or defamatory under the appropriate legal standards. Because there is no genuine dispute as to any material fact as to any claim against Dr. Dill, she is entitled to summary judgment on all counts.

Respectfully submitted,

**KARIN DILL, M.D.**

By her attorneys,

/s/Reid M. Wakefield
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone 508.860.1474
Fax 508.983.6261
rkilroy@mirickoconnell.com
rwakefield@mirickoconnell.com

Dated:  December 17, 2021

CERTIFICATE OF SERVICE

      I, Reid M. Wakefield, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

      /s/ Reid M. Wakefield  
      Reid M. Wakefield, Esq.

Dated: December 17, 2021