UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
CHARU DESAI,                                              )
        Plaintiff,                                         )
                                                                          )
v.                                                                      )    Civil Action No. 4:19-cv-10520-TSH
                                                                          )
UNIVERSITY OF MASSACHUSETTS,     )
MEMORIAL MEDICAL CENTER, INC.  )
UNIVERSITY OF MASSACHUSETTS     )
MEMORIAL MEDICAL GROUP,           )
UNIVERSITY OF MASSACHUSETTS     )
MEDICAL SCHOOL, UMASS                 )
MEMORIAL HOSPITAL, MAX ROSEN, )
M.D., DARREN BRENNAN, M.D.,          )
STEPHEN TOSI, M.D., KARIN DILL,     )
M.D.,                                                                  )
        Defendants.                                    )
_____)

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF UNIVERSITY OF MASSACHUSETTS CHAN MEDICAL SCHOOL'S MOTION FOR SUMMARY JUDGMENT**

The University of Massachusetts Chan Medical School ("Medical School")[1]

submits this statement of undisputed material facts in accord with Fed. R. Civ. P. 56 and

L.R. 56.1 and in support of its motion for summary judgment:

---

[1] The Medical School's name changed to the University of Massachusetts Chan Medical School effective September 7, 2021.

1

I. **Plaintiff's Employment**.

1. The Medical School is a distinct entity from the other institutional defendants in this case – UMass Memorial Medical Center, Inc. ("Medical Center"), UMass Memorial Medical Group ("Medical Group"), and UMass Memorial Marlborough Hospital ("Marlborough Hospital") (collectively the "Memorial entities"). The Medical School is one of five campuses of the University of Massachusetts; the Memorial entities are all affiliated organizations under UMass Memorial Health Care ("UMMHC"), a private not-for-profit health care provider. Ex. 1, Medical School's Ans. to Dr. Desai's First Int. No. 3.

2. Plaintiff Charu Desai is a woman and a physician who is board-certified in diagnostic radiology. Ex. 2, Amended Comp., ¶¶ 15, 16 (Dkt. 23) and partial admissions in Ex. 3, Medical School's Ans. to Amended Comp., ¶¶ 16, 17 (Dkt. 32); Ex. 4, Dr. Desai Depo., pp. 22-23.

3. Dr. Desai had a written employment agreement ("Agreement") with the Medical Group. Ex. 4, Dr. Desai Depo., pp. 96-97 (discussing Depo. Ex. 11, Agreement, CD 00051-00063 – Ex. 5 to this Statement).

4. The terms of Dr. Desai's employment with the Medical Group were governed by the Agreement and by the policies and practices of the Medical Group. Ex. 5, ¶ 1.14 (CD 00054-00055).

5. Dr. Desai also had a "Dual Employment" arrangement with the Medical School, pursuant to which she had a non-tenured faculty appointment at the Medical School that was governed by the Medical School's Academic Personnel Policy ("APP"). Ex. 4, Dr. Desai Depo., pp. 97, 385-86; Ex. 1, Medical School's Ans. to Dr. Desai's First Int. No. 4; Ex. 6, Art. 5, § 5.3(a) (APP provision re: terms of employment and appointment of "UMMHC-Employed Faculty," UM0335-0336, providing, in relevant part, "UMMHC-Employed Faculty are subject to the employment terms and conditions defined in their letter of offer and their employment contract with UMMHC, and by UMMHC policies and procedures. <u>These individuals may also provide services to [the Medical School]. The Faculty appointment of UMMHC-Employed Faculty is governed by the policies in this APP</u>") (emphasis supplied); Ex. 7, Dr. Rosen Depo., pp. 171-72 ("But I just wanted to make the distinction between employment, which is really with the medical group; and the faculty appointment, which is the medical school . . . I just want it to be clear in how I think about the different roles that I have with the different institutions.").

6. Dr. Max Rosen has been Chair of the Department of Radiology at the Medical Center and the Medical School since 2012.  Ex. 7, Dr. Rosen Depo., pp. 16-18.

