# Exhibit 9

Charu Desai v. University of Massachusetts Memorial Medical Center, Inc. et al.

Civil Action No. 4:19-cv-10520-DHH

University of Massachusetts Chan Medical School's Motion for Summary Judgment

**Dr. Desai's Answers to Medical Center's First Set of Interrogatories**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHARU DESAI,<br><br>    Plaintiff<br><br>v.<br><br>UMASS MEMORIAL MEDICAL CENTER, INC.; UMASS MEMORIAL MEDICAL GROUP; UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL, UMASS MEMORIAL MARLBOROUGH HOSPITAL, MAX ROSEN, M.D., DARREN BRENNAN, M.D., STEPHEN TOSI, M.D., And KARIN DILL, M.D.,<br><br>    Defendants | CIVIL ACTION NO.:<br>**4:19-CV-10520-DHH** |

### PLAINTIFF CHARU DESAI'S ANSWERS TO DEFENDANT UMASS MEMORIAL MEDICAL CENTER, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Charu Desai, M.D., ("Plaintiff" or "Dr. Desai"), hereby submits the following answers and objections to Defendant UMass Memorial Medical Center, Inc.'s ("Medical Center") First Set of Interrogatories.

The following responses are made without waiver of, and with preservation of (a) all applicable rights and privileges; (b) all objections as to competency, relevancy, materiality, privilege, and admissibility of each response and the documents referred to therein; (c) the right to object on any grounds at any time to any demand or request or further documents or other discovery proceeding involving or relating thereto; and (d) the right at any time to revise, supplement, amend or clarify any of the responses made herein, whether at the conclusion of the discovery or otherwise.

These answers are based on Plaintiff's present knowledge, information, and belief. Plaintiff reserves the right to supplement, amend or otherwise change these answers in the event that discovery reveals facts that would justify such supplementation, amendment or change. Each Interrogatory is responded to subject to the general objections set forth below.

Plaintiff answers Defendant UMass Memorial's First Set of Interrogatories as follows:

1

41. Robert D. Chiulli, M.D.
    New Hampshire (address unknown). Former Chief of Radiology at Worcester City Hospital: likely to have information concerning Dr. Desai's performance.

42. Daniel Berman, M.D.
    c/o Medical Center, 55 Lake Avenue North, Worcester, MA 01655, (508) 334-1000. Member of the Radiology Department: likely to have information concerning Dr. Desai's performance.

43. Andrew Chen, M.D.
    c/o University of Massachusetts Medical School, 55 N Lake Ave, Worcester, MA 01655. Assistant Professor of Neuroradiology at the Medical School: likely to have information concerning Dr. Desai's performance.

44. A. Alan Conlan, M.D.
    c/o University of Massachusetts Medical School, 55 N Lake Ave, Worcester, MA 01655. Former Professor and Chairman of Thoracic Surgery at Medical School: likely to have information concerning Dr. Desai's performance.

45. Members of the Medical Center's Department of Radiology not mentioned above. Members of Marlborough Hospital's Department of Radiology not mentioned above.

## INTERROGATORY NO. 3

State the name, web address, and user name for all Social Media websites that you currently belong to and/or belonged to any time from January 1, 2012, through the present date.

## ANSWER NO. 3

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably related to any claim or defense in this matter as it seeks information about Social Media accounts and/or websites that contain information unrelated to this proceeding. Subject to and without waiving the above objection, Dr. Desai does not currently belong to nor has she in the past belonged to any Social Media websites.

## INTERROGATORY NO. 4

Please identify all communications of any kind or nature that you have had with UMass Memorial or any person, except those protected by the attorney-client privilege, regarding your allegations that UMass Memorial, Dr. Rosen, Dr. Dill, Dr. Tosi, and/or Dr. Brennan discriminated against you, including with respect to compensation.

## ANSWER NO. 4

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and unrelated to the claims or defenses in this matter. This matter has been reported on by the local newspaper

7

and as a result, a number of unrelated third parties have become aware of this lawsuit and reached out to Dr. Desai about same. Communications Dr. Desai received from third-parties unrelated to this suit are not relevant to this proceeding. Subject to and without waiving the above objections, Dr. Desai answers that she engaged in the following relevant non-privileged communications:

1. In or about May 2016, Dr. Desai verbally complained to Dr. Rosen about his disparate allotment of academic days compared to her younger and/or non-disabled colleagues.

