UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br>      Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS,<br>MEMORIAL MEDICAL CENTER, INC.<br>UNIVERSITY OF MASSACHUSETTS<br>MEMORIAL MEDICAL GROUP,<br>UNIVERSITY OF MASSACHUSETTS<br>MEDICAL SCHOOL, UMASS<br>MEMORIAL HOSPITAL, MAX ROSEN,<br>M.D., DARREN BRENNAN, M.D.,<br>STEPHEN TOSI, M.D., KARIN DILL,<br>M.D.,<br>      Defendants. | Civil Action No. 4:19-cv-10520-TSH |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT BY DEFENDANT KARIN DILL, MD

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 56.1, Plaintiff Charu Desai ("Dr. Desai") hereby submits the following memorandum of law in opposition to the Motion for Summary Judgment by Defendant Karin Dill, MD ("Dr. Dill"). As set out more fully below, questions regarding Dr. Dill's intent and the motivation for her conduct – in aiding and abetting discrimination in violation of G.L. c 151B and for tortious interference – cannot be resolved on the papers; and Dr. Dill is not protected from a claim of defamation by the supervisory privilege when acting with malice, nor are her statements protected by the peer review privilege. Therefore, Dr. Desai requests this Honorable Court deny Defendant's motion for summary judgment.

I.    SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate when there is no genuine dispute of as to any of the material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

1

Mass. R. Civ. P. 56 (c). In determining whether there is a genuine dispute of material fact, the court must credit all evidence of the party opposing the motion and draw all reasonable inferences in her favor. *Azimi v. Jordan Meats, Inc.* 456 F.3rd 228, 241 (1st Cir. 2006); *Attorney General v. Bailey*, 386 Mass. 367, 371 (1982). The court must acknowledge and credit the nonmovant's factual assertions. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). Indeed, at the summary judgment stage, the court should disregard all evidence favorable to the moving party that the jury is not required to believe, even if it is uncontradicted. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

Assessment of witness credibility is the provenance of the jury at trial. *Reeves*, 530 U.S. at 150 (the court "may not make credibility determinations or weigh the evidence"); *Attorney General v. Bailey*, 386 Mass. 367, 370 (1982) ("The court does not pass upon the credibility of witnesses or the weight of the evidence [or] make [its] own decision of facts."). Summary judgment is thus disfavored where the defendants' motives and intent are at issue. *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 473 (1962); *Guinan v. Boston College*, 2006 U.S. Dist. LEXIS 75505, 10-11 (D. Mass. Sept. 29, 2006); *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 38 (2005).

There is rarely "smoking gun" direct evidence in employment discrimination matters. Thus, to evaluate claims based on circumstantial evidence, courts apply a three-stage burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990); *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016). Under that framework, a plaintiff must first establish a *prima facie* case; defendants must then articulate a legitimate, non-discriminatory reasons for the contested action. To prevail, plaintiff must at the third stage establish pretext (for state law claims) and pretext and

proof of discriminatory intent (for federal claims). *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 502 (2001) (permitting jury to infer discriminatory animus and causation from proof that an employer has advanced a false reason for the adverse employment decision); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir. 1994) (to prevail under federal law, plaintiff must muster proof that stated reason for adverse employment decision is not only a sham, but a sham intended to cover up the proscribed type of discrimination).

This "pretext plus" approach does not necessarily require the introduction of additional evidence, however. *Dichner v. Liberty Travel*, 141 F.3d 24, 30 (1st Cir. 1998). It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation: "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

II.  ARGUMENT

  A.  There is Significant Evidence that Dr. Dill Acted in Furtherance of Dr. Rosen's Discrimination Against Dr. Desai

An aiding and abetting claim under G.L. c. 151B, § 4(5) is "entirely derivative of the discrimination claim." *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 122, 731 N.E.2d 1075 (2000). Therefore, as an initial matter, to have a viable claim, Dr. Desai must allege the commission of an underlying act of discrimination under G. L. c. 151B (the "main claim") by the principal offender. *Lopez v. Commonwealth*, 463 Mass. 696, 713, 978 N.E.2d 67, 82 (2012). She has done so, alleging that the University of Massachusetts Memorial Medical Center ("Medical Center"), the University of Massachusetts Memorial Medical Group ("Medical

Group"), the University of Massachusetts Medical School (the Medical School"), Marlborough Hospital, Dr. Max Rosen, MD, and Dr. Stephen Tosi, MD, discriminated against her on the basis of age, gender and/or disability.

