UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
CHARU DESAI,                               )
              Plaintiff,                 )
                                    )
v.                                          )        Civil Action No. 4:19-cv-10520-TSH
                                      )
UNIVERSITY OF MASSACHUSETTS,               )
MEMORIAL MEDICAL CENTER, INC.              )
UNIVERSITY OF MASSACHUSETTS                 )
MEMORIAL MEDICAL GROUP,                     )
UNIVERSITY OF MASSACHUSETTS                 )
MEDICAL SCHOOL, UMASS                       )
MEMORIAL HOSPITAL, MAX ROSEN,              )
M.D., DARREN BRENNAN, M.D.,                 )
STEPHEN TOSI, M.D., KARIN DILL,             )
M.D.,                                        )
              Defendants.              )
_____)

## PLAINTIFF CHARU DESAI, MD's RESPONSE TO DEFENDANT KAREN DILL, MD's STATEMENT OF MATERIAL FACTS

        Pursuant to Fed. R. Civ. P. 56 and D. Mass. Local Rule 56.1, Plaintiff Charu Desai, MD ("Plaintiff" or "Dr. Desai"), responds to the Statement of Undisputed Material Facts submitted by Defendant Karen Dill, MD in support of her motion for summary judgment as to all claims against her.

        1.      Karin Dill, MD, was hired by UMass Memorial Medical Group, Inc. (the "Medical Group"), on February 29, 2016, as a radiologist. <u>See</u> Affidavit of Karin Dill ("Dill Aff.") at ¶ 2, attached as **Exhibit A** to Affidavit of Reid Wakefield, Esq. ("Wakefield Aff.").

        **Response:** Denied to the extent this implies that Dr. Dill was not also employed by the Medical Center, the University of Massachusetts Chan Medical School (the "Medical School") and/or Marlborough Hospita1. Otherwise, admitted.

2.      Dr. Dill was employed by the Medical Group pursuant to an Employment

Agreement, under which she was dually-employed with the University of Massachusetts Medical

School. Ex. A, Dill Aff. at ¶ 3.

**Response:** Denied to the extent this implies that Dr. Dill was not also employed by the

Medical Center, the University of Massachusetts Chan Medical School (the "Medical

School") and/or Marlborough Hospita1. Otherwise, admitted.

3.      Throughout the duration of her employment, Dr. Dill served as the Division Chief

of the Thoracic Division (a/k/a Chest Division). Ex. A, Dill Aff. at ¶ 4.

**Response: Admitted.**

4.      At no time was Dr. Dill ever employed by UMass Memorial Medical Center, Inc.,

or Marlborough Hospital. Ex. A, Dill Aff. at ¶ 5.

**Response:** Disputed. The Medical Center and/or Marlborough Hospital exercised control

over the manner and means by which Dr. Dill performed her job. The Medical Center

appointed Dr. Dill to its medical staff, granted to her clinical privileges, and retained the

right to withdraw them. Her clinical privileges included the use of the Medical Center's

facilities and support staff. The Medical Center's Radiology Department granted to her

the use of a personal workstation. Dr. Dill was subject to medical staff rules and by-laws,

required participate in staff meetings, and participate in the Medical Center's quality

assurance program. Dr. Rosen, a member of the Medical Center's administration, was her

supervisor. In 2017, Dr. Rosen recommended that Dr. Dill be granted privileges; as he

did with Dr. Desai, he did so on a document titled UMass Memorial Medical Center

Review and Action Form. In addition, Dr. Tosi was directly involved in reappointment / credentialing / approving clinical privileges, in his roles as both Credentials Committee Chair and Chief Medical Officer of the Medical Center.  PSOF ¶ 255, Exhibit EEEE.

5.     Plaintiff was a member of the Thoracic Division and specialized in chest imaging. As Division Chief, Dr. Dill provided supervision and oversight over Plaintiff in her role as a chest radiologist. Ex. A, Dill Aff. at ¶ 6.

>    **Response:**  Admitted that Dr. Desai was a member of the Thoracic Division and specialized in chest imaging. Admitted that it was the responsibility of the Division Chief to provide supervision and oversight over Dr. Desai and the Division at large. **Denied** that Dr. Dill provided the supervision and oversight that she was obligated to in reference to both supervision of Dr. Desai as well as the Thoracic Division at large. PSOF ¶¶ 69, 265.

