UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br>　　　　　Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS,<br>MEMORIAL MEDICAL CENTER, INC.<br>UNIVERSITY OF MASSACHUSETTS<br>MEMORIAL MEDICAL GROUP,<br>UNIVERSITY OF MASSACHUSETTS<br>MEDICAL SCHOOL, UMASS<br>MEMORIAL HOSPITAL, MAX ROSEN,<br>M.D., DARREN BRENNAN, M.D.,<br>STEPHEN TOSI, M.D., KARIN DILL,<br>M.D.,<br>　　　　　Defendants. | Civil Action No. 4:19-cv-10520-TSH |

PLAINTIFF CHARU DESAI, MD's RESPONSE TO STATEMENT OF MATERIAL FACTS
SUBMITTED BY DEFENDANT MARLBOROUGH HOSPITAL

Pursuant to Fed. R. Civ. P. 56 and D. Mass. Local Rule 56.1, Dr. Desai Charu Desai, MD

("Dr. Desai" or "Dr. Desai"), responds to Statement of Material Facts ("SOF") in submitted by

Defendant Marlborough Hospital.

A.　　Plaintiff's Employment Status

1.　　Plaintiff, Charu Desai, was employed by UMass Memorial Medical Group, Inc.

(the "Medical Group"), and the University of Massachusetts Medical School. See Deposition

Transcript for Charu Desai, MD ("Desai Dep."), at 96:22-97:15, attached as **Exhibit A** to

Affidavit of Reid Wakefield, Esq. ("Wakefield Aff."); Agreement between UMass Memorial

Medical Group, Inc., and Charu Desai, MD, attached as **Exhibit B** to Wakefield Aff.

**Response:**  Deposition testimony with respect to the plaintiff's understanding of her

evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762

F.3d 552, 564 (7th Cir. 2014) ("[Defendant] claimed that [Plaintiff] admitted she had no information to support her claim that [Defendant] retaliated against her for requesting FMLA leave. Her deposition testimony made clear, however, that she was talking about the basis for her subjective belief that she was being retaliated against, not whether she had introduced evidence of retaliation in her lawsuit").

**Responding further:** Disputed as to any implication that UMass Memorial Medical Group, Inc. was the Plaintiff's sole employer, as others, including Marlborough Hospital, did not also exert control over the manner and means of Plaintiff's work performance. PSOF ¶¶ 318-325, 326-344, 299-317.  Otherwise, admitted.


2.     Plaintiff was located and physically performed her duties at UMass Memorial Medical Center. See Affidavit of Max Rosen, MD, M.P.H. ("Rosen Aff."), at ¶ 9, attached as **Exhibit C** to Wakefield Aff.

**Response**: Denied as to any implication that Plaintiff performed her radiological duties exclusively for the Medical Group and denied that she performed her radiological duties exclusively while located at Medical Center facilities. In the early 2000s, around the time that Plaintiff's heart condition was diagnosed, and she was given a pacemaker, the Department provided to her a personal workstation, and she worked from home. Desai Aff. ¶ .  In addition, Plaintiff also was located and physically performed her duties at several hospitals/campuses of UMass Memorial Medical Center throughout the course of her employment. Desai Aff. ¶ 4, Exhibit A.

3.      In the course of her duties, Plaintiff read radiological images originating from multiple hospitals, including campuses of UMass Memorial Medical Center, Marlborough Hospital, and Clinton Hospital. Ex. C, Rosen Aff. at ¶ 10.

**Response**: Admitted.

4.      The Medical Group was responsible for staffing radiologists to review images originating from different hospitals, and the Medical Group directed radiologists' assignments. Ex. C, Rosen Aff. at ¶ 11.

> **Response:** Disputed.   Marlborough Hospital officials had the ability to set work schedules for radiologists (including Plaintiff), direct radiologists' assignments (including Plaintiff), and direct radiologists in the performance of job duties and responsibilities (including Plaintiff).  PSOF ¶¶ 318-325, 326-344, 299-317. Furthermore, Marlborough Hospital officials specifically directed radiologists, including Plaintiff, to prioritize the radiological interpretations for Marlborough Hospital over all other films. Rosen Dep. at 141:23-142:11, at Exhibit S.

