UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
CHARU DESAI,                                    )
                    Plaintiff,                  )
                                                )
v.                                              )        Civil Action No. 4:19-cv-10520-TSH
                                                )
UNIVERSITY OF MASSACHUSETTS,                    )
MEMORIAL MEDICAL CENTER, INC.                   )
UNIVERSITY OF MASSACHUSETTS                     )
MEMORIAL MEDICAL GROUP,                         )
UNIVERSITY OF MASSACHUSETTS                     )
MEDICAL SCHOOL, UMASS                           )
MEMORIAL HOSPITAL, MAX ROSEN,                   )
M.D., DARREN BRENNAN, M.D.,                     )
STEPHEN TOSI, M.D., KARIN DILL,                 )
M.D.,                                           )
                    Defendants.                 )
_____                )


## PLAINTIFF CHARU DESAI'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN DISPUTE IN OPPOSITION TO THE MOTIONS FOR SUMMARY JUDGMENT OF ALL DEFENDANTS

Pursuant to Fed. R. Civ. P. 56 and D. Mass. Local Rule 56.1, Dr. Desai Charu Desai, MD

("Dr. Desai" or "Dr. Desai"), submits this Dr. Desai's Statement of Additional Material Facts in

Dispute ("PSOF") in support of her Oppositions to the four Motions for Summary Judgment

filed by UMass Memorial Medical Center, Inc. (the "Medical Center"), UMass Memorial

Medical Group, Inc. (the "Medical Group"), Marlborough Hospital ("Marlborough"), the

University of Massachusetts Chan Medical School[1] (the "Medical School"), Karin Dill, MD

("Dr. Dill"), Max Rosen, MD ("Dr. Rosen"), and Stephen Tosi, MD ("Dr. Tosi").

---

[1] The Medical School's name changed to the University of Massachusetts Chan Medical School effective September 7, 2021.

Dr. Desai's Background and Employment by Defendants

1. Dr. Desai was born on July 6, 1950. See Affidavit of Charu Desai, MD ("Desai Aff."), at ¶ 1, attached as Exhibit A to Affidavit of Patricia Washienko, Esq. ("..").[2]

2. Dr. Desai graduated from Government Medical College at the South Gujarat University School of Medicine, in Surat, Gujarat, India in 1972. See Curriculum Vitae of Charu Desai, Exhibit B

3. Dr. Desai was a Resident in Diagnostic Radiology at the University of Massachusetts Medical Center ("Medical Center") in 1978. She served as Chief Resident there from 1979 to 1981. Following her Residency, she completed a Fellowship in Computed Body Tomography / Ultrasound, also at the Medical Center. She is Board Certified. See Exhibit B.

4. In January 1992, Dr. Desai was hired as an attending physician in the Division of Thoracic Radiology in the Radiology Department ("Radiology Department") at the University of Massachusetts Memorial Medical Center ("Medical Center") and as an Assistant Professor of Radiology at the Medical School. See Affidavit of Max Rosen, MD ("Rosen Aff.") at ¶ 8, attached as Exhibit C. Dr. Desai was promoted to Associate Professor of Clinical Radiology on September 1, 2001. See Exhibit B.

5. Dr. Desai worked continuously in the Radiology Department from the date of her hire until her termination on March 17, 2019.  Annual Credential information, Exhibit EEEE.

Peer Recognition and Letters of Reference for Dr. Desai

6. Over the course of her employ, more than a dozen of Dr. Desai's colleagues, including those in senior medical leadership positions, wrote letters of reference and recommendation for her, citing her clinical ability:

---

[2] Hereafter, all references to "Exhibit ##" shall mean "Exhibit ## attached "

a.  Dr. Jerry Balikian, MD, Senior Thoracic Radiologist and Former Division Chief of Thoracic Radiology and Vice Chair of Department of Radiology stated, among other things, that he had "*come to appreciate and admire her exceptional mind when it comes to picking up abnormalities on a chest x-ray." She is "not only a suburb (sic) chest radiologist", "[h]er ability to integrate findings and arrive at a judgment are commendable.*" (Emphasis added.) See Letter from Dr. Jerry Balikian dated May 14 2001, Exhibit D.

b.  Dr. Jeffrey Leppo MD, the former Interim Chair of Department of Radiology, wrote, among other things, that: "*Dr. Desai has achieved excellence in clinical service and teaching ability,*" while also noting that she essentially had "covered the entire Chest Service *as a solo practitioner*." (Emphasis supplied.) See letter from Dr. Jeffrey Leppo, Exhibit E.

c.  Dr. Richard Irwin MD, a Pulmonary Specialist and Chair of the Department of Critical Care at UMMC, wrote that Dr. Desai's opinion is "*widely sought by pulmonary specialists, clinicians, other radiologists and residents. She has demonstrated skillful interpretation of all chest-imaging procedures*." (Emphasis added.) See Letter from Dr. Richard Irwin, Exhibit F.

d.  Dr. Carl D'Orsi MD, the Former Interim Chair of Department of Radiology, wrote that Dr. Desai demonstrates "*excellent clinical skills*" and that she is always "*willing to go the extra mile to review very complicated radiographs*." (Emphasis added.). Dr. D'Orsi further remarked: "With the current problems that radiology is undergoing, Charu has been a pillar, often taking care of the service alone, *despite several chronic medical problems*." (Emphasis added.) See letter from Dr. Carl D'Orsi, Exhibit G.

e.  In connection with a salary increase, Dr. Krishna Kandarpa MD, the former Interim Chair of Department of Radiology, thanked Dr. Desai for her hard work and contributions to the Department, stating, "I hope to work together with you to realize the Department's Mission and Vision, that we had formulated together this past year." See Letter from Dr. Krishna Kandarpa, Exhibit H.

f.  In September 2015, Dr. Jerry Balikian wrote a second letter for Dr. Desai, in which he stated: "I have known Dr. Desai for about 20 years as my most esteemed associate in the Division of Thoracic Radiology at UMass Memorial-University of Massachusetts Medical School. Charu *is a superb clinical radiologist, very well known for her accurate diagnoses*." (Emphasis added.) See letter from Dr. Jerry Balikian dated September 20, 2015, Exhibit I.

7.  In letters of reference given to Dr. Desai after she learned of her termination, colleagues again praised Dr. Desai's clinical ability, noting that clinicians and colleagues often sought her opinion on difficult cases:

3

a. Dr. Joseph Ferrucci, Chair of Department of Radiology from 2007-2012 and immediate predecessor to Dr. Rosen, described Dr. Desai as an "*outstanding radiologist with special expertise in chest radiology" who has an "excellent command of the intricacies of interpretation in chest CT scans and is an expert in plain chest radiographs.*" (Emphasis added.) Dr. Ferrucci stated that Dr. Desai *is routinely sought by clinicians for personal review of films and clinical consultation*. (Emphasis added.) Letter from Dr. Joseph Ferrucci, Exhibit J.

b. Dr. Aaron Harman, MD, a currently employed interventional radiologist in the Department, wrote that Dr. Desai "*truly distinguished with regards to the quality of work in interpreting both plain radiographs and CT scans. Dr. Desai is the first person I consult when interpreting a difficult chest CT scan, which speaks to her exceptional talent and native ability.*" (Emphasis added.) Dr. Harman further remarked that Dr. Desai possesses the "*ability to detect the most subtle of findings.*" (Emphasis added.) He also noted that Dr. Desai was selected as the recipient of the Teacher of the Year Award based on the collective vote of 20 residents, and she was commended for her work as a teacher and mentor in addition to her clinical work as a physician. Letter from Dr. Aaron Harman, Exhibit K.

c. Dr. Irwin stated, "*I cannot remember any of my patients ever suffering any adverse effects based upon readings made by Dr. Desai and I frequently had opportunities over the years to seek Dr. Desai's advice about cases.*" (Emphasis added.) Letter from Dr. Richard Irwin dated March 29, 2018, Exhibit L.

d. Dr. Andrew Chen, MD, a currently employed radiologist in the Department, who noted the Department's "instability" and " turmoil" due to "perpetual turnovers" in chest radiologists, observed, Dr. Desai "*is the most senior staff remaining in the chest division and the workhorse of that division. Unfortunately, this also adds undue pressure on the few staff that are present to keep the division running. If there is ever a question on a case, we know exactly who is always there and who to ask for help.*" (Emphasis added.) Letter from Andrew Chen, Exhibit M.

e. Dr. Gopal Vijayaraghavan, MD, praised Dr. Desai's "*extraordinary aptitude for reading chest radiographs and CT scans,*" stating that "*her interpretations are highly valued by our clinicians and radiology colleagues.*" (Emphasis added.) He also noted that residents awarded to her the prestigious "Best Teacher Award" among all Radiology faculty at UMASS. Letter from Dr. Gopal Vijayarghayan, Exhibit N.

f. Dr. George Eypper, MD, an Internal Medicine physician at UMMC, wrote: "While I have found the radiology team at UMass to be generally very helpful, *there a few radiologists whom I have found over the years whose knowledge and reliability have been particularly outstanding. Dr. Desai is one of these few. She is my "go to" chest radiologist for many years. She is willing to review*

4

*complicated cases. Her insight and advice have always been impeccable.*"
(Emphasis added.) Letter from Dr. George Eypper, Exhibit O

g.  Dr. Lacey McIntosh, D.O., M.P.H., wrote "*Charu is a careful and observant
    radiologist, I am always awed at her precision and incredible ability to pick up
    findings.*" "*This is especially apparent on plain films, which in my opinion is the
    hardest place to be detecting these findings. I run the weekly thoracic tumor
    boards, and often review new lung cancer cases that trace back to an amazing
    call by her on a chest radiograph.* I feel lucky to have her as a teacher. She brings
    wisdom and experience to the reading room." (Emphasis added.) Letter from Dr.
    Lacey McIntosh, Exhibit P.

h.  Dr. Karl Uy, MD, the Chief of the Division of Thoracic Surgery at UMMC, who
    was familiar with Dr. Desai and the quality of her work given her role as a
    diagnostic radiologist and his as a thoracic surgeon, wrote: "*The Department of
    Radiology as well as the entire medical center has benefited greatly over the
    years from her clinical service, aside from the generations of Radiology residents
    whom she has helped train.* Her mentorship and excellence in teaching was
    recognized with the Best Teacher Award in 2017- a very difficult award to
    achieve because of the rather large number of excellent faculty members within
    her department. I am sure that her wealth of knowledge and experience-
    especially the kind which cannot be sufficiently elaborated in textbooks-has not
    been unnoticed by the residents, and that they are showing their appreciation for
    her sharing this unselfishly." (Emphasis added.) Letter from Dr. Karl Uy, Exhibit
    Q.


Dr. Desai's Serious Heart Condition

8.  On November 7, 2000, Dr. Desai collapsed at home but nevertheless went to work.

    Radiology colleagues observed that she seemed to have a serious, immediate, and acute

    health issue. They requested an urgent appointment for Dr. Desai to see a cardiologist;

    she did so that day, and tests revealed she had a heartrate at times in the twenty beats per

    minute range. Desai Aff. at ¶ 3, Exhibit A. Clinicians at the Medical Center diagnosed

    her with a life-threatening heart condition sometimes known as tachy-brady syndrome.

    She had a pacemaker implanted by physicians at the Medical Center on November 10,

    2001.

9.  The pacemaker did not resolve Dr. Desai's symptoms. Desai Aff. at ¶ 3, Exhibit A.

10. Dr. Desai's heart condition substantially limits the function of her heart and causes Dr. Desai to experience spells of variable duration, in which she becomes weak, tired, and incapacitated. These typically but not always last for a few minutes. *See* Deposition Transcript of Charu Desai, MD ("Desai Dep."), at 185:13-186:19, attached as Exhibit R. Often, if she can rest for a brief period, she is able to return to what she was doing before the spell, including returning to work. Desai Aff. at 5, Exhibit A. At other times, if she was exhausted from working many days in a row without a break, her condition would flare; in that event she may not have been able to work the following day and would call out sick.  Desai Aff. at ¶ 5, Exhibit A.

11. When Dr. Desai gets tired, her spells occur more frequently. Desai Dep. at 423:18-22, Exhibit R.

Dr. Max Rosen

12. Max Rosen, MD, was appointed as the Chair of the Department of Radiology (the "Department") at the Medical School and the Medical Center effective September 1, 2012. <u>See</u> Deposition Transcript of Max Rosen, MD ("Rosen Dep."), at 17:1-10, attached as Exhibit S; Affidavit of Max Rosen, MD ("Rosen Aff"), at ¶ 2, Exhibit C

13. Dr. Rosen completed the Medical School's Annual Faculty Performance Evaluations for Dr. Desai from 2013 through 2018. Annual Faculty Reviews and Annual Faculty Review 2017-2018, Exhibit T.

14. In his capacity as Chair of the Department, Dr. Rosen supervised and managed all radiologists employed by the Medical Group, including Dr. Desai, Rosen Aff. at ¶ 6 Exhibit C, and supervised and managed all radiologists at the Medical Center.

Call Responsibilities

15. Defendants' Call and/or Weekend/Holiday Coverage Policy specifically provides, in Section 5, that "Senior attending are exempt from call and weekend/holiday coverage." Call and/or Weekend/Holiday Coverage Policy, Exhibit U.

16. Dr. Desai was a senior attending radiologist. See Desai Aff. at ¶ 8, Exhibit A; see also Emails from Ferrucci to Rosen dated October 11 2017, Exhibit V.

17. Dr. Desai made several requests to Dr. Rosen that she should be call exempt due to her status as a senior attending. Desai Aff. at ¶ 9, Exhibit A; Rosen Affidavit ¶ 33, Exhibit C. Dr. Rosen did not exempt her from call.  Desai Aff. at ¶ 10, Exhibit A.

18. Dr. Desai's complaints were referred to Human Resources. Human Resources personnel stated they were aware of the Call Policy and acknowledged that (male) senior attending Dr. Jerry Balikian was exempt from call pursuant to the policy due to his senior status. They did not exempt Dr. Desai from call, however, stating "the chest division is very tightly staffed," and "we really need her to participate" in call.  Emails between Mowlood and Shah dated May 19, 2017, Exhibit W.

19. Defendants continued to schedule Dr. Desai for call. Desai Aff. at ¶ 11, Exhibit A.

20. For two fiscal years (from October 1, 2015, through September 30, 2017), the Department implemented a program through which staff members could elect to "sell" calls to other radiologists to perform additional call for additional compensation, and the radiologist not doing call would have their salary reduced by an equivalent amount. Rosen Aff. ¶¶ 25, 26, Exhibit C.  The rate of each call was valued in accordance with the Department's per diem rates in effect at that time. Rosen Aff. ¶ 26, Exhibit C.

21. Because working daily for two weeks in a row due to being on call caused her fatigue that exacerbated her health condition, Dr. Desai "sold" call. Desai Aff. at ¶ 12, Exhibit A.

Dr. Desai's salary was reduced due to her "sale" of six of her ten weekend calls to other radiologists, in the amount of $19,200 in each of those two fiscal years. Rosen Aff. ¶ 26, Exhibit C.

22. Dr. Karin Dill, MD, Division Chief of Thoracic Radiology, and full-time attending physician while Plaintiff was actively employed, performed her weekend day call responsibilities remotely at a satellite campus located in Wellesley. Exhibit X.

23. Dr. Desai was never allowed to perform ANY of her weekend day call responsibilities remotely while employed under Dr. Rosen, rather she was required to be physically present to perform such duties at either University or Memorial Campus of UMMC.

Academic and Administrative Time

24. The Medical Center is an academic medical center that is affiliated with the Medical School. The Medical Center's radiologists teach residents.  Employment Agreement, Exhibit Y.

25. Dr. Desai routinely taught medical students and residents as part of her job responsibilities in the Department of Radiology.  See Annual Faculty Reviews, Exhibit T.

    a. On Plaintiff's 2012-2013 Faculty Annual Performance Review, Dr. Rosen writes that Plaintiff should "Continue providing excellent clinical service and resident teaching at the PACS workstation." UMM 00287

    b. On Plaintiff's 2012-2013 Faculty Annual Performance Review, Dr. Rosen expresses that resident evaluations submitted regarding Plaintiff were outstanding. UMM 00287

    c. On Plaintiff's 2013-2014 Faculty Annual Performance Review, Dr. Rosen writes "I appreciate the clinical efforts of Dr. Desai and her contribution to resident teaching at the PACS station." UMM 00292

    d. On Plaintiff's 2014-2015 Faculty Annual Performance Review, Dr. Rosen writes that he "appreciates [Plaintiff's] commitment to the Department and teaching of our residents." UMM 00297

e. On Plaintiff's 2015-2016 Faculty Annual Performance Review,  Dr. Rosen writes that "Dr. Desai has contributed to the chest section through her clinical work interpreting chest x-rays and Chest CT and teaching residents at the PACS station."  UMM 00302

26. Dr. Desai was selected as the recipient of the Teacher of the Year Award in 2017 based on the collective vote of 20 residents, and she was commended for her work as a teacher and mentor in addition to her clinical work as a physician. See Letter from Dr. Aaron Harman, Exhibit K; Presentation of Teacher of the Year Award, Exhibit Z. Dr. Rosen was aware of this, writing in 2016-2017 Faculty Annual Performance Review, that "Dr. Desai and I discussed her recognition by this year's graduating Residents as their "teacher of the year."  Annual Faculty Reviews, Exhibit T ..

