UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

| | |
|---|---|
| CHARU DESAI,<br>         Plaintiff,<br><br>       v.<br><br>UMASS MEMORIAL MEDICAL CENTER, INC., et al.,<br>         Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, KARIN DILL, M.D.** |

Defendant, Karin Dill, M.D. ("Dr. Dill"), pursuant to Local Rule 56.1, submits her memorandum of law in reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 92)[1] and in support of her Motion for Summary Judgment (Doc. 70).

In support of her Motion, Dr. Dill has offered clear and undisputable facts which demonstrate that she did not take any discriminatory action against Plaintiff and that she was not involved in the decision-making with respect to Plaintiff's termination or any other employment action. In response, Plaintiff has failed to provide competent evidence to refute this fact. Instead, she focuses on evidence that Dr. Dill simply performed her job duties as her supervisor. These actions do not support any basis for liability.

In many instances, Plaintiff offers no evidence at all to dispute the facts offered by Dr Dill, but simply states that Dr. Dill's evidence can "be appropriately rejected by a reasonably jury," so it should not be considered, citing <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530

---

[1] Citations to "Opposition" are to Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment by Defendant Karin Dill, M.D. (Doc. 92); citations to "Response" are to Plaintiff's Response to Defendant Karin Dill, MD's Statement of Material Facts (Doc. 92-1); and citations to "P.S.O.F." are to Plaintiff's Statement of Additional Material Facts in Dispute in Opposition to the Motions for Summary Judgment of all Defendants (Doc. 95).

U.S. 133 (2000). However, Plaintiff's conclusion from Reeves that "at the summary judgment stage, the court should disregard all evidence favorable to the moving party that the jury is not required to believe, even if it is uncontradicted," is plainly incorrect. At summary judgment, Plaintiff is required to cite to specific evidence in the record in order to defeat facts properly supported by Defendant and defeat summary judgment. See Fed.R.Civ.P. 56(c)(1) ("A party asserting that a fact … is genuinely disputed must support the assertion by … citing to particular parts of materials in the record."); Sears, Roebuck & Co. v. Goldstone & Sudalter, 128 F.3d 10, 18 (1st Cir. 1997). "A party cannot create an issue for the trier of fact by relying on the hope that the jury will not trust the credibility of witnesses." Sears, Roebuck & Co., 128 F.3d at 18 (emphasis supplied); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986) ("discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion."). "On issues where the nonmovant bears the ultimate burden of proof, [s]he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).

The evidence which Plaintiff does offer in an attempt to dispute facts and to establish her claims includes exhibits which do not support the premise for which they are cited and evidence that is irrelevant to the material facts necessary to support her claims. Based on the evidence that is in the record, and which is not disputed with competent evidence, there is no genuine issue as to any material fact, and Dr. Dill is entitled to summary judgment.

### I.     Discrimination

In essence, Plaintiff cites as the sole basis for her claims the fact that Dr. Dill, as Division Chief, was involved in reviewing the quality of her work and reporting concerns. She does not allege any facts that even suggest that Dr. Dill was motivated by Plaintiff's sex, age, or

disability, nor does she allege any facts which support that any action taken by Dr. Dill was pretext for discrimination. Instead, Plaintiff focuses on allegedly discriminatory actions <u>by Dr. Rosen</u>. She concludes that Dr. Dill must be guilty by association, because she had expressed quality concerns on which Dr. Rosen in part based his decision to obtain an independent review of Plaintiff's performance, which in turn led to her termination. Such conclusory reasoning does not support a claim for intentional discrimination.

Dr. Rosen was the decision-maker and the Medical Group ended Plaintiff's employment. Plaintiff alleges that this was the "underlying act of discrimination" committed by the "principal offender." <u>See</u> Opposition, pp. 3-4. Plaintiff states that there is evidence, however, that Dr. Dill "acted in furtherance of Dr. Rosen's discrimination" against her. However, she offers no facts relating Dr. Dill's actions to Dr. Rosen's ultimate decisions, other than the fact Dr. Dill made Dr. Rosen aware of her concerns, and those made to her by treating physicians, about Plaintiff's quality. A supervisor performing her duties and raising performance concerns is not pretext for discrimination.

