UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

| | |
|---|---|
| CHARU DESAI,<br>    Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL CENTER, INC., et al.,<br>    Defendants. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, MARLBOROUGH HOSPITAL** |

Defendant, Marlborough Hospital, pursuant to Local Rule 56.1, submits its memorandum of law in reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 93)[1] and in support of its Motion for Summary Judgment (Doc. 67).

Marlborough Hospital moves for summary judgment on all counts. While it incorporates the arguments set forth by the Medical Group, Medical Center, Dr. Rosen, and Dr. Tosi in their Memorandum of Law in Support of Motion for Summary Judgment (Doc. 65), all claims against Marlborough Hospital fail because the undisputed facts in the record establish that it did not employ Plaintiff, it did not take any action at all against Plaintiff, and there is no basis for its liability.

Initially, Plaintiff appears not to contest Marlborough Hospital's Motion as to her claims for violation of the state and federal Equal Pay Acts. See Response, ¶ 14 (Plaintiff admits she does not have any evidence to dispute the fact that Marlborough Hospital did not play a role in

---

[1] Citations to "Opposition" are to Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment by Defendant Marlborough Hospital (Doc. 93); citations to "Response" are to Plaintiff's Response to Statement of Material Facts Submitted by Defendant Marlborough Hospital (Doc. 93-1); and citations to "P.S.O.F." are to Plaintiff's Statement of Additional Material Facts in Dispute in Opposition to the Motions for Summary Judgment of all Defendants (Doc. 95).

her compensation.), ¶ 55 (Plaintiff offers no evidence to contradict her testimony that she is not claiming Marlborough Hospital paid her incorrectly under the EPA.); ¶ 56 (Plaintiff admits that she cannot identify anyone at Marlborough Hospital who made a decision to pay her unequally.). Additionally, Plaintiff admits that Marlborough Hospital did not defame her. See Response, ¶ 59 (Plaintiff admits that Marlborough Hospital did not make any defamatory statements.). Accordingly, Marlborough Hospital is entitled to summary judgment on Counts II, VI, and VIII.

As to her remaining claims, of discrimination, Plaintiff has failed to offer evidence that genuinely disputes almost any fact asserted by Marlborough Hospital in support of its Motion, and, indeed, she cannot dispute the facts that establish its lack of any employment relationship with Plaintiff. Instead, she offers only legal argument, statements that she is without knowledge, or makes conclusory statements based on conjecture and irrelevant (or false) facts.

"A party asserting that a fact … is genuinely disputed must support the assertion by … citing to particular parts of materials in the record." Fed.R.Civ.P. 56(c)(1); Sears, Roebuck & Co. v. Goldstone & Sudalter, 128 F.3d 10, 18 (1st Cir. 1997). "On issues where the nonmovant bears the ultimate burden of proof, [s]he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

Plaintiff's claims are simply not based in fact, and she has not offered evidence which creates a genuine dispute as to the facts material to her claims. Accordingly, Marlborough Hospital is entitled to summary judgment.

Plaintiff rests her alleged basis for liability entirely upon a case from the Second Circuit Court of Appeals, Salamon v. Our Lady of Victory Hosp., 514 F.3d 217 (2d Cir. 2008), to claim that Marlborough Hospital exerted control over the manner and means by which Plaintiff performed her work, and, therefore, she was an employee. However, Plaintiff's reliance on Salamon is significantly misplaced, on both the law and the facts.

In Salamon, the physician-plaintiff had a direct relationship with the hospital-defendant, and the question before the court was whether the physician was an employee, as the physician claimed, or an independent contractor, as the hospital claimed. The court applied factors based on common law agency to determine whether there was sufficient evidence that the physician was an employee, including:

> [1] the hiring party's right to control the manner and means by which the product is accomplished[;] …. [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; [13] and the tax treatment of the hired party.

514 F.3d at 226-27 (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730 (1989)).

Critically, this test applies to evaluate a relationship between a "hiring party" and a "hired party" to determine the proper classification of a party in direct privy with an employing entity. Here, Marlborough Hospital does not allege that Plaintiff is an independent contractor; it asserts that it had no relationship with Plaintiff at all, aside from credentialing. It is undisputed that Marlborough Hospital never engaged Plaintiff to provide a service, and Plaintiff never provided services directly to Marlborough Hospital. Instead, Marlborough Hospital had a contractual relationship with Plaintiff's employer, the Medical Group, under which the Medical Group

required and directed Plaintiff to read radiological images that originated from patients being treated at Marlborough Hospital. The sole relationship that Plaintiff had with Marlborough Hospital is that she was granted privileges as a member of its medical staff.

