UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
CHARU DESAI,                                )
       Plaintiff,                          )
                                                         )
v.                                                      )          Civil Action No. 4:19-cv-10520-TSH
                                                         )
UNIVERSITY OF MASSACHUSETTS, )
MEMORIAL MEDICAL CENTER, INC. )
UNIVERSITY OF MASSACHUSETTS )
MEMORIAL MEDICAL GROUP,       )
UNIVERSITY OF MASSACHUSETTS )
MEDICAL SCHOOL, UMASS            )
MEMORIAL HOSPITAL, MAX ROSEN, )
M.D., DARREN BRENNAN, M.D.,      )
STEPHEN TOSI, M.D., KARIN DILL,  )
M.D.,                                                   )
       Defendants.                        )
_____)

**UNIVERSITY OF MASSACHUSETTS CHAN MEDICAL SCHOOL'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The University of Massachusetts Chan Medical School ("Medical School")[1] submits this Reply to plaintiff Dr. Charu Desai's Opposition to its Motion for Summary Judgment (Dkt. 85). For the reasons that follow, Dr. Desai has not established that there

---

[1] The Medical School's name changed to the University of Massachusetts Chan Medical School effective September 7, 2021.

are any genuine issues of material fact as to her gender-based claims against the Medical School, and the Medical School is entitled to judgment as a matter of law.[2]

### I. Dr. Desai Does Not Address the Medical School's Argument That It Had No Connection to the Decision to Terminate Her.

Dr. Desai devotes sections of her Opposition (Dkt. 85, §§ IV(A), (B) & (C), respectively) to the Medical School's arguments about (1) the Academic and Administrative Time Policy, (2) her Federal Equal Pay Act ("FEPA") and Massachusetts Equal Pay Act ("MEPA") claims; and (3) the equal pay claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). However, she conspicuously does not include a section contesting the Medical School's argument that her termination did not result from anything to do with her Medical School duties and that she only lost her faculty appointment because her employment with the Medical Group was terminated.[3] In

---

[2] As an initial matter, the Medical School must address Dr. Desai's inapt reliance on Malin v. Hospira, Inc., 762 F.3d 552, 564 (7th Cir. 2014), particularly given the frequency with which she cites the case in an attempt to neutralize damaging portions of her own deposition testimony. Malin does not, as Dr. Desai suggests, stand for the general proposition that courts must ignore deposition admissions and other damaging deposition testimony. Malin involved an extreme set of circumstances; the Seventh Circuit noted that the defendant "misrepresented the [summary judgment] record and [plaintiff's] legal arguments. For example, [defendant] repeatedly cherry-picked isolated phrases from [plaintiff's] deposition and claimed that these 'admissions' doomed her case. When the testimony is read in context, however, it becomes clear that [plaintiff] made no such admissions, and that [defendant's] presentation of the evidence amounted to nothing more than selectively quoting deposition language it likes and ignoring deposition language it does not like." Id. To be clear, the Medical School has not engaged in any such conduct. If it had done so, Dr. Desai assuredly would have pointed it out in her Opposition and related filings, but she has not. The cited testimony, in all instances, accurately reflects what Dr. Desai stated under oath, and Dr. Desai cannot simply eliminate it from consideration by misapplying Malin.

[3] The one reference in the Opposition to the purported basis for the termination appears in the section about the FEPA and MEPA claims and identifies, as the motivating factor, only age, which cannot be the basis for any claims against the Medical School. Dkt. 85, Opp., p. 16 ("The information provided provides sufficient evidence to prove that Dr. Rosen's stated reason for adverse employment decision is not only a

response to the Medical School's Statement of Material Facts ("SMF"), moreover, Dr. Desai admits all facts relevant to this issue, most significantly that her termination was "unrelated to her failure to meet her work-related obligations and/or work quality issues related to her joint employment with the Medical School." Dkt. 99, Resp. to SMF, ¶ 54. Dr. Desai also admits: Dr. Rosen testified that he makes decisions about terminations in conjunction with the Medical Group's lawyers (id., ¶ 32); her employment agreement with the Medical Group ("Agreement") and the Medical School's Academic Personnel Policy ("APP") both provided that the termination of the Agreement by the Medical Group would also end her faculty appointment at the Medical School (id., ¶ 49); and the APP had a separate provision that allowed for the direct termination of only the faculty appointment with at least 30 days written notice (id., ¶ 50), yet Dr. Desai was instead terminated in accord with the terms of the Medical Group Agreement (id., ¶ 51). In sum, Dr. Desai has not contested the Medical School's contention that it cannot be liable in connection with her termination.

## II. Dr. Desai's Claim that the Medical School Discriminated Against Her on the Basis of Gender in Relation to the Award of Academic Time Has No Basis.