II. **Academic and Administrative Time Policy**.

7. The Academic and Administrative Time Policy ("Policy") allows qualifying physicians to take time away from their clinical duties to focus on scholarly or

administrative pursuits. Ex. 8 (CD 00001-00002) (marked and discussed in Ex. 4, Dr. Desai Depo., pp. 101-25).

8. The Policy is exclusively established and administered by the Memorial entities, not by the Medical School. Ex. 1, Medical School's Ans. to Dr. Desai's First Int. No. 11. See also Ex. 4, Dr. Desai Depo., pp. 101-02 (acknowledging familiarity with policy described as "the Academic and Administrative Time Policy for UMass. Memorial").

9. Dr. Desai did not serve in a qualifying administrative role for purposes of the Policy. Ex. 4, Dr. Desai Depo., p. 119.

10. Dr. Desai was on a clinical track, not an academic track, and did not prioritize scholarly work. Id., pp. 29-30.

11. Dr. Desai did not qualify for academic time under terms of the Policy. Id., pp. 117, 316-18, 355-57.

12. Dr. Desai never submitted proposals to describe how she would use the academic time she wished to take. Id., pp. 105, 118-19, 280-81.

13. Dr. Desai wanted to use academic days to take time off and recuperate, not to pursue academic activities. Id., pp. 113, 123.

14. Dr. Rosen did grant academic time to other female radiologists in the Department. Id., p. 117.

15. In a meeting with Dr. Rosen on May 25, 2017, Dr. Desai claimed that she was being subjected to discrimination in relation to not being granted academic time.  Ex. 9, Dr. Desai's Ans. to Medical Center's Int. No. 4; Ex. 4, Dr. Desai Depo., pp. 303-11**.**

16.  Approximately one year earlier, in May 2016, Dr. Desai had also made complaints to Dr. Rosen regarding alleged discrimination in not awarding her academic time.  Ex. 9, Dr. Desai's Ans. to Medical Center's First Int. Nos. 4, 9.

17.  Dr. Desai filed her Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on May 4, 2018.  Ex. 2, Amended Comp., ¶ 67 (Dkt. 23) & Ex. D to Amended Comp. (Dkt. 23-4) and admission in Ex. 10, Memorial's Ans. to Amended Comp., ¶ 67 (Dkt. 24).

### III.  Dr. Desai's Salary.

18.  The Medical Group had exclusive authority to set Dr. Desai's total salary.  Ex. 1, Medical School's Ans. to Dr. Desai's First Int. No. 8; Ex. 7, Dr. Rosen Depo., pp. 18-20 (noting that he sets salaries set in conjunction with Medical Group's finance team and administration, and raises that he suggests must be approved by the Medical Group).

19.  Up until several months before the end of Dr. Desai's employment, 20% of the salary set by the Medical Group was paid by the Medical School, but that expense was ultimately transferred and charged back to the Medical Group, which was an

organizational practice at the time not specific to Dr. Desai.  Accordingly, 80% of Dr. Desai's salary was paid directly to Dr. Desai by UMass Memorial.  Dr. Desai received paychecks from both UMMHC and the Medical School, but the amount paid by the Medical School was then charged back to UMMHC.  Ex. 1, Medical School's Ans. to Dr. Desai's First Int. No. 8.

20.  When, in late 2016 and early 2017, salary levels in the Department were reviewed and certain radiologists, including Dr. Desai, had their salaries increased, this process was conducted by the Medical Group.  Ex. 4, Dr. Desai Depo., pp. 180-81, 312-15; Ex. 11, Medical Group's Ans. to Dr. Desai's First Int. Nos. 6 & 7.

21.  Dr. Desai admits that, in conducting this salary review and adjusting salaries, the Medical Group acted reasonably and in good faith.  Ex. 4, Dr. Desai Depo., pp. 182-83.

22.  Dr. Desai admits that, in increasing her salary, the Medical Group made reasonable progress in eliminating pay differences.  Id., pp. 314-15.

23.  Dr. Desai admits that the new adjusted pay structure was not discriminatory in any way.  Id., p. 314.

24.  Dr. Desai testified in her deposition that she is not claiming that the Medical School violated the Federal Equal Pay Act.  Id., pp. 174-75.