2. May 30, 2016, 12:16 PM Email from C. Desai to M. Rosen re: Meeting Response; the email speaks for itself; a copy of the communication has been produced. Dr. Desai also communicated verbally with Dr. Rosen during the meeting referenced in this email. Dr. Desai also communicated with Dr. Diana Desai regarding this email. See May 30, 2016 Email from D. Desai to C. Desai re: Meeting Response; the email speaks for itself; a copy of the communication has been produced.

3. In or around May 25, 2017, Dr. Desai again verbally complained to Dr. Rosen about the discrimination she suffered in the Radiology Department. See C. Desai notes of May 25, 2017 meeting with M. Rosen; a copy of this document has been produced.

4. September 21, 2017 2:12 PM Email from C. Desai to D. Brennan re: [sic]; the email speaks for itself; a copy of the communication has been produced. Dr. Desai also communicated verbally with Dr. Brennan in advance of sending this email regarding same. Dr. Desai also communicated with Dr. Diana Desai regarding this email. See September 21, 2017 Email from D. Desai to C. Desai re: Dr. Dill; the email speaks for itself; Defendants are in possession of same, but to the extent Defendants request it be produced, Plaintiff will do so.

5. September 21, 2017 1:46 PM email from C. Desai to D. Brennan re: Incident today on 9/21/2017; the email speaks for itself; a copy of the communication has been produced.

6. April 18, 2018, 2:08 PM Email from C. Desai to M. Rosen re: to follow-up from our meeting on Wednesday April 11; the email speaks for itself; a copy of the communication has been produced. Dr. Desai also communicated verbally with Dr. Rosen during the meeting referenced in this email.

7. March 28, 2018, 3:17 PM Email from S. Afonso to C. Desai re: For Charu; the email speaks for itself; a copy of the communication has been produced. In or around the same time, Dr. Desai also communicated verbally with Dr. Afonso regarding her termination and requested that Dr. Afonso write her a letter of recommendation

8. October 21, 2018, 8:54 AM Text Message from T. Lalani to C. Desai; the text message speaks for itself; a copy of the communication has been produced.

9. In or around March 2018, Dr. Desai verbally communicated with Dr. Lalani

regarding her termination and the discriminatory treatment she had been subjected to by Defendants.

10. November 2019 – January 2020 Text Messages from T. Lalani to D. Desai; the text messages speak for themselves; a copy of the communications has been produced.

11. Following notice of her termination in March 2018, Dr. Desai verbally communicated with Dr. Makris regarding same and the discriminatory treatment she had been subjected to by Defendants.

12. Following notice of her termination in March 2018, Dr. Desai verbally communicated with Dr. Karam regarding same and the discriminatory treatment she had been subjected to by Defendants.

13. Following notice of her termination in March 2018, Dr. Desai verbally communicated with Dr. Roychowdhury regarding same and the discriminatory treatment she had been subjected to by Defendants.

14. Verbal communications with Dr. Diana Desai.

See also documents produced by Plaintiff in response to Defendant UMass Memorial Medical Center Inc.'s First Request for Production of Documents.

**INTERROGATORY NO. 5**

Please identify all communications of any kind or nature that you have had with UMass Memorial or any person, except those protected by the attorney-client privilege, regarding your allegations that UMass Memorial, UMass Memorial, Dr. Rosen, Dr. Dill, Dr. Tosi, and/or Dr. Brennan defamed you or interfered with your business or contractual relations.

**ANSWER NO. 5**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and unrelated to the claims or defenses in this matter. This matter has been reported on by the local newspaper and as a result, a number of unrelated third parties have become aware of this lawsuit and reached out to Dr. Desai about same. Communications Dr. Desai received from third-parties unrelated to this suit are not relevant to this proceeding. Subject to and without waiving the above objections, Dr. Desai answers that she engaged in the following relevant non-privileged communications:

1. On or around March 14, 2018, Plaintiff verbally communicated with Dr. Steven Baccei, the Vice-Chair of Quality, Patient Safety, and Process Improvement for the Department of Radiology to inquire as to whether there were any issues with her readings. He stated that he was not aware of any.

9

4. April 17, 2018 3:58 PM Email from M. Rosen to C. Desai re: March 14th, 2018 Meeting; the document speaks for itself; a copy of this document has been produced.

5. April 18, 2018 5:12 PM Email from M. Rosen to C. Desai re: Meeting to Review QA data; the email speaks for itself; a copy of the communication has been produced.

6. March 9, 2018 Letter from M. Rosen and S. Tosi to C. Desai re: Notice of Termination of Employment

7. April 24, 2018 Meeting between Dr. Rosen and Dr. Desai, also attended by Dr. Sarwat Hussain. At this meeting, Dr. Rosen stated and projected on a screen false statements that Dr. Desai had performance issues and had committed major misreads of radiology films.