To establish a claim against Dr. Dill for aiding and abetting discrimination in violation of G.L. chapter 151B, §4(5), Dr. Desai must then "show (1) that the defendant committed a wholly individual and district wrong separate and distinct from the claim in main; (2) that the aider or abettor shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abettor knew of his or her supporting role in an enterprise designed to deprive the plaintiff of a right guaranteed him or her under G.L. c. 151B." *Saari v. Allegro Microsystems, LLC*, 436 F. Supp. 3d 457, 466 (D. Mass 2020) (quoting *Lopez v. Comm.*, 463 Mass. 696, 713 (2012)). Notwithstanding Dr. Dill's assertion to the contrary, Dr. Desai has done so here.

In 2016, Dr. Rosen, the Chair of the Department of Radiology, hired Dr. Dill (who is approximately twenty years younger than Dr. Desai) to fill the role of Chief of the Division of Thoracic Radiology. PSOF ¶ 58.[1] In doing so, Dr. Rosen had deviated from the Department's past practice, in which the most senior / experienced radiologist in the division – i.e., Dr. Desai – would have filled the role. Dr. Rosen then granted to Dr. Dill seventy-two (72) "Academic and/or Administrative Days" in which she would not be required to perform clinical work. PSOF ¶ 41. (In fact, Dr. Rosen granted to Dr. Dill more non-clinical days than allowed by the Academic and Administrative Time Policy. PSOF.) Due to Dr. Dill's frequent and disruptive physical absences from the Division, Dr. Desai bore heaviest clinical workload. PSOF ¶ 71.[2]

---

[1] Citations to "PSOF" are to Plaintiff's Statement of Material Facts in Dispute, filed contemporaneously herewith in support of her Opposition to Defendant's Motion for Summary Judgment.

[2] There is considerable – even direct – evidence of Dr. Rosen's impermissible age animus: he repeatedly continued to push Dr. Desai into taking a per diem role or going part time; he asks for special permission to hire another chest radiologist as he has been looking to hire someone for three years to replace Dr. Desai; he informs administrators that Dr. Desai's employment is planned to be "resolved" by September 2018, although Dr. Desai had no such plans.

On May 31, 2016, Dr. Desai expressed concerns to Dr. Rosen about Dr. Dill's management of the Division. Dr. Desai observed, specifically, that all attendings in the Division of Chest Radiology should adhere to a fixed work hour schedule, which will avoid the perception of disparate treatment; that there were several radiologists who use days that they are assigned to the clinical service to complete non-clinical (academic / administrative) responsibilities, which ultimately detracts from their ability to help complete the daily clinical workload, which in turn impacts optimal patient care; that she would not tolerate any inappropriate behavior or discriminatory treatment from any physician, ancillary staff, or trainee; and that all employees should to be subject to equal standards, which will help avoid intra-divisional conflicts. PSOF ¶ 62.

Evidence adduced in discovery suggests that Dr. Dill was aware (or was made aware) of Dr. Desai's concerns; certainly Dr. Dill appears to have retaliated against Dr. Desai for voicing concerns.  Dr. Dill's contemporaneous handwritten notes state, among other things, that she had received feedback that Dr. Desai had said "you aren't doing anything as Chief" and (about Dr. Desai): "it's me or her. I won't do my work with her constant manipulation and negativity and undermining." Exhibit ZZZZZ. (Dr. Dill cited, in particular, that Dr. Desai had informed Dr. Dill that the days Dr. Dill had offered to her for vacation didn't work. *Id*.) The evidence shows that Dr. Rosen squarely backed Dr. Dill.  When Dr. Dill and Dr. Desai exchanged words about signing out a resident and both complained, Dr. Rosen instructed the department administrators to run a report so he could determine how many cases Dr. Desai read that day. He did not do the same for Dr. Dill. PSOF ¶ 123.

The evidence similarly shows that Dr. Dill targeted Dr. Desai. According to data recorded

---

Another email shows him planning with the former Chair to encourage Dr. Desai to step aside on the grounds that Dr. Rosen had an obligation to think about hiring younger radiologists.  PSOF ¶ 179, Exhibit BBBB.

5

in Defendants' Quality Assurance (i.e., peer review) system for the approximately three year period that she was employed, Dr. Dill entered reviews for approximately 87 cases. Of those, eleven (11) were cases that Dr. Desai had initially interpreted. PSOF ¶ 97-98. (According to Dr. Rosen, there are approximately 90 radiologists in the Department. PSOF ¶¶ 232. Dr. Desai's cases accounted for 12.6% of Dr. Dill's entries.)