6.     Dr. Dill did not participate in the decision to terminate Plaintiff's employment. Ex. A, Dill Aff. at ¶ 7.

>    **Response: Denied.**  Dr. Rosen testified that he made the decision to conduct in the independent review in part based on Dr. Dill's concerns, PSOF ¶ 83, and Dr. Dill conducted a review of Dr. Desai's cases, at Dr. Rosen's request. See email thread dated February 16, 2018, between Dr. Rosen and Dr. Dill subject: Confidential Review, which occurred after Dr. Diana Litmanovich provided to Dr. Rosen the results of her independent review, which Dr. Rosen stated was the sole basis for his decision to terminate the employment of Dr. Desai. UMM-04420. See also email thread between Dr.

3

Rosen and Dr. Dill on day of Dr. Desai's termination, March 14, 2018. PSOF ¶¶254(f);

Exhibit X; Exhibit MMM.

7.      Dr. Dill was not informed and did not know that Plaintiff's employment would be

terminated until after Plaintiff was given notice of her termination. Ex. A, Dill Aff. at ¶ 8.

**Response:** Disputed.  See email thread between Dr. Rosen and Dr. Dill on day of

Plaintiff's termination, March 14, 2018. Exhibit X.

8.      Dr. Dill did not participate in the independent review of Plaintiff's radiological

reads conducted by Diana Litmanovich, MD Ex. A, Dill Aff. at ¶ 9.

**Response:**  This statement of fact is supported only by the Affidavit of Dr. Dill, whose

testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson*

*Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).

**Responding further**:  Plaintiff is without sufficient information or knowledge to be able

to determine the extent of Dr. Dill's participation in the review of Plaintiff's radiological

reads conducted by Dr. Litmanovich.  Dr. Rosen testified that he made the decision to

conduct in the independent review in part based on Dr. Dill's concerns, however, and Dr.

Dill conducted a separate review of Dr. Desai's cases, at Dr. Rosen's request, in January

2018, PSOF ¶ 254(d), after Dr. Rosen had already received of results of Dr.

Litmanovich's independent review of Plaintiff's CT scans PSOF ¶ 254(a) & (b), which

he claims was the sole basis for his decision to terminate Plaintiff's employment. PSOF ¶

254.

**Responding further:** According to data recorded in the QA system, during the approximately three years Dr. Dill worked at the Medical Center, she entered information in the QA system indicating disagreement with the radiologist's initial read for 31 radiologists (including herself; UMM 03687), in 79 instances (including three of her own instances of a Category 4 misread, UMM 03687). Rosen Affidavit ¶ 47.  PSOF ¶ 97.

9.      Dr. Dill did not know that an independent review was conducted until after Plaintiff was given notice of her termination. Ex. A, Dill Aff. at ¶ 10.

**Response:**  This statement of fact is supported only by the Affidavit of Dr. Dill, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).

**Responding further**: Disputed as to the timing of Dr. Dill's knowledge. Dr. Rosen testified that he made the decision to conduct in the independent review in part based on Dr. Dill's concerns and Dr. Dill conducted an additional, separate review of Dr. Desai's cases, at Dr. Rosen's request, in January 2018, PSOF ¶ 254,  after Dr. Rosen had already received of results of Dr. Litmanovich's independent review of Plaintiff's CT scans, PSOF ¶ 254, which he claims was the sole basis for his decision to terminate Plaintiff's employment.  PSOF ¶ 254.

10.      Dr. Dill does not have knowledge of the results of the independent review, but only became aware after the fact that the findings contributed to the decision to terminate Plaintiff. Ex. A, Dill Aff. at ¶ 11.

**Response:**  This statement of fact is supported only by the Affidavit of Dr. Dill, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

**Responding further**: Disputed. Dr. Rosen testified that he made the decision to conduct in the independent review in part based on Dr. Dill's concerns and Dr. Dill conducted a separate review of Dr. Desai's cases, at Dr. Rosen's request, in January 2018, UMM 04420, after Dr. Rosen had already received of results of Dr. Litmanovich's independent review of Plaintiff's CT scans, which he claims was the sole basis for his decision to terminate Plaintiff's employment.  PSOF ¶ 254.


11.     Dr. Dill has never seen the results of the independent review. Ex. A, Dill Aff. at ¶ 12.

**Response:**  Plaintiff is without sufficient information or knowledge to be able to admit or deny this statement of fact.