5.      Marlborough Hospital did not direct Plaintiff or any other radiologist with respect to the reading of images or in any other job duties. Plaintiff was supervised by Medical Group employees. Ex. C, Rosen Aff. at ¶ 12.

> **Response**: Disputed.  See Response to No. 4, above.

6.      Plaintiff did not have an employment agreement with Marlborough Hospital. Ex. A, Desai Dep. at 99:5-7.

**Response:** Disputed as to any implication that Marlborough Hospital did not exercise control over the manner and means of Plaintiff's work performance.  Marlborough Hospital was a hospital/campus of the UMass Memorial Medical Center and member of Care and Care, Inc.  PSOF ¶¶ 318-325, 326-344, 299-317.   Marlborough Hospital defines itself as a Care System hospital, as evidenced by the following: "for those who hold privileges at more than one Care System hospital, this will ensure that you have only one reappointment application process to cover all member hospitals going forward." Plaintiff provided services for the entire care System, of which Marlborough Hospital was a member.

7.      Plaintiff has never been employed by Marlborough Hospital. See Affidavit of Michael J. Paruta ("Paruta Aff.") at ¶ 3, attached as **Exhibit D** to Wakefield Aff.; Affidavit of Steven P. Roach ("Roach Aff.") at ¶ 4, attached as **Exhibit E** to Wakefield Aff.

**Response:**  Disputed as to any implication that Marlborough Hospital did not exercise control over the manner and means of Plaintiff's work performance. See Responses No. 4 and No. 6, above.

8.      Marlborough Hospital does not employ any physicians who provide medical care at Marlborough Hospital. Ex. D, Paruta Aff. at ¶ 4; Ex. E, Roach Aff. at ¶ 2.

**Response:**  Disputed as to any implication that Marlborough Hospital did not exercise control over the manner and means of Plaintiff's work performance.  See Responses No. 4 and No. 6, above.

4

9.     For a period, Plaintiff had performed professional radiology services at Marlborough Hospital pursuant to a Professional Services Agreement By and Between Marlborough Hospital and UMass Memorial Medical Group, Inc. (the "Professional Services Agreement"). Ex. D, Paruta Aff. at ¶ 12; Professional Services Agreement, attached as **Exhibit F** to Wakefield Aff.

> **Response:** Disputed as to any implication that Marlborough Hospital did not exercise control over the manner and means of Plaintiff's work performance. See Responses No. 4 and No. 6, above. Otherwise, admitted.

10.    Pursuant to the Professional Services Agreement, "Radiologists shall not be employees of the Hospital." Instead, the radiologists who perform services at Marlborough Hospital are employed by UMass Memorial Medical Group, Inc. Ex. D, Paruta Aff. at ¶ 13, Ex. E, Roach Aff. at ¶ 3; Ex. F, at ¶ 12.

> **Response:** Disputed as to any implication that Marlborough Hospital did not exercise control over the manner and means of Plaintiff's work performance. See Responses No. 4 and No. 6, above. Otherwise, admitted as to the language of the Professional Services Agreement.

11.    The Professional Services Agreement also states: "It is expressly understood and agreed that, in the performance of services under this Agreement, the [Medical] Group and the employees and independent contractors engaged by the Group shall at all times act as independent contractors with respect to the Hospital and as an independent private radiologist

practice, and not as employees or agents of the Hospital." Ex. F, at ¶ 18; Ex. D, Paruta Aff.

at ¶ 14.

>**Response:** Disputed as to any implication that Marlborough Hospital did not exercise
>
>control over the manner and means of Plaintiff's work performance. See Responses No. 4
>
>and No. 6, above. Otherwise, admitted as to the language of the Professional Services
>
>Agreement.

12.     Under the Professional Services Agreement, "[t]he [Medical] Group shall be

responsible for paying compensation to all Group Radiologists." Ex. F, at ¶ 12; Ex. D, Paruta

Aff. at ¶ 15.

>**Response:** Disputed as to any implication that Marlborough Hospital did not exercise
>
>control over the manner and means of Plaintiff's work performance. See Responses No. 4
>
>and No. 6, above. Otherwise, admitted as to the language of the Professional Services
>
>Agreement.