27. The Department's Academic and Administrative Time Policy provides that academic time may be allotted for academic responsibilities including teaching, attending institutional and department committees, and attending a conference.  See Academic and Administrative Time Policy of the UMass Memorial Medical Group Department of Radiology, Exhibit AA.

28. Dr. Desai's Annual Performance Evaluations, signed by Dr. Ferrucci when he served as Chair of the Department, memorialize Dr. Desai contributed 8% of her time to education (*i.e.*, teaching). Annual Faculty Reviews, Exhibit T.

29. Dr. Desai's Annual Performance Evaluations signed by Dr. Rosen memorialize that she devoted 25% of her time to teaching. Annual Faculty Reviews, Exhibit T.

30. Dr. Desai served as the Quality Assurance representative for the Chest Division on the Quality Improvement Committee. Dr. Rosen appointed me. Desai Aff. at ¶ 13, Exhibit A

31. Quality assurance constitutes an "Other -Admin / Academic Function" administrative duty. See Academic and Administrative Time Policy of the UMass Memorial Medical Group Department of Radiology, Exhibit AA

32. In the event the Chief of the Division of Thoracic Radiology was absent, Dr. Desai assumed full responsibility for leadership and effective daily operational management of the Division of Thoracic Radiology. 2017-2018 Annual Faculty Review, especially UMM 00313, Exhibit T; Desai Aff. at ¶14, Exhibit A.

33. In the event the Chief of the Division of Chest Radiology, (i.e. Dr. Dill) was absent, Dr. Desai was the only full-time chest radiologist in the Division of Cardiothoracic Imaging following the departure of Eric Schmidlin (as a full time thoracic radiologist in the Division) up until and for a period after the day that Dr. Desai was informed of her termination, until the arrival of Maria Barile on December 31, 2018. See Employee Change form Schmidlin and Barile Employee Introduction form, Exhibit BB.  Desai Aff. at ¶ 15. Exhibit A.  At those times, Dr. Desai was often the only radiologist physically present in the Division of Cardiothoracic Imaging. Id.; Email from Dr. Desai to Dr. Rosen dated May 31 2016, Exhibit CC.

34. In 2016, Dr. Karin Dill, then Chief of the Division of Chest Radiology, was physically absent from the Department more than 100 working days in 2016 and 2017. See Dr. Dill Faculty Review, Exhibit DD .; Dr. Dill Employment Offer Letter, Exhibit EE .; Physician Time Off, Exhibit FF.

35. On Dr. Desai's 2016-2017 Faculty Annual Performance Review, Dr. Rosen wrote that "Dr. Desai and I discussed her recognition by this year's graduating Residents as their "teacher of the year." Annual Faculty Reviews, Exhibit T.  "We also discussed several of

her concerns about allocation of academic time, call responsibilities, etc.  These had all been previously discussed with Dr. Desai and representatives from the HR Department." Id.

36. Dr. Desai requested 12 Academic and/or Administrative Days per year.  Dr. Rosen declined to grant any to her. Desai Aff. at ¶ 16, Exhibit A

37. Dr. Rosen advised Dr. Desai that the policy could not be modified on an individual basis. Desai Dep. at 262:1-263:14, Exhibit R

38. Defendants' documents evidence that Dr. Rosen modified the Academic/Administrative Time Policy on an individual basis for younger, male and/or non-disabled doctors including Dr. Darren Brennan, Dr. Erica Ghosh, Dr. Baccei, Dr. Brochu, Dr. Cerniglia, Dr. Dundanamdappa, Dr. Gauget, Dr. Karam, Dr. Young Kim, Dr. Leeman, Dr. Licho, Dr. Makris, Dr. Masciocchi, Dr. Nicola, Dr. Sirkis, Dr. Wallace, Dr. Wilson, Dr. Zheng, Dr. Karin Dill, Dr. DeBenedictis, Dr. Maria Barile, Dr. Ryan Tai. Physician Time Off, Exhibit FF; Barile offer letter, Exhibit GG; Tai offer letter, Exhibit GG.

39. For example, Dr. Rosen instructed Dr. Karin Dill to shift her academic and administrative time to Fridays, even though the Policy states that Academic and Administrative time should not routinely be scheduled on Friday. Email from Rosen to Dill dated September 24 2018, Exhibit HH.

40. Several radiologists were granted academic time more than what was allowed under the Policy, used it to extend vacation in violation of the Policy, scheduled it on a Friday in violation of the Policy, and/or allowed it to take precedence over clinical work, also in violation of the Policy: Dr. Dill, Dr. Barile, Dr. Baccei, Dr. DeBenedictis.  Academic and

Administrative Time Policy, Section III, Item 3,5,6,8.9, Exhibit AA; and Physician Time Off, Exhibit FF.

41. Dr. Rosen granted to Dr. Dill 72 Academic and/or Administrative Days. Physician Time Off, Exhibit FF.

42. Dr. Maria Barile, who replaced Dr. Desai, was granted 36 Academic Days immediately upon hire. Barile Offer Letter, Exhibit GG.

43. Dr. Rosen granted to Dr. Ryan Tai 23 Academic Days immediately upon hire. Tai Offer Letter, Exhibit GG.

44. Radiologists were often physically absent from the Department during their assigned academic and/or administrative days. Desai Aff. at ¶ 17, Exhibit A.

45. Dr. Rosen admitted there was no direct monitoring of work produced or performed during any radiologist's assigned non-clinical (academic or administrative) day, that radiologists were given flexibility as to when they performed the non-clinical work, which may or may not have occurred on the academic and/or administrative day that any radiologist designated for this purpose and may not have occurred at all.  Rosen Dep. at 108:23-109:17, Exhibit S.

46. Dr. Rosen stated the academic work produced by a radiologist was assessed annually, but he did not evaluate whether a radiologist delivered the amount of academic / administrative / non-clinical work he expected based on the academic days he allotted them. Rosen Dep. at 106:20-107:19. Exhibit S.  Defendants produced no evidence that that Dr. Rosen applied measurable outcomes and deliverables to evaluate the amount of academic/administrative work produced by radiologists on their non-clinical days.  Id., Exhibit S.

47. The Department's Academic/Administrative Time Policy indicates that the clinical schedule will take precedence over radiologists' Academic and/or Administrative time, that Academic Time cannot be used to extend a leave (vacation) and will not be scheduled immediately before or after a leave, and that Academic Time cannot routinely be scheduled on a Friday unless preapproved by the Division Chief. Academic / Administrative Time Policy, Exhibit AA.

48. Defendants' documents evidence that Dr. Dill took Academic and/or Administrative days without regard to clinical schedule and clinical workload backup, scheduled academic and/or administrative days to extend vacations, scheduled academic and/or administrative days immediately before or after a leave and, at Dr. Rosen's instruction, scheduled academic and administrative days on Friday. Physician Time Off, Exhibit FF; Email from Rosen to Dill dated September 24, 2018, Exhibit HH.

49. Defendants produce no evidence in Discovery that indicates that radiologists submitted formal proposals to justify academic time that Dr. Rosen allotted to them.  Furthermore, Dr. Roychowdhury asserts that he did not need to submit a formal proposal for receipt of academic time when he worked under Dr. Rosen. Deposition of Abhijit Roychowdhury, MD ("Roychowdhury Dep."), at 53:14-54:3, Exhibit LL.

Personal Home Workstations

50. Plaintiff was granted a workstation in the early 2000s, around the time that Plaintiff's heart condition was diagnosed and she was given a pacemaker. The Chair of the Department at the time provided to her a personal workstation, and she worked from home. Desai Aff. ¶ 19, Exhibit A

51. Defendants state that a total of nine radiologists received personal home workstations from early 2017 until the date of Dr. Desai's termination: Aly Abayazeed, MD, Satish Dundamadappa, MD, Carolyn Dupuis, MD, David Choi, MD, Andrew Chen, MD, Karin Dill, MD, Sami Erbay, MD, Philip Steeves, MD, and Eric Schmidlin, MD Rosen Aff. at ¶ 38, Exhibit C

52. Although Dr. Rosen stated that neuroradiologists used home workstations due to "unique scheduling in neuroradiology, Drs. Dupuis, Schmidlin, and Steeves are not neuroradiologists. Desai Aff. at ¶ 20, Exhibit A.

53. At a Chest Division meeting held on June 14, 2017, the use of personal home workstations was discussed. Dr. Desai expressed her desire to have a personal workstation to take weekend call from home.  See Chest Division Meeting Minutes dated June 14, 2017, Exhibit II.

54. Dr. Desai also separately asked Dr. Rosen if she could have a personal home workstation so that she could take call at home because she gets tired. Deposition of Charu Desai at 222:9-223:22, Exhibit R.

55. In response, Dr. Rosen told Dr. Desai she could go part-time or per diem ("locum"). Desai Dep. at 224:1-22, Exhibit R. Because the practice of radiology was my life's calling, I declined to go part-time or per diem.  Desai Aff. at ¶ 27, Exhibit A.

56. Dr. Rosen did not grant Dr. Desai a personal home workstation. Desai Aff. at ¶ 21, Exhibit A.

57. Drs. Schmidlin and Steeves currently perform the entirety of their responsibilities using a remote personal workstation. See Schmidlin Per Diem Agreement and Steeves Per Diem Agreement, EXHIBIT JJ   Radiologists perform the same work whether they are on call

14

or not, and whether they work at workstations at the medical facility or at home. Desai Aff. ¶ 22, Exhibit A.

Dr. Karin Dill

58. In February 2016, Dr. Rosen hired Dr. Dill and appointed her to the role of Division Chief of Thoracic Radiology. Dill Employment Contract, Exhibit EE

59. Division Chiefs are responsible for the effective daily operational management of their division, financial stability, long term strategic planning, faculty development, and service for patients and referring clinicians. Divisions Chiefs are responsible for the business and operational functions of their divisions, and include responsibilities for clinical operations, financial sustainability, customer service, quality assurance and improvement, faculty development, recruitment and retention, research/scholarship, innovation, resident/fellow training, medical student education, and other division-specific functions. Rosen Aff. at ¶ 92 at Exhibit C.  It is a prestigious position. Desai Aff. at ¶ 23 at Exhibit A

60. In deviation from prior practice within the Department, in which the most senior remaining radiologist was asked to replace the departing Chief of a Division, Dr. Rosen did not ask Dr. Desai if she was interested in the role. Desai Deposition at 237:5-7, at Exhibit R

61. On April 19, 2016, Dr. Desai met with Dr. Dill to discuss the Division's work schedule and Dr. Desai's plans for summer vacation. Their meeting was cordial.  Email from Dill to Desai Dated April 19, 2016, Exhibit KK; Desai Aff. ¶ 24, at Exhibit A.

62. On May 31, 2016, Dr. Desai expressed to Dr. Rosen concerns about Dr. Dill's discriminatory treatment of radiologists in the Department. Email from Desai to Rosen

dated May 31 2016, Exhibit CC  She stated that all attendings in the Division of Chest Radiology should adhere to a fixed work hour schedule, which will avoid the perception of disparate treatment; that there were several radiologists who use days that they are assigned to the clinical service to complete non-clinical (academic / administrative) responsibilities, which ultimately detracts from their ability to help complete the daily clinical workload, which in turn impacts optimal patient care; that she would not tolerate any inappropriate behavior or discriminatory treatment from any physician, ancillary staff, or trainee; and that all employees should to be subject to equal standards, which will help avoid intra-divisional conflicts. Email from Dr. Desai to Dr. Rosen dated May 31 2016, Exhibit CC.  Dr. Desai received no response. Desai Aff. at ¶ 25, Exhibit AA. Dr. Dill was aware of Dr. Desai's concerns about discriminatory treatment in the Division. See Dill Notes, Exhibit CC.

63. The Chest Division was understaffed, and workflow was often backed up. Deposition of Abhijit Roychowdhury ("Roychowdhury Dep."), at 50:12-50:17, 51:1-51:4, Exhibit LL; Email Rosen to Charu May 13 2016, Exhibit CC; MCAD Position Statement, Exhibit B, Item 1c., Exhibit MM.

64. Dr. Rosen and Dr. Stephen Tosi, the Chief Medical Officer and Sr. Vice President at the Medical Center, were aware that on any given day, there were 50-100 unread Chest CT scans. Email from Rosen dated October 3, 2017, Exhibit NN.

65. Dr. Dill was aware that clinical work was backed up. Email from Dill to Rosen dated March 30, 2017, Exhibit OO.

66. On several occasions, per diems and/or part time radiologists were hired to compensate for staffing shortfalls/deficiencies. Deposition of Joseph Ferrucci, MD ("Ferrucci Dep."), at 27:21-27:24, Exhibit PP.

67. Dr. Rosen blamed Dr. Desai's teaching style for the backlog. Emails between Makris and Rosen dated October 4 2016, Exhibit QQ.

68. Dr. Joseph Makris, then Division Chief of Pediatric Radiology and Residency Program Director for the Department of Radiology, informed Dr. Rosen that the "issues in chest are bigger" than Dr. Desai's teaching style. Emails between Makris and Rosen dated October 4 2016, Exhibit QQ.

69. In 2016 and 2017, Dr. Dill, the Division Director, had academic/administrative time / vacation /sick / working from home PACS station that accounted for at least 100 total working days, 72 of which were Academic and Administrative Time. See Physician Time Off, See Exhibit FF; Karin Dill, MD, Employment contract, Exhibit EE

70. Dr. Rosen granted to Dr. Dill more non-clinical days than allowed by the Academic and Administrative Time Policy. See Academic and Administrative Time Policy, See Academic and Administrative Time Policy, Exhibit AA ; Physician Time Off, Exhibit FF; Dill Employment Contract, Exhibit EE.

71. Due to Dr. Dill's frequent physical absences from the Division, Dr. Desai bore heaviest clinical workload. Desai Aff. at ¶ 26, Exhibit A; letter from Dr. Jeffrey Leppo, Exhibit E, Letter from Andrew Chen, Exhibit M; see also Plaintiff's and Dr. Dill's RVUs for 2016-2017 and 2017-2018 at Exhibit RR; and Dr. Dill Faculty Review, Exhibit DD.

72. On September 24, 2018, Dr. Rosen proposed reducing the number of non-clinical days that he had previously granted to Dr. Dill, "to bring it in line with the rest of the

department." Email from Rosen to Dill dated September 24 2018, Exhibit HH.   To

"prevent the large swings in unreads (and the associated need to put extra resources into

the section when the lists get long), and to ensure that there are always 2 people on chest

each day," Dr. Rosen reduced Dr. Dill's non-clinical days from 72 down to a total of 48

days annually. Id.; See also Dill Faculty Review, Exhibit DD ; Dr. Dill Employment

Offer Letter, Exhibit EE ; Physician Time Off, Exhibit FF

<u>The Practice of Radiology</u>

73. The practice of Radiology, like other diagnostic medical work, can involve a degree of

probability and subjectivity, and concerns or disagreements can be raised by treating

physicians at times. Rosen Aff. at ¶ 49. It is not infrequent, when a finding is made on an

imaging study in the absence of clinical information, that the differential diagnosis or the

weight of the differential diagnosis is skewed one way or another. Rosen Dep. at 95:14-

96:16, Exhibit S

74. Dr. Ferrucci states that "radiology reads are not black and white, and the verbiage and

language that Doctor A might use might be a little bit different than what Doctor B might

use, and whether or not that is a legitimate peer review problem is always a little fuzzy."

Deposition of Joseph Ferrucci, at 61:10-61:14, Exhibit PP.

75. It is common practice for a clinician to ask for a second opinion from another radiologist

on a particular case. UMASS Memorial Medical Center MCAD Second Position

Statement, Part A, page 2, paragraph 4, Line 1-2; Exhibit XX; Deposition of Joseph

Ferrucci, MD, ("Ferrucci Dep."), at 33:15-33:17.; Rosen Dep. at 54:18-55:1; 153:14-20.

76. It is standard practice that a concern about another radiologist's interpretation is brought to the attention of the radiologist that interpreted the image in question. Roychowdhury Dep. at 42:18-42:22, Exhibit LL.

77. Dr. Dill never spoke or wrote to Dr. Desai regarding alleged work quality issues throughout entirety of Dr. Desai's employment. See Defendant Karin Dill's Answer's to Dr. Desai's Second Set of Interrogatories, Exhibit SS.  She did cordially speak to Plaintiff about requests for scheduling summer vacation. Email from Dill to Desai Dated April 19, 2016, Exhibit KK

78. Dr. Dill does not recall the specific dates or details of any instance when she directly informed Dr. Desai of any issues regarding the quality of her readings. Defendant Karen Dill's Answer's to Dr. Desai's Second Set of Interrogatories Answer No. 1, Exhibit SS

79. Dr. Rosen delegated to Dr. Dill the handling of Dr. Robinson's alleged concerns about quality of Dr. Desai's reads. Rosen Dep. at 190:5-191:3, Exhibit S.