Plaintiff does not explain what actions Dr. Dill took which are distinct from the allegedly discriminatory actions of Dr. Rosen, and does not offer any evidence at all that Dr. Dill shared an intent to discriminate or that she knew that her actions were supporting alleged discrimination. <u>See</u> <u>Saari v. Allegro Microsystems, LLC</u>, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (reciting required elements of an "aiding and abetting" claim). In her Opposition, Plaintiff asserts several allegations in an attempt to show discrimination, none of which further her claim.

First, Plaintiff claims that Dr. Rosen hired Dr. Dill as Division Chief over her, and provided her a certain amount of academic and administrative days, Opposition, ¶ 4; allegations which, of course, have nothing to do with <u>Dr. Dill</u> discriminating against Plaintiff.

Plaintiff also claims that Dr. Dill was, in fact, not motivated by discriminatory animus, but that she took the actions she did because Plaintiff had reported concerns about Dr. Dill's performance as Division Chief. See Opposition, p. 5. To the extent Plaintiff claims that she reported discrimination to Dr. Rosen in her letter of May 31, 2016, and that Dr. Dill was somehow motivated by that report, there is no evidence whatsoever, nor can Plaintiff offer any, that Dr. Dill was aware of such a claim. In fact, the evidence Plaintiff has submitted (from Dr. Dill's own private notes) shows plainly the reasons for Dr. Dill's frustrations: Plaintiff said that Dr. Dill was not "doing anything as chief;" Dr. Dill was "being undermined, insulted, belittled, manipulated;" Dr. Dill could not do her "work with her constant manipulation and negativity and undermining;" Dr. Dill had concerns about Plaintiff's refusal to cooperate with scheduling; Plaintiff spoke "negatively about admin[istration] and workflow in front of residents;" and, Plaintiff left a study unread and instead went home. See Pl. Ex. ZZZZZ. Of course, nothing about these facts suggests that Dr. Dill was actually motivated to discriminate against Dr. Dill because of her sex, age, or disability.

Plaintiff also claims that Dr. Dill disproportionately targeted her cases when entering them in the quality assurance system. There is no evidence in the record which supports this claim, and it is completely undermined by the evidence that is in the record. First, Dr. Dill was a chest radiologist and the Chief of the Chest Division, and thus, she would have performed secondary reads of chest images. See Dill S.O.F., ¶ 5. At the time, Plaintiff and Eric Schmidlin, M.D., were the other primary members of the chest division, Response, ¶ 143, and, accordingly, they would have been reviewed with much more frequency by Dr. Dill than other radiologists. Plaintiff disingenuously questions why out of 90 radiologists in the Department, her "cases accounted for 12.6% of Dr. Dill's entries." See Opposition, p. 6. She ignores the fact that Dr. Dill

performed reviews of dozens of radiologists in the course of her employment, with an average of a little over 3 reviews for each radiologist who did not primarily read chest CTs. See Pl. Ex. WW.

Second, the only evidence in the record reflects that, far from "disproportionately targeting" Plaintiff, Dr. Dill reviewed reads performed by Dr. Schmidlin – a younger, non-disabled, male – with far greater frequency than Plaintiff, or any other older, female, or disabled physician.[2] Pl. Ex. WW. Based on the evidence in the record, in the entire time Dr. Dill worked for the Medical Group, she entered 215 reviews of CT reads in the peer review quality assurance system, and 52 (over 24%) of them were performed by the other chest radiologist, Dr. Schmidlin. Only 17 of them (under 8%) were of Plaintiff's reads. There is further no correlation of number of reads to the age, sex, or disability of any other radiologist. Pl. Ex. WW. A claim of targeting is simply not reflected in the evidence.

Plaintiff also claims that in the Peer Review Summary document[3] "Dr. Dill falsely attributed to Dr. Desai her own significant misread." Opposition, p. 6. However, despite such a claim, Plaintiff offers no evidence at all that any of the reads were not hers. The only evidence in the record as to these reads, and the only evidence cited by Plaintiff in support of this claim, is the data produced from the quality assurance system which identifies Plaintiff as the reviewee of

---

[2] Dr. Dill acknowledges that the data in Plaintiff's Exhibit WW cannot establish with precision a comparison between her reviews of Plaintiff's reads as compared to other physicians, as the temporal parameters of the data do not match the different physicians' periods of employment, including Plaintiff's or Schmidlin's. However, Defendant suggests only that there is no evidence in the record aside from this data which is at all probative.