Because Plaintiff had no direct relationship with Marlborough Hospital, as an employee or an independent contractor, in order for liability to be found on the part of Marlborough Hospital, Plaintiff must establish that Marlborough Hospital is jointly liable with her actual employer, the Medical Group. She cannot establish joint employer liability, as discussed in Marlborough Hospital's Motion.

Even if it were appropriate to review Marlborough Hospital's relationship with Plaintiff under an agency analysis, the undisputed facts show that Plaintiff cannot meet this standard. In fact, the Salamon case is distinguishable on each critical point. In Salamon, the court acknowledged that a physician simply practicing at a hospital does not result in an employment relationship. See 514 F.3d at 231 ("staff privileges, standing alone, do not decide employment status"). However, based on the unique facts of the relationship, the court determined that the hospital could be found to be the physician's employer because, in that case, the hospital exercised substantial control over both the "details and methods of [the plaintiff's] work" and the "treatment outcomes of her patients." Id. at 229. The plaintiff alleged that the hospital reviewed the quality of her patient treatment, mandated the performance and timing of procedures, directed medications that she should prescribe, and recommended changes to her practice. Id. Further, the plaintiff was required to participate in staff meetings, was required to take call and treat patients as dictated by the hospital, and was reviewed by a quality assurance program that included "detailed requirements as to when and how her work was to be performed." Id. at 223. Additionally, the plaintiff alleged that she was "wholly dependent on [the hospital's]

instrumentalities to work" and that she was required to use the services of the hospital's nursing and support staff. Id. at 222.

None of these elements are present here. Plaintiff did not work at Marlborough Hospital and did not use its facilities. M.H. S.O.F., ¶ 2; Exhibit O to attached Supplemental Affidavit of Reid M. Wakefield, Second Affidavit of Max Rosen, M.D., M.P.H. ("Second Rosen Aff."), ¶ 17. Marlborough Hospital never dictated how her work was to be performed, and did not dictate which patients' images she would read or the manner in which she read images.[2] M.H. S.O.F., ¶¶ 4-5, 16. Plaintiff cannot allege that she was beholden to specific quality standards or individual oversight by Marlborough Hospital, aside from the requirement that she meet general standards regarding the practice of medicine.

Further, the additional agency factors cut against Marlborough being Plaintiff's employer. See Salamon, 514 F.3d at 227 (listed above). There is no question that the practice of radiology requires a high degree of skill. Plaintiff cannot allege that Marlborough Hospital was the source of Plaintiff's instrumentalities and tools or that it provided Plaintiff with support staff, and she was not located at Marlborough Hospital. Plaintiff cannot allege that Marlborough Hospital had the right to assign Plaintiff additional projects. Plaintiff was not paid or provided employment benefits by Marlborough Hospital at all. See M.H. S.O.F., ¶¶ 12, 14. Marlborough Hospital did not employ any other physicians. M.H. S.O.F., ¶ 8.

Plaintiff's claims rest entirely on the fact that she was admitted to the medical staff with privileges at Marlborough Hospital. It is well-settled that privileges to practice at a hospital, alone, do not create an employment relationship. See Salamon, 514 F.3d at 231 ("[S]taff

---

[2] While Plaintiff claims that Dr. Brennan did so, all of his actions were taken on behalf of her employer, the Medical Group, as set forth in Plaintiff's Motion and discussed further below.

privileges, standing alone, do not decide employment status."); Perry v. VHS San Antonio Partners, L.L.C., 990 F.3d 918, 929 (5th Cir. 2021) ("A physician with hospital privileges is not a hospital employee for purposes of federal antidiscrimination law."); Rafik Benaissa, M.D., v. Salina Regional Health Center, Inc., 2021 WL 5710033, at *3-5 (10th Cir. Dec. 2, 2021); Henry v. Adventist Health Castle Med. Ctr., 970 F.3d 1126, 1132 (9th Cir. 2020).