Dr. Desai's makes several arguments (addressed below) about alleged gender discrimination in the application of the Academic and Administrative Time Policy

---

sham, but a sham intended to cover up the age based discriminatory animus that led him to terminate Dr. Desai's employment.") (emphasis supplied).

3

("Policy"), but all of those arguments are rendered moot by the central fact that Dr. Desai admitted in her deposition (Dkt. 75-4, Dr. Desai Depo., pp. 113, 123) and admits again here (Dkt. 99, Resp. to SMF, ¶ 13; Dkt. 85, Opp., p. 7), that is, she never intended to use academic time to perform academic activities; rather, her admitted intention was to use academic time to "take a break from clinical work" to "recuperate."[4]

Dr. Desai attempts to misdirect attention to other radiologists who, she claims, received certain minor allowances related to allocation of academic time. Dkt. 95, Dr. Desai's Statement of Additional Fact ("PSOF"), ¶¶ 38-40, 47-48. However, she does not claim – because there is no basis in the record to claim – that any of those other radiologists had the admitted intent to directly violate the fundamental requirement of the Policy that radiologists use academic time to perform academic activities. Other purported additional facts about Dr. Rosen's monitoring and assessment of radiologists' use of academic time (Dkt. 95, PSOF, ¶¶ 44-46) are likewise designed to distract from

---

[4] Dr. Desai unilaterally deems her roles on a quality improvement committee and in performing functions in the supposed absence of Dr. Dill as qualifying her for administrative time under the "Other – Admin/Academic Functions defined by Chair" designation. Dkt. 85, Opp., p. 6; see also Dkt. 75-8 (Policy). However, there is no indication that the Chair so-defined those roles, nor is there any indication that Dr. Desai ever requested or even discussed administrative time, and, again, Dr. Desai admitted in her deposition that she did not qualify for administrative time. Dkt. 75-4, Dr. Desai Depo., p. 119. Dr. Desai's similarly late-blooming contention that she qualified for academic time under the terms of the Policy depends on a reading of the Policy's reference to "teaching/conference preparation" as synonymous with her actual teaching responsibilities for the Medical School, but there is no evidentiary or logical basis for that assertion, and there is no indication that Dr. Desai ever believed that she qualified for academic time simply by virtue of having teaching responsibilities for the Medical School. It also bears repeating that Dr. Desai never intended to use academic time to perform any academic activities.

4

the fact that, uniquely, Dr. Desai never intended to perform any required academic activities during her requested academic time.

In addition, despite Dr. Desai's conclusory assertions to the contrary, these supposed allowances for other radiologists had no connection to gender – the only protected category on which the Title VII claims against the Medical School can be based. Indeed, of the four other radiologists identified in Dkt. 95, PSOF, ¶ 40 in reference to the supposed allowances, three are women (Drs. Dill, Barile, and DeBendectis), and Dr. Desai focuses most specifically in this context on Dr. Dill (id., ¶¶ 47-48).[5] Furthermore, Dr. Desai's treatment of the same issue in her Opposition to the Motion for Summary Judgment filed by the Medical Center, Medical Group, and Drs. Rosen and Tosi (Dkt. 94) is telling. There, Dr. Desai's claims are based on age and disability in addition to gender, yet she focuses only on age and disability. Id. (referencing only "younger and/or non-disabled radiologists" (p. 10) and "younger and non-disabled colleagues" (p. 11) in connection with this issue). This is in keeping with Dr. Desai's pleading in the amended complaint, where she does not reference gender in this context. Dkt. 75-2 (also Dkt. 23), ¶¶ 34, 36, 75.

Dr. Desai's attempt to avoid the statute of limitations on this issue is also unconvincing. Dr. Desai admits that she complained about alleged disparate treatment

---

[5] Relatedly, and in a broader sense, Dr. Desai admits that Dr. Rosen did grant academic time to other female radiologists. Dkt. 99, Resp. to SMF, ¶ 14.

5

in the allocation of academic time in May 2016 and May 2017 (Dkt. 99, Resp. to SMF, ¶¶ 15-16) – in both instances more than 300 days before she filed her MCAD charge (id., ¶ 17).  Dr. Desai implicitly acknowledges that, accordingly, she can only possibly avoid the statute of limitations "[t]o the extent the Court treats the repeated denial of academic time as a series of discrete acts . . .."  Dkt. 85, Opp., p. 8.  But the academic time issue was conclusively addressed on and before May 25, 2017.[6]  Dkt. 99, Resp. to SMF, ¶¶ 15-16; Dkt. 75-2 (also Dkt. 23), Amend. Comp., ¶ 34 & Ex. 2, MCAD Charge, ¶ 16 (admitting that Dr. Rosen refused Dr. Desai's request for academic time when she complained in both 2016 and 2017).  At those times (and, indeed, at all times thereafter), Dr. Desai had no intention of using academic time to perform academic activities (see, supra, § II).  She could not have reasonably expected that the decision to not award her academic time would be revisited, let alone reversed.