25.  Dr. Aaron Harman is an interventional radiologist in the Department whose salary upon hire in or around 2018 was $365,000.  Id., p. 135; Ex. 2, Amended Comp., ¶

32 (Dkt. 23) and partial admission in Ex. 10, Memorial Ans. to Amended Comp., ¶ 32 (Dkt. 24).

26. Interventional radiology is a different specialty than diagnostic radiology. Ex. 4, Dr. Desai Depo., pp. 23-24.

27. Interventional radiological procedures require the physician to invade the body; diagnostic procedures do not involve invading the body. Id., p. 138.

28. As of the time of the first day of her deposition in September 2020, Dr. Desai had not performed any interventional radiological procedures for approximately 15 years. Id., p. 25.

29. Interventional radiologists are generally paid more than general radiologists and chest radiologists. Id., p. 136.

**IV. Hiring of Dr. Karin Dill.**

30. Dr. Karin Dill was hired as Division Chief of the Cardiovascular and Thoracic Imaging Division ("Chest Division") – Dr. Desai's Division – in or around March 2016. Ex. 2, Amended Comp., ¶ 29 (Dkt. 23) and partial admission in Ex. 10, Memorial Ans. to Amended Comp., ¶ 29 (Dkt. 24); Ex. 4, Dr. Desai Depo., pp. 155-56.

31. To the extent that Dr. Desai is claiming that the decision to hire Dr. Dill was discriminatory, she is not claiming that the Medical School made that decision. Ex. 4, Dr. Desai Depo., p. 168.

**V. Dr. Desai's Termination.**

32. Dr. Rosen testified that he is responsible for making decisions about terminations and does so in conjunction with the Medical Group's lawyers. Ex. 7, Dr. Rosen Depo., p. 20.

33. In or around 2016 and early 2017, Dr. Rosen became aware of complaints about the quality Dr. Desai's radiological reads that were made directly by Dr. Kimberly Robinson of Marlborough Hospital and Dr. Dill, as well as other such complaints that were made to Dr. Dill. Id., pp. 53-55, 151-55; Ex. 12, Dr. Rosen's Ans. to Dr. Desai's First Int. Nos. 10 & 11.

34. Based on these complaints, Dr. Rosen arranged for an independent, blind review of the quality of 50 radiological reads – 25 of which had been performed by Dr. Desai and 25 of which had been performed by other radiologists in the Department. The review was performed by Dr. Diana Litmanovich. Ex. 7, Dr. Rosen Depo, pp. 151-59; Ex. 12, Dr. Rosen's Ans. to Dr. Desai's First Int. Nos. 12 & 13.

35. Dr. Desai admitted in her deposition that Dr. Rosen did not make up his concerns about the quality of her work. Ex. 4, Dr. Desai Depo., p. 91.

36. Dr. Desai admitted in her deposition that Dr. Rosen had an obligation to ensure patient safety and the quality of radiological reads. Id., pp. 74-75.

37. Dr. Desai admitted in her deposition that Dr. Rosen should act when he thinks a radiologist's work is substandard. Id., p. 78.

38. Dr. Desai admitted in her deposition that an independent review is one way to assess quality in a manner that is not discriminatory. Id., p. 91.

39. Dr. Desai admitted in her deposition that the decision to have the independent review conducted had nothing to do with discrimination and specifically nothing to do with the fact that she is a woman. Id., pp. 85-86, 90, 361-62.

40. Dr. Desai admitted in her deposition that, in ordering the independent review, Dr. Rosen was trying to remove himself from the review process. Id., pp. 91-92.

41. Dr. Desai admitted in her deposition that Dr. Rosen's decision to select Dr. Litmanovich was not discriminatory. Id., pp. 361-62.

42. Dr. Desai admitted in her deposition that the review was independent and identified five major and five minor errors in her 25 cases, compared to one major and seven minor errors in the 25 other randomly selected cases. Id., pp. 79, 361.

43. Dr. Desai admits that Dr. Litmanovich did not discriminate against her in conducting the independent review. Id., p. 363.