8. September – December 2017, Quality Assurance Review by D. Litmanovich and accompanying documents; the documents speak for themselves; Defendants have produced some documents related to this review. Plaintiff has requested further documents in Defendants' possession, custody, and control concerning this review.

9. Defendants' suspension of Dr. Desai's performance of duties and responsibilities, known to all in the radiology department and to numerous others throughout the hospital, constitutes defamation by deed. Defendants' termination of Dr. Desai, known to all in the radiology department and to numerous others throughout the hospital, also constitutes defamation by deed.

Dr. Desai expressly observes her right to supplement this answer as discovery is ongoing.

**INTERROGATORY NO. 9**

Please describe in detail every request for an accommodation related to a disability you may have that you made to UMass Memorial from January 1, 2000, through the end of your employment, and provide the date each request was made, identify the person to whom each request was made, identify all communications related to each request, and state whether each requested accommodation was granted.

**ANSWER NO. 9**

Dr. Desai refers to and incorporates in her answer the facts set forth in her Amended Complaint in this action, her Charges of Discrimination filed with the Massachusetts Commission Against Discrimination ("MCAD"), and Plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1). Dr. Desai further answers as follows:

In or about May 2016, Dr. Desai complained to Dr. Rosen about his disparate allotment of academic days compared to her younger and/or non-disabled colleagues. Dr. Desai requested that she be granted the same number of academic days as her younger and/or non-disabled colleagues as an accommodation for her heart condition. See May 13, 2016 3:15 PM Email from

M. Rosen to C. Desai re: Confirmation of our emeting [sic] today, produced in Plaintiff's Initial Disclosures.  Dr. Rosen refused to accommodate Dr. Desai with academic days, while, upon information and belief, he provided them to other younger attending physicians.

In or about 2017, Dr. Desai again verbally asked Dr. Rosen for twelve "academic days" per year as an accommodation for her heart condition.  Dr. Rosen again refused.  However, Dr. Rosen continued to allow younger physicians, including those newly hired with vastly less experience and who were not disabled (including Dr. Karin Dill), to designate one and half days per week (i.e., approximately 78 days per year) as academic/administrative days.

Also in or about 2017, Dr. Desai verbally asked Dr. Rosen for a workstation so that she could perform work at home on the weekend when she was on-call as an accommodation for her heart condition. Dr. Rosen again refused the request. However, Dr. Rosen allowed younger physicians and those without disabilities (including Dr. Dill) to work from home with a Medical Center provided personal workstation on both weekdays and/or weekends.

In or about May 2016, Dr. Desai again verbally asked to be accommodated for her condition by being assigned fewer days on-call in the Department of Radiology, he again refused. Instead, Dr. Rosen told her she could leave her current position and began working part time or as a locum tenens.

See also documents produced by Plaintiff in response to Defendant UMass Memorial Medical Center Inc.'s First Request for Production of Documents.

**INTERROGATORY NO. 10**

Please identify all sources of your earned or unearned income (including loans and monetary gifts) from January 1, 2017, through the present date. Include in the identification of each source: the name and address of the source, the date of each payment to you by the source, the amount of each payment, and the reason for each payment.

**ANSWER NO. 10**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome and as not reasonably related to any claim or defense in this matter.  Plaintiff's unearned income from sources other than her employment is not relevant to this proceeding.  Plaintiff further objects to the extent that any of the items listed below should not be treated as income for purposes of Plaintiff's damages in this matter.  Subject to and without waiving the above objections, Dr. Desai answers as follows:

1. Joint employment with Medical Center et al.
   55 Lake Avenue North, Worcester, MA 01655, (508) 334-1000.
   Beginning on March 1, 2017, and continuing through her termination, Dr. Desai was paid her annual salary of $340,000 in weekly installments from the Medical Center and bi-weekly installment from the Medical School.

13

Signed under the penalties of perjury, this 5th day of June, 2020.

/s/ Charu Desai
CHARU DESAI


AS TO OBJECTIONS:

CHARU DESAI
By her attorneys,


/s/ Patricia A. Washienko
PATRICIA A. WASHIENKO (BBO 641615)
pwashienko@fwlawboston.com
BRENDAN T. SWEENEY (BBO 703992)
bsweeney@fwlawboston.com
FREIBERGER & WASHIENKO, LLC
211 Congress Street, Suite 720
Boston, Massachusetts 02110
Telephone: 617-723-0008
Fax: 617-723-0009

Dated: June 5, 2020