Dr. Dill argues that she addressed quality issues in the Division in the normal course of her duties. Notably, however, the evidence reveals that Dr. Dill also read her own initial interpretations when conducting quality assurance overreads and entering them into the peer review system. (The system was designed for a reviewer to review *another* radiologist's reads, not their *own* reads. Dr. Dill rated three of her own cases a very significant (Category 4) misread. PSOF ¶ 97. Dr. Dill then conducted a separate Peer Review of Dr. Desai's reads from July 1, 2016, to June 30, 2017. In that Peer Review, Dr. Dill falsely attributed to Dr. Desai her own significant misread. PSOF ¶ 102. Dr. Dill then funneled to Dr. Rosen complaints lodged by a clinician about the quality of Dr. Desai's reads. Although the evidence shows Dr. Dill approached other radiologists about concerns voiced about their reads, she did not ever approach Dr. Desai. (Nor did Dr. Rosen.) PSOF ¶¶ 77-78, 80-81, 212.

Dr. Rosen states that he relied in part on concerns voiced by Dr. Dill about Dr. Desai's performance, complaints she relayed to him from other clinicians about Dr. Desai's performance, and his own knowledge of the (incorrect) information in the peer review system as grounds to conduct a (deeply flawed) independent review of Dr. Desai's competence in furtherance of his ongoing plan to force Dr. Desai to step aside. He states that it was the conclusions of the independent review that led him to terminate Dr. Desai, however, and that Dr. Dill played no role in the decision to terminate Dr. Desai, PSOF ¶ 83. MCAD First and Second Position Statements,

attached as Exhibits MM and XX. Several emails evidence Dr. Dill's involvement:

    a. The results of Dr. Litmanovich's independent review were provided to Dr. Rosen on December 25, 2017.  Email from Rosen to Mowlood dated December 26, 2017, UMM00552, attached as Exhibit XX to Washienko Aff.

    b. . The PowerPoint presentation that Dr. Rosen presented regarding the conclusions of Dr. Litmanovich's review was dated January 26, 2017. UMM 00699, attached at Exhibit XX to Washienko Aff.  (The year, 2017, is an apparent typographical error and should be 2018.)

    c. Defendants state, under oath, that the independent review and presentation to Dr. Desai was not completed until March 2018. Defendants' Answer to Amended Complaint ¶ 65, attached at Exhibit XX to Washienko Aff.

    d. On Friday, February 16, 2018, Dr. Dill sent an email to Dr. Rosen the subject line of which is "confidential review" and which had attached an excel file titled "Dr. Desai's Cases 29 Jan2018 read-dill review.xlsx." UMM 04418 – 04420, attached at Exhibit XX to Washienko Aff.  In that email Dr. Dill wrote about her review of Dr. Desai's cases: "What I have so far is concerning. There are two signif (sic) problems caught so far upon my limited review." Id.

    e. In response, Dr. Rosen wrote, "OK- can you review the remainder on the list and then send me the entire summary?" When Dr. Dill told him she was not able to do so immediately, Dr. Rosen asked her to review by early the next week. UMM 04420, attached at Exhibit XX to Washienko Aff.

    f. Dr. Dill also knew about Dr. Desai's termination before it occurred.  UMM 04659, attached at Exhibit XX to Washienko Aff.

Against this evidence, Dr. Dill's argument Dr. Desai can proffer no evidence that she (Dill) had an intent to discriminate falters.

Contrary to Defendant's implication, the fact that Dr. Desai testified that Dr. Dill made untrue statements about other physicians too, and not just her, does not negate the possibility that animus motivated Dr. Dill's actions toward Dr. Desai. Moreover, deposition testimony with respect to the plaintiff's understanding of her evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014).

### B. Tortious Interference

There is considerable evidence that Dr. Dill acted with malice. Defendant's assertion that, notwithstanding this evidence of malice, Dr. Desai's claim against her for tortious interference is barred by the conditional supervisory privilege is incorrect.[3] A supervisor's conditional privilege may be lost if the supervisor's actions are motivated by malice or unfair prejudice. *See LeGoff v. Trustees of Boston University*, 23 F. Supp. 2d 120, 129 (D. Mass. 1998), citing *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 635 (1st Cir. 1996); *Comey v. Hill*, 387 Mass. 11, 20 (Mass. 1982). Here, where there is direct evidence of malice, discriminatory animus and motivation, summary judgment is inappropriate.

### C. Defamation

Contrary to Defendant's argument, Dr. Desai's claim that Dr. Dill defamed her is not limited by Dr. Desai's identification of two statements Dr. Dill made. The evidence is controlling.

As the court is aware, conduct may constitute a statement for purposes of a defamation

---

[3] To the extent the Court does not find that Marlborough Hospital (or the Medical School) exerted control over the manner and means of Dr. Desai's performance, and therefore concludes Marlborough Hospital (and/or the Medical School) was not Dr. Desai's employer, Dr. Dill's actions interfered with Dr. Desai's advantageous relationship with Marlborough Hospital (and/or the Medical School).