12.     Dr. Dill did not participate in or make any decisions regarding Plaintiff's academic time, exemption from call, or denial of a home workstation. Ex. A, Dill Aff. at ¶ 13.

**Response:** This statement of fact is supported only by the Affidavit of Dr. Dill, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

**Responding further**: Disputed. Dr. Dill was the Division Chief at the time that Plaintiff made many requests for academic time, exemption from call, and a home workstation. According to Defendants, the Division Chiefs are responsible for the effective daily

operational management of their division, financial stability, long term strategic planning,

faculty development, and service for patients and referring clinicians. Divisions Chiefs

are responsible for the business and operational functions of their divisions, and include

responsibilities for clinical operations, financial sustainability, customer service, quality

assurance and improvement, faculty development, recruitment and retention,

research/scholarship, innovation, resident/fellow training, medical student education, and

other division-specific functions. PSOF ¶ 59.


13.      Dr. Dill did not participate in evaluating or making any decisions regarding any

accommodation for a disability Plaintiff may have had. Ex. A, Dill Aff. at ¶ 14.

**Response:** This statement of fact is supported only by the Affidavit of Dr. Dill, whose

testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson*

*Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).

**Responding further**: Disputed. Dr. Dill was the Division Chief at the time that Plaintiff

made many requests for a home workstation, academic days, and to be relieved of call.

PSOF ¶ 59.


14.      Plaintiff never made a request for accommodation for her claimed disability to

Dr. Dill. Ex. A, Dill Aff. at ¶ 15.

**Response**: Denied as to any implication that Plaintiff is not a qualified disabled

individual who was not entitled to a reasonable accommodation; denied also to the extent

this implies that Dr. Dill was not aware of Dr. Desai's heart condition, spells and fatigue,

as it was well known throughout the Department, Desai Aff., Exhibit A; Deposition of

Abhijit Roychowdhury, MD, at 25:9-26:11, at Exhibit LL; denied to the extent this
implies that Dr. Desai did not request to be exempt from call or that she did not request a
workstation to work from home when she was scheduled for call; denied also that Dr.
Dill did not know or should not reasonably have known Dr. Desai needed an
accommodation.

15.     Dr. Dill became aware at one point that Plaintiff had been approved for
intermittent leave under the Family and Medical Leave Act, but she did not participate in
evaluating or approving such leave requests. Ex. A, Dill Aff. at ¶ 16.

**Response:** Plaintiff is without sufficient information or knowledge to be able to
determine the extent of Dr. Dill's awareness, participation in, evaluation of, or approval
of Plaintiff's requests for intermittent leave under the Family and Medical Leave Act.

16.     Dr. Dill did not make or participate in any decision to limit Plaintiff's privileges,
including the restriction on Plaintiff's reading of CT studies. Ex. A, Dill Aff. at ¶ 17.

**Response:**   Denied. Dr. Dill entered false and misleading information about Plaintiff's
reads into the Department of Radiology's Quality Assurance database, misattributing a
case as significant misread of Plaintiff, when in fact, it was her own misread.  (According
to data recorded in the QA system, during the approximately three years Dr. Dill worked
at the Medical Center, she entered information in the QA system indicating disagreement
with the radiologist's initial read for 31 radiologists (including herself; UMM 03687), in
79 instances (including three of her own instances of a Category 4 misread, UMM 03687)
– eleven of which were Plaintiff's. Rosen Affidavit ¶ 47.)   PSOF ¶¶ 97, 102.

**Responding further:** According to data recorded in the QA system, during the approximately three years Dr. Dill worked at the Medical Center, she entered information in the QA system indicating disagreement with the radiologist's initial read for 31 radiologists (including herself; UMM 03687), in 79 instances (including three of her own instances of a Category 4 misread, UMM 03687). Rosen Affidavit ¶ 47.  PSOF ¶¶ 97, 102.