13.     Marlborough Hospital does not have, and has not had, the power to hire, fire or

discipline Plaintiff or any other physician member of the Medical Group. Ex. D, Paruta Aff.

at ¶ 19.

>**Response:** Disputed.  Marlborough Hospital has a credentialing process separate from
>
>that of the Medical Center, its own credentialing committees, and officials of
>
>Marlborough Hospital actively participate in the credentialing/re-credentialing of
>
>Plaintiff.  As Marlborough Hospital can approve or prevent credentialing/re-credentialing
>
>and/or restrict clinical privileges of Plaintiff, Marlborough Hospital has authority to

discipline her, directly alter her job responsibilities and/or terminate her employ. PSOF ¶¶ 199, 200.

14.     Marlborough Hospital has never had the power to set the compensation for Plaintiff or any other physician member of the Medical Group, nor has it played any role in setting such compensation. Ex. D, Paruta Aff. at ¶ 20.

**Response:** Plaintiff is without sufficient information or knowledge to be able to determine exactly what entities do or do not participate in setting the compensation for Plaintiff.

15.     Marlborough Hospital has never set the work schedules for Plaintiff. Ex. D, Paruta Aff. at ¶ 21.

**Response:**  Disputed. See Responses No. 4 and No. 6, above.

16.     Marlborough Hospital did not direct Plaintiff in the performance of her job duties and responsibilities. Ex. D, Paruta Aff. at ¶ 23.

**Response:**  Disputed. See Responses No. 4 and No. 6, above.

17. Marlborough Hospital does not maintain employment records for Plaintiff. Ex. D, Paruta Aff. at ¶ 22.

**Response:** Denied.   Marlborough Hospital admits that there is not any derogatory information *on file* regarding Plaintiff.  PSOF ¶¶ 199, 200. See also Marlborough credentialing documents: UMM 03529, UMM 03530, UMM 03531 (Marlborough

credentialing prior to Dr. Brennan); UMM 03518, 03519, 03643 (Marlborough Hospital

Medical Staff Review and Action form-Reappointment); UMM 03644 (Marlborough

Reappointment Appraisal Recommendation Form; UMM 03523 (Changes of Delineation

of Privileges Form); UMM 03640 (Marlborough Hospital Medical Staff Review and

Action form-Reappointment signed by Dr. Brennan on 6/9/17); UMM 03639 (letter "On

Behalf of Marlborough Hospital PCAC, I am pleased to reappoint you to the Medical

Staff. Effective 7/31/17-7/31/19."). See PSOF ¶¶ 191 – 201.

B.     <u>Chief of Radiology</u>

18.     Darren Brennan, MD, served as the Chief of Radiology for Marlborough Hospital

from 2015 to 2018. Ex. C, Rosen Aff. at ¶ 15.

> **Response:** Admitted that Darren Brennan, MD, served as the Chief of Radiology for
>
> Marlborough Hospital from 2015 to 2018.

19.     Dr. Brennan has never been employed by Marlborough Hospital. Ex. D, Paruta

Aff. at ¶ 3.

> **Response:** Disputed as to any implication that Marlborough Hospital did not exercise
>
> control over the manner and means of Dr. Brennan's work performance.  PSOF ¶¶ 318-
>
> 325, 326-344, 299-317.

20.     Under the Professional Services Agreement, the Medical Group, with the

approval of Marlborough Hospital's President, selects one of its Medical Group physician-

employees as the Chief of Radiology for Marlborough Hospital, to perform various administrative duties as set forth in the Agreement. Ex. D, Paruta Aff. at ¶ 16; Ex. F, at ¶ 8.

> **Response:** Denied as to any implication that Marlborough Hospital did not exercise control over the manner and means of Plaintiff's work performance. PSOF ¶¶ 299-317.

21.     The physician appointed as Chief of Radiology for Marlborough Hospital is not an employee of Marlborough Hospital. Ex. D, Paruta Aff. at ¶ 17.

> **Response**: Denied for the same reasons that Plaintiff was employed by Marlborough Hospital as indicated above, and that Dr. Brennan had the same employment arrangement.