80. Dr. Rosen is not aware of the specifics of any discussion that took place between Dr. Dill and Dr. Desai regarding quality/performance concerns of Dr. Desai, and does not verify whether he was aware that any discussions of such nature took place at all. Rosen Dep. at 60:3-60:20, Exhibit S

81. It was Dr. Dill's general practice to speak with colleagues in person when possible because she believed that was the courteous and professional way to address issues, including concerns or questions about reads. Defendant Karen Dill's Answer's to Dr. Desai's Second Set of Interrogatories Answer No. 1, Exhibit SS; see also Rosen Dep. at 300:18-301:24, Exhibit S.

Reasons Given for the Conduct of the Focused Peer Review

82. In January 2017, Dr. Rosen decided to conduct an independent peer review of Dr. Desai's CT reads (by Dr. Litmanovich). Rosen Aff. at ¶ 56, Exhibit C.

83. Dr. Rosen gave three reasons under oath for his decision to conduct an independent peer review by Dr. Litmanovich: Dr. Dill's concerns about the quality of Dr. Desai's readings; his own knowledge of UMMC's Quality Assurance System and Data, and complaints lodged by Dr. Robinson.  Rosen Aff. at ¶ 58, Exhibit C.

Dr. Dill's Concerns about Dr. Desai

84. Defendants previously stated, under oath, that Dr. Dill expressed to Dr. Rosen concerns about Dr. Desai's behavior, *not quality*. MCAD Position Statement, page 4, Nos. 9, 10; p. 5, Nos. 16, 17, and Position Statement Exhibit C; Exhibit MM.

85. In Dr. Desai's 2017 Medical Center Reappointment form, Dr. Rosen recommends Dr. Desai for reappointment and clinical privileges but states he is conducting a confidential peer-review following complaints from a (*one*) *referring clinician – i.e.*, referring clinician *Dr. Robinson*, not (radiologist) Dr. Dill. Review and Action Form, UMM 02715, Exhibit TT.

Dr. Rosen's Personal Knowledge of UMMC's Quality Assurance System and Data

86. The Department has a quality assurance ("QA") system designed to improve the quality of radiology services. Rosen Aff. at ¶ 41, Exhibit C.

87. Prior to 2019, the quality assurance system was based, in part, on a peer review system, where radiologists within the Department would review one other's reads. Rosen Aff. at ¶ 41, Exhibit C

88. In this system, all radiologists in the Department were asked to enter information into the quality assurance system in two circumstances: (1) through an automated process that

requests that a certain number of cases be double-read periodically by each radiologist on staff; and (2) when a radiologist is made aware of a quality issue about an interpretation, the radiologist is obligated to enter that information into the peer review database. Rosen Dep. at 224:8-225:6, Exhibit S ; Rosen Aff. at ¶ 42, Exhibit C .

89. When radiologists reviewed studies as part of the quality assurance process, they would in put a numerical score as to their review.  A "1" indicated the reviewer concurred with the reviewee's radiological interpretation; a "2" indicated the reviewer identified a discrepancy in interpretation/not ordinarily expected to be made, but which was denoted as an "understandable miss;" a "3" indicated the reviewer identified a discrepancy in the reviewee's interpretation and that the discrepancy should have been caught by the radiologist "most of the time;" and a "4" indicated the reviewer noted a discrepancy in interpretation that represented a "misinterpretation of findings" and that should be identified "almost every time." Rosen Aff. at ¶ 43, Exhibit C

90. At their Annual Faculty Performance Reviews, Dr. Rosen routinely provided staff radiologists with information from the quality assurance database regarding peer review reads labelled with scores of either "3" or "4." Dr. Rosen would advise the radiology staff members of these entries and ask the staff member to review the cases if they had not already done so, as a part of the quality improvement process. Rosen Dep. at 153:9-13, Exhibit S; Rosen Aff. at ¶ 44, Exhibit C.

91. Dr. Desai was provided with such a summary from the quality assurance system during her 2016-2017 Annual Faculty Performance Review, at which time Dr. Desai met personally with Dr. Rosen. Rosen Aff. at ¶ 45, Exhibit C ; Rosen Dep. at 224:2-07,

Exhibit S ; see also Peer Review Summary Document (the "Peer Review Summary"), CD 00049 Exhibit UU.

92. During Dr. Desai's 2016-2017 Annual Faculty Performance Review, Dr. Rosen did not inform her she had an excessive number of 3 and 4 level misreads. Rosen Deposition Day 1, at 194:24-195:4, 195:16-195:21, Exhibit S. Desai Aff. ¶¶ 28, Exhibit A

93. Dr. Rosen does not retain the annual reports of peer review data indicating the number of 3 and 4 level misreads (as defined above) generated for and distributed to each physician at their respective annual performance reviews. Rosen Dep. at 172:8-172:11, Exhibit S

94. Dr. Rosen admits that he is not aware of how many cases were entered about other radiologists into the QA system. Rosen Dep. at 231:16-231:24, Exhibit S

95. Defendants' document "Summary_Peer-Review_Detail_RG_3and 4_14July2016" shows that, as of July 14, 2016, there were not a greater number of 3 or 4 level misreads recorded for Dr. Desai than for other radiologists in the Department. Peer Review Summary, Exhibit VV; Rosen Dep. at 241:19-244:14, Exhibit S.

96. Dr. Andrew Bennett had two cases marked 3 and four marked 4. Dr. Brian Brochu had two cases marked 3 and four marked 4. Dr. Dennis Coughlin had four cases marked 3 and one marked 4. Dr. Joseph Ferrucci had four cases marked 3 and three marked 4. Dr. Ronald Garrell had ten cases marked 3 and six marked 4. Peer Review Summary, Exhibit VV.

97. According to data recorded in the QA system, during the approximately three years Dr. Dill worked at the Medical Center, she entered information in the QA system indicating disagreement with the radiologist's initial read for 31 radiologists in 79 instances

(including three of her own instances of a Category 4 misread). Dill Peer Review, Exhibit WW; Rosen Affidavit ¶ 47, Exhibit C.

98. Between July 1, 2016, and June 30, 2017, Dr. Dill entered reviews for approximately 87 cases into the QA system. Of those, only 11 were cases that Dr. Desai had initially interpreted.  MCAD Second Position Statement, Part A, page 3, paragraph 2, Line 1-3, Exhibit XX.

99. Dr. Desai's cases accounted for 12.6% of Dr. Dill's entries.  No disciplinary action taken against the other 87.4% readers, including herself. Desai Aff. ¶ 29, Exhibit A.

100.     Dr. Rosen was aware that Dr. Dill had conducted a Peer Review of Dr. Desai reads from July 1, 2016, to June 30, 2017, as he generated and distributed Summary Peer Review data to Dr. Desai at her annual faculty reviews. The Peer Review Summary, CD 49, Exhibit UU.

101.     Defendants allege that Dr. Dill never misrepresented the work of Dr. Desai or any other physicians. Defendants' Answer to Amended Complaint ¶ 57, Exhibit YY.

102.     In her Peer Review of Dr. Desai, Dr. Dill falsely attributed to Dr. Desai her own significant misread. Peer Review Summary Document 2016-2017, Exhibit UU.

103.     Dr. Desai is not aware of any systemic controls over the misattribution of poor quality reads.  Desai Aff. ¶ 30 , Exhibit A   Dill Peer Review, Exhibit WW  for example, shows that Dr. Dill read her own initial interpretation when conducting quality assurance overreads and entering them into the peer review system.  The system was designed for a reviewer to "peer review" *another* radiologist's reads, not their *own* reads.  However, Dr. Dill often "peer reviewed" her *own* reads and detected significant errors in the interpretations associated with her *own* reads.

23

104.     The documents produced by Defendants reveal no independent review was conducted of any other radiologist's readings based on Dr. Dill's concerns as reflected in the QA system. Desai Aff. ¶ 31, Exhibit A.

Dr. Robinson's Complaints

105.     Dr. Kimberly Robinson, MD, was a pulmonologist who treated patients at UMass Memorial Health Marlborough Hospital and for a period served as President of the Medical Staff for UMass Memorial Health Marlborough Hospital. Rosen Aff. at ¶ 48, Exhibit C; Desai Aff. ¶ 32 , Exhibit A.

106.     Dr. Robinson was unhappy, in general, with the reads provided by University Campus radiologists for UMass Memorial Health Marlborough Hospital. Rosen Dep. at 143:2-143:8, Exhibit S ; Desai Aff. ¶ 33, Exhibit A

107.     Dr. Robinson complained not only about reads performed by Dr. Desai, but also about reads performed by several other radiologists, including Drs. Andrew Bennett, Adib Karam, Joseph Ferrucci, David Bindman, Hao Lo, Girish Tyagi or Andrew Singer. See  Rosen Dep. Exhibit 17 and Rosen Dep. at 115:1-115:20, 115:21-117:2, 117:8-117:18, 190:5-190:8, attached as Exhibit S ; Emails between Brennan and Rosen dated January 8 2018, attached as Exhibit ZZ .; Emails between Robinson and Rosen dated October 17 2017, Exhibit ZZ ; Emails between Rosen and Dill dated March 2 2017, attached as Exhibit ZZ .; Emails between Singer and Rosen dated February 17 2017, attached as Exhibit ZZ .

108.     Drs. Andrew Bennett, Adib Karam, David Bindman, Hao Lo, Girish Tyagi and Andrew Singer, all read Chest CTs as part of their call responsibilities. Desai Aff. at ¶ 34, Exhibit AA.  Defendants did not investigate any of these younger and/or male and/or

non-disabled radiologists based on Dr. Robinson's concerns. Desai Aff. at ¶ 34, Exhibit

AA   Dr. Rosen admits that patients should receive the highest quality, safest care 24

hours a day. Rosen Dep., at 27:24-28:4, Exhibit S

109.     It was Dr. Robinson's opinion that radiology quality "issues extend beyond

chest." Emails between Robinson, Brennan, and Rosen dated February 27 2018, attached

as Exhibit ZZ ..

110.     Dr. Robinson's complaints were regarded as "mostly unjustified."; Rosen Dep. at

141:23-142:11, attached as Exhibit S.

111.     Dr. Rosen states that he would "always take Dr. Robinson's complaints and

subsequently do his own analysis to see if they were founded or not." Rosen Dep. at

139:18-139:20, attached as Exhibit S

112.     Dr. Rosen never reviewed a specific case-based complaint brought forth by Dr.

Robinson regarding Dr. Desai. Rosen Dep. at 55:2-55:9, attached as Exhibit S

113.     Dr. Rosen never told Dr. Desai, orally or in writing, about any of her cases about

which quality concerns were raised at a meeting held on January 31, 2017. That meeting

included, among others, clinicians at UMass Memorial Marlborough. E-mail from M.

Rosen regarding Meeting Minutes, February 8, 2017, attached as Exhibit AAA.

114.     Prior to informing Dr. Desai of her termination, Dr. Rosen never directly

informed her about any of Dr. Robinson's concerns about her quality of reads. Rosen

Dep. at 55:9-56:14, attached as Exhibit S.

Design of Independent Review Conducted by Dr. Litmanovich

115.     On February 1, 2017, Dr. Rosen requested that file room personnel gather cases

for an independent review of Dr. Desai. See E-mails between K. Green and M. Rosen,

February 1, 2017, attached as Exhibit BBB .. Rosen Dep. at 154:1-19; 166:5-12, attached

as Exhibit S.

116.	In selecting CT scans for the independent review, Dr. Rosen ordered the

Department's file room staff to select 25 chest CT studies reviewed by Dr. Desai and to

select a total of 25 chest CT studies reviewed by multiple other radiologists. Rosen Aff.

at ¶ 60, attached as Exhibit C.  See PowerPoint Slide titled Methods, attached as Exhibit

CCC ; See Defendant Max Rosen MD's Answers to Plaintiff's Second Set of

Interrogatories ("Rosen Second Answers to Ints."), Response No. 1 and Exhibit A

thereto, attached as Exhibit DDD.

117.	None of the 25 of Dr. Desai's chest CT scan studies that were selected for

inclusion in the independent review were studies that Dr. Desai interpreted for patients at

UMass Memorial Health Marlborough Hospital. Desai Aff. 35, attached as Exhibit A.

118.	For the independent review, Dr. Rosen did not retain the third-party independent

reviewer company that the Department had engaged in 2016 to perform the review of a

younger, male, non-disabled radiologist, Dr. Ronald Garrell. Rosen Dep. 299:1-19,

attached as Exhibit S ..

119.	On August 22, 2017, Dr. Rosen emailed radiologist Dr. Diana Litmanovich about

an independent review project. See Emails between Rosen and Litmanovich dated August

22, 2017 to August 26 2017, attached as Exhibit EEE ..

120.	Dr. Rosen knew Dr. Litmanovich, who is employed as a thoracic radiologist at

Beth Israel Deaconess Medical Center, prior to selecting her to conduct Dr. Desai's

independent review as they had previously worked together at Beth Israel Deaconess

Medical Center. Rosen Dep. 159:14-159:23, attached as Exhibit S .; Rosen Aff. at ¶ 62, attached as Exhibit C ..

121.    On September 19, 2017, Dr. Rosen hired Dr. Litmanovich to conduct review of Dr. Desai's CT reads. Rosen Aff. at ¶ 56, attached as Exhibit C .. Dr. Rosen requested that Dr. Litmanovich review the images for each of the 50 CT studies, with the corresponding report, and provide her opinion as to whether she agreed or disagreed with the interpretation and, if she disagreed, to indicate whether it was a minor or major disagreement and whether the disagreement would have an impact on patient care in her opinion. Rosen Dep. at 158:20-159:9, attached as Exhibit S .; Rosen Aff. at ¶ 63, attached as Exhibit C ..

<u>Dr. Rosen's Response to Complaints Raised By Dr. Desai and Dr. Dill</u>

122.    On September 21, 2017, Dr. Dill and Dr. Desai both complained about an interaction in which they exchanged words about signing out residents. See Email from Desai to Brennan dated September 21, 2017, UMM 00539, attached as Exhibit FFF .. In her response to Dr. Brennan's request that she give him a statement about the matter, Email from Brennan to Charu dated September 21 2017, attached as Exhibit GGG .. Dr. Desai wrote, among other things:

> Because she is rarely even visible in the department, the burden of signing out the residents' cases is most entirely on me.  This is unfair and unacceptable… I would also like to mention that her lack of presence in the division (claiming that she is working from home, never tending to her several responsibilities to the service and signing out with the resident, calling in sick for extended periods) is unfair to me, the chest division, and to patient care.  Due to her lack of presence on most days, I am forced to unfairly take on the burden of the entire division, including signing out with the residents.  Her lack of commitment to the service or the work is extremely unfair and unacceptable for patient care.

Email from Desai to Brennan dated September 21 2017, attached as Exhibit HHH.

27

123.     Upon learning of the matter, Dr. Rosen requested a report of everything Dr. Desai had read that day. He did not do so for Dr. Dill. See Email from Rosen to Emrich dated September 22, 2017, attached as Exhibit III ..

124.     There is an email thread between, among others, Dr. Rosen and Kathleen LeBlanc in Human Resources about the matter. Email from Rosen to Mowlood and Leblanc dated September 22, 2017, attached as Exhibit HHH .. After meeting with Ms. LeBlanc, Dr. Rosen wrote a follow up email to her about Dr. Desai's complaint, stating, "Seems like she [Dr. Desai] is clearly trying to make this about Karin [Dill] and not about her." Email from Rosen to Mowlood and Leblanc dated September 22, 2017, attached as Exhibit HHH ..

125.     Upon reviewing the report of Dr. Desai's reads on September 21, 2017, Dr. Rosen wrote, "I assume she was working on [her email to Dr. Brennan] (or with someone) from noon to 2:12.  I don't know where she was working from, btu (sic) was clearly not reading films." Email from Rosen to Mowlood and Leblanc dated September 22, 2017, attached as Exhibit HHH

Timing of Dr. Litmanovich's Conduct of Her Review and Issuance of Her Report

126.     On August 22, 2017, Dr. Rosen communicated via email to Diana Litmanovich regarding independent review project. The email reveals that Dr. Rosen had previously discussed independent review project with Dr. Litmanovich prior to this date. See Exhibit JJJ

127.     On September 19, 2017, Dr. Rosen officially hired Dr. Diana Litmanovich to conduct a review of Plaintiff's CT reads. Ex. A, Rosen Aff. at ¶¶ 56, 62, attached as Exhibit C.

128.     On October 13, 2017, Dr. Rosen informed Dr. Litmanovich that she had been

granted electronic access to the cases selected for her review. See Emails between Rosen

and Litmanovich dated October 13, 2017, attached as Exhibit JJ. .Dr. Rosen also

provided de-identified reports for each of the studies. Rosen Dep. at 158:20-159:9,

attached as Exhibit S.

129.     Between December 2, 2017, and December 25, 2017, Dr. Litmanovich conducted

her review of 50 CT scans. Emails between Rosen and Litmanovich dated December 7,

2017, attached as Exhibit KKK; Email from Rosen to Mowlood dated December 26,

2017, attached as Exhibit LLL.

130.     On December 25, 2017, Dr. Litmanovich formally communicated to Dr. Rosen

her findings for the independent review. See email from Rosen to Mowlood dated

December 26, 2017, attached as Exhibit LLL; See also Litmanovich Review, attached as

Exhibit MMM.  Dr. Litmanovich concluded that "No life-threatening misses or

misinterpretations were found." Id.