[3] Plaintiff further appears to refuse to relinquish the claim that Dr. Dill performed "a separate Peer Review of Dr. Desai's reads from July 1, 2016, to June 30, 2017," see Opposition, p. 6, even though this claim is false, as proven by the evidence set forth by Defendants, and admitted by her in her Response. Response, ¶ 25. However, this "separate peer review" is simply a report generated (by Dr. Rosen, not Dr. Dill) from the quality assurance system for the year, which happens to include reviews entered by Dr. Dill in the normal course of her duties. Dill S.O.F., ¶¶ 28, 30.

each of the reviews. P.S.O.F., ¶ 102; Pl. Ex. UU. The parties engaged in discovery for well over a year, and Plaintiff can offer no basis for this claim.

Plaintiff claims that while Dr. Dill approached other radiologists about concerns with their reads, she did not ever approach Dr. Desai. Opposition, p. 6. This is untrue. Dr. Dill did attempt to speak with Plaintiff on several occasions regarding her reads, however, Plaintiff responded to Dr. Dill with hostility and dismissed Dr. Dill's attempts to communicate with her. In fact, when Dr. Dill attempted to communicate with Plaintiff, she generally responded with hostility and aggression, including by brushing her away with a hand gesture and refusing to speak with her. Pl. Ex. SS; Dill Ans. to Interr., ¶ 1. It is completely disingenuous for Plaintiff to refuse to work with Dr. Dill, and then claim that Dr. Dill's inability to professionally raise quality issues to Plaintiff is evidence of intentional discrimination based on her sex, age, or disability.

Plaintiff also claims, despite the evidence, that Dr. Dill played a role in Plaintiff's termination. However, while Dr. Rosen may have relied in part on Dr. Dill's input in his decision to perform the independent review, Dr. Rosen made the decision to terminate Plaintiff's employment based on the results of the independent review, not quality concerns raised by Dr. Dill. S.O.F., ¶ 171. Dr. Dill simply did not participate in the decisions by Dr. Rosen to engage an independent reviewer or the decision to terminate Plaintiff's employment, and there is no evidence at all that she did. See Response, ¶¶ 6-8.[4]

Plaintiff offers an email chain, without providing or acknowledging the context, to suggest that Dr. Dill played some role in the independent review of Plaintiff's CT reads or

---

[4] Plaintiff also offers no evidence to dispute that Dr. Dill did not play a role in any other aspect of her employment, including denial of an exemption from call, denial of academic time, denial of a home workstation, denial of a reasonable accommodation, or restricting her ability to read CTs. Response, ¶¶ 12-14, 16.

Plaintiff's termination. See Opposition, pp. 6-7; Pl. Ex. ZZZZ. However, in context, it is clear one thing is not related to the other in any way. Dr. Rosen requested that Dr. Dill, as the Division Chief, review reads performed by Dr. Desai on a single day, which were almost all x-rays ("CXRs"). Exhibit J to attached Supplemental Affidavit of Reid M. Wakefield, Emails between M. Rosen and K. Dill, 02/15/2018; Exhibit K to attached Supplemental Affidavit of Reid M. Wakefield, Second Affidavit of Max Rosen, M.D., M.P.H. (Second Rosen Aff.), ¶ 19. Dr. Rosen requested the review because a concern arose related to a study which was assigned to Plaintiff and read by a resident (residents read under the supervision of a faculty member), and he wanted to evaluate the other reads that were performed the same day, particularly those read with a resident. Second Rosen Aff., ¶ 19. He accordingly requested this information as well as the details of whether and which resident may have read each read, and asked Dr. Dill to review them. Df. Ex. J. This request had nothing to do with Dr. Rosen's decision to terminate Plaintiff's employment. Second Rosen Aff., ¶ 19. Regardless, Plaintiff can offer no evidence that Dr. Dill simply responding to a request by her Department Chair, which had nothing to do with the subject of the independent review, suggests that she played any role in the independent review or termination decision. Again, Plaintiff's evidence is that Dr. Dill was doing her job.[5]

While Plaintiff concludes that, based on this evidence, she shows that Dr. Dill "had an intent to discriminate," Opposition, p. 8, there is simply no such evidence. The evidence in the record demonstrates only that Dr. Dill performed her job duties, and that Plaintiff disagrees with and (for whatever reason) does not like Dr. Dill. These opinions do not support an allegation that Dr. Dill intentionally discriminated against her or that she intentionally aided in discrimination.