Neither does a hospital requiring a member of its medical staff to meet regulatory and professional standards, or to comply with its bylaws, indicate the requisite level of control to create an employment relationship, and indeed, Salamon is an outlier in finding factual circumstances which establish an employment relationship. See Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 261-62 (4th Cir. 1997); Levitin v. Nw. Cmty. Hosp., 923 F.3d 499, 501 (7th Cir. 2019) ("[A] physician with hospital practice privileges is not the hospital's employee merely because he is subject to peer review."). A hospital is within its rights – and its obligations – to impose rules and regulations regarding the treatment of patients at its facilities without making every member of its medical staff an employee. See Cilecek, 115 F.3d at 261-62. In Cilecek, the Court held that the requirement of the plaintiff "to abide by hospital rules and regulations for the treatment of patients, which regulated [the physician's] work at the hospitals in substantial detail … relate to the professional standard for providing health care to patients for which both [the physicians] and the [hospitals] had professional responsibility to their patients." Id. Indeed, hospitals are required to impose such standards, and if they "did not insist on such details in the performance of professional services by doctors at their facilities, they would be exposing themselves to recognized professional liability." Id. at 262. Accordingly, the court determined that "[b]ecause of the overarching demands of the medical profession, the tension in professional control between doctors and hospitals for medical services rendered at hospitals is

not, we believe, a reliable indicator of whether the doctor is an employee or an independent contractor at the hospital." Id.; see Levitin, 923 F.3d at 501 ("[A] physician with hospital practice privileges is not the hospital's employee merely because he is subject to peer review."); Wojewski v. Rapid City Reg'l Hosp., Inc., 450 F.3d 338, 344 (8th Cir. 2006) ("RCRH could take reasonable steps to ensure patient safety and avoid professional liability while not attempting to control the manner in which Dr. Wojewski performed operations."); Adventist Health Castle Med. Ctr., 970 F.3d at 1132-33 (9th Cir. 2020) (distinguishing the "level of micromanagement detailed in Salamon").

In an attempt to establish some basis for a claim that Marlborough Hospital controlled her work, Plaintiff additionally relies on vague links, inaccurate or misleading facts, and conclusory statements. Plaintiff boldly declares that "Marlborough Hospital officials had the ability to set work schedules for radiologists (including Plaintiff), direct radiologists' assignments (including Plaintiff), and direct radiologists in the performance of job duties and responsibilities (including Plaintiff)," and that such officials "specifically directed radiologists, including Plaintiff, to prioritize the radiological interpretations for Marlborough Hospital over all other films." Response, ¶ 4. However, the "Marlborough Hospital officials" Plaintiff is referring to is one person: Darren Brennan, M.D.

Plaintiff acting as if an official of her employer is an official of another entity does not make it so.[3] Dr. Brennan was not an employee of Marlborough Hospital and took all such actions on behalf of Plaintiff's (and his) employer, the Medical Group, to manage a client contract.[4]

---

[3] In a kind of agency Ponzi scheme, Plaintiff seeks to establish Marlborough Hospital as Plaintiff's employer by claiming she was controlled by a Marlborough Hospital official, Dr. Brennan; but in order to establish that Dr. Brennan was an official of Marlborough Hospital, she alleges that he was, in turn, controlled by Marlborough Hospital; creating a skaky structure that does not hold up to scrutiny.

[4] Plaintiff conflates Dr. Brennan's role as Chief of Radiology with the duties of a Division Chief of a subspecialty division, Opposition, pp. 4-5, but they are not the same. M.H. S.O.F., ¶¶ 22-23; S.O.F., ¶ 256.

M.H. S.O.F., ¶¶ 18-29. Dr. Brennan reported to Dr. Rosen, the Chair of the Medical Group. The fact that Dr. Brennan was overseeing the Medical Group's provision of services to Marlborough Hospital pursuant to their contract does not make his actions those on behalf of Marlborough Hospital.

Otherwise, Plaintiff rests her position on her credentialing and an attempt to vaguely associate different individuals with actions and roles for which there is no evidence and/or which are irrelevant. As her primary evidence, Plaintiff cites, without pin or page citations, to Plaintiff's Exhibit EEEE, a 27-page mash-up of credentialing documents, which in large part are documents from the Medical Center's credentialing records and not Marlborough Hospital's.

Plaintiff repeatedly associates the PCAC (Patient Care Assessment Committee) with Marlborough Hospital's Board of Trustees. However, the Board of Trustees and the PCAC are not the same thing, the PCAC is not "also known as" the Board of Trustees, and their membership is not the same. Exhibit P to attached Supplemental Affidavit of Reid M. Wakefield, Second Affidavit of Steven P. Roach ("Roach Aff."), ¶¶ 2-4.