Finally, the Medical School notes that the refusal to grant academic time was not even an actionable adverse employment action, especially when untethered from any claim that the Medical School has liability related to Dr. Desai's termination (see, supra, § I).  That is, the denial did not materially affect the terms or conditions of Dr. Desai's employment.  See Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012).  Of

---

[6] There is no reference to academic time in Dr. Desai's annual performance review for the period covering July 1, 2017-June 30, 2018.  Dkt. 95-4, Ex. RR.

course, the Policy was not even one of the Medical School[7] and, again, Dr. Desai never intended to abide its fundamental requirement, and the alleged disparate treatment had no connection to gender.

### III. The Medical School Did Not Set Dr. Desai's Salary, and There is No Basis For Her FEPA, MEPA, and Title VII Unequal Pay Claims in Any Event.

Dr. Desai disputes that the Memorial Group had exclusive authority to set her salary primarily with reference to the revised salary structure that went into effect in early 2017 (Ex. 99, Resp. to SMF, ¶ 18), yet she cannot deny that this policy was implemented by the Medical Group (id., ¶ 20).[8] Moreover, in citing this process in support of her contention that the Medical School played a role in setting radiologist salaries (Dkt. 95, PSOF, ¶ 263), Dr. Desai relies on the Affidavit of Dr. Rosen, ¶ 83 (Dkt. 95-3, Ex. C), in which Dr. Rosen makes clear that "the Medical Group implemented a new, standardized salary structure for radiologists effective March 1, 2017." Id. (emphasis supplied). The fact that Medical School promotions could result in certain salary increases under that Medical Group's revised salary structure does not mean that

---

[7] Whereas the Medical School relied upon sworn record evidence that the Policy was established and administered by the Memorial entities, not the Medical School (Dkt. 75, SMF, ¶ 8), Dr. Desai claims, without citation, that "[t]he Policy is a policy of the Department of Radiology." Dkt. 85, Opp., p. 5. While it is true, as far as it goes, that the Policy "govern[s] the award of academic time to members of the Department of Radiology," id., that does not transform the Policy into one "of the Department," and it does not, in particular, mean that the Medical School was ever in a position to dictate to the Medical Group when and how often radiologists could take time away from their clinical duties.

[8] It is unclear what Dr. Desai means by her reference (Dkt. 99, Resp. to SMF, ¶ 18) to "non-clinical administrative positions," but the cited authorities do not support the quotation or the broader point.

7

the Medical School set salaries. The Medical Group indisputably implemented the amounts associated with those promotions.

All of that being the case, the Medical School reiterates that the Medical Group is better positioned to address detailed comparisons of salaries that it set, and the Medical School defers to the Medical Group and relies upon and incorporates the Medical Group's positions in this context. That said, the Medical School briefly notes that, even according to Dr. Desai's own descriptions, among the male radiologists she identifies as purportedly supporting her unequal pay claims (Dkt. 85., Opp., pp. 10-11), six had the same base salary as Dr. Desai (Drs. Chen, Kotecha, Baccei, Cerniglia, Dundamadappa, and Coughlin), one had a lower average hourly pay than Dr. Desai and left full-time employment with the Medical Group in 2016 (Dr. Schmidlin), and one (Dr. Brochu) was, by Dr. Desai's own admission (id., pp. 14, 15), Chief of Radiology at Marlborough Hospital – a position that was neither substantially equal nor even comparable to Dr. Desai's position.

IV. **Conclusion.**

For the foregoing reasons and for the reasons set forth in the underlying Memorandum (Dkt. 74), the Medical School respectfully requests that this Court enter summary judgment on the claims in Counts 1, 2, and 6 in accord with Rule 56 and dismiss the claims in Counts 3, 4, and 5 in accord with Rule 12(b)(1).

Dated: March 4, 2022

                                  UNIVERSITY OF MASSACHUSETTS
                                  CHAN MEDICAL SCHOOL
                                  By its attorneys,

                                  */s/ Mark A. Johnson*
                                  Denise Barton, BBO No. 675245
                                  Chief Deputy General Counsel
                                  Mark A. Johnson, BBO No. 651271
                                  Associate Counsel
                                  University of Massachusetts
                                  Office of the General Counsel
                                  333 South Street, 4th Floor
                                  Shrewsbury, MA 01545
                                  (774) 455-7300
                                  dbarton@umassp.edu
                                  majohnson@umassp.edu

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true copy of the above document on all counsel of record by the Electronic Court Filing System (ECF) of the United States District Court for the District of Massachusetts.

                                  */s/ Mark A. Johnson*
                                  Mark A. Johnson