44. Dr. Desai admitted in her deposition that Dr. Litmanovich's findings were not discriminatory. Id., pp. 361-62.

45. Dr. Desai admitted in her deposition that Dr. Rosen relied upon the independent review.  Id., p. 79.

46. Dr. Desai admitted in her deposition that Dr. Rosen acted fairly and appropriately in relying on independent judgment instead of making the determination himself.  Id., p. 94.

47. Dr. Desai admitted in her deposition that Dr. Rosen should not have ignored the results of the independent review.  Id., p. 95.

48. In a meeting on March 14, 2018, Dr. Rosen notified Dr. Desai that, due to concerns about the quality of her clinical work and the results of the independent review, her employment with the Medical Group and the Medical School would be ending effective March 17, 2019, and he handed her a letter to that effect.  Id., pp. 409-11; Ex. 7, Dr. Rosen Depo., pp. 339-40 (discussing meeting and Depo. Ex. 64, UM 00253, Termination Letter – Ex. 13 to this Statement).

49. Both Dr. Desai's Agreement with the Medical Group and the Medical School's APP provided that the termination of the Agreement by the Medical Group would also end Dr. Desai's faculty appointment at the Medical School.  Ex. 5, ¶ 1.14 (providing, in relevant part at CD 00054-00055, "[t]he Practitioner further acknowledges that if this Agreement is terminated for any reason, the related employment relationship with the Medical School shall also terminate unless the Practitioner has a new or continuing agreement with the Medical School or is a tenured faculty member");

Ex. 6, Art. 5, § 5.3(a) (APP provision, UM0335-0336, providing, in relevant part, "[i]f the individual's employment agreement with UMMHC is terminated for any reason, their Faculty appointment and any services that the individual may be providing to [the Medical School] also end coterminously, unless the individual has a new or continuing written agreement with UMMS or is a Tenured Faculty Member."); see also id., Art. 5, § 5.1 (providing, in relevant part at UM0334, that "[t]he Faculty appointment of an Employed Faculty Member is contingent on continued employment by . . . UMMHC . . . and ends coterminously with the termination of that employment, unless there is a written agreement to continue the appointment.").

50. The APP has a separate provision that allows for the direct termination of only the faculty appointment of a non-tenured "UMMHC-Employed" faculty member "Not For Cause" with at least 30 days written notice. Ex. 6, Art. 5, § 5.3(b) (UM0336).

51. Here, Dr. Desai was terminated with 12 months of notice based on her years of service in accord with terms of the Agreement with the Medical Group. Ex. 4, Dr. Desai Depo., pp. 99-100; Ex. 5, Agreement, § 7.2 (CD 00057) & § 14.1 (CD 00060); Ex. 13.

52. The termination letter indicated that Dr. Desai's faculty appointment at the Medical School would also be ending on March 17, 2019. Ex. 13.

53. Dr. Desai admitted in her deposition that Dr. Rosen terminated her based on an assessment of the quality of her reads as substandard. Ex. 4, Dr. Desai Depo., p. 79.

54. Dr. Desai testified in her deposition that her termination had nothing to do with her duties at the Medical School, and she understood that when she was notified of her termination in March 2018.  Id., p. 387.

Dated:	December 17, 2021

                                                 UNIVERSITY OF MASSACHUSETTS
                                                 CHAN MEDICAL SCHOOL
                                                 By its attorney,

                                                 */s/ Mark Johnson*
                                               Denise Barton, BBO No. 675245
                                               Chief Deputy General Counsel
                                               Mark A. Johnson, BBO No. 651271
                                               Associate Counsel
                                               University of Massachusetts
                                               Office of the General Counsel
                                               333 South Street, 4th Floor
                                               Shrewsbury, MA 01545
                                               (774) 455-7300
                                               dbarton@umassp.edu
                                               majohnson@umassp.edu

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the above document on all counsel of record by the Electronic Court Filing System (ECF) of the United States District Court for the District of Massachusetts.

                                               */s/ Mark A. Johnson*
                                               Mark A. Johnson