8

claim. *Krolikowski v. University of Mass. Memorial Med. Ctr.*, 2002 U.S. Dist. LEXIS 8984 (D. Mass. May 16, 2002), citing *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 520 (1st Cir. 1990) (construing Massachusetts law and holding that for purposes of defamation claim, "a communication [is] defined as conduct that brings an idea to the perception of others"). As set out above, there is considerable evidence that Dr. Dill defamed Dr. Desai, including by disproportionately targeting Dr. Desai's cases when entering them in the QA / peer review system and falsely attributing to Dr. Desai cases in fact read by Dr. Dill.

The assertion that a supervisory privilege defeats Dr. Desai's defamation claim is erroneous. This conditional privilege may be lost upon a showing that the supervisor was motivated by malice, unfair prejudice, or personal animosity. *Catrone v. Thoroughbred Racing Assocs. of N. Am., Inc.*, 929 F.2d 881, 889 (1st Cir. 1991). *Foley v. Polaroid Corp.*, 400 Mass. 82, 91 (1987). As set forth above and at length in Dr. Desai's Statement of Facts, there is considerable evidence of unlawful animus. It is blackletter law that "summary judgment is inappropriate if a jury reasonably could [find] that [the employer] demonstrated actual malice by clear and convincing evidence," *Catrone*, 929 F.2d at 889.

In defense of Dr. Desai's defamation claim, Dr. Dill also asserts that her defamatory statements and conduct were opinions expressed in the peer review context and therefore are privileged pursuant to Massachusetts' medical peer review privilege, G.L. c. 111, §§ 203, 204. The law is to the contrary. In a case brought in federal court and arising under federal law, state privilege rules do not control. Rather, the federal law of privilege applies instead. *See Krolikowski v. University of Mass. Memorial Med. Ctr.*, 2002 U.S. Dist. LEXIS 8984 (D. Mass. May 16, 2002). Furthermore, the determination of that federal law of privilege with respect to federal claims controls discovery for the entire action, even if the complaint includes pendent state

claims. *See Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226-27 (D. Mass 1997). The determination is essentially one of weighing the competing interests: the court "balanc[es] the public's need for the full development of relevant facts in federal litigation against the countervailing demand for confidentiality in order to achieve the objectives underlying the privilege in issue." 2 J. Weinstein, M. Burger, J. McLaughlin, Weinstein's Evidence ¶ 501[03], at 39-41. Here, the balance tips in favor of disclosure. In numerous cases of employment discrimination challenged under federal law, the courts have held that recognition of the privilege would thwart the purpose of this important remedial legislation. Thus, these courts have determined that the medical peer review privilege does not promote sufficiently important interests to outweigh the need for probative evidence. *See, e.g., Krolikowski v. University of Mass. Memorial Med. Ctr.*, 2002 U.S. Dist. LEXIS 8984 (D. Mass. May 16, 2002); *Johnson v. Nyack Hospital*, 169 F.R.D. 550 (S.D.N.Y. 1996); *Swarthmore Radiation Oncology, Inc. v. Lapes*, 1993 U.S. Dist. LEXIS 17035 (E.D. Pa. 1993); *LeMasters v. Christ Hospital*, 791 F. Supp. 188, 191 (S.D. Ohio 1991); *Doe v. St. Joseph's Hospital*, 113 F.R.D. 677 (N.D. Ind. 1987); *Dorsten v. Lapeer County General Hospital*, 88 F.R.D. 583, 586 (E.D. Mich. 1980) (all holding that the purposes advanced by a state medical peer review privilege do not outweigh the need for full development of facts in federal litigation).

III. <u>CONCLUSION</u>

For the reasons set forth above, Dr. Dill's Motion for Summary Judgment should be denied.

Respectfully submitted,

CHARU DESAI
By Her Attorney,


/s/ Patricia Washienko
_____
Patricia A. Washienko, BBO# 641615
pwashienko@fwlawboston.com
Freiberger & Washienko LLC
211 Congress St, Suite 720
Boston, MA 02110
Tel: (617) 723-0008

Dated: February 11, 2022


CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, was served by electronic mail only to counsel for the above-named Defendants:

Robert L. Kilroy, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
(508) 860-1477
rkilroy@mirickoconnell.com

Mark Johnson, Esq.
University of Massachusetts Office of the General Counsel
One Beacon Street, 31st Floor
Boston, MA 02108
(617) 287-4064
MAJohnson@umassp.edu


/s/ Patricia Washienko
_____
Patricia A. Washienko

11