In addition, Dr. Dill was actively involved (with Dr. Rosen) in conducting a separate, distinct, confidential and targeted review of Plaintiff's reads in January of 2018, after Dr. Rosen had already received of results of Dr. Litmanovich's independent review of Plaintiff's CT scans, which Dr. Rosen claims was the sole basis for his decision to terminate Plaintiff's employment. PSOF ¶ 254(d); Rosen Aff. at ¶ 65, Exhibit C.  Dr. Dill was also aware that Plaintiff's employment would be terminated prior to the meeting that took place at noon on March 14, 2018 at which Plaintiff was informed of her termination. See email thread between Dr. Rosen and Dr. Dill on day of Plaintiff's termination, March 14, 2018. PSOF ¶ 254. Dr. Dill admits that she was aware that an independent review of Plaintiff's work occurred and that the findings contributed to the decision to terminate Plaintiff's employment. Dill Aff. at ¶ 11. Furthermore, Dr. Rosen admits that he relied on Dr. Dill's quality concerns as well as his knowledge of Plaintiff's errors in the QA system when deciding to conduct an independent review of Plaintiff's work quality, for which he hired Dr. Diana Litmanovich. PSOF ¶ 83.

17.     Dr. Dill did not perform a targeted review of the quality of Plaintiff's CT reads at any time. Ex. A, Dill Aff. at ¶ 18.

**Response:** Denied. Dr. Dill did perform, at Dr. Rosen's request, a targeted review of Plaintiff's radiological reads on at least one occasion, in January of 2018, following the release of the results of Dr. Diana Litmanovich's independent review. UMM-04420.

18.     As the Division Chief, Dr. Dill was responsible for the quality of the Chest Division. See Deposition Transcript of Max Rosen, MD ("Rosen Dep."), at 54:18-55:1; 88:10-12, attached as **Exhibit B** to Wakefield Aff.

**Response:** Admitted.

19.     The Radiology Department has a quality assurance system designed to improve the quality of radiology services and to protect patient safety, as a part of its peer-review privileged program. Ex. A, Dill Aff. at ¶ 19.

**Response:** Admitted.

20.     During Dr. Dill's employment, the quality assurance system was based, in part, on a peer review system, where other radiologists within the Department would review each other's reads. Ex. A, Dill Aff. at ¶ 20.

**Response:** Admitted.

21.     In this system, all radiologists in the Department were asked to enter information into the quality assurance system in two circumstances: (1) through an automated process that

requests that a certain number of cases be double-read periodically by each radiologist on staff;
and (2) when a radiologist is made aware of a quality issue about an interpretation, the
radiologist was obligated to enter that information into the peer review privileged database.
Ex. A, Dill Aff. at ¶ 21; Ex. B, Rosen Dep. at 224:8-225:6.

     **Response:** Admitted.


22.     When radiologists reviewed the studies, they would input a numerical score as to
their review, with scores denoting the following: a "1" indicated the reviewer concurred with the
reviewee's radiological interpretation; a "2" indicated the reviewer identified a discrepancy in
interpretation/not ordinarily expected to be made, but which was denoted as an "understandable
miss;" a "3" indicated the reviewer identified a discrepancy in the reviewee's interpretation and
that the discrepancy should have been caught by the radiologist "most of the time;" and a "4"
indicated the reviewer noted a discrepancy in interpretation that represented a "misinterpretation
of findings" and that should be identified "almost every time." See Affidavit of Max Rosen, MD,
M.P.H. ("Rosen Aff.") at ¶ 43, attached as **Exhibit C** to Wakefield Aff.

     **Response:** Admitted.


23.     At their annual faculty reviews, Dr. Rosen provided staff members with
information from the quality assurance database regarding peer review reads labelled with scores
of either "3" or "4." Dr. Rosen would advise the radiology staff members of these entries and ask
the staff member to review the cases if they had not already done so, as a part of the quality
improvement process. Ex. B, Rosen Dep. at 169:19-171:10; Ex. C, Rosen Aff. at ¶ 44.

     **Response:** Admitted.

24.     Plaintiff was provided with such a summary from the quality assurance system during her 2016-2017 annual faculty review, which was conducted by Dr. Rosen. Ex. B, Rosen Dep. at 169:19-171:10; Ex. C, Rosen Aff. at ¶ 45; see Peer Review Summary Document (the "Peer Review Summary"), attached as **Exhibit D** to Wakefield Aff.

> **Response:** Admitted that Dr. Rosen gave to Dr. Desai a summary from the quality assurance system during her 2016-2017 annual faculty review.

25.     Plaintiff speculated during testimony she believes that Dr. Dill produced the Peer Review Summary, and Plaintiff admitted she has "no idea" how she got it, and believes she found it when cleaning her office. See Deposition Transcript for Charu Desai, MD ("Desai Dep."), at 322:3-323:2; 325:17-24, attached as **Exhibit E** to Wakefield Aff.