22.     As Chief of Radiology, Dr. Brennan performed an administrative role which involved serving as a representative of the Medical Group's Radiology Department, serving as a liaison with Marlborough Hospital, and ensuring that the Medical Group was performed its obligations under its contract with Marlborough Hospital. Ex. C, Rosen Aff. at ¶ 16.

> **Response**: Admitted that as Chief of Radiology at Marlborough Hospital, Dr. Brennan performed an administrative role for Marlborough Hospital.  As Chief of Radiology at Marlborough Hospital, Dr. Brennan provided supervision and oversight over radiologists, including Plaintiff, with regards to their provision of radiology services for patients at Marlborough Hospital.  PSOF ¶¶ 303, 304.

23.     In Dr. Brennan's capacity as Chief of Radiology, he oversaw staffing coverage for the Medical Group's reading of studies originating from Marlborough Hospital. Ex. C, Rosen Aff. at ¶ 16.

> **Response:** Disputed as to any implication that Dr. Brennan oversaw only staffing coverage, as staffing was one of many responsibilities associated with Dr. Brennan's position as Chief of Radiology at Marlborough Hospital.  For example, Dr. Brennan's job responsibilities also included oversight the quality of service provided to Marlborough Hospital. He also directly and confidentially evaluated radiologists providing radiology services for Marlborough Hospital, including Plaintiff. Furthermore, Dr. Brennan's regular participation in meetings at Marlborough Hospital, as well as discussions and notes from those meetings, demonstrate that he was responsible for assuring the quality of radiology services provided at Marlborough Hospital. PSOF ¶¶ 303, 304.

24. The physician appointed as Chief of Radiology for Marlborough Hospital does not have the authority to act on behalf of Marlborough Hospital, except to the extent reflected in the Professional Services Agreement. Ex. D, Paruta Aff. at ¶ 18.

> **Response:** Disputed. See Response No. 4 and No. 23, above. Furthermore, Defendants admit that employment as a physician is dependent on hospital credentialing.

25. Marlborough Hospital has never had the power to hire, fire or discipline Dr. Brennan. Ex. D, Paruta Aff. at ¶ 19.

> **Response**: Disputed. See Response No. 13, above.

26. Marlborough Hospital has never had the power to set the compensation for Dr. Brennan, nor has it played any role in setting such compensation. Ex. D, Paruta Aff. at ¶ 20.

> **Response**: Plaintiff is without sufficient information or knowledge to be able to determine whether UMass Memorial Marlborough Hospital has ever had the power to set the compensation for Dr. Brennan.

27. Marlborough Hospital has never set the work schedules for Dr. Brennan. Ex. D, Paruta Aff. at ¶ 21.

> **Response:** Disputed.  Dr. Brennan's regular participation in meetings at Marlborough Hospital, as well as discussions and notes from those meetings, demonstrate that he was directed by Marlborough Hospital in the performance of his work, and therefore, Marlborough Hospital directed his work schedule. PSOF ¶ 308.

28. Marlborough Hospital does not maintain employment records for Dr. Brennan. Ex. D, Paruta Aff. at ¶ 22.

> **Response**:  Denied.  See Response No. 17, above.

29. Marlborough Hospital has not directed Dr. Brennan in the performance of his job duties and responsibilities. Ex. D, Paruta Aff. at ¶ 24.

> **Response**: Denied.  Dr. Brennan's regular participation in meetings at Marlborough Hospital, as well as discussions and notes from those meetings, and his subsequent instructions to radiologists to, among other things, prioritize reads for Marlborough, demonstrate that he was directed by Marlborough Hospital in the performance of his job

duties and responsibilities (UMM 30154-30155). See also details of position associated

with being Chief of Radiology at Marlborough Hospital.  There is an expectation that Dr.

Brennan "will fully integrate into the clinical and administrative activities of

Marlborough Hospital and participate in all meetings, committees and leadership roles as

expected of *their* (emphasis added, Marlborough Hospital's) chiefs of service."


30. Dr. Brennan served as the Vice Chair for Enterprise Operations and Community

Radiology from 2015 to 2019. Ex. C, Rosen Aff. at ¶ 17.