Expert Report of Radiologist Dr. James Gruden, MD

131.     Dr. Desai's expert, radiologist Dr. James Gruden, MD, is a board-certified

radiologist with expertise and subspeciality fellowship training in Thoracic Radiology.

He currently serves as a Full Professor of Radiology at Weill Cornell Medical College

and Division Director of Body and Cardiothoracic Imaging at the New York-Presbyterian

- Weill Cornell Medical Center. See Expert Report of James F. Gruden, MD ("Gruden

Report") Exhibit A, attached as Exhibit NNN.  He is board certified by the American

Board of Radiology, a Diplomate of the American Board of Radiology, and a Diplomate

of the National Board of Medical Examiners. Id.

132.     Dr. Gruden actively practices diagnostic thoracic radiology and interprets films

daily. He is familiar with the standard of care as it pertains to the practice of radiology,

and specifically thoracic radiology. Id.

133.     Following Dr. Gruden's hire by Dr. Desai, he conducted a blinded review of the

50 CT scan images and their corresponding reports.  Following his initial blinded review,

he was given access to Dr. Litmanovich's findings on the same set of data and was aware

of which CT scans were interpreted by Dr. Desai and which scans were interpreted by

other radiologists.  Id.

134.     Dr. Gruden concluded that Dr. Desai made no significant errors of interpretation

or reporting, nor errors that would affect immediate patient management or outcome and

that Dr. Desai's reports were (are) well within the expected standard of care at an urban

teaching hospital. Id.  He also concluded that at worst Dr. Desai's reads contained

statements capable of subjective disagreement, and that Dr. Desai's reports do not contain

any errors that would justify terminating her employment. Id.

135.     Defendants' expert offered no opinion as to whether Dr. Desai's alleged

performance issues warranted termination. Deposition of Ella Kazerooni, 128:1-5,

attached as Exhibit OOO.

136.     Regarding the study itself, Dr. Gruden noted that all the cases used for the review

were submitted in a small window in early 2017, and for this reason, the method of

review employed for this analysis/study does not conform to any appropriate or well-

known guidelines for a fair review process. Gruden Report, attached as Exhibit NNN

137.     Dr. Gruden stated that Dr. Litmanovich's criticisms of Dr. Desai's CT scan interpretations were (are) entirely subjective and that they are not clinically significant. Id.

138.     Dr. Gruden also concluded that the reports of radiologists other than Dr. Desai had "numerous, significant, and inexplicable typographical errors and several significant interpretive errors." Id. Dr. Gruden concluded those reports fell outside a reasonable standard and cites six specific example cases in his review. Id.

139.     Dr. Gruden concluded that a "more thorough, consistent, and unbiased peer review and quality improvement projects are needed for the other radiologists who were involved in these cases." Id.

Dr. Rosen's Analysis of the Independent Review

140.     Following his receipt of Dr. Litmanovich's report, Dr. Rosen un-blinded all 50 CTs scans selected for the independent review by reference to their identifying numbers, to determine which studies were interpreted by Dr. Desai and which were interpreted by other radiologists.  Dr. Rosen had direct access to all the radiographs and Dr. Litmanovich's commentary from each study included in the independent review. Rosen Dep. at 316:23-317:13, attached as Exhibit S  Rosen Aff. at ¶ 64 and attached spreadsheet, attached as Exhibit C; Rosen Dep. at 158:20-159:9, attached as Exhibit S and Exhibit A from Defendant Max Rosen, MD's Answer to Dr. Desai's Second Set of Interrogatories, attached as Exhibit DDD

141.     Based on his unblinding of her findings, Dr. Rosen ascertained that Dr. Litmanovich concluded that of the reads conducted by Dr. Desai, there were nine errors that may have impacted patient care. UMM 00690-693, attached as Exhibit MMM;

Rosen Second Answers to Ints. at Answer No 1, attached as Exhibit DDD.  Rosen Aff. at ¶ 64 attached as Exhibit C   Dr. Rosen calculated that Dr. Desai's reads had any level of discrepancy in 40% of her reads; had a major discrepancy in 20% of her reads; and that 36% of the discrepancies may have had an impact on patient care. See Chest CT QA Study PowerPoint, UMM00699 - UMM00705, attached as Exhibit PPP.

142.    A review of Dr. Litmanovich's report reveals errors with 50% of Dr. Darren Brennan's CT scan studies, with one major and one minor misread, and that 50% of the errors would impact patient care. Exhibit A from Defendant Max Rosen, MD's Answer to Dr. Desai's Second Set of Interrogatories, attached as Exhibit DDD; Raw Data from Litmanovich Review, attached as Exhibit MMM.

143.    A review of Dr. Litmanovich's report reveals errors with 50% of Dr. Hao Lo's CT scan studies, with three minor misreads, and that 33% of the errors would impact patient care. Exhibit A from Defendant Max Rosen, MD's Answer to Dr. Desai's Second Set of Interrogatories, attached as Exhibit DDD.  Raw Data from Litmanovich Review, attached as Exhibit MMM.

144.    Dr. Rosen asserted that Dr. Litmanovich's review of Dr. Desai revealed that Dr. Desai was "woefully deficient" in reading CT scans. First MCAD position statement, page 2, attached as Exhibit MM.

145.    Dr. Rosen stated that he made the decision to terminate Dr. Desai based on his assessment of the results of the independent review. Rosen Aff. at ¶ 65, attached as Exhibit C.

146.    Dr. Rosen took no disciplinary action against either Dr. Brennan or Dr. Lo, despite their similar or greater percentage of patient impacting errors. Drs. Brennan and

Lo are male, in their 30s and 40s, and non-disabled. Desai Aff. ¶ 36, attached as Exhibit A.

147.      At time of Dr. Litmanovich's review, Dr. Brennan served, because of Dr. Rosen's selection of him, as Vice Chair for the Department of Radiology and Chief of UMass Memorial Health Marlborough Hospital. Rosen Aff. ¶, attached as Exhibit C

148.      Following Dr. Brennan's departure from the Department of Radiology, Dr. Hao Lo replaced Dr. Brennan as Vice Chair of Diagnostic Operations (selected by Dr. Rosen). See Exhibit QQQ; UMMS Radiology Organizational Chart, Exhibit RRR.

Dr. Desai's Termination

149.      On March 14, 2018, Dr. Rosen met with Dr. Desai, in the presence of Dr. Charles Cavagnaro (who attended the meeting at Dr. Tosi's request: see Dr. Tosi section below) and hand delivered to her a letter stating that her employment would be terminated on March 17, 2019.  See Desai Aff. ¶ 37, attached as Exhibit A.  The letter of termination did not cite a reason for Dr. Desai's termination. Id.

150.      The Medical Group has the right to terminate a radiologist's employment for cause if warranted.  Desai Employment Contract, attached as Exhibit Y.

151.      At the March 14, 2018, meeting, Dr. Rosen verbally informed Dr. Desai that her employment was being terminated without cause. Defendants' Answer to Amended Complaint ¶ 41, attached as Exhibit YY.

152.      Dr. Rosen stated that Dr. Desai's employment was being terminated for poor quality work. Desai Aff. ¶ 37, attached as Exhibit A.

153.      Dr. Rosen restricted Dr. Desai from reading chest CT scans. Annual Faculty Review 2017-2018, attached as Exhibit T.   Dr. Desai was humiliated.  Desai Aff. ¶ 39,

attached at Exhibit A. During her employment, Dr. Desai previously interpreted all types of films (not limited to Chest) and interpreted all types of films (not limited to Chest) while "on call." Desai Aff. at ¶ 38, attached as Exhibit A.

154.     Dr. Rosen's concern about Dr. Desai's clinical performance was limited to her ability to interpret CT scans; he did not have a holistic concern about her overall competency in the field of diagnostic radiology. Rosen Dep. at 299:17-300:3, attached as Exhibit S  Dr. Rosen instructed Dr. Desai to continue interpreting plain (non-CT) chest radiographs.  Desai Aff. ¶ 40, attached as Exhibit A

155.     Dr. Rosen did not offer to transfer Dr. Desai's job responsibilities to reading only plain films chest radiographs or radiographs associated with another practice area of diagnostic radiology. Desai Aff. ¶ 41, attached as Exhibit A   In contrast, in response to Dr. Robinson's complaints about Dr. Tyagi, Dr. Rosen redirected Dr. Tyagi's responsibilities and told him not to read CT scans, see Rosen Dep. at 321:4-13, attached as Exhibit S , but no restrictions are identified in Dr. Tyagi's evaluations.

156.     In contrast to his treatment of younger and/or male and/or non-disabled radiologists, Dr. Rosen did not offer Dr. Desai an extension of employment following the date of her termination. See Herlen Alencar Employment Extension Letter, attached as Exhibit TTT.

157.     On March 14, 2018, Dr. Desai emailed Dr. Rosen and asked him to substantiate his allegations about her poor-quality work. See Rosen and Desai March 24, 2018 and April 17, 2018, attached as Exhibit UUU,

158.     On April 17, 2018, Dr. Rosen responded to Dr. Desai's email request of March 14 and agreed to meet with Dr. Desai to review the results of the independent analysis. Dr.

Rosen informed Dr. Desai that she would be able to review the data that was presented to Dr. Rosen but would not be permitted to take any hard copies of the reports presented to her at the meeting. Id. The meeting was scheduled for April 24, 2018. Email from Desai to Rosen dated April 28, 2018, attached as Exhibit UUU,

159.    Dr. Rosen denied Dr. Desai's request to bring an independent expert to the April 24 meeting but stated that she could bring a colleague from the Radiology Department. Email from Rosen to Desai April 18, 2018, attached as Exhibit UUU,  Dr. Desai responded that she would prefer to bring an independent expert instead because she was concerned that Dr. Rosen might retaliate against any radiology colleague who works under Dr. Rosen that visibly expressed their support of Dr. Desai. Dr. Desai received no response from Dr. Rosen regarding her concern. Email from Rosen to April 18, 2018, attached as Exhibit UUU.

The April 24, 2018 Meeting

160.    At the April 24, 2018, meeting, Dr. Rosen verbally informed Dr. Desai that her termination was for no cause. Desai Notes from April 24, 2018, meeting, attached as Exhibit VVV   He presented a summary slide of statistics from the independent review. It did not include any concrete examples of Dr. Desai's deficiencies. Email from Desai to Rosen dated April 28, 2018, attached as Exhibit WWW; See Chest CT QA Study PowerPoint, attached as Exhibit PPP  Dr. Rosen also projected an analysis he stated was compiled from the independent review in a manner that was undecipherable and incomprehensible to Dr. Desai and denied her the opportunity to assess or even access her reads. Id.

161.     Dr. Rosen refused to provide to Dr. Desai a copy of the PowerPoint presentation, giving her only a statistical summary (UMM 3722, attached as Exhibit VVV) and a copy of the methods slide regarding the CT selection process for the review, UMM 3723, attached as Exhibit CCC.  See also Answer To Amended Complaint ¶ 63, attached as Exhibit YY

162.     At the April 24, 2018, meeting, Dr. Desai asked Dr. Rosen when the independent review was performed.  Dr. Rosen stated that he began the investigation in 2016 and concluded it in early 2017 – i.e., more than one year earlier.  Email from Desai to Rosen dated April 28, 2018, attached as Exhibit WWW.

163.     Shortly after the meeting with Dr. Rosen, Dr. Desai asked Dr. Steven Baccei, MD, who serves as Vice Chair for Quality, Patient Safety, and Process Improvement and as a leader of the Medical Staff at the Medical Center, for further information about her alleged quality issues.  Dr. Baccei did not provide any additional information. Defendants' Answer to Amended Complaint ¶ 45, attached as Exhibit YY.

164.     Prior to informing Dr. Desai of her termination, Dr. Baccei had never spoken with her regarding any concerns about her performance. Desai Aff. ¶ 42, attached as Exhibit A.

The PowerPoint Presentation

165.     A PowerPoint presentation of Dr. Litmanovich's independent review analysis, titled "Chest CT QA Study CONFIDENRIAL (sic)" and dated January 26, 2017 ("PowerPoint") was produced by Defendants in discovery. See Chest CT QA Study PowerPoint, attached as Exhibit PPP.  [As the PowerPoint presentation cites to the language used in Dr. Litmanovich's report, the date (2017) appears to be a typographical

error and should be 2018.] This PowerPoint was not included in the report Dr.

Litmanovich provided to Dr. Rosen on December 25, 2017. Email from Rosen to

Mowlood dated December 26, 2017, attached as Exhibit LLL. See also Litmanovich

Review, attached as Exhibit MMM.

166.     The PowerPoint presentation cites Dr. Litmanovich's exact critique from each

case in which she identified a major error, including both Dr. Desai's major errors and

the other radiologists' (the "control group's") major errors. Chest CT QA Study

PowerPoint, attached as Exhibit PPP.

Conclusions Regarding Dr. Litmanovich's Raw Data

167.     Dr. Rosen had access to the images and corresponding report all the studies

reviewed and had the opportunity to correlate and personally analyze the studies to assess

whether Dr. Litmanovich's criticisms were founded or not. Rosen Dep. at 158:20-159:9,

attached as Exhibit S

   a.   Dr. Litmanovich's critique of study marked as QACH11, which she characterizes as a
        minor and patient impacting misread, refers to contusions being reported.  In fact, the
        interpreting radiologist makes no mention of contusions in the corresponding report.
        Raw Data from Litmanovich Review. See Litmanovich Review, attached as Exhibit
        XXX; Study Marked QACH 11, attached as Exhibit XXX.

   b.   Dr. Litmanovich agrees with the interpretation of study marked as QACH 12 (does not
        cite a major or minor misread or any patient impact).  The interpreting radiologist,
        however, comments on contusions in the corresponding report.  Litmanovich Review,
        attached as Exhibit XXX; Study Marked QACH 12, attached as Exhibit XXX.

   c.   Dr. Litmanovich agrees with the interpretation of study marked as QACH 20 (does not
        cite a major or minor misread or any patient impact).  The only comment that Dr.
        Litmanovich offers regarding this study is that there are typographical errors in the final
        impression.  See Litmanovich Review, attached as Exhibit XXX; Study Marked
        QACH20, attached as Exhibit XXX.

d.  In the study marked as QACH20, the interpreting radiologist (Dr. Hadeer Shaikhly) writes the following under subsection titled LUNGS/Parenchyma:  "And MRI head on the eighth limited MRI head on the eighth lumbar spine without low with enhancing the "mutiple myeloma dictated multiple myeloma."  This statement is incomprehensible and illogical and contains significant content-based errors as well as typographical errors.  It refers to an entirely different part of the body, namely the head, in a section designated to comment on the lungs.  It also refers to an MRI study of the head and/or spine when in fact, the type of study being interpreted is a Chest CT scan.  Study Marked QACH20, attached as Exhibit XXX.; Exhibit A from Defendant, Max Rosen, MD's Answer to Dr. Desai's Second Set of Interrogatories, attached as Exhibit DDD.

e.  Dr. Litmanovich agrees with the interpretation of study marked as QACH 46 (does not cite a major or minor misread or any patient impact).  Raw Data from Litmanovich Review, attached as Exhibit XXX.

f.  In the study marked as QACH 46, the interpreting radiologist (Dr. Karin Dill) writes the following, under subsection titled PULMONARY ARTERIES:  "there are multiple bilateral pulmonary emboli the and the in are seen CTs and no to in in with the a right is the [no end of sentence]" This statement is incomprehensible and illogical, and contains significant content based errors as well as typographical errors. This report also contains grammatical errors in the Impression section.  Exhibit A from Defendant Max Rosen, MD's Answer to Dr. Desai's Second Set of Interrogatories, attached as Exhibit DDD.  Study marked QACH 46, attached as Exhibit XXX.

g.  Dr. Litmanovich agrees with the interpretation of study marked as QACH 25 (does not cite a major or minor misread or any patient impact).  Raw Data from Litmanovich Review, attached as Exhibit MMM; Study marked QACH 25, attached as Exhibit XXX.

h.  In the study marked as QACH 25, the interpreting radiologist's (Dr. Darren Brennan's) report contains typographical errors/omissions in reference to the location of nodules in the subsection titled "LUNGS AND PLEURA." Exhibit A from Defendant, Max Rosen, MD's Answer to Dr. Desai's Second Set of Interrogatories., attached as Exhibit DDD; Study marked QACH 25, attached as Exhibit XXX.

168.  Of QACH20, which was not Dr. Desai's case, Dr. Gruden wrote:

i.  This report is a disaster in every way.  The clinical question was ignored, there is no mention of the collapse of the airways or air trapping (which are key to the real diagnosis in this case), the report is filled with significant typographical errors, and the significant pathology was totally missed.  The radiologist obviously does not know what tracheobronchomalacia is or what the findings are, and he or she did not

bother to look it up or ask someone else- this is sloppy, careless, unprofessional, and unacceptable.  A report like this at my institution would result in immediate disciplinary action.

Gruden Report, attached as Exhibit NNN.

Timing of Decision to Terminate and Hire a Replacement for Dr. Desai

169.     On October 3, 2017, more than two months prior to the date Dr. Litmanovich

provided the conclusions of the independent review she conducted of Plaintiff to Dr.