---

[5] Plaintiff also asserts that Dr. Dill "knew about Dr. Desai's termination before it occurred," Opposition, p. 7, but the evidence she cites does not support this claim. See Response, ¶ 7; Pl. Ex. X. Even if Dr. Dill did know Plaintiff would be terminated, this is not evidence of involvement in the decision, let alone evidence of discrimination.

## II. Tortious Interference with Advantageous Business Relations

Unbelievably, Plaintiff asserts that "[t]here is considerable evidence that Dr. Dill acted with malice" and that, in fact, "there is direct evidence of malice." Opposition, p. 8. It is unclear what facts she contends constitute such evidence, but based on the undisputed facts in the record, Plaintiff cannot show that Dr. Dill acted with malice as a matter of law, and she is entitled to summary judgment. Plaintiff's claim is precisely the type that the "actual malice" standard is designed to prevent, and Dr. Dill cannot be personally liable to a "disgruntled former employee" based on a "laundry list of facts" questioning her supervisory actions. See Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 54-55 (2020), review denied, 486 Mass. 1104 (2020); Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass. App. Ct. 550, 554-55 (2003).

## III. Defamation

Plaintiff was specifically asked by interrogatory to identify all statements she is claiming were defamatory, and she responded with only one statement allegedly made by Dr. Dill; that she had created a document reflecting a targeted review of her reads. Dill S.O.F., ¶ 46. Then, at deposition, Plaintiff testified that in addition to this document, Dr. Dill also said that she was rude on an occasion. Dill S.O.F., ¶ 43. These instances were the only instances which Plaintiff could identify in discovery. Dill S.O.F., ¶¶ 45, 46.

Plaintiff now asserts that that there was actually additional defamation by Dr. Dill, which was not disclosed by her in discovery. Plaintiff alleges that Dr. Dill defamed Dr. Desai by "disproportionately targeting Dr. Desai's cases when entering them in the QA / peer review system and falsely attributing to Dr. Desai cases in fact read by Dr. Dill." Opposition, p. 9.

However, as described above, not only is there not "considerable evidence" of these allegations, there is no evidence in the record whatsoever to support these claims.

Even if Dr. Dill's peer review entries constitute defamatory statements under Massachusetts law, they are unequivocally not actionable, as they are opinions. See Saad v. Am. Diabetes Ass'n, 123 F. Supp. 3d 175, 177 (D. Mass. 2015). Indeed, Dr. Dill's entries regarding her reviews of Plaintiff's radiological reads are literally medical opinions of one physician regarding the medical opinions of another physician. Plaintiff has not and cannot offer any statements made by Dr. Dill that were purported to be objectively verifiable fact. See id.

Still further, such "statements" are privileged, as Dr. Dill was a supervisor providing information regarding Plaintiff's fitness to perform her job. See Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 335 (2014). Plaintiff has offered no evidence to establish that such a privilege should be lost because Dr. Dill "(1) knew the information was false, (2) had no reason to believe it to be true, (3) recklessly published the information unnecessarily, unreasonably, or excessively, or (4) that [she] acted out of malice." Id. at 335; see also Sklar, 59 Mass. App. Ct. at 558. Instead, Plaintiff disagrees with Dr. Dill and contends that Dr. Dill treated her unfairly.[6]

Dr. Dill is entitled to summary judgment on all claims.

---

[6] It is not Dr. Dill's position that the entries are protected by the peer review privilege in this litigation; it is her position that the entries were made in the context of a peer review process protected under state law. See M.G.L. c. 111, §§ 203, 204; Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 396 (2005); Miller v. Milton Hosp. & Med. Ctr., Inc., 54 Mass. App. Ct. 495, 501 (2002) ("The peer review privilege … is designed to foster a candid exchange of information regarding the quality of medical care."). For the Court to find that any physician, let alone a supervisor charged with quality oversight, entering medical opinions in a system as part of a statutory peer review protected process to ensure medical quality can be held civilly liable for defamation – particularly without any evidence other than the reviewed physician's own disagreement and opinion – would be extraordinary, indeed, and have disastrous consequences for patient care.

Respectfully submitted,

**KARIN DILL, M.D.**

By her attorneys,

/s/      Reid M. Wakefield
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone 508.860.1474
Fax 508.983.6261
rkilroy@mirickoconnell.com
rwakefield@mirickoconnell.com

Dated:  March 4, 2022

CERTIFICATE OF SERVICE

I, Reid M. Wakefield, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

/s/  Reid M. Wakefield
Reid M. Wakefield, Esq.

Dated: March 4, 2022