Plaintiff further misrepresents the role of Charles Cavagnaro, M.D., in his presence at her March 14, 2018, meeting with Dr. Rosen, and claims that he was "a member of Patient Care Assessment Committee, (a.k.a. Board of Trustees) of UMass Memorial Health Marlborough Hospital." P.S.O.F., ¶ 311. However, Dr. Cavagnaro was not a member of the Marlborough Hospital PCAC or the Board of Trustees, but he attended the meeting as the Interim Senior Vice President and Chief Medical Officer of the Medical Center. Second Roach Aff., ¶ 5; Second Rosen Aff., ¶ 16; Pl. Ex. TTTTT. His attendance had nothing to do with Marlborough Hospital, as Plaintiff knows.[5]

---

[5] Plaintiff apparently relies on this false claim to make another false assertion that "Dr. Cavagnaro approved Plaintiff's reappointment and recredentialing." See Response, ¶¶ 32, 54.

Plaintiff also appears to suggest that the fact Marlborough Hospital approved her credentialing in 2017 is meaningful, in an apparent effort to demonstrate pretext for actions Marlborough Hospital did not take. Marlborough Hospital admits that it <u>did not</u> take or participate in any adverse action against Plaintiff, of any kind, at any point.

Even if Plaintiff could establish that Marlborough Hospital took any action against her, Plaintiff does not and cannot allege that any individual acting on behalf of Marlborough Hospital took any actions which were motivated by sex, age, or disability discrimination.[6] Plaintiff alleges that Dr. Robinson, who was not an employee or officer of Marlborough Hospital, reported complaints and concerns about the quality of Plaintiff's CT reads to the Medical Group Department Chair Dr. Rosen. Plaintiff fails to provide any basis which suggests that Dr. Robinson made these reports because of discriminatory animus. She points to the fact that Plaintiff was approved for re-credentialing, while Dr. Robinson served on the committee which approved physician credentialing, to suggest that Dr. Robinson's complaints were somehow not justified. First, Plaintiff does not cite evidence to show that Dr. Robinson personally approved anything, as alleged. <u>See</u> P.S.O.F., ¶ 193. Second, Dr. Robinson expressed concerns to Dr. Rosen in an attempt to evaluate and remedy the concerns, which urging led Dr. Rosen – instead of immediately impacting Plaintiff's credentials to practice medicine – to engage an independent expert to review Plaintiff's reads to ensure that Dr. Robinson's concerns were justified <u>prior</u> to taking action which would affect her medical credentials.[7]

---

[6] Plaintiff voluntarily dismissed all claims against Dr. Brennan. (Doc. 58).

[7] The last credentialing period was <u>before</u> the completion of the independent review, P.S.O.F., ¶¶ 188, 194, which was conducted for the purposes of confirming what Dr. Rosen had heard regarding Plaintiff's quality.

The fact that Dr. Rosen relied on complaints from Dr. Robinson in order to engage an expert to perform an independent review, justified or not, has nothing to do with the motives of Dr. Robinson. Plaintiff appears to hint at some sort of conspiracy between Dr. Robinson and Dr. Rosen, without any evidence at all. See Opposition, p. 6. Plaintiff's theory appears to be that any time someone had a concern about her quality, it must have been discrimination, no matter who it came from. There is certainly not evidence that Dr. Robinson was motivated by Plaintiff's sex, age, or disability. In fact, Plaintiff stresses that Dr. Robinson made complaints about many other radiologists in the Department, of all different protected classes. Response, ¶¶ 33; P.S.O.F., ¶ 107.

Based on the undisputed facts in the record, Marlborough Hospital establishes that it was not Plaintiff's employer, and that it did not take any action against Plaintiff at all, let alone that which was based on discrimination. Accordingly, it is entitled to summary judgment.

Respectfully submitted,

**MARLBOROUGH HOSPITAL**

By its attorneys,

/s/      Reid M. Wakefield
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone 508.860.1474
Fax 508.983.6261
rkilroy@mirickoconnell.com
rwakefield@mirickoconnell.com

Dated:  March 4, 2022

CERTIFICATE OF SERVICE

      I, Reid M. Wakefield, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

      /s/ Reid M. Wakefield
      Reid M. Wakefield, Esq.

Dated: March 4, 2022