> **Response:** Admitted that Dr. Desai testified that she believes Dr. Dill produced the Peer Review Summary (CD00049). Admitted that Dr. Desai testified she had no idea how she got it and believed she found it when cleaning her office. Deposition testimony with respect to the plaintiff's understanding of her evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014).
>
> **Responding further**: Upon further review of the documents Defendants produced in discovery, Plaintiff has determined that Dr. Dill was responsible for the content produced in the Peer Review Summary, PSOF ¶ 100, which Dr. Rosen admits he distributed to Plaintiff at her 2016-2017 annual faculty review. PSOF ¶¶ 90, 91.

26.     Plaintiff does not know whether the Peer Review Summary or the information within is related to discrimination. Ex. E, Desai Dep. at 325:17-24.

**Response**:  Admitted that, as of the date of her deposition, Plaintiff did not know and was unable to offer an opinion as to whether the Peer Review Summary or the information within was related to discrimination. Deposition testimony with respect to the plaintiff's understanding of her evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014) ("[Defendant] claimed that [Plaintiff] admitted she had no information to support her claim that [Defendant] retaliated against her for requesting FMLA leave. Her deposition testimony made clear, however, that she was talking about the basis for her subjective belief that she was being retaliated against, not whether she had introduced evidence of retaliation in her lawsuit").

**Responding further**: Denied as to the implication that Plaintiff was not discriminated against. Further review of the information produced by Defendants in discovery evidences that in the quality assurance system, Dr. Dill attributed to Plaintiff one of her own cases, which upon review she assigned as a Category 3 or 4 misread.  PSOF ¶ 97. It is unclear to Plaintiff how many more mischaracterizations there may have been of her work outside of the six cases produced in the Peer Review Summary distributed to Plaintiff at the 2016-2017 Annual Faculty Review.  This information calls into question the merit of any entry of Dr. Dill's in the peer review system, or the merit associated with any of her criticisms regarding the quality of Dr. Desai's (or any radiologist's) work.

**Responding further**: After Plaintiff's deposition, she was made aware, by her expert witness radiologist Dr. James Gruden, that others of Dr. Dill's reads had errors, see Gruden Expert Report, Exhibit NNN, further calling into question the merit of any entry of Dr. Dill's in the peer review system.

27.     Plaintiff believes that information contained in the Peer Review Summary is not true. She believes that Dr. Dill similarly said things that were not true to put people down and it was not just with her. Ex. E, Desai Dep. at 248:5-249:10; 422:4-13.

**Response: Admitted.**

28.     Dr. Dill did not produce or generate the Peer Review Summary, nor did she conduct a targeted review to produce the Peer Review Summary. In fact, Dr. Dill never possessed a copy of the Peer Review Summary. Ex. A, Dill Aff. at ¶ 22.

> **Response**: Admitted to the extent that Dr. Dill did not generate the Peer Review Summary that was provided to Plaintiff at her 2016-2017 Faculty Annual Performance Review.  Dr. Dill conducted a *separate* confidential and targeted review of Plaintiff in 2018 (see above). Plaintiff is without sufficient information or knowledge to determine whether Dr. Dill ever possessed a copy of the Peer Review Summary.

29.     Dr. Dill did not give the Peer Review Summary to Plaintiff or to any other person. Ex. E, Desai Dep. at 367:9-23; 427:2-5.

> **Response:** Plaintiff is without sufficient information or knowledge to be able to verify whether Dr. Dill distributed the Peer Review Summary any other person.  Dr. Desai admits that Dr. Dill did not provide the Peer Review Summary directly to her.

30.     Certain studies included in the Peer Review Summary had been reviewed by Dr. Dill on an individual case basis in the normal course of Dr. Dill's duties as a part of the

Department's quality assurance process and were identified as errors in her opinion. Ex. A, Dill Aff. at ¶¶ 23-25.

> **Response:** Admitted that cases in the Peer Review Summary were identified as errors in Dr. Dill's opinion. Denied that Dr. Dill was using the quality assurance process/system in the manner for which it was intended as there is evidence that she misattributed to Plaintiff errors that were in her own cases, with the effect of contributing to Plaintiff's termination. PSOF ¶¶ 97, 102.