**Response:** Admitted.


31. Dr. Brennan addressed a concern raised between Plaintiff and Dr. Karin Dill that

occurred on September 21, 2017, in his role as Vice Chair of the Medical Group's Radiology

Department, as he was required to do so in the absence of the Department Chair, Dr. Max Rosen.

Ex. C, Rosen Aff. at ¶ 17; E-mail dated September 21, 2017, from D. Brennan to C. Desai,

attached as **Exhibit G** to Wakefield Aff.

> **Response:** Admitted that Dr. Brennan addressed a concern raised between Plaintiff and
>
> Dr. Karin Dill that occurred on September 21, 2017, in his role as Vice Chair of the
>
> Radiology Department at UMass Medical Center.  Plaintiff is without sufficient
>
> information or knowledge to determine if he was required to do so in the absence of the
>
> Department Chair.
>
> **Responding further:** Dr. Brennan also had the authority to address quality concerns with
>
> Plaintiff, but never brought to her attention any concerns about her work quality. Rather,
>
> despite being present at the January 31, 2017, meeting at which Dr. Robinson purportedly

voiced concerns about Dr. Desai's work quality, Dr. Brennan gave Dr. Desai ratings of
excellent on confidential credentialing forms, even after knowing of Dr. Robinson's
purported complaints about Dr. Desai's work quality. **PSOF ¶¶ 191, 192.**

C.    <u>Dr. Kimberly Robinson</u>

32. The sole basis upon which Plaintiff is making a claim against Marlborough Hospital
is that a complaint about Plaintiff's quality was made by Kimberly Robinson, MD Ex. A, Desai
Dep. at 217:9-22.

> **Response:** Deposition testimony with respect to the plaintiff's understanding of her
> evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762
> F.3d 552, 564 (7th Cir. 2014).
>
> **Responding further**: Denied. Dr. Robinson served on the Patient Care Assessment
> Committee (i.e., Board of Trustees) that in July 2017, approved without restriction Dr
> Desai's credentialing and reappointment.  As part of that process, the PCAC reviewed Dr.
> Desai's recredentialing application, which included Dr. Brennan's evaluation of Dr.
> Desai as excellent.  The approval followed Dr. Robinson's criticisms in January 2017
> about the quality of Dr. Desai's radiological reads.  In addition, Steve Roach, Douglas
> Brown, and Charles Cavagnaro also serve on the Patient Care Assessment Committee
> (i.e., Board of Trustees).  Mr. Roach says, no derogatory information on file; approved
> Dr. Desai's credentials and reappointment until 2019.  Their reappointment is a direct
> contradiction Notwithstanding the fact that Marlborough reappointed, they took no action
> to correct Dr. Rosen's inappropriate suspension of CT reads nor to prevent Dr. Desai's
> termination.  Even though Dr. Cavagnaro approved Plaintiff's reappointment and

recredentialing, he supported Dr. Rosen in the termination of Dr. Desai, the reason for which was purported poor work quality. PSOF ¶¶ 191-200.

33**.**    Dr. Robinson has made complaints about a lot of other physicians. Ex. A, Desai Dep. at 233:19-234:1.

**Response:** Admitted.

34.    Dr. Robinson has never been employed by Marlborough Hospital. Ex. D, Paruta Aff. at ¶¶ 3, 25-26.

**Response:** Denied as to any implication Marlborough Hospital did not exert control over the manner and means of Dr. Robinson's performance. Also disputed, as Dr. Robinson served as the President of the Marlborough Hospital Medical Staff.  PSOF

35.    Dr. Kimberly Robinson has served as an independent contractor to Marlborough Hospital in the role of Medical Director of the Intensive Care Unit. Dr. Robinson's independent contractor arrangement with Marlborough Hospital in this role is subject to an independent contractor agreement. Ex. D, Paruta Aff. at ¶ 5; Independent Contractor Agreement as Medical Director for Marlborough Hospital's Intensive Care Unit, attached as **Exhibit H** to Wakefield Aff.

**Response:** Denied as to any implication Marlborough Hospital did not exert control over the manner and means of Dr. Robinson's performance.