Rosen (December 25, 2017), Exhibit JJJ.  Dr. Rosen informed Michelle Streeter,

Executive Vice President and Chief Operating Officer of UMass Memorial Medical

Group, Senior Vice President for Clinical Strategies, UMass Memorial Health, that he

found "great chest radiologist" who would complete a cardiothoracic fellowship at

UPenn by June of 2018.  Dr. Rosen wrote that he "would like to make him an offer but

have not formally resolved Dr. Desai's employment -- planned for 9/30/2018." UMM

04998-05001, at 05000, attached as Exhibit YYY; Rosen Dep. at 266:8-266:24, attached

as Exhibit S.

170.     Dr. Rosen testified that he wrote to Ms. Streeter that he believed Dr. Desai

planned to resolve her employ by September 30, 2018, because she no longer wanted to

take call. Rosen Dep. at 269:17-270:3, attached as Exhibit S.

171.     Dr. Desai did not desire to end her employment by September 30, 2018, nor plan

to, and never expressed to Dr. Rosen or anyone else that she did.  Desai Aff. ¶ 43,

attached as Exhibit A.

172.     Ms. Streeter told Dr. Rosen that, for financial reasons, she did not think Dr. Rosen

could extend an offer to the radiologist expected to complete his fellowship in June 2018,

attached as Exhibit YYY.

173.     Dr. Rosen wrote back to Ms. Streeter, copying Dr. Stephen Tosi, Chief Medical Officer and Sr. Vice President of the Medical Center, asking whether the hire of a fellowship trained chest radiologist could be expedited. Dr. Rosen stated, "I have been looking for a fellowship trained radiologist for 3 years …."  See Exhibit YYY; Rosen Dep. at 273:18-273:23, attached as Exhibit S.

174.     The email thread among Dr. Rosen, Ms. Streeter and Dr. Tosi repeatedly use the word "replace" in reference to Dr. Desai. Ms. Streeter explained financial ramifications of replacing Dr. Desai and a potential three month overlap of Dr. Desai's employment with a new hire's employment. Ms. Streeter stated, "the real issue is having to pay Desai through September and recruiting her replacement in July." See Exhibit YYY. Dr. Rosen acknowledged that Dr. Desai would be working for a period of three months following the hire of a *replacement*. Id. Rosen Dep. at 275:20-275:23, attached as Exhibit S.

175.     Because Dr. Rosen "ha[d] a contingency plan in place for mitigating the three-month overlap cost of the Desai payout," Dr. Tosi approved making the offer, attached as Exhibit YYY   Rosen Dep. at 278:24-279:5, attached as Exhibit S.

176.     That same day (*i.e.*, October 3, 2017), Dr. Rosen separately sent an email to Kathleen LeBlanc, from Human Resources, regarding Dr. Desai. He stated, "Hi, do you have more time to talk about Dr. Desai. I have been thinking about how to do this and want to run some things past you." Email "Confidential", attached as Exhibit ZZZ; Rosen Dep. at 281:8-281:13, attached as Exhibit S.

177.     On October 11, 2017, Ms. LeBlanc emailed Dr. Rosen that she had an "additional idea for [his] consideration."  She stated, "Muriel and I agreed that all options have legal ramifications, and we should discuss all options together." Dr. Rosen responded and

informed Ms. LeBlanc that Dr. Ferrucci had a conversation with Dr. Desai that could

"potentially open up a window for us."  See Exhibit AAAA.

178.     Muriel Fraker serves as Associate General Counsel at UMass Memorial Health

Care, Inc.  Desai Aff. ¶ 44, attached as Exhibit A.

179.     On October 11, 2017, Dr. Ferrucci emailed Dr. Rosen that he spoke with Dr.

Desai and "told her that you wanted to be accommodating especially in recognition of her

years of service. But that you also had an obligation as Chair to think about recruiting

younger staff for service needs."  See Exhibit BBBB.  Dr. Ferrucci wrote that he told Dr.

Desai that Dr. Rosen was thinking about offering to Dr. Desai a term limited contract of

approximately 12 months, and then maybe a less formal arrangement such as per diem.

Id.  Despite Dr. Rosen's knowledge of Dr. Desai's alleged quality issues and his already

deciding to conduct an independent review of her work in February 2017, Dr. Rosen

continues to offer Dr. Desai the option of a part time or per diem employment contract

with the Department.

180.     Dr. Rosen responded to Dr. Ferrucci's email: "Thanks." He did not qualify,

dispute, or correct any of the statements that Dr. Ferrucci made to him in the original

email. Id.  Dr. Rosen does not remember correcting Dr. Ferrucci with regards to Dr.

Ferrucci's statement that Dr. Rosen had an obligation as chair to think about recruiting

younger staff.  Rosen Dep. at 284:9-284:16, attached as Exhibit S.

No Clinical Issues are Documented in Dr. Desai's Annual Faculty Performance Reviews

181.     None of Dr. Desai's Annual Faculty Performance Reviews refer to or reflect any

deficiencies in her clinical performance. See Annual Faculty Performance Reviews,

attached as Exhibit T; Rosen Dep. at 211:22 –216:11, attached as Exhibit S.

182.     Dr. Rosen addresses clinical issues in Annual Faculty Performance Reviews for other radiologists. See Dr. Dill Review, attached as Exhibit CCCC.

183.     Dr. Rosen stated that Faculty Annual Performance Reviews forms, which he used to conduct radiologists' Annual Reviews, are Medical School forms, and that he therefore did not record clinical performance issues in them. Rosen Dep., 44:9-45:24, attached as Exhibit S.  These are the only faculty reviews conducted annually; credentialling and OPPE evaluations are not formally discussed with radiologists or even made known to radiologists at the Medical Center. Desai Aff. 45 ¶, attached as Exhibit A.  Direct evaluation of Dr. Desai's performance on OPPE forms were not shared with her, as evidenced by the fact that she signed these forms prior to the date her evaluator signed the forms, and evaluators were asked to submit these forms, often specifically marked as confidential, directly to the office responsible for handling of such forms. Id. See, e.g., UMM 03672,  (Rosen 2015 grid eval (all excellent), only his signature UMM 03261 (Rosen 2013 grid eval, only his signature, UMM 03611-Jerry Balikian 2014 evaluation (all excellent) being asked to return to Maureen Podesta by Fax or Scan, UMM 03609-Joseph Ferrucci 2014 evaluation(all excellent) being asked to return to Maureen Podesta by Fax or Scan; UMM 03641 (Brennan 2017 grid eval (all excellent) titled "Confidential Peer Review Prepared For the Exclusive Use of the Credentials Committee", all attached as Exhibit DDDD.

184.     Defendants state that Ongoing Professional Practice Evaluations document quality concerns. Defendant's Amended Answer to Complaint, ¶ 41, attached as Exhibit YY

    a.    No restrictions of clinical privileges are documented in Dr. Desai's Ongoing Professional Performance Evaluations, Credentialing or Reappointment Forms

either at the Medical Center or at UMass Memorial Health Marlborough Hospital.

See Credentialing Documents, attached as Exhibit EEEE,

<u>No Clinical Privilege Restrictions are Documented in Dr. Desai's Ongoing Professional
Performance Evaluation Credentialing/Reappointment Forms for the Medical Center</u>

185.    No previous Chairman in the Department of Radiology ever restricted Dr. Desai's

clinical privileges or recommended reappointment with condition.  Desai Aff. ¶ 47,

attached as Exhibit A.

186.    On Dr. Desai's 2013 and 2015 Reappointment Appraisal/ Recommendation

Forms for the Medical Center, Dr. Rosen rated Dr. Desai as "excellent" in all nine

categories listed for evaluation. Dr. Rosen recommended Dr. Desai "for reappointment to

the Medical Staff, and for renewal of clinical privileges, with no conditions." 2013

Credentialing Form, attached as Exhibit EEEE ; Rosen Dep., at 214:8-214:19, attached as

Exhibit S ; Max Rosen Deposition Day 2, at 214:20-215:5, 213:10-213:15; Desai 2015

Credentialing Form, attached as Exhibit EEEE ; Max Rosen Deposition Day 2, at 216:6-

216:11, attached as Exhibit S.  On Dr. Desai's 2015 Reappointment Appraisal /

Recommendation Form, Dr. Rosen indicates that there are no changes since last OPPE

review.  Desai 2015 Credentialling Form, attached as Exhibit EEEE.

187.    On Plaintiff's 2017 UMass Memorial Medical Center Review and Action Form,

Dr. Rosen, on June 21, 2017, recommends Plaintiff for reappointment and clinical

privileges with conditions as follows: "I am conducting a confidential Peer-Review

following complaints from a (i.e., *one*) referring clinician" – *i.e.*, clinician Dr. Robinson,

not radiologist Dr. Dill. See Exhibit TT.

188.    On Plaintiff's 2017, UMass Memorial Medical Center's Delineation of Clinical

Privileges form, Dr. Rosen, on June 21, 2017, writes that he is not requesting any changes

to Dr. Desai's previously approved clinical privileges (from 2015), including the

interpretation of CT scans. Desai 2017 Credentialling Form, attached as Exhibit EEEE

Dr. Rosen signed this form after he was aware of Dr. Robinson's allegedly serious

concerns about Dr. Desai's work quality and after he began deciding to conduct an

independent review of her work.   The Medical Staff Credentials Committee approved

this decision (on 7/13/17), as did the Medical Staff Education Committee (on 8/9/17), and

the Patient Care Assessment Committee (also known as Board of Trustees) on (8/24/17).

Dr. Desai's reappointment was approved with no conditions. Desai Credentialling

Documents, attached as Exhibit EEEE

189.     Dr. Desai's ability to interpret CT scans remained fully approved as before and

unrestricted. Desai Credentialing form, attached as Exhibit EEEE

No Clinical Privilege Restrictions Are Documented in Dr. Desai's Ongoing Professional
Performance Evaluation Credentialing/Reappointment Forms for UMass Memorial Health
Marlborough Hospital

190.     On February 5, 2015, Dr. Desai was initially credentialed and received clinical

privileges to interpret radiologic studies for patients at UMass Memorial Health

Marlborough Hospital, attached as Exhibit RRRRR.  She began interpreting radiology

studies for UMass Memorial Health Marlborough Hospital on or after March 1st, 2015.

Defendants' Answer to Complaint, at ¶ 7, attached as Exhibit XX

191.     On Dr. Desai's 2015 Reappointment Appraisal/ Recommendation Form for

UMass Memorial Health Marlborough Hospital, Dr. Brennan rates Dr. Desai as

"excellent" on June 19, 2015, in all twelve categories listed for evaluation, including

"Current Competence." Dr. Desai's ability to interpret CT scans remained fully approved

as before and unrestricted. Desai Credentialling Documents, all attached as Exhibit EEEE

192.     On Plaintiff's 2017 Reappointment Appraisal/ Recommendation Form for

Marlborough Hospital, Dr. Brennan rates Dr. Desai as "excellent" on June 9, 2017, in all

twelve categories listed for evaluation, including "Current Competence."  This form is

specifically marked "Confidential Peer Review-Prepared for Exclusive Use of the

Credentials Committee." Dr. Desai's ability to interpret CT scans remained fully

approved as before and unrestricted. Id.

193.     Dr. Robinson and Steven Roach, President of UMass Memorial Health

Marlborough Hospital, who was present at the January 2017 meeting at which Dr.

Robinson voiced complaints about Dr. Desai, both signed off on Dr. Desai's

reappointment application for UMass Memorial Health Marlborough Hospital in June

2017.  Id. Appointments are re-evaluated every two years. See Exhibit EEEE

194.     Dr. Desai was reappointed to the Medical Staff of UMass Memorial Health

Marlborough Hospital by the Patient Care Assessment Committee (Board of Trustees)

without condition on July 11, 2017, effective 7/31/2017 to 7/31/2019. Id.

195.     Dr. Desai's ability to interpret CT scans remained unrestricted throughout the

course of her employment at the Medical Center and UMass Memorial Health

Marlborough Hospital, despite Dr. Rosen's instruction to Dr. Desai to discontinue

interpreting CT scans. Id.

196.     On April 4, 2019, UMass Memorial Health Marlborough Hospital accepted

Plaintiff's resignation as a Member of the Department of Radiology with regret. See

Exhibit FFFF

197.     Defendants admit that "at no time did Marlborough Hospital restrict the privileges of Plaintiff to perform reads of CT images." Roach Aff. at ¶ 12, attached as Exhibit GGGG.

Overall Conclusion from OPPE Forms

198.     Dr. Desai's ability to interpret CT scans remained unrestricted throughout the course of her employment in the Department of Radiology at the Medical Center \and UMass Memorial Health Marlborough Hospital, despite Dr. Rosen's ordering her to discontinue interpreting CT scans.  See above and Desai Credentialling Document, attached as Exhibit EEEE.

No Derogatory Information on File Regarding Dr. Desai at the Medical Center or UMass Memorial Health Marlborough Hospital

199.     Communications from UMass Medical Center state that there is "no derogatory information on file" regarding Dr. Desai based on a review of the individual's credentials record at the Medical Center. See Exhibit EEEE.

200.     Communications from UMass Memorial Health Marlborough Hospital state that there is "no derogatory information on file" regarding Dr. Desai based on a review of the individual's credentials record at UMass Memorial Health Marlborough Hospital. Desai Credentialing Documents, all attached at Exhibit EEEE.

Dr. Desai's Employee Separation Form Signed by Dr. Rosen

201.     Desai's Employee Separation Form, signed by Dr. Rosen on November 30th, 2018, indicates that the reason for Dr. Desai's termination is "retirement."  Other reasons provided on this form for selection options include "Performance Issues," but this box is not selected. The form queries whether Dr. Desai could be re-employed.  The selected response is "Maybe," when No is also provided as a selection option. See Exhibit HHHH.

Dr. Rosen's Contrasting Treatment of Younger and/or Male and/or Non-Disabled Physicians in the Response to Alleged Quality Concerns

202.     Dr. Rosen did not evaluate or act upon quality concerns regarding specific radiologists in a consistent manner whenever they were raised to him by Dr. Robinson. Rosen Dep. at 190:5-191:3; 320:17-322:6; 323:22-324:3, attached at Exhibit S.

203.     Dr. Rosen personally analyzed Dr. Robinson's specific quality related complaints / cases regarding radiologists other than Dr. Desai. Rosen Dep. at 322:4-323:6, attached at Exhibit S

204.     Dr. Robinson raised concerns about the quality of several radiologists' interpretations, including those of Dr. Desai. These concerns were not limited to those raised at the January 31, 2017, meeting. Rosen Dep. at 55:20-56:2, attached at Exhibit S

205.     Dr. Robinson expressed quality concerns regarding the radiology reads of Dr. Joseph Ferrucci, Dr. Adib Karam, and Dr. Hao Lo. Exhibit ZZ. Dr. Robinson expressed quality concerns regarding Dr. David Bindman. Rosen Dep. at 117:8-117:18; 115:1-115:20, attached as Exhibit S; Emails regarding Robinson Complaints UMM 30043, attached at Exhibit ZZ.

206.     In contrast to his treatment of Dr. Desai, Dr. Rosen defended radiologists Dr. Karam and Dr. Lo, both of whom are male, in their 30s and 40s, and non-disabled, in response to criticisms Dr. Robinson raised. Rosen Depo. at 117:8-117:14; 115:11-115:20, attached at Exhibit S.  See Physician Age Spreadsheet, attached as Exhibit MMMM.

207.     Dr. Robinson expressed quality concerns regarding Dr. Girish Tyagi. In contrast to his treatment of Dr. Desai, Dr. Rosen followed up directly with Dr. Tyagi, who is male and non-disabled. Rosen Dep. at 55:20-56:6; 190:5-190:8, attached at Exhibit S; Emails Regarding Robinson Complaints, UMM 30094, attached at Exhibit ZZ.

208.     Dr. Robinson expressed quality concerns regarding Dr. Andrew Singer. In contrast to his treatment of Dr. Desai, Dr. Rosen followed up directly with Dr. Singer, who is younger, male, and non-disabled. See Documents related to Robinson Complaints, UMM 30072, attached at Exhibit ZZ.

209.     Dr. Robinson expressed quality concerns regarding Dr. Andrew Bennett. In contrast to his treatment of Dr. Desai, Dr. Rosen followed up directly with Dr. Bennett, who is younger, male, and non-disabled. Rosen Dep. at 115:21-117:2, attached at Exhibit S.  Dr. Rosen disagreed with the substance of the criticism Dr. Robinson raised regarding Dr. Bennett. Rosen Dep. at 115:21-117:2, attached at Exhibit S.

210.     In contrast to his treatment of Dr. Desai, Dr. Rosen did not conduct a focused review of the interpretations of (male, young, and non-disabled) Drs. Bennett, Karam, or Lo, even though he was aware that Dr. Robinson had expressed quality issues with their interpretations. Rosen Dep. at 117:21-118:5, attached at Exhibit S.

211.     In contrast to his treatment of Dr. Desai, Dr. Rosen did not conduct a focused review of (male and/or younger and/or non-disabled) Drs. Ferrucci, Bindman, Lo, or Tyagi even though he was aware that Dr. Robinson had expressed quality issues with their interpretations. Rosen Dep. at 323:22-324:3; 321:4-321:9, attached at Exhibit S.