31.     In the course of her employment, Dr. Dill entered information in the quality assurance system indicating disagreement with the radiologist's initial read for 31 radiologists, in 79 instances. Ex. C, Rosen Aff, ¶ 47; Ex. A, Dill Aff. at ¶ 26.

> **Response:** Admitted.

32.     Dr. Dill did not enter information about Plaintiff's reads in the peer review system, including with respect to the cases identified in the Peer Review Summary, for any reason other than for quality improvement within the Department in accordance with the peer review process. Ex. A, Dill Aff. at ¶ 27.

> **Response:** This statement of fact is supported only by the Affidavit of Dr. Dill, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).

> **Responding further:** Denied that Dr. Dill was using the quality assurance process/system in the manner for which it was intended as there is evidence that she

misattributed to Plaintiff errors that were in her own cases, with the effect of contributing

to Plaintiff's termination PSOF ¶¶ 97, 102.

33.     All information that Dr. Dill entered in the peer review system regarding reads

conducted by Plaintiff was done in good faith and in keeping with her job duties and

responsibilities as a radiologist in the Department and as Thoracic Division Chief. Ex. A, Dill

Aff. at ¶ 28.

> **Response**: This statement of fact is supported only by the Affidavit of Dr. Dill, whose
>
> testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson*
>
> *Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).
>
> **Responding further**: Denied that Dr. Dill was using the quality assurance
>
> process/system in good faith and the manner for which it was intended as there is
>
> evidence that her treatment of Plaintiff worsened after Plaintiff expressed concern to Dr.
>
> Rosen about discriminatory treatment in the Division and evidence that she misattributed
>
> to Plaintiff errors that were in her own cases, with the effect of contributing to Plaintiff's
>
> termination. PSOF ¶¶ 97, 102.

34.     Dr. Dill informed Dr. Rosen that she had received complaints about Plaintiff's

reads and that she had received requests to re-review Plaintiff's reads. Ex. B, Rosen Dep.

at 53:22-55:1; 153:14-20; 232:9-16.

> **Response:** Admitted that Dr. Dill informed Dr. Rosen that she had received complaints
>
> about Dr. Desai's reads and requests to re-review Dr. Desai's reads. **Denied** as to the
>
> validity of the information that Dr. Dill presented to Dr. Rosen and as to whether the

16

alleged complaints and requests to re-review Dr. Desai's reads were in fact complaints.
Also, denied as to the implication that requests for re-reviews were uncommon when
Defendants admit it is common practice to ask for a re-review of a case, whether there is
a suspect error or not.  PSOF ¶ 75.

35.     Based on information received from attending physicians as well as on her own
observations, Dr. Dill had concerns with Plaintiff's quality of reads of chest CT images. Ex. A,
Dill Aff. at ¶ 29.

**Response:** Denied as to the implication that Dr. Dill's concerns were true "concerns."
There is evidence that Dr. Dill's treatment of Plaintiff worsened after Plaintiff expressed
concern to Dr. Rosen about discriminatory treatment in the Division and evidence that
she misattributed to Plaintiff errors that were in her own cases, with the effect of
contributing to Plaintiff's termination. PSOF ¶¶ 97, 102.

36.     Dr. Dill never considered Plaintiff's sex, age, or disability in any decisions she
made with respect to Plaintiff, including in entering information in the peer review system.
Ex. A, Dill Aff. at ¶ 30.

**Response:**  Disputed. There is evidence that Dr. Dill treated Plaintiff differently than she
treated Plaintiff's younger and/or male and/or non-disabled colleagues in her demands
regarding Plaintiff's provision of clinical work, as well as the provision to Plaintiff of a
home workstation. PSOF ¶ 71. There is also evidence that Dr. Dill's treatment of Plaintiff
worsened after Plaintiff expressed concern to Dr. Rosen about discriminatory treatment in
the Division and evidence that she misattributed to Plaintiff errors that were in her own

17

cases, with the effect of contributing to Plaintiff's termination. PSOF ¶¶ 97, 102. See Responses No. 32 and No. 34, above.

37.     Dr. Dill never interfered with Plaintiff's ability to take time off or to take a break for a medical reason, or any other reason. Ex. E, Desai Dep. at 154:22-155:3.

**Response:** Deposition testimony with respect to the plaintiff's understanding of her evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014).