36.     Dr. Kimberly Robinson has also served as an independent contractor to Marlborough Hospital in the role of Medical Director for Respiratory Care Services. Dr. Robinson's independent contractor arrangement with Marlborough Hospital in this role is subject to an independent contractor agreement. Ex. D, Paruta Aff. at ¶ 6; Independent Contractor Agreement as Medical Director for Respiratory Care Services for Marlborough Hospital, attached as **Exhibit I** to Wakefield Aff.

> **Response:** Denied as to any implication Marlborough Hospital did not exert control over the manner and means of Dr. Robinson's performance.

37.     The two independent contractor agreements between Dr. Robinson and Marlborough Hospital state: "Physician shall perform all services hereunder as an independent contractor. Physician and its employees, agents, and subcontractors are not employees or agents of the Hospital, and shall not hold themselves out as, or claim to be, officers or employees of Hospital, and will not make any claim, demand, or application to or for any right or privilege applicable to an officer or employee of Hospital, including, but not limited to, worker's compensation coverage, unemployment insurance benefits, social security benefits, or retirement membership or credit." Ex. D, Paruta Aff. at ¶ 7; Ex. H, at ¶ 19; Ex. I, at ¶ 19.

> **Response:** Denied as to any implication Marlborough Hospital did not exert control over the manner and means of Dr. Robinson's performance.

38.     Dr. Robinson provides on-site shift coverage on an independent contractor basis to the Intensive Care Unit of Marlborough Hospital, with such services being subject to a

Physician Consultant Contract. Ex. D, Paruta Aff. at ¶ 8; Physician Consultant Contract, attached
as **Exhibit J** to Wakefield Aff.

> **Response:**  Denied as to any implication  Marlborough Hospital did not exert control
> over the manner and means of Dr. Robinson's performance.


39.     The Physician Consultant Contract states: "Contractor shall perform all services
under this Contract as an independent contractor. The Contractor is not an employee or agent of
the Hospital, and shall not hold him/herself out as, nor claim to be, an officer or employee of the
Hospital and will not make any claim, demand, or application to or for any right or privilege
applicable to an officer or employee of Hospital, including, but not limited to, worker's
compensation coverage, unemployment insurance benefits, social security benefits, or retirement
membership or credit." Ex. D, Paruta Aff. at ¶ 9; Ex. J, at ¶ 10.

> **Response:**  Denied as to any implication  Marlborough Hospital did not exert control
> over the manner and means of Dr. Robinson's performance.


40.     Dr. Kimberly Robinson is a member of Mass Lung and Allergy, P.C., a
professional corporation that is unaffiliated with Marlborough Hospital. Mass Lung and Allergy,
P.C., provides intensivist critical care coverage through its member physicians on an independent
contractor basis at Marlborough Hospital, pursuant to an Intensivist Coverage Agreement. Ex. D,
Paruta Aff. at ¶ 10; Intensivist Coverage Agreement, attached as **Exhibit K** to Wakefield Aff.

> **Response:**  Denied as to any implication  Marlborough Hospital did not exert control
> over the manner and means of Dr. Robinson's performance.

41.     Dr. Robinson has served for a period as the President of the Marlborough Hospital Medical Staff, which is a position selected by the physicians of the medical staff and not Marlborough Hospital, and the President of the Medical Staff is not an employee of Marlborough Hospital and does not act on its behalf. Ex. D, Paruta Aff. at ¶ 11.

> **Response**:  This statement of fact is supported only by the Affidavit of D. Paruta, whose testimony could be appropriately rejected by a reasonable jury. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151 (2000).
>
> **Responding further:** Admitted that Dr. Robinson has served as the President of the Marlborough Hospital Medical Staff, which is a position selected by the physicians of the Marlborough Hospital medical staff. Disputed that Dr. Robinson did not act on behalf of Marlborough Hospital, as she served on a  Marlborough Hospital Committee that was directly responsible for Plaintiff's credentialing and reappointment to the Medical Staff of  Marlborough Hospital, as well as the granting of clinical privileges without restriction and condition.  See Response No. 32, above.

42.     Marlborough Hospital does not maintain employment records for Dr. Robinson. Ex. D, Paruta Aff. at ¶ 22.

> **Response: Disputed**. Defendants did not produce Dr. Robinson's credentialing file, but had such a file for Dr. Desai,; it is undoubtedly standard practice.