212.     In contrast to his treatment of Dr. Desai, Dr. Rosen did not conduct a focused review of (male and/or younger and/or non-disabled) Drs. Karam, Bennet, Singer, or Shaikhly. Dr. Rosen addresses Dr. Robinson's complaint directly with Dr. Singer, UMM 30072, attached as Exhibit ZZ  and Dr. Dill addresses concerns directly with Dr. Shaikhly (on which Dr. Rosen is copied). Rosen Dep. at 300:18-301:24, attached at Exhibit S.

213.     Dr. Rosen did not terminate Dr. Ferrucci, Dr. Bindman, Dr. Lo, Dr. Tyagi, Dr. Karam, Dr. Bennett, Dr. Singer, Dr. Shaikhly, or Dr. Sena. Desai Aff. ¶ 48, attached as Exhibit A; Rosen Dep. 56:9-56:10, attached at Exhibit S; Radiologist Separation Chart UMM 03690-UMM 0369, attached at Exhibit IIII

214.     Drs. Bindman, Lo, Tyagi, Karam, Bennett, Singer, Shaikhly, and Sena all read Chest CTs as part of their call responsibilities. Desai Aff. ¶ 49, attached at Exhibit A.

215.     Dr. Rosen never formalized, in writing, to Dr. Tyagi, that Dr. Rosen would require him to stop performing reads of chest CT images. Rosen Dep. at 323:4-13.9, attached at Exhibit S. Later, Dr. Brennan wrote a letter of reference to Dr. Rosen supporting Dr. Tyagi's candidacy for the role Assistant Professor of Radiology. Letter of Reference for Dr. Tyagi, UMM 26505, attached at Exhibit JJJJ.

216.     Dr. Laureen Sena was hired by Dr. Rosen as a 0.8 FTE to work primarily in the Division of Cardiothoracic Radiology due to concerns of short staffing in the Division. Desai Aff. ¶ 50, attached at Exhibit A.

217.     Dr. Dill expressed concerns directly to Dr. Rosen about Dr. Laureen Sena's failure to provide appropriate follow-up information for a patient.  UMM 30046-30048, attached at Exhibit KKKK.  In contrast to his treatment of Dr. Desai, there is no evidence that Dr. Rosen conducted an independent review as to the quality of Dr. Sena's reads, even though that many of Dr. Sena's reads involved the interpretation of films in the Division of Thoracic Radiology.

Evidence Regarding the Treatment of Older Radiologists

218.     Dr. Ferrucci recalls terminating and/or mutually agreeing upon resignation of only one attending radiologist, Dr. Santiago Miro, throughout the course of his Chairmanship (2007-

2012).  See Exhibit LLLL.  Deposition of Joseph Ferrucci, MD ("Ferrucci Dep.") at 61:15-62:2; 62:18-62:23, attached at Exhibit PP.

219.    Twenty-nine radiologists were voluntarily or involuntarily separated during the period January 1, 2015, to October 31, 2020, during which period Dr. Rosen served as Chair of the Department of Radiology. Defendants' Answer to Amended Complaint ¶ 26 attached as Exhibit YY. See Radiologists Separated from UMass Memorial Medical Group since January 1, 2015. See Exhibit IIII.

220.    Several older radiologists that previously worked in the Department, including but not limited to Drs. Roychowdhury, Makris, and Suran, are no longer employed at the Medical Center. Ferrucci, Dep. at 41:9-42:3; 43:5-43: and 43:16-43:17, attached at Exhibit PP.

221.    Prior to Dr. Rosen becoming Chair of the Department of Radiology, Dr. Ferrucci and Dr. Korganokar worked as full-time radiologists in the Department of Radiology.  Desai Aff ¶ 51., attached at Exhibit A.  After Dr. Rosen became Chair, Dr. Ferrucci, then age 84, began to work as a per diem radiologist in the Department of Radiology. He nevertheless works 50 hours per week. Ferrucci Dep. at 14:8-16; attached at Exhibit PP.  After Dr. Rosen became Chair, Dr. Korgaonkar, age 75, began to work as a per diem radiologist in the Department of Radiology. See UMM 07822 and UMM 16262, both attached at Exhibit MMMM.

222.    In August 2016, several radiologists, including Dr. Joseph Makris, Dr. Adib Karam, Dr. Christopher Cerniglia, and Dr. Gopal Vijayaraghavan had a meeting with Dr. Rosen and Dr. Tosi to complain about compensation disparities. Defendants' Answer to Amended Complaint ¶ 30, attached at Exhibit YY.

223.    In addition, several older radiologists complained that Dr. Rosen was giving more opportunities to younger radiologists, that older radiologists "were basically sidelined." Affidavit

of Abhijit Roychowdhury, MD ("Roychowdhury Dep.") at 34:22 – 36:12, attached at Exhibit LL.

224.     Dr. Roychowdhury stated that younger radiologists were provided more opportunities for advancement within the Department, that older radiologists were not offered administrative positions in the Department of Radiology, nor were older radiologists offered Division Director/Division Chief Positions in the Department of Radiology. Roychowdhury Dep. at 35:2-36:12, attached at Exhibit LL.

225.     Dr. Roychowdhury was not offered a Division Director/Division Chief Position in the Department of Radiology, nor was he offered an administrative position in the Department of Radiology. Roychowdhury Dep. at 35:9 - 35:20, attached at Exhibit LL.  Dr. Abib Karam, a younger radiologist, was offered the Division Chief position in the Division of Abdominal Imaging instead of Roychowdhury. Roychowdhury Dep. at 35:20-36:6, attached at Exhibit LL.

226.     Dr. Roychowdhury perceived that Dr. Rosen was trying to move older physicians out of the Department of Radiology to replace them with younger doctors. Roychowdhury Dep. at 33:15-34:6, attached at Exhibit LL.

227.     Dr. Roychowdhury testified that at a national convention, attendees discussed the perception that senior radiologists were gradually being phased out or removed from the Department of Radiology. Roychowdhury Dep. at 56:9-56:16, attached at Exhibit LL.

Male Radiologists with Performance Concerns Were Permitted to Resign

228.     Of the radiologists that resigned or retired between January 1, 2015, to October 31, 2020, following discussions of performance concerns, all were male.  Half (3/6) were over the age of 50 at the time of separation:  Dr. Roychowdhury (who was 57); Dr. Garrell (who was 61); Dr. Suran (who was 77).  Radiologist Separation Chart, attached as Exhibit IIII.

229.     Dr. Rosen stated that his decision to end the employment of Drs. Garrell, Nicola, and Roychowdhury was a result of performance concerns related to their clinical ability and/or competence.  Rosen Aff. at ¶ 71, attached at Exhibit C; Rosen Dep. at 240:15-240:17, attached at Exhibit S.

230.     In contrast to his treatment of Dr. Desai, Dr. Rosen permitted each of these male radiologists to resign or retire in lieu of termination following discussion of performance concerns and informing them that they would no longer be able to be employed in the Radiology Department at UMMC.  UMM 03690-0369, attached at Exhibit IIII ; Rosen Dep. at 57:16-59:1; 134:17-135:6; 365:12-24; 367:16-368:2, attached at Exhibit S ; Rosen Aff. at ¶ 74, attached at Exhibit C.

231.     In contrast, Dr. Rosen never verbally or in writing offered Dr. Desai the opportunity to resign or retire in lieu of termination. Desai Aff. ¶ 52, attached at Exhibit A ; UMM 03690-03691, attached at Exhibit IIII.

Dr. Jay Agrawal's Employment

232.     In contrast to his treatment of Dr. Desai, Dr. Rosen offered to Dr. Jay Agrawal, who is 39 years of age, male and non-disabled, a per diem position following the date of his termination. See Dr. Agrawal Change to Per Diem Form, UMM 09145, attached as Exhibit NNNN.  Dr. Rosen also awarded to Dr. Agrawal 92 Academic Days. Dr. Agrawal New Provider Form, attached at Exhibit CCCCC.

Dr. Keith Cauley's Termination

233.     Dr. Rosen gave to Dr. Cauley a letter informing him of his termination effective August 30, 2013. See Termination Letter, attached at Exhibit OOOO.  In contrast to his treatment of Dr.

Desai, Dr. Rosen offered to Dr. Cauley, who is male and non-disabled, the opportunity to resign his employment in lieu of termination. Rosen Dep. at 21:19-22:13, attached at Exhibit S.

234.    Dr. Cauley submitted a resignation letter indicating that his resignation was forced. Ms. Streeter informed Dr. Cauley his letter of resignation would only be accepted if Dr. Cauley reclassified his resignation as a voluntary resignation and that his personnel record would reflect his resignation as being characterized as voluntary. Letters regarding Cauley Termination, attached at Exhibit AAAAA.

<u>Dr. Rosen's History of Hiring and Promotions to Division Chief Positions</u>

235.    The radiologists that Rosen hired who were over (or even close to) 60 years of age were either *per diem* employees (not regular full-time employees) or were quickly separated – *i.e.*, they were hired just to serve temporarily. See Annotated Radiologist Separation Chart, attached as Exhibit QQQQ.[3]

236.    Dr. Rosen hired the following nine radiologists as full-time employees while Dr. Desai was actively employed in the Department of Radiology at the Medical Center: Drs. Alan Goldstein, Elizabeth Garwood, Christopher Sereni, Ryan Tail, George Watts, Stephan Wicky van Doyer, Jean-Marc Gauget, Brian Brochu, and Karen Dill. See Exhibit RRRR.  See Medical School Radiology Organizational Chart, attached at Exhibit RRR.

237.    88.8 % (8/9) of these radiologists that Dr. Rosen hired and named Division Chiefs, Associate Division Chiefs, or Community Hospital Chiefs (Drs. Goldstein, Garwood, Sereni, Tai, Watts, Gauget, Brochu and Dill) were in their 30's or 40s at the time Dr. Rosen gave them

---

[3] Doctors over 60 who were hired after the lawsuit – i.e., in defense of Dr. Desai's claims – are obviously not relevant.

these positions. See Exhibit RRRR.  See also Medical School Radiology Organizational Chart, attached as Exhibit RRR ; Dr. Hao Lo Employment Documents, attached at Exhibit SSSS

238.     77.7% (7/9) of these radiologists that Dr. Rosen hired and named Division Chiefs, Associate Division Chiefs, or Community Hospital Chiefs are male. Medical School Radiology Organizational Chart, attached as Exhibit RRR; Dr. Hao Lo employment Documents, attached at Exhibit SSSS.

239.     Dr. Hao Lo, MD was actively employed in the Department of Radiology under Dr. Rosen on March 17, 2019, Dr. Desai's final day of employment. Dr. Rosen named Dr. Hao Lo as Division Chief of Emergency Radiology within one year of Dr. Desai's termination, Dr. Hao Lao Employment Documents, attached as Exhibit SSSS.  Dr. Lo was 40 years old at the time. Dr. Hao Lo currently serves as Vice Chair of Diagnostic Operations for the Department following Dr. Brennan's departure (current age 49).  Dr. Hao Lo employment Documents, attached at Exhibit SSSS.   Medical School Radiology Organizational Chart, attached at Exhibit RRR.

240.     Dr. Byron Chen, MD was actively employed in the Department of Radiology under Dr. Rosen on March 17, 2019, Dr. Desai's final day of employment in the Department of Radiology. Dr. Rosen named Dr. Byron Chen as Associate Division Chief of Emergency Radiology within one year of Dr. Desai's termination. Dr. Byron Chen was 40 years old at the time Dr. Rosen named gave him this position. See Dr. Byron Chen Employment Documents, attached at Exhibit TTTT.

241.     Dr. Ajit Puri, MD was actively employed in the Department of Radiology under Dr. Rosen on March 17, 2019, Dr. Desai's final day of employment.  Dr. Rosen named Dr. Puri as Co-Director of the Division of Neuroimaging and Intervention alongside Dr. Ajay Wakhloo, MD in 2014. See Exhibit UUUU.  Dr. Wakhloo (currently age 64) is no longer employed in the

Department of Radiology. See Exhibit UUUU   Dr. Puri currently serves as the Division Chief of Neurointerventional Radiology.  See UMMS Radiology Organizational Chart, attached at Exhibit RRR.   He was in his 30s at the time Dr. Rosen gave him this position. See Exhibit MMMM.

242.       Of these twelve radiologists (including Dr. Hao Lo, Dr. Byron Chen, and Dr. Ajit Puri, hired by Dr. Ferrucci-UMM 07882, attached at Exhibit MMMM) that Dr. Rosen named Division Chiefs, Associate Division Chiefs, or Community Hospital Chiefs while Dr. Desai was still actively employed or within one year of Dr. Desai's termination, 11/12 (91.6 %) of them were in their 30's or 40's at the time they were given the position. Medical School Radiology Organizational Chart.  See previous citations.

243.       Of the twelve radiologists (including Dr. Hao Lo, Dr. Byron Chen, and Dr. Ajit Puri) that Dr. Rosen named Division Chiefs, Associate Division Chiefs, or Community Hospital Chiefs while Dr. Desai was still actively employed in the Department, or within one year of Dr. Desai's termination, 10/12 (83.3 %) of them are male. Medical School Radiology Organizational Chart. See previous citations.

244.       Of the nine radiologists that Dr. Rosen hired that are listed above, more than 60% of them were hired immediately after radiology residency/fellowship training or within approximately two years of completion: Drs. Goldstein, Tai, Watts, Sereni, Gauget, Garwood. See Exhibit MMMM; UMMS Medical School Radiology Organizational Chart, attached at Exhibit RRR.

245.       There were eleven formally defined Divisions in the Radiology Department at the time of Dr. Desai's separation. Either before or shortly after Dr. Desai's termination, Dr. Rosen promoted all nine above named radiologists that he hired to positions as Division Chief or Associate Division Chief or Community Hospital Chief. Eight of these nine were in their 30s and

or 40s at the time of their promotions. Seven of the nine were male. UMMS Medical School Radiology Organizational Chart, at Exhibit RRR.   See previous citations.

246.      Of these nine radiologists that Dr. Rosen hired (named above), at least four received academic days exceeding the maximum allowed limit for academic days as set by the Departmental Policy: Elizabeth Garwood, MD-46 academic days (UMM 14129), Christopher Sereni, MD-23 academic days (UMM 20372), Ryan Tai, MD- 23 academic days (UMM 25675) and George Watts, MD- 46 academic days (UMM 27870), all attached at Exhibit VVVV.

247.      Dr. Karin Dill received non-clinical time more than the total maximum limit (70) as defined in the Policy: 12 academic days, 36, administrative days, 24 days for serving as interim division director, for a total 72 days. See UMM 07667, attached as Exhibit EE .; UMM 08912, attached at Exhibit FF.

248.      Dr. Rosen declined to promote (female) radiologists Dr. Mona Korgaonkar or Dr. Christine Wallace to Division Chief positions, despite their greater than 20 years of service (each) to the Department.  See Exhibit WWWW.

249.      On August 2, 2018, Dr. Rosen extended an offer of employment to Dr. Maria Barile. After Dr. Dill resigned from the Medical Center in July 2019, Dr. Rosen did not offer the position of Division Chief to Dr. Barile.  Instead, he offered the position to male radiologist Dr. Alexander Bankier, whom he had hired December 31, 2019.  See Exhibit GG.

<u>Dr. Rosen's Selections for *Non-Division Chief* Administrative Positions</u>

250.       Within the Organizational Structure of the Department of Radiology, there are a total of ten *Non-Division Chief Administrative Roles* (excluding the Chair Role) that can be assigned to attending radiologists within the Department.  More than one radiologist can be assigned to the same role. UMMS Medical School Radiology Organizational Chart, attached at Exhibit RRR

251.      Dr. Rosen named the following nine radiologists who were working under him at the time Dr. Desai was actively employed to *Non Division Chief Administrative Roles* in the Department of Radiology: Christopher Cerniglia, MD, Aaron Harman, MD, George Watts, MD, Steven Baccei, MD, Hao Lo, MD, Carolynn DeBenedectis, MD, Carolyn Dupuis, MD, Gopal Vijayaraghavan, MD, Stephan Wicky van Doyer, MD. Medical School Radiology Organizational Chart, attached at Exhibit RRR.

252.      Seven of those nine (77.7%) radiologists are currently under the age of 50 (Christopher Cerniglia, MD-UMM 07329, Aaron Harman, MD-UMM 08022, George Watts, MD- UMM 27939, Steven Baccei, MD-UMM-06454, Hao Lo, MD-UMM 17674, Carolynn DeBenedectis, MD-UMM 07572, Carolyn Dupuis, MD-UMM 07765, all attached at Exhibit MMMM.

253.      Seven of the nine (77.7%) radiologists in *Non Division Chief Administrative Roles at the time Dr. Desai was actively employed* are male. Medical School Radiology Organizational Chart, attached at Exhibit RRR.