**Responding further**: Disputed that Dr. Dill did not interfere with Plaintiff's ability to take time off or a break for a medical reason, or any other reason. Dr. Dill was responsible for scheduling, including as to call and vacation.  PSOF ¶ 59.

38.     Dr. Dill never made any statements, verbal or written, about Plaintiff that she knew to be false or suspected may be false. Ex. A, Dill Aff. at ¶ 31.

**Response:** This statement of fact is supported only by the Affidavit of Dr. Dill, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).

**Responding further:** Disputed.  See Responses No. 32 and 34, above.

39.     To the extent Dr. Dill ever communicated with others within the department about the restriction of Plaintiff's ability to read CT studies, all such communications were made for the limited purpose of making staffing decisions in the normal course of Dr. Dill's duties. Ex. A., Dill Aff. at ¶ 32.

**Response**: This statement of fact is supported only by the Affidavit of Dr. Dill, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).

40.     On September 21, 2017, Dr. Dill and Plaintiff had a disagreement and personal exchange at work, in which Plaintiff accused Dr. Dill of being rude to her. Ex. E, Desai Dep. at 220:6-19.

**Response:** Admitted.

41.     Following the incident, Dr. Dill sent an E-mail documenting her concerns to Department Chair Max Rosen, MD, and Vice Chair Darren Brennan, MD E-mail dated September 21, 2017, from K. Dill to M. Rosen and D. Brennan, attached as **Exhibit F** to Wakefield Aff.

**Response:** Admitted.

42.     Dr. Brennan asked Plaintiff to provide a statement with her version of events of the incident. See E-mail dated September 21, 2017, from D. Brennan to C. Desai, attached as **Exhibit G** to Wakefield Aff.

**Response:** Admitted.

43.     Plaintiff sent an email to Dr. Brennan describing her version of the events and providing her opinion of the incident. In her E-mail, Plaintiff stated that she accused Dr. Dill of being rude and that Dr. Dill had accused her of being rude as well. Ex. E, Desai Dep. at 331:20-

333:2; 335:4-19; <u>see also</u> E-mail dated September 21, 2017, from C. Desai to D. Brennan, attached as **Exhibit H** to Wakefield Aff.

    **Response:** Admitted.


44.    Plaintiff admits that Dr. Dill's statement that Plaintiff had been rude was a statement of "opinion" by Dr. Dill. Ex. E, Desai Dep. at 248:5-13; 249:3-6.

    **Response:** Admitted.


45.    The only things that Plaintiff can identify that Dr. Dill said about her that she believes were not true were the alleged creation of the Peer Review Summary and her statements in E-mail that Plaintiff was rude. Ex. E, Desai Dep. at 219:4-220:23; 248:5-249:10; 422:4-13; <u>see also</u> Plaintiff's Answers to UMass Medical Center, Inc.'s Interrogatories, at Interrogatory 8, attached as **Exhibit I** to Wakefield Aff.

    **Response:** Denied. Dr. Dill also misattributed to Plaintiff Category 3 or 4 reads into the peer review system, which had the effect of defaming her by deed. See Response No. 26.


46.    Plaintiff contends that a statement that defamed her is a "July 1, 2016 - June 30, 2017 Peer Review of Dr. Desai by K. Dill;" the Peer Review Summary. Ex. I, Pl. Answers to Interr., at Interrogatory 8.

    **Response:** Admitted.

                Respectfully submitted,

                CHARU DESAI
                By her attorney,

/s/ Patricia A. Washienko
PATRICIA A. WASHIENKO (BBO 641615)
pwashienko@fwlawboston.com
FREIBERGER & WASHIENKO, LLC
211 Congress Street, Suite 720
Boston, Massachusetts 02110
Telephone:  617-723-0008
Fax:  617-723-0009

Dated:  February 11, 2022

CERTIFICATE OF SERVICE

     I, Patricia A. Washienko, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

     Robert L. Kilroy, Esq.
Reid Wakefield, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
(508) 860-1477
rkilroy@mirickoconnell.com

Mark Johnson, Esq.
Denise Barton, Esq.
University of Massachusetts Office of the General Counsel
One Beacon Street, 31st Floor
Boston, MA 02108
(617) 287-4064
MAJohnson@umassp.edu

/s/ Patricia Washienko
Patricia A. Washienko

Dated: February 11, 2022