43.     Marlborough Hospital does not direct Dr. Robinson in the performance of her job duties and responsibilities, except within the scope of the agreements governing her independent contractor roles as set forth in those agreements. Ex. D, Paruta Aff. at ¶¶ 23, 25.

**Response:** Denied as to any implication that Marlborough Hospital did not exert control over the manner and means of Dr. Robinson's performance. In addition, Dr. Robinson served as President of the Medical Staff at Marlborough Hospital and currently serves on (credentialing) committees at Marlborough Hospital.

44.     The terms of Dr. Robinson's compensation as an independent contractor, her work schedule, and Marlborough Hospital's ability to terminate the independent contractor relationship are set forth in the respective agreements. Ex. D, Paruta Aff. at ¶ 26.

**Response:** Denied as to any implication that Marlborough Hospital did not exert control over the manner and means of Dr. Robinson's performance.

D.     <u>Hospital Privileges</u>

45.     All physicians are required to be credentialed and appointed as members of the medical staff to have privileges to provide medical care to patients at Marlborough Hospital. Ex. E, Roach Aff. at ¶ 5.

**Response**: Admitted that all physicians are required to be credentialed and appointed as members of the medical staff to have privileges to provide medical care to patients at Marlborough Hospital.

46.     Physicians who are credentialed and appointed as members of the medical staff are not employees of Marlborough Hospital. Ex. E, Roach Aff. at ¶ 6.

**Response**:

18

47.     Plaintiff formerly served as a member of Marlborough Hospital's medical staff, providing radiology services for patients of Marlborough Hospital as a member of its medical staff. Ex. E, Roach Aff. at ¶ 7.

> **Response**: Admitted that Plaintiff formerly served as a member of Marlborough Hospital's medical staff and provided radiology services for patients of Marlborough Hospital.

48.     On April 4, 2019, the President of Marlborough Hospital, Steve Roach, signed a letter addressed to Charu S. Desai, MD, in which he stated: "Marlborough Hospital has accepted your resignation as a member of the Department of Radiology with regret. Thank you very much for your service to Marlborough Hospital." Ex. E, Roach Aff. at ¶ 8; Letter dated April 4, 2019, from Steven P. Roach to Charu S. Desai, MD, attached as **Exhibit L** to Wakefield Aff.

> **Response:** Admitted there is a letter dated April 4, 2019, signed by the President of Marlborough Hospital, Steve Roach, in which he stated: "Marlborough Hospital has accepted your resignation as a member of the Department of Radiology with regret. Thank you very much for your service to Marlborough Hospital."
>
> **Responding further**: Plaintiff never submitted a letter of resignation of employment to Marlborough Hospital or any parties in this matter.

49.     This letter was in reference to Plaintiff's resignation as a member of Marlborough Hospital's medical staff and was thanking her for her service to Marlborough Hospital as a member of its medical staff. Ex. E, Roach Aff. at ¶ 9.

**Response:** Denied that Plaintiff resigned from Marlborough Hospital.

50.     This letter was generated as a result of the Medical Staff Services Office being notified that Plaintiff's employment with UMass Memorial Medical Group, Inc., was ending, and was sent to Plaintiff as confirmation of the corresponding termination of her medical staff privileges at Marlborough Hospital. Ex. E, Roach Aff. at ¶ 10.

> **Response:**  Plaintiff is without sufficient information or knowledge to admit or deny how and/or why the letter was generated. Denied that this letter was just about privileges.

51.     This letter was not in reference to Plaintiff's resignation of employment by Marlborough Hospital, as she was never employed by Marlborough Hospital, nor did she have any other relationship with Marlborough Hospital other than providing radiology services under Marlborough Hospital's Professional Services Agreement with Plaintiff's employer, UMass Medical Group, Inc. Ex. E, Roach Aff. at ¶ 11.

> **Response:** Denied as to any implication that Marlborough did not exert control over the manner and means of Dr. Desai's performance. Denied that Plaintiff resigned.

52.     At no time did Marlborough Hospital restrict the privileges of Plaintiff to perform reads of CT images. Ex. E, Roach Aff. at ¶ 12.

> **Response:** Admitted.

53.     Marlborough Hospital did not participate in the decision to end Plaintiff's employment. Ex. E, Roach Aff. at ¶ 13.