<u>Dr. Dill's Treatment of Dr. Desai and Her Role in the Termination of Dr. Desai</u>

254.      Dr. Rosen states that it was the conclusions of Dr. Litmanovich's review that led him to terminate Dr. Desai and that Dr. Dill played no role in the decision to terminate Dr. Desai. MCAD First and Second Position Statements, attached as Exhibits MM and XX.  Emails evidence Dr. Dill's involvement:

> a.  The results of Dr. Litmanovich's independent review were provided to Dr. Rosen on December 25, 2017.  Email from Rosen to Mowlood dated December 26, 2017, attached as Exhibit LLL.

b.  The PowerPoint presentation that Dr. Rosen presented regarding the conclusions of Dr. Litmanovich's review was dated January 26, 2017. See Exhibit PPP. (The year, 2017, is an apparent typographical error and should be 2018.)

c.  Defendants state, under oath, that the independent review and presentation to Dr. Desai was not completed until March 2018. Defendants' Answer to Amended Complaint ¶ 65, attached at Exhibit YY.

d.  On Friday, February 16, 2018, Dr. Dill sent an email to Dr. Rosen the subject line of which is "confidential review" and which had attached an excel file titled "Dr. Desai's Cases 29 Jan2018 read-dill review.xlsx." See Exhibit ZZZZ.   In that email Dr. Dill wrote about her review of Dr. Desai's cases: "What I have so far is concerning. There are two signif (sic) problems caught so far upon my limited review." Id.

e.  In response, Dr. Rosen wrote, "OK- can you review the remainder on the list and then send me the entire summary?" When Dr. Dill told him she was not able to do so immediately, Dr. Rosen asked her to review by early the next week. See Exhibit ZZZZ.

f.  Dr. Dill also knew about Dr. Desai's termination before it occurred.  See Exhibit X.

Dr. Tosi's Response to Concerns of Discrimination

255.    Dr. Tosi currently serves as President of the UMASS Memorial Medical Group and signs and/or is copied on written communications regarding termination and new hires.  See, e.g., hiring documents attached at Exhibit AAAAA.

256.     Near the end of his employment, radiologist Dr. Roychowdhury discussed with Dr. Tosi

his objection to Dr. Rosen's decision to end his employment, and informed Dr. Tosi that Dr.

Rosen said that Dr. Roychowdhury was not in Dr. Rosen's "vision" for the Department moving

forward but did not explain what the "vision" was.  Roychowdhury Dep. at 40:10-40:16,

attached at Exhibit S.  Dr. Tosi did not explain to Dr. Roychowdhury what Dr. Rosen's vision

was. He informed Dr. Roychowdhury that Dr. Rosen had the power to end Dr. Roychowdhury's

employment and advised Dr. Roychowdhury to resign his position. Roychowdhury Dep. at 37:1,

attached at Exhibit LL.

257.     While Dr. Tosi was aware of Dr. Rosen's offer to extend Dr. Alencar's employment

beyond the termination date of July 18, 2014, he did not intervene to ensure that Dr. Rosen

offered the same for Dr. Desai. UMM03696, attached at Exhibit TTT.

258.     As of August 2016, Dr. Tosi was aware of concerns raised by radiologists in the

Department that Dr. Rosen was not paying them fairly. Defendants' Answer to Complaint at ¶

29, attached as Exhibit YY.

259.     Nevertheless, Dr. Tosi (and Dr. Rosen) continued to co-sign employment contracts for

several younger hires in the Department of Radiology, immediately out of training, for an

equivalent, nearly equivalent, or greater annual base salary, with minimal to no experience, as

Dr. Desai's base salary in 2019 ($330,000). Dr. Elizabeth Garwood, UMM 14129, UMM

14070Dr. Christopher Sereni, MD UMM 20372-20373, UMM 20351, Ryan Tai, MD- UMM

25675, UMM 25638 Dr. George Watts UMM 27870-27871, UMM 27812, Dr. Maria Barile

UMM 09208-09209, UMM 009223.  Dr. Brian Brochu (UMM 09985-09986), UMM 10879.

Exhibit BBBBB.   Dr. Tosi (and Dr. Rosen) continued to sign employment contracts for

radiologists offering them academic days inconsistent with the maximum allotment as per the

Department's academic/administrative time policy. Dr. Elizabeth Garwood,- UMM 14129,  Dr. Christopher Sereni, UMM 20372; Dr. Ryan Tai,- UMM 25675, Dr. George Watts UMM 27870Dr. Maria Barile UMM 09208-09209.  See EXHIBIT BBBBB.

260.    Drs. Tosi and Rosen granted to Dr. Jay Agrawal, a male radiologist who was 32 years old at the time of hire in 2016, an annual base salary of $325,000 *and 92* academic days immediately upon hire. See UMM 05423 and UMM 09157-09158, both attached at CCCCC; UMM 08912, attached as Exhibit FF.

261.    Dr. Tosi was aware that Dr. Keith Cauley spoke with HR Business Partner Kathleen LeBlanc about Dr. Rosen's decision to terminate him and to request an additional review related to an original request pursuant to the UMass Memorial Medical Group Dispute Resolution Policy for Physicians.  See Exhibit AAAA.  On September 9, 2013, Ms. Streeter informed Dr. Cauley that:

> Dr. Steve Tosi conducted a thorough review of the decision of your Department Chair to issue notice of termination of your employment, without cause, pursuant to your employment agreement.  Dr. Tosi met with and spoke with several individuals, including yourself and your Chair.  As you were informed, his conclusion was that the decision was within the Chair's discretion.

UMM 03701, attached as Exhibit AAAAA.  Ms. Streeter concurred with the conclusion of Dr. Tosi. In contrast to Dr. Rosen's treatment of Dr. Desai, Ms. Streeter told Dr. Cauley that he had been given the option to resign his employment, rather than have it characterized as a termination. Id.

262.    Dr. Tosi (System Chief Physician Executive) and Dr. Baccei (Associate Chief Medical Officer) are currently leaders of the Medical Staff at the University of Massachusetts Medical Center.  Radiology Organization Chart at Exhibit RRR.

<u>Pay Disparities</u>

263.     Under the pay structure implemented March 1, 2017, for the Department of Radiology, which remains in effect, Radiologists receive an annual base salary of $330,000. Radiologists in Vice Chair Positions receive an additional $15,000 of annual compensation. Division Chief Positions receive an additional $15,000 of annual compensation. Radiologists with an academic rank of Associate Professor receive an additional $10,000 of annual compensation. Radiologists with an academic rank of Professor receive an additional $20,000 of annual compensation. Rosen Aff. at ¶ 83, Exhibit S.

264.     Rosen asserts that a radiologist's performance of non-clinical duties for the Department, including service in leadership, academic, and administrative positions, is separate and apart from their clinical duties and is extremely valuable to the Department. Rosen Aff. at ¶ 93, Exhibit S.

265.     Dr. Desai assumed full responsibility for leadership and daily operation of the Division of Thoracic Radiology in the physical absence of the Division Chief (more than 100 working days in 2016 and 2017 (see Exhibit FF ) and was the only full-time chest radiologist in the Division in times of Dr. Dill's absence following the departure of Eric Schmidlin, MD in June 2016 as a full time radiologist (Exhibit BB ) for the period of time up until the arrival of Dr. Maria Barile, MD on December 31, 2018 (Exhibit BB ).  Annual Faculty Reviews Exhibit T  Desai Aff. at ¶ 53, Exhibit A.

266.     During times of short staffing in their Division, Dr. Rosen offered Dr. Puri and Dr. Wakhloo, both males, additional payment for increased clinical work productivity.  See Exhibit EEEEE.

Dr. Desai's Annual Salary under Dr. Rosen

267.     Dr. Desai's annual base salary was $330,000 at the time of her separation on March 17, 2019. See Exhibit FFFFF.  Dr. Desai's total annual salary in 2019 was $340,000. Id.

268.     Dr. Rosen stated that Dr. Desai received a $10,000 dollar increase in her annual salary based on her academic rank as Clinical Associate Professor of Radiology. Exhibit FFFFF; Rosen Aff. at ¶ 84, Exhibit S.

269.     Dr. Desai has approximately 38 years of experience as an attending physician in Radiology. She worked for a total of 27 years as an attending radiologist in the Department of Radiology at UMMC. See Desai CV, Exhibit B.

Dr. Desai's Trained Several Radiologists Currently Employed in the Department

270.     Dr. Desai trained the following individuals during their Residency at the Medical Center or as a student at the Medical School: Dr. Brian Brochu, Dr. Dennis Coughlin, Dr. Carolyn Dupuis, Dr. Hemang Kotecha, Dr. Lacey McIntosh, Dr. Andrew Chen, Dr. Monique Tyminksi, Dr. Andrew Chen, Dr. David Choi, Dr. Laureen Sena, Dr. Robert Sheiman, Dr. Jade Watkins, Dr. Abhijit Roychowdhury, Dr. Patricia Cross, Dr. Andrew Smith, Dr. Guillermo Walters. Dr. Desai trained Dr. Aaron Harman in the Department of Radiology while he was a medical student at the University of Massachusetts Medical School.  Desai Aff. ¶ 54, Exhibit A.

271.     In addition, Dr. Desai trained Dr. Young Kim in thoracic radiology when he began working as an attending physician in the Department of Radiology. Desai Aff ¶ 55, Exhibit A.

Pay Discrepancies: Younger Male Diagnostic (Non-Interventional) Radiologist Currently Employed in the Department Paid An Annual Base Salary of $375,000 in March 2018 despite the Revised Pay Structure Implemented in March 2017 offering all diagnostic radiologists an Annual Base Salary of $330,000

Dr. Brian Brochu, MD

272.       Dr. Brian Brochu, a diagnostic radiologist who performs the same clinical duties as Dr.

Desai, received an annual base salary of $375,000 upon hire by Dr. Rosen on March 30, 2018

(see Exhibit YYYY).  His offer letter was signed by both Drs. Tosi and Dr. Rosen.  This base

salary offer was not consistent with the revised salary structure that was claimed to be

universally implemented for all radiologists within the Department. See Exhibit DDDDD.  This

offer was signed by Dr. Tosi following the supposed implementation of a new salary structure

and following the August 2016 meeting that occurred in which several radiologists expressed

concern about pay disparities to both him and Dr. Rosen.

273.       In recognition of Dr. Brochu's five years of service within the UMass system, Dr. Rosen

and Dr. Tosi allocated to him 7 weeks (35 days) vacation per year. See Exhibit YYYY.  Dr.

Brochu was offered same amount of vacation as Dr. Desai (7 weeks) that she received up until

day of termination, at which time she had provided 27 years of service to the Department. See

Exhibit YYYY; Exhibit FF.

274.       Dr. Brochu has significantly fewer years of experience as an attending physician (less

than 10 years-) than Dr. Desai (approximately 35 years at time of Dr. Brochu's hire by Dr. Rosen

and Dr. Tosi in 2018) but received annual base salary in 2018 that was $45,000 greater than Dr.

Desai's annual salary at the time of her separation in 2019. See Exhibit YYYY; Exhibit FFFFF.

Pay Discrepancies:: Younger Male Diagnostic Thoracic Radiologist Previously Employed Full Time
in the Division of Thoracic Radiology under Dr. Rosen and Currently Employed in the Division in a
Per Diem Capacity

Dr. Eric Schmidlin, MD

275.       Dr. Eric Schmidlin, a diagnostic radiologist, specialized in chest imaging and worked

within the Division of Thoracic Radiology. He performed the same clinical duties as Dr. Desai.

See Rosen Aff. at ¶ 253, attached as Exhibit S.

276.     In 2016, Dr. Desai's annual rate of compensation was less than that of Dr. Schmidlin. Dr. Desai's annual salary was $283,375.04 and Dr. Schmidlin's annual salary was $294,000. See Exhibit FFFFF.

277.     Dr. Schmidlin left regular employment with the Medical Group on June 28, 2016 (UMM 19930, Exhibit GGGGG) after approximately four years of full time employment in the Division (UMM 19900, Exhibit GGGGG), less than six months following Dr. Dill's arrival as Division Chief of Cardiothoracic Imaging (Exhibit RRRR) but continued to work on a per diem, hourly basis thereafter. Ex. A. Rosen Aff. at ¶ 87, attached as Exhibit C.  Dr. Schmidlin's hourly per diem rate, established in 2016, is approximately one dollar less than Dr. Desai's hourly rate of compensation in 2019. Id.

278.     Dr. Schmidlin has an academic rank of Assistant Professor in the Department; Dr. Desai had an academic rank of Associate Professor. See Exhibit FFFFF.  Dr. Schmidlin has significantly fewer years of experience as an attending physician than Dr. Desai See Exhibit RRR.

Pay Discrepancies: Other Younger Male Diagnostic (Non-Interventional) Radiologists Currently Employed in the Department

Dr. Byron Chen, MD

279.     Dr. Byron Chen, a diagnostic radiologist who performed the same clinical duties as Dr. Desai, earned the same annual base salary as Dr. Desai did at the time of her separation. See Exhibit FFFFF.

280.     At the time of Dr. Desai's separation, Dr. Chen had no Division Chief or Administrative Roles within the Department. See Exhibit TTTT.

281.     Dr. Chen has significantly fewer years of experience as an attending physician than Dr. Desai but received the same annual base salary as Dr. Desai at the time of her separation.  See Exhibit HHHHH.

Dr. Hemang Kotecha, DO

282.     Dr. Hemang Kotecha, a diagnostic radiologist who performed the same clinical duties as Dr. Desai, earned the same annual base salary as Dr. Desai at the time of Dr. Desai's separation. See Exhibit FFFFF.

283.     Dr. Kotecha has no Division Chief or Administrative Roles within the Department. UMMS Radiology Organizational Chart, attached as Exhibit RRR.   Dr. Kotecha has significantly fewer years of experience as an attending physician than Dr. Desai. See Exhibit IIIII.

Dr. Steven Baccei, MD

284.     In 2019, Dr. Steven Baccei, a diagnostic radiologist who performed the same clinical duties as Dr. Desai, received an annual rate of compensation of $369,999.97. He served as Vice Chair for Quality, Patient Safety, and Process Improvement, Division Chief of Musculoskeletal Radiology, and held the academic rank of Associate Professor. Rosen Aff. at ¶ 94, attached as Exhibit S; and Exhibit FFFFF.

285.     Under the pay structure implemented for the Department of Radiology effective March 1, 2017, accounting for his additional salary based of his Vice Chair Position, Division Chief Position, and Academic Rank of Associate Professor, Dr. Baccei's annual base salary in 2019 was equivalent to that of Dr. Desai's annual base salary at the time of her separation. Employment data excel spreadsheet, attached as Exhibit DDDDD.

286.     Dr. Baccei has significantly fewer years of experience as an attending physician than Dr. Desai. See Exhibit JJJJJ.

Dr. Christopher Cerniglia, DO

287.     Dr. Christopher Cerniglia, a diagnostic radiologist who performed the same clinical duties as Dr. Desai but has significantly fewer years of experience as an attending physician than Dr. Desai, earned the same annual base salary as Dr. Desai at the time of her separation. See Exhibit KKKKK.

Dr. Sathish Dundamadappa, MD

288.     Dr. Satish Dundamadappa, a diagnostic radiologist who performed the same clinical duties as Dr. Desai but has significantly fewer years of experience as an attending physician than Dr. Desai, earned the same annual base salary as Dr. Desai at the time of her separation. See Exhibit LLLLL.

Dr. Dennis Coughlin, MD

289.     Dr. Coughlin, a diagnostic radiologist who performed the same clinical duties as Dr. Desai but has significantly fewer years of experience as an attending physician than Dr. Desai, earned the same annual base salary as Dr. Desai at the time of her separation. See Exhibit MMMMM.

Pay Discrepancies: *Younger* Diagnostic (Non-Interventional) Radiologists, Working in Same Division (Division of Cardiothoracic Imaging) as Dr. Desai on the Day of Dr. Desai's Termination of Employment

Dr. Karin Dill, MD

290.     On February 29, 2016, Dr. Rosen hired Dr. Karin Dill, a diagnostic radiologist who performed the same clinical duties as Dr. Desai, as Division Chief of Cardiothoracic Imaging.

Dr. Dill served as Division Chief of Cardiothoracic Imaging from February 2016 until the final day of Dr. Desai's employment and thereafter. See Exhibit EE. She was paid an annual base salary of $330,000. Id. She was paid an additional sum for her duties and responsibilities as Division Chief. Rosen Aff. at ¶ 91, attached as Exhibit S.  Effective March 1, 2017, Dr. Dill was paid an additional sum of $15,000 annually for her duties and responsibilities as Division Chief of Cardiothoracic Imaging. Dr. Rosen did not select Dr. Dill for any non-Division Chief administrative positions within the Department of Radiology. UMMS Radiology Organizational Chart, attached as Exhibit RRR.

291.    Dr. Dill has significantly fewer years of experience as an attending radiologist than Dr. Desai. See Exhibit XX.

292.    Dr. Dill earned the same annual base salary ($330,000) as Dr. Desai upon hire in 2016 as Dr. Desai received at the time of her separation in 2019. See Exhibit EE, Exhibit FFFFF.

293.    As of January 1, 2017, Dr. Desai earned a lower total annual salary ($283,375.04) than Dr. Dill ($329,999.90). See Exhibit FFFFF.

294.    As of March 1, 2017, Dr. Desai earned a lower total annual salary ($320,800.06) than Dr. Dill ($355,000.09). See Exhibit FFFFF.