**Response: Denied.**  Plaintiff never submitted a letter of resignation of employment to Marlborough Hospital or any parties at UMass Memorial Medical Center.  However, Plaintiff received a letter from Marlborough Hospital stating that it had accepted Plaintiff's resignation as a member of the Department of Radiology with regret. Exhibit FFFF.

E.     <u>Plaintiff's Allegations and Admissions</u>

54.     Plaintiff alleges that Marlborough Hospital exercised substantial control over the terms and conditions of her employ, because Plaintiff was a member of its medical staff with clinical privileges and because Dr. Brennan exercised some authority over her work. <u>See</u> Plaintiff's Answers to Marlborough Hospital's Interrogatories, at Interrogatory 1, attached as **Exhibit M** to Wakefield Aff.

**Response**: Plaintiff's allegations are not controlling; the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014).

**Responding further**: Evidence produced by Defendants in discovery evidences not only that Plaintiff was a member of its medical staff with clinical privileges but also that Dr. Rosen, Dr. Brennan, Dr.  Robinson, Mr. Roach, Dr. Tennyson, and Mr. Brown all exercised authority over the assessment of her work at meetings that occurred at Marlborough Hospital. In addition, Dr. Robinson, Mr. Roach, Mr. Brown and Dr. Cavagnaro served on the credentialing committee governing Plaintiff's credentialing/re-credentialing/granting of clinical privileges/reappointment to the Medical Staff of Marlborough Hospital. See responses above.

55.     Plaintiff is not claiming that Marlborough Hospital did not pay her correctly under the Equal Pay Act. Ex. A, Desai Dep. at 174:24-175:2.

> **Response:** Deposition testimony with respect to the plaintiff's understanding of her evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014).

56.     Plaintiff cannot identify anyone with Marlborough Hospital who made a decision to pay her differently than white males. Ex. A, Desai Dep. at 128:15-18.

> **Response:** Plaintiff is without sufficient information or knowledge to be able to determine whether UMass Memorial Marlborough Hospital participated in the setting her salary as well as that of other radiologists employed at Marlborough Hospital, which has been disparate.

57.     Plaintiff admits Marlborough Hospital did not make any decision to deny Plaintiff a home workstation. Ex. A, Desai Dep. at 159:20-160:11.

> **Response:** Plaintiff is without sufficient information or knowledge to be able to determine whether Marlborough Hospital participated in the decision to deny her a home workstation.

58.     Marlborough Hospital did not make the decision to hire Dr. Dill. Ex. A, Desai Dep. at 168:20-23.

**Response:** Deposition testimony with respect to the plaintiff's understanding of her evidence is not controlling; rather the evidence is controlling. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014).

**Responding further:** Plaintiff is without sufficient information or knowledge to be able to determine whether Marlborough Hospital participated in the decision to hire Dr. Dill.


59.     Marlborough Hospital did not make any verbal or written statements about Plaintiff which are defamatory. **Exhibit N**, Plaintiff's Answers to UMass Memorial Medical Center, Inc.'s Interrogatories, at Interrogatory 8.

**Response:** Admitted.

Respectfully submitted,

CHARU DESAI
By Her Attorney,

/s/ Patricia Washienko

_____
Patricia A. Washienko, BBO# 641615
pwashienko@fwlawboston.com
Freiberger & Washienko LLC
211 Congress St, Suite 720
Boston, MA 02110
Tel: (617) 723-0008

Dated: February 11, 2022

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 11, 2022, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, was served by electronic mail only to counsel for the above-named Defendants:

      Robert L. Kilroy, Esq.
      Reid Wakefield, Esq.
      Mirick, O'Connell, DeMallie & Lougee, LLP
      1800 West Park Drive, Suite 400
      Westborough, MA 01581-3926
      (508) 860-1477
      rkilroy@mirickoconnell.com

      Mark Johnson, Esq.
      Denise Barton, Esq.
      University of Massachusetts Office of the General Counsel
      One Beacon Street, 31st Floor
      Boston, MA 02108
      (617) 287-4064
      MAJohnson@umassp.edu


      /s/ Patricia Washienko
      _____
      Patricia A. Washienko