Dr. Maria Barile, MD

295.    Dr. Barile, a diagnostic radiologist who performed the same clinical duties as Dr. Desai, began employment in the Department of Radiology at an Academic Rank of Assistant Professor on December 31, 2018.  She was 41 years old at the time of hire. See UMM 00722, UMM 06988, both attached as Exhibit FFFFF.

296.     Although Dr. Barile has significantly fewer years of experience as an attending physician than Dr. Desai, she earned the same annual base salary as Dr. Desai at the time of her separation. See Exhibit NNNNN.

## Marlborough Hospital Exerts Control Over the Means and Manner of Dr. Desai's Performance

297.     UMass Memorial Health Marlborough Hospital is a member of UMass Memorial Hospitals, Inc. Marlborough Hospital publicly refers to itself as UMass Memorial Health Marlborough Hospital, and publicizes itself as a member of an integrated health system, specifically that which exists as part of UMass Memorial Healthcare, Inc.  See Exhibit OOOOO.

298.     UMass Memorial Health Marlborough Hospital is a member of the UMass Memorial Healthcare System and is one of the UMass Memorial Healthcare Inc. hospitals.  Id.; see also UMM 03170, attached as Exhibit OOOOO.

299.     To provide medical services as a physician for UMass Memorial Health Marlborough Hospital patients and perform services for UMass Memorial Health Marlborough Hospital, Dr. Desai was required to be granted clinical privileges by UMass Memorial Health Marlborough Hospital, be a member of UMass Memorial Health Marlborough Hospital's Medical Staff and be credentialed by UMass Memorial Health Marlborough Hospital. Rosen Aff. at ¶ 14, attached as Exhibit S; UMM 03170, attached as Exhibit OOOOO; UMM 03638, both attached as Exhibit FFFF.

300.     Dr. Desai was also required to pay yearly dues to UMass Memorial Health Marlborough Hospital.  UMM 03342, UMM 03629, UMM 03635, all attached as Exhibit QQQQQ.  Plaintiff regularly paid dues to UMass Memorial Health Marlborough Hospital as a member of the UMass Memorial Health Marlborough Hospital's Medical Staff.  See Exhibit QQQQQ.

301.    On February 5, 2015, Dr. Desai was initially credentialed and received clinical privileges to interpret radiologic studies for patients at UMass Memorial Health Marlborough Hospital. See Exhibit RRRRR.  Dr. Desai was granted clinical privileges by UMass Memorial Health Marlborough Hospital from 2015 until the final day of her employment in the Department of Radiology.  See Exhibit OOOOO; See Exhibit FFFF.

302.    Dr. Desai was appointed and reappointed to UMass Memorial Health Marlborough Hospital's Medical Staff in 2015 and 2017.  Each appointment was for a two-year term. UMM 03163, attached as Exhibit EEE; UMM 03639, attached as Exhibit PPPPP. UMM 03188, attached as Exhibit EEE; UMM 03594, all attached as Exhibit PPPPP.

303.    Dr. Brennan served as the Chief of Radiology for UMass Memorial Health Marlborough Hospital from 2015 to 2018 and as Vice Chair for Enterprise Operations and Community Radiology from 2015 to 2019. Rosen Aff. at ¶ 15, 17; attached as Exhibit S.  Dr. Rosen designated Dr. Brennan to address concerns, including quality concerns, within the Department in his role as Vice Chair. Id. See also Tyagi's employment contract showing that Tyagi must report to Brennan, attached as Exhibit SSSSS.

304.    Although Defendants describe Dr. Brennan as responsible only for staffing for the reading of studies at UMass Memorial Health Marlborough Hospital in his role as Chief of Radiology for UMass Memorial Health Marlborough Hospital, see Rosen Aff. at ¶ 16, attached as Exhibit S.  Dr. Rosen stated that Divisions Chiefs are responsible for, among other things, clinical operations and quality assurance and improvement. Rosen Aff. at ¶ 92, attached as Exhibit S; see Exhibit AAA.

305.    Dr. Brennan directed radiologists, including Dr. Desai, to prioritize interpretation of the cases at UMass Memorial Health Marlborough Hospital. Rosen Dep. at 141:23-142:11, attached

as Exhibit S.  Exercising authority in quality matters, Dr. Darren Brennan exchanged emails with Dr. Rosen regards Dr. Robinson's complaints, which he described as mostly unjustified. Rosen Dep. at 141:23-142:11, attached as Exhibit S.

306.    Mr. Steven P. Roach, President of UMass Memorial Health Marlborough Hospital and HealthAlliance-Clinton Hospital, routinely signed Medical Staff appointment/reappointment letters for radiology physicians, including Dr. Desai, on behalf of the UMass Memorial Health Marlborough Hospital Patient Care Assessment Committee (Board of Trustees). See Exhibit TT.

307.    Mr. Roach attended the meeting January 31, 2017, meeting held to review radiology issues at UMass Memorial Health Marlborough Hospital, after which Dr. Rosen decided to conduct independent review of Plaintiff following alleged concerns raised by Dr. Robinson regarding quality of Plaintiff's CT scan interpretations.  See Exhibit AAA.

308.    Drs. Brennan, Robinson, Tennyson, and Douglas Brown, all of whom worked at UMass Memorial Health Marlborough Hospital, also were present at the January 31, 2017, meeting. Email Rosen and Brennan January 31, 2017. Id.

309.    Dr. Charles Cavagnaro, Dr. Kimberly Robinson, Mr. Roach, and Douglas Brown currently serve on the Patient Care Assessment Committee, (a.k.a. Board of Trustees of UMass Memorial Health Marlborough Hospital) and served on this committee when Dr. Desai was actively employed in the Department of Radiology. Desai Aff. ¶ 58 attached as Exhibit A.

310.    Dr. Robinson served as the President of the UMass Memorial Health Marlborough Hospital Medical Staff.  Rosen Aff. at ¶ 48, attached as Exhibit S.  Her complaints regarding the quality of Dr. Desai's reads for UMass Memorial Health Marlborough Hospital led to Dr. Rosen's decision to conduct the independent review that Defendants cite as grounds for Dr.

Desai's termination of employment. MCAD First and Second Position Statements, attached as Exhibit XX and MM.

311.    At Dr. Tosi's request, Dr. Charles Cavagnaro, MD a member of Patient Care Assessment Committee, (a.k.a. Board of Trustees) of UMass Memorial Health Marlborough Hospital, attended the March 14, 2018, meeting at which Dr. Rosen informed Dr. Desai of her termination. See Exhibit TTTTT.

312.    On April 4th, 2019, Mr. Roach wrote that UMass Memorial Health Marlborough Hospital "accepted [Plaintiff's] resignation as a member of the Department of Radiology with regret" and thanks her for services to Marlborough Hospital.  See Exhibit FFFF.

313.    Radiologists that Dr. Rosen hired in the Department of Radiology express on their resumes that they work for UMass Memorial Marlborough Hospital or University of Massachusetts/Marlborough Campus.  See Exhibit BBBBB.

314.    Dr. Brian Brochu, MD was the Chief of UMass Memorial Health Marlborough Hospital from 2018 up until the date of Dr. Desai's termination. See Exhibit BBBBB. He also served on UMass Memorial Health Marlborough Hospital's Credentials Committee. See Exhibit BBBBB.

315.    Dr. Brian Brochu, MD in his role as Chief of UMass Memorial Health Marlborough Hospital in 2018, following Dr. Brennan's departure, never discussed, or formalized to Dr. Desai any complaints regarding the quality of her work.  No documentation exists to support that Dr. Brochu directly participated restricting Dr. Desai's privileges at UMass Memorial Health Marlborough Hospital or University of Massachusetts Medical Center, nor did he involve or communicate with any other parties to restrict her privileges, even though he served on committees that exercised such authority. Dr. Desai's credentialing was approved in 2017 with no restrictions to her privileges at UMass Memorial Health Marlborough Hospital or University

of Massachusetts Medical Center for another two-year term.  Desai Aff. ¶ 59, attached as Exhibit
A

The Medical Center Exerts Control Over the Means and Manner of Dr. Desai's Performance

316.    The Medical Center is a multi-facility academic hospital which provides tertiary-level
care. Rosen Aff. at ¶ 9, attached as Exhibit S.

317.    To provide medical services as a physician for Medical Center patients, Dr. Desai was
required to be granted clinical privileges by the Medical Center and be a member of the Medical
Center's medical staff. Rosen Aff. at ¶ 14, attached as Exhibit XX

318.    The Medical Center appointed Dr. Desai to its medical staff, granted to her clinical
privileges, and retained the right to withdraw them.  See Exhibit EEEE

319.    Her clinical privileges included the use of the Medical Center's facilities and support
staff.

320.    In 2017, the Medical Center's Radiology Department began to utilize workstations for
radiologists to use at home but denied to Dr. Desai the use of a personal workstation. Rosen
Affidavit 36, attached as Exhibit S.

321.    Dr. Desai was required to adhere to medical staff rules and by-laws, participate in staff
meetings, and participate in the Medical Center's quality assurance program. In fact, Dr. Rosen
appointed her as Quality Assurance representative for the Chest Division on the Quality
Improvement Committee, which is a Medical Center committee. Desai Aff. ¶ 13.

322.    Dr. Rosen, a member of the Medical Center's administration, was Dr. Desai's
supervisor. Radiology Organization Chart, Exhibit RRR. In 2017, Dr. Rosen recommended that
Dr. Desai be granted privileges; he did so on a document titled UMass Memorial Medical Center
Review and Action Form. Desai Aff. ¶ 59.

323.     In addition, Dr. Tosi was directly involved in reappointment/credentialing/approving

clinical privileges, in his roles as both Credentials Committee Chair and Chief Medical Officer

of UMASS.  See Exhibit EEEE.

The University of Massachusetts Chan Medical School Exercised Control Over the Manner and
Means of Dr. Desai's Employ

324.     Dr. Ryan Tai, MD, in his CV, states that he teaches at the University of Massachusetts

Medical Center and the University of Massachusetts Medical School.  See Exhibit BBBBB.

325.     Several radiologists' employment contracts state "Your successful development as an

academic physician is important to us. You will receive mentoring and support for your work

within the department, from other UMMS faculty, and through a resource network that includes

other clinical and basic academic departments and programs. The UMMS Office of Faculty

Affairs offers faculty development and mentoring programs to assist faculty in attaining their

goals. Information and resources are available at http ://www. umassmed.edu/ofa."  See Exhibit

VVVV.

326.     Dr. Desai was dually employed by UMass Medical Group and UMASS Medical School

and was paid by both the Medical School and Medical Group. See Exhibit VVVVV.

327.     As part of Dr. Desai's employment contract, she received annual Continuing Medical

Education funds from the Office of Graduate Medical Education at the University of

Massachusetts Medical School.  Desai Aff. ¶ 60 attached as Exhibit XX.  Dr. Desai routinely

exhausted these funds for academic/educational purposes, including, but not limited to the

attendance of national meetings.  Desai Aff. ¶ 60., attached as Exhibit A; see also Exhibit

WWWWW.

328.     Dr. Desai taught for the Medical School, including but not limited to giving conferences specifically to medical students. See Exhibit XXXXX.  Dr. Ferrucci noted that Dr. Desai has a "wonderful presence on the faculty.  Dedicated to Dept'l goals. Keep Going!" See Exhibit XXXXX.

329.     Dr. Desai attended meetings/conferences/educational sessions at the Medical School throughout the course of her employment in the Department of Radiology See Exhibit WWWWW.  Dr. Rosen testified that Faculty Annual Performance Reviews forms, which he used to conduct radiologists' annual reviews, are medical school forms. Rosen Dep., at 45:8-45-24, attached as Exhibit S.

330.     In the Medical School's response to Amended complaint filed on November 26th, 2019, the Medical School admits that Plaintiff was promoted by the Medical School to a Clinical Associate Professor on or about September 1, 2001, and, on December 8, 2017, her title was changed to Associate Professor.  See University of Massachusetts Medical School response to Plaintiff's Amended Complaint, ¶ 21, attached as Exhibit YY.

Plaintiff's Employment with Medical School is Dependent on Plaintiff's Employment with the Medical Center

331.     The Medical School and Medical Staff appointments are inter-related in that resignation/termination of employment from the Medical Center automatically relinquishes all employment, associations, privileges, and titles granted by the Medical School. See University of Massachusetts Medical School's Memorandum in support of Motion to Dismiss Plaintiff's Amended Complaint, p. 5. Exhibit YY .

332.     That contract states that Dr. Desai's work for the Medical School was dependent upon her continued employment by UMass Memorial.  Id. at ¶1.14.  The contract reads, in pertinent part: The Practitioner [Dr. Desai] acknowledges that the terms and conditions of employment

with the Medical Group are governed by this Agreement and the policies and practices of the

Medical Group.  The Practitioner further acknowledges that if this Agreement is terminated for

any reason the related employment relationship with the Medical School shall also terminate

unless the Practitioner has a new or continuing agreement with the Medial School or is a tenured

faculty member. Id.

333.     Plaintiff's employment contract states that Dr. Desai's work for the Medical School was

dependent upon her continued employment by UMass Memorial. University of Massachusetts

Medical School's Memorandum in Support of Motion to Dismiss Plaintiff's Amended

Complaint, Section B, 1st full paragraph, page 5, attached as Exhibit YY.

Medical School's Involvement in Dr. Desai's Credentialing

334.     Several radiologists' personnel files state the following "UMass Memorial Medical

Center and the University of Massachusetts Medical School are now working on the various

credentialing matters for your appointment to the Medical Staff and to the faculty of the Medical

School." See Exhibit XX.

335.     Members of the Medical School are actively involved in evaluating the performance of

all employed physicians by way of their involvement in the credentialing, re-credentialing,

medical staff appointment and reappointment process, and the granting of clinical privileges to

physicians that provide clinical services.  Id.

336.     Medical School employees (including Dr. Brian Brochu- UMM 09970) routinely served

on committees regarding credentialing, re-credentialing, medical staff appointments of

physicians in the Department of Radiology. See Exhibit EEEE.

337.     Chancellor Michael Collins, MD, FACP, a Medical School employee, was a member of

the Board of Trustees (Patient Care Assessment Committee) at the time Dr. Desai was

reappointed for clinical privileges at the Medical Center without condition. See Exhibit EEEE

.He continues to serve in this role to date. Id., Desai Aff. ¶ 61 attached as Exhibit A.

338.　　　As part of the credentialing process for the Medical Center, Dr. Desai was required to be

approved/reapproved for clinical privileges at the level of the Department Chief.  Following

signature of the Department Chair, Dr. Desai's application was required to be approved by the

Medical Staff Credentials Committee, Medical Staff Executive Committee, and the Patient Care

Assessment Committee (Board of Trustees). See Exhibit EEEE.

339.　　　Dr. Rosen, as well as all three committees, signed to approve Dr. Desai's re-credentialing

application in 2017 with no change to her previously approved clinical privileges from 2015

(including the ability to read CT scans) on the following dates:

     i.　Medical Staff Credentials Committee (7/13/17)

     ii.　Medical Staff Executive Committee (8/9/17)

     iii.　Patient Care Assessment Committee (aka Board of Trustees) (8/24/17)

340.　　　Dr. Desai's requested privileges were approved by Dr. Rosen (6/21/17) and Committees

listed above with no conditions (i.e. restrictions). See Exhibit EEEE.

341.　　　Dr. Desai's reappointment to the Medical Staff of the Medical Center reached the final

approval (Patient Care Assessment Committee, aka Board of Trustees) on August 24, 2017. Dr.

Desai never received any formal communication from the Medical Center that her privileges had

been changed from this date up until her the final day of her employment.

Defamation

342.　　　Dr. Desai's ability to interpret CT scans remained unrestricted throughout the course of

her employment in the Department of Radiology at the Medical Center and UMass Memorial

Health Marlborough Hospital.  Nevertheless, Dr. Rosen ordered her to discontinue interpreting CT scans. Desai Aff. ¶ 38, at Exhibit A.

343.    Desai complied with Dr. Rosen's instructions to her that she could no longer interpret Chest CT scans. Dr. Rosen's restriction harmed Dr. Desai in the eyes of her professional community.  Desai Aff. ¶ 39, attached as Exhibit A.

344.    Defendants' refusal to permit Dr. Desai to interpret CT scans was widely known in the radiology department and to numerous others throughout the hospital and in Dr. Desai's professional community.  Desai Aff. ¶ 39, attached as Exhibit A.

Respectfully submitted,

CHARU DESAI
By Her Attorney,

/s/ Patricia Washienko
_____
Patricia A. Washienko, BBO# 641615
pwashienko@fwlawboston.com
Freiberger & Washienko LLC
211 Congress St, Suite 720
Boston, MA 02110
Tel: (617) 723-0008

Dated: February 11, 2022

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2022, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, was served by electronic mail only to counsel for the above-named Defendants:

Robert L. Kilroy, Esq.
Reid Wakefield, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
(508) 860-1477
rkilroy@mirickoconnell.com

Mark Johnson, Esq.
Denise Barton, Esq.
University of Massachusetts Office of the General Counsel
One Beacon Street, 31st Floor
Boston, MA 02108
(617) 287-4064
MAJohnson@umassp.edu


/s/ Patricia Washienko
_____
Patricia A. Washienko