UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

CHARU DESAI,
    Plaintiff,

v.

UMASS MEMORIAL MEDICAL CENTER, INC., et al.,
    Defendants.

**MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF JAMES F. GRUDEN, M.D.**

Defendants, UMass Memorial Medical Group, Inc. (the "Medical Group" or "UMass Memorial") and Max Rosen, M.D., move to exclude expert testimony by James F. Gruden, M.D., at trial, and in support thereof, Defendants state as follows and submit their incorporated Memorandum of Law.

Plaintiff is a former chest radiologist who was employed by UMass Memorial Medical Group, and managed by Max Rosen, M.D., the Chair of the Radiology Department. Dr. Rosen received complaints and concerns regarding the quality of Plaintiff's chest CT interpretations. In response, and in an effort to fairly evaluate Plaintiff's quality, Dr. Rosen arranged to have an outside, independent expert in chest radiology[1] perform a controlled and blinded review of a sample of Plaintiff's chest CT reads. The review included an evaluation of 50 CT reads; 25 performed by Plaintiff and 25 performed by a random sample of several other Medical Group radiologists. When un-blinded, the findings of this independent expert review revealed significant quality concerns of Plaintiff's reads, in stark comparison to the control group. In

---

[1] Dr. Diana Litmanovich, a thoracic radiologist at Beth Israel Deaconess Medical Center and a faculty member of Harvard Medical School, served as the independent reviewer. See Doc. 94-1, Plaintiff's Response to Statement of Material Facts, ¶¶ 160-161; Ex. F, Affidavit of Diana Litmanovich, M.D., ¶¶ 1-2.

reliance on these findings, which confirmed the quality reports he had received, and in keeping with his obligation to protect patient safety and provide high-quality medical services to patients and providers, Dr. Rosen made the decision to terminate Plaintiff's employment.

Plaintiff alleges that Defendants terminated her employment because of her age, as well as other protected classes. Plaintiff admits that the decision to terminate her employment was made in reliance on the independent expert review, admits that Dr. Rosen had concerns about her quality, and admits that the decision to perform the independent review had nothing to do with discriminatory animus. See **Exhibit A**, Transcript Excerpts, Deposition of Charu Desai, M.D. ("Desai Dep."), pp. 79:4-21, 91:9-92:1, 84:21-85:12, 86:6-10, 195:12-17. Plaintiff bases her claims on the second-guessing of Dr. Rosen's decisions and her own subjective opinions of unfairness. To this end, she offers the testimony of an expert witness, James F. Gruden, M.D., to opine that the independent expert reviewer was incorrect in her assessment, and, in reality, Plaintiff's reads were just fine.

Dr. Gruden did not duplicate the Medical Group's independent blinded review and does not offer opinions based on his own unbiased evaluation of the reads. Dr. Gruden offers no evidence to support a claim that there was anything wrong or unfair with the manner in which the independent review was performed, and indeed he knows nothing about the methodology of the review. Instead, Dr. Gruden offers criticisms of the independent reviewer's assessment of a limited number of Plaintiff's reads and opines that several of the control group's reads had errors; opinions reached with the full knowledge of whether the reads were conducted by Plaintiff or a radiologist in the control group.

Dr. Gruden's biased opinions based on an after-the-fact second-guessing of the independent reviewer's findings are not relevant to the factual question at issue in this action:

whether Dr. Rosen made the decision to terminate Plaintiff's employment because of her protected class. It is entirely undisputed that 1) the studies selected for the Medical Group's independent review were selected at random, 2) the independent reviewer did not know the identities or ages of any of the radiologists who performed the reads included in the review, including Plaintiff, 3) the independent reviewer's conclusions, when un-blinded by Dr. Rosen, revealed that Plaintiff's reads were significantly worse than those of the control group, and 4) Dr. Rosen relied on the results of the independent review in making the decision to terminate Plaintiff employment. See Doc. 94-1, Plaintiff's Response to Statement of Material Facts ("R.S.O.F."), ¶¶ 153-155, 165, 168-171. In fact, on the relevant question of whether the review could possibly have been discriminatory, the parties and Dr. Gruden agree. As admitted by Dr. Gruden at deposition, if the independent reviewer did not know who read what case, she could not have discriminated against Plaintiff or any other reader. See **Exhibit B**, Transcript Excerpts, Deposition of James F. Gruden, M.D. ("Gruden Dep."), p. 77:13-19. Accordingly, Dr. Rosen, in relying on the independent reviewer's results, could not have discriminated against Plaintiff.

Dr. Gruden's opinion that, contrary to the independent reviewer's assessment, Plaintiff did not make significant errors does not relate to the facts of Dr. Rosen's decision or his motives and will not "help the trier of fact to understand the evidence or to determine a fact in issue." See Fed. R. Evid. 702. Instead, if this testimony is permitted, any probative value it may have will be substantially outweighed by the danger of unfair prejudice to Defendants, will confuse the issues and mislead the jury, and will waste substantial time and resources of the parties and the Court. See Fed. R. Evid. 403. Accordingly, all testimony of Dr. Gruden should be excluded and he should not be permitted to testify at trial.

WHEREFORE, Defendants, UMass Memorial Medical Group, Inc., and Max Rosen, M.D., respectfully request that the Court exclude the testimony of James F. Gruden, M.D., at trial.

**CERTIFICATION OF CONFERENCE**

Pursuant to D. Mass. Local Rule 7.1(a)(2), prior to the filing of this Motion, on October 10, 2022, counsel for Defendants, Robert L. Kilroy and Reid M. Wakefield, held a conference by telephone with counsel for Plaintiff, Timothy M. Kolman and Timothy D. Rodden, Jr., in a good faith attempt to resolve or narrow the issues raised herein, and no agreement could be reached.

**MEMORANDUM OF LAW**

**I.     Standard for Admission of Expert Testimony**

A party may offer an expert witness to testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Federal Rule of Evidence 702 imposes on the trial judge a special "gatekeeping obligation" to ensure that expert testimony is relevant and reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). This "screening function entails a preliminary evaluation of the proffered expert testimony for both reliability and relevance." United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002). "The proponent of the evidence bears the burden of demonstrating its admissibility" and accordingly "must explain to the trial judge why the expert's testimony meets the requirements of Rule 702, so that the court can make an appropriate assessment of its

admissibility." United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013) "[T]he trial court has substantial discretion in determining the admissibility of expert testimony." Coleman v. De Minico, 730 F.2d 42, 45 (1st Cir. 1984).

Expert testimony must be relevant in order to be admitted at trial. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[E]xpert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002). Accordingly, the Court must determine that the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," a condition which "goes primarily to relevance." See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993); Smith v. Jenkins, 732 F.3d 51, 64 (1st Cir. 2013). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591, citing United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985) (Relevance includes "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

## II. Proffered Opinions of Dr. Gruden

Plaintiff has disclosed that she intends to offer expert testimony of James F. Gruden, M.D., regarding his opinions on the Medical Group's independent expert review of Plantiff's CT scans. Specifically, Plaintiff states that Dr. Gruden will offer opinions as to the following:

- His interpretation of the CT scan images and corresponding reports, which were listed in [the independent reviewer] Dr. Litmanovich's findings as containing misreads by Dr. Desai.

- His interpretation of the CT scan images and corresponding reports, which were listed in Dr. Litmanovich's findings as having been read by radiologists other than Dr. Desai for Marlborough Hospital.[2]

- Based on his experience as a radiologist at a major hospital and the apparent methodology of the review, whether the focused peer-review was a fair peer review process.

**Exhibit C**, Plaintiff's Expert Witness Disclosure of James F. Gruden, M.D., p. 3.

As to Dr. Gruden's "interpretations of the CT scan images," he concludes that "Dr. Desai made no significant errors of interpretation and no errors in reporting" and that the reports read by radiologists other than Plaintiff "fell outside a reasonable standard." **Exhibit D**, Expert Report of James F. Gruden, M.D., July 30, 2021 ("Gruden Report"), p. 8. These conclusions offered by Dr. Gruden are based on a non-blinded, biased, and limited review of certain reads that were reviewed by the independent reviewer. See Gruden Report. The independent expert reviewed CT reports from 25 of Plaintiff's reads and 25 reads performed by other Medical Group radiologists. Dr. Gruden offers opinions on only 10 of the 25 reads performed by Plaintiff. See Gruden Report, pp. 2-5. Out of the 25 reads performed by the control group, Dr. Gruden identifies only three reads that he identifies as having significant errors.[3] See Gruden Report, pp. 5-8; Gruden Dep., pp. 85:15-86:12; 90:22-91:6; 93:1-4; 141:18-143:6; 147:12-20. Dr. Gruden's opinions in his Expert Report were formed after Plaintiff's counsel identified to Dr. Gruden which reads were performed by Plaintiff and which were performed by other physicians, and in fact Plaintiff's counsel specifically asked him to focus on certain of the reads in providing his

---

[2] For some reason, all references by Dr. Gruden to the radiologists who performed reads that were included in the control group are to reads being performed for or at Marlborough Hospital. See Gruden Report. However, none of the 50 CT studies included in the independent review originated from Marlborough Hospital. Dr. Gruden does not know which facility the studies originated from and cannot tell from the documents he reviewed. See Gruden Dep., pp. 79:5-80:23.

[3] In his Expert Report, Dr. Gruden identifies six studies performed by other radiologists. However, at deposition, he admitted that three of the studies are not actually significant errors in his opinion. See Gruden Dep., pp. 141:18-143:6, 147:12-20.

opinion. See Gruden Dep., pp. 39:4-43:11, 48:12-50:21, Deposition Exhibits 5 & 6. After his review, performed with full knowledge of the identity of the reader, and based only on opinions related to a fraction of the 50 studies included in the independent review, Dr. Gruden opined that Plaintiff's reads were satisfactory and that it was the control group's reads that were poor. Dr. Gruden offers these generalized opinions without disclosing his impressions or findings about the vast majority – 34 out of 50 – of the studies included in the independent review.

While Dr. Gruden states in his Expert Report that he "reviewed each individual CT examination blindly," Gruden Report, p. 1, there is no evidence that he performed such a review. Dr. Gruden does not (and cannot) offer his findings and impressions from any blinded review, nor does he (or can he) offer conclusions of any blinded review. Indeed, no such opinions are included in his Expert Report.

At his deposition, Dr. Gruden testified that he initially reviewed the cases blinded to see if he agreed with the interpretations, and then "logged any kind of disagreements." See Gruden Dep., pp. 38:15-19, 42:22-43:4. Dr. Gruden testified that when he initially read the cases he had no idea which cases were read by Plaintiff and which cases were read by other radiologists. See Gruden Dep., p. 48:1-5. Dr. Gruden testified that after looking at each CT, he "wrote an account of the cases where [he] felt there was something wrong." See Gruden Dep., p. 44:1-9. He testified that he wrote down these impressions, provided the records to Plaintiff's counsel, and then destroyed them without retaining a copy. See Gruden Dep., pp. 44:9-25:19, 48:6-10, 115:16-116:11.

In his testimony, Dr. Gruden eventually backtracked, admitting that "[i]t's very possible that [he] didn't write every single of the 50" and he was unsure of what he recorded. See Gruden Dep., pp. 201:9-21. Subsequent to Dr. Gruden's deposition, counsel for Plaintiff sent

correspondence to counsel for Defendants confirming that Dr. Gruden provided no notes to them related to his review and impressions, and if Dr. Gruden destroyed them, then there are no notes that can be produced. See **Exhibit E**, Letter from B. Sweeney to R. Wakefield and R. Kilroy, September 2, 2021. Thus, there is no evidence that exists to support any blinded review conducted by Dr. Gruden and Plaintiff can offer none.

Regardless, the opinions Dr. Gruden has disclosed in discovery and which were included in his Expert Report were prepared after he knew which reads were performed by Plaintiff and which ones were not. See Gruden Dep., pp. 93:20-94:8, 183:1-8. He admits that all of the opinions he intends to offer are included in this report and are based on those conclusions, and that the blinded review was separate. See Gruden Dep., p. 183:9-20.

### III. Argument

#### A. Dr. Gruden and Plaintiff Admit the Independent Review was NOT Discriminatory.

As to the consequential and relevant question of whether there was discrimination in the review, the answer is undisputed. Both Plaintiff and Dr. Gruden agree that there could not have been discrimination in the review. At deposition, Dr. Gruden admitted that the CT reports reviewed by Dr. Litmanovich were de-identified and do not identify the radiologist who reviewed each read. See Gruden Dep., p. 73:7-14. He admitted that if he was not told by Plaintiff's counsel whether Plaintiff or a member of the control group performed a particular read, he could not have determined it, and that if the independent reviewer did not have the identities as he did, she would not have been able to identify the reading radiologist. See Gruden Dep., pp. 75:18-76:4, 77:5-12. He confirmed that one cannot tell Plaintiff's age or any other protected classes from reviewing the reports. See Gruden Dep., pp. 77:20-79:2. Dr. Gruden testified that if the independent reviewer was not internal at UMass Memorial (which she was

not) and did not know the identities of the radiologists (which she did not), then he <u>cannot think of any reason that would lead him to believe that Plaintiff was discriminated against</u>. See Gruden Dep., p. 199:1-7 (emphasis supplied). Dr. Gruden admitted that if the reviewer did not know who performed which CT, the reviewer could not have discriminated against Plaintiff, testifying: "<u>If you don't know who read what case, you can't discriminate against a reader</u>." See Gruden Dep., p. 77:13-19 (emphasis supplied).

Dr. Gruden's opinion <u>is shared by Plaintiff herself</u>, who agrees that the independent review was not discriminatory. Plaintiff testified at deposition that she does not claim that the independent reviewer discriminated against her in performing the independent review, she admits that Dr. Rosen acted fairly and appropriately by relying on an independent expert's evaluation as opposed to him making the evaluation himself, and she that admits that using an independent expert to perform a review is a way to assess quality without the risk of being discriminatory.[4] See Desai Dep., pp. 362:15-363:17, 94:10-14, 91:12-92:1.

B. <u>Dr. Gruden's Opinions are Not Relevant.</u>

Dr. Gruden's proffered opinions are not relevant and will not assist the jury to understand the evidence or to determine a fact in issue. The question for the jury at trial will be whether the decision maker, Dr. Rosen, made the decision to end Plaintiff's employment <u>because of her age</u>. See 29 U.S.C. § 623(a)(1); M.G.L. c. 151B, § 4(1B). Nothing about Dr. Gruden's critiques of the independent review are relevant to this question. His opinions about what the independent review should have found – which Dr. Rosen knew nothing about – do not make it more or less likely that Dr. Rosen was motivated by discriminatory animus in making his decision to terminate Plaintiff's employment. Dr. Rosen relied on <u>the independent reviewer's</u> assessment, which was

---

[4] Plaintiff does not believe that the decision by Dr. Rosen to perform the independent review was related to her age, gender, or disability. See Desai Dep., pp. 84:21-85:12, 86:6-10, 195:12-17.

blinded and free from any possibility of discriminatory bias. As described above, both Dr. Gruden and Plaintiff admit that there was not discrimination in the independent review, and Dr. Gruden's critique was made with knowledge of which reads were Plaintiff's. Therefore, Dr. Gruden's testimony should be excluded.

The facts related to the independent review are entirely undisputed.[5] The review was initiated by Dr. Rosen to evaluate Plaintiff's performance and to confirm the quality complaints and concerns he received about her chest CT reads. See R.S.O.F., ¶¶ 149, 152. The independent reviewer was selected from outside the Medical Group and the UMass Memorial system. See R.S.O.F., ¶ 162; **Exhibit F**, Affidavit of Diana Litmanovich, M.D.[6] ("Litmanovich Aff."), ¶¶ 1, 3. The reads included in the review – 25 performed by Plaintiff and 25 performed by other Medical Group radiologists – were selected at random. See R.S.O.F., ¶¶ 153-154. The images and reports from the studies were de-identified so that the patient information and identity of the reading radiologist were removed. See R.S.O.F., ¶ 155; Litmanovich Aff., ¶ 5. The independent review was performed blinded. See Litmanovich Aff., ¶ 11. The independent reviewer was not provided with the identities of the radiologist being reviewed or the radiologists whose reads were included in the control group. See R.S.O.F., ¶¶ 165, 168; Litmanovich Aff., ¶¶ 5-8. Based on this blinded and controlled review, the independent reviewer identified Plaintiff's reads as being significantly worse than the collective reads of the control group. See R.S.O.F., ¶¶ 169-170. After the independent reviewer's assessment of the reads was un-blinded by Dr. Rosen, he

---

[5] Defendants cite to Plaintiff Charu Desai, M.D.'s Response to Statement of Material Facts Submitted by UMass Memorial Medical Center, Inc., UMass Memorial Medical Group, Inc., Max Rosen, M.D., and Stephen Tosi, M.D., doc. 94-1, filed in opposition to Defendants' Motion for Summary Judgment, which reflects the record evidence submitted by Defendants and the admissions or lack of any contrary evidence cited by Plaintiff. To the extent Plaintiff now claims to dispute any facts set forth herein, she is unable to offer any evidence whatsoever to contradict the cited evidence in the record.

[6] Plaintiff did not depose Dr. Litmanovich and there is no evidence to dispute the testimony of her or Dr. Rosen as to their communications and how the review was conducted.

made the decision to terminate Plaintiff's employment based on the results. See R.S.O.F., ¶¶ 168, 171; Desai Dep., p. 79:4-13.

Nothing about Dr. Gruden's proposed opinions have a tendency to make any fact of consequence in determining the action more or less probable than it would be without the evidence. See Fed. R. Evid. 401. Dr. Gruden's opinion that, after being hired by Plaintiff to re-review the independent reviewer's assessment and with full knowledge of the identity of the reading radiologist, he would have come to different conclusions on some of the reads does not relate to the fact that the independent reviewer made her assessment independently and blindly, expressed her conclusions to Dr. Rosen, and Dr. Rosen based his decision on her assessment. The question of consequence is whether there was discrimination in the decision, not whether someone else could possibly have come to different conclusions about certain cases included in the review.[7] Discrimination law "does not stop [an employer] from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age. Courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) (internal quotations omitted); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 56 (2005) (The Court's "task is not to evaluate the soundness of [an employer's] decision making, but to ensure it does not mask discriminatory animus."). "[A] court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason [for its decision] to be credible." Mesnick, 950 F.2d at 824 (internal quotations omitted).

---

[7] The question is also not whether had Dr. Gruden performed the review he would have come to different conclusions, even in the event he had replicated the blinded, independent review (which he did not, as discussed above).

{Client Matter 15602/00540/A8038061.DOCX}    11

Accordingly, Dr. Gruden's disagreement with the independent reviewer's conclusions on certain cases cannot possibly have any relevance to the undisputed fact that the independent reviewer could not have discriminated against Plaintiff in any way in <u>her own</u> assessment. Because his opinions are not relevant and will not assist the jury, Dr. Gruden should be excluded from testifying at trial.

D.      <u>Dr. Gruden's Testimony Should be Excluded Under Rule 403</u>.

Even if Dr. Gruden's opinions were at all relevant, his testimony should be excluded because it will unfairly prejudice Defendants and will confuse the issues and mislead the jury. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Even where proffered expert testimony "passe[s] the strictures of Rule 702's gatekeeping of expert evidence, it [is] still subject to the Rule 403 balancing test." <u>United States v. Soler-Montalvo</u>, 44 F.4th 1, 16 (1st Cir. 2022). In fact, this balancing is particularly important with expert testimony due to the "worry … that jurors may assign more weight to it than it deserves," and the fact that "[e]xpert testimony can carry with it an unwarranted aura of special reliability and trustworthiness." <u>Id.</u> (internal quotations and citations omitted). Therefore, "courts must guard against letting [experts] intrude in areas that jurors, by dint of common experience, are uniquely competent to judge without the aid of experts," and "[b]ecause of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses." <u>Id.</u> quoting <u>Daubert</u>, 509 U.S. at 595.

Permitting Dr. Gruden's second-guessing of the assessment of the independent reviewer is likely to cause unfair prejudice to Defendants and will mislead the jury and confuse the

relevant question that the jury will be tasked with answering; that is, not the question whether the independent reviewer could have come to different conclusions or even whether she was correct, but whether there is any evidence that there was discrimination in the review that would relate to discriminatory animus on the part of Dr. Rosen in his decision to terminate Plaintiff's employment.

Notably, permitting testimony of Dr. Gruden would result in considerable wasting of the resources of the Court and of the parties and will substantially expand the scope of the trial. The disclosure of Dr. Gruden as a witness has required Defendants to expend significant costs in retaining its own expert, Ella Kazerooni, M.D., to rebut the opinions of Dr. Gruden. Defendants intend to call Dr. Kazerooni to testify that, based on her <u>blinded</u> review of the studies as compared with Dr. Gruden's opinions, Dr. Gruden's review was flawed and his findings are mostly incorrect. The result of this competing expert testimony will be a trial within a trial as to the accuracy of the studies included in the independent review, a question that is irrelevant and dependent on complex medical facts related to dozens of patient diagnoses, and will greatly divert resources and the jury's attention from the actual question at issue; whether Plaintiff's employment was terminated because of discriminatory animus or because of Dr. Rosen's belief that her poor quality was unacceptable.

E.   <u>Dr. Gruden's Testimony as to Methodology Should be Excluded.</u>

If Dr. Gruden is allowed to testify, he should not be permitted to provide any testimony or opinion as to the methodology of the independent review or its fairness. An expert's testimony must be "based on sufficient facts or data" and must be "the product of reliable principles and methods … the expert has reliably applied … to the facts of the case." Fed. R. Evid. 702. Expert testimony "must be supported by appropriate validation – i.e., 'good grounds,'" and based on

"more than subjective belief or unsupported speculation." <u>Daubert</u>, 509 U.S. at 590. While in his report Dr. Gruden opines on the methodology of the independent review in conclusory fashion, he admits that he does not know <u>anything at all</u> about the methodology of the review. Accordingly, Dr. Gruden should not be permitted to provide expert testimony on the independent review's methodology, including any opinions that it was improper or unfair.

> In his report, Dr. Gruden concludes as follows:
>
> Finally, based on my experience as a radiologist at a major hospital and the apparent methodology of the instant review (i.e., that all of the cases were submitted in a small window in early 2017), I have formed an opinion to a reasonable degree of certainty, that the method of peer review used in this case does not conform to any appropriate or well-known guidelines for a fair peer review process.

Gruden Report, p. 8. However, Dr. Gruden offers <u>no facts of any kind</u> to support his conclusion. The <u>only</u> other mention of his opinion regarding the methodology of the review in his entire report is as follows, and is simply a restatement of his conclusion:

> Of note, all cases were submitted in a small window in early 2017, and I am not certain why this type of "targeted review" was performed. The method of peer review used here does not conform to any appropriate or well-known guidelines for a fair peer review process. This appears to be a hastily performed focused and targeted project, the need for which I do not know.

Gruden Report, p. 2.

At deposition, Dr. Gruden was unable to identify any basis to support his opinion that the independent review was not "fair." In fact, as he readily admits, Dr. Gruden does not know <u>anything</u> about the methodology of the review.

> Q. So is it fair to say that you don't really know what the methodology was for the review done by UMass Memorial?
> A. That's correct.

Gruden Dep., p. 192:20-23. Dr. Gruden indeed does not know any information that is essential to be able to form a conclusion that the review was unfair or performed improperly. He does not

know how the studies were selected for the review or who selected the studies. See Gruden Dep., pp. 71:16-20, 187:11-16. He does not know which radiologists, the number of radiologists, or the backgrounds or specialties of the radiologists who performed the reads that were not performed by Plaintiff. See Gruden Dep., pp. 76:15-77:4, 187:17-20. He does not know when the review was performed or how long it took to perform the review. See Gruden Dep., pp. 189:18-190:1.

Dr. Gruden does not "know anything about how [the review] was done" and does not know what information the independent reviewer had in performing the review. See Gruden Dep., p. 77:10-12. He does not know whether the review was blind or whether the reviewer knew the identity of the radiologist performing the reads. See Gruden Dep., pp. 71:21-24, 187:7-10. He does not know the reason the review was conducted and does not know its purpose. See Gruden Dep., pp. 72:1-8, 185:24-2. He does not know what triggered the review or what the nature of any complaints about Plaintiff were. See Gruden Dep., pp. 186:3-20. He does not know the method that was used in conducting the view. See Gruden Dep., pp. 72:6-8. At the time of the submission of his Expert Report, he did not know the identity of the reviewer or whether the review was internal or external to UMass Memorial. See Gruden Dep., pp. 68:17-69:5.

In fact, to the extent Dr. Gruden believes he does know something about how the independent review was performed, he is incorrect.[8] Indeed, the very basis for Dr. Gruden's opinion that the review "does not conform to any appropriate or well-known guidelines for a fair peer review process" is based on the mistaken belief that the review was part of UMass Memorial's regular peer review process. But, as the parties know, this is not accurate, and the

---

[8] Dr. Gruden testified that after the fact he learned that the review was performed by a reviewer internal at UMass Memorial, stating that he "now know[s] it was somebody internal, but I don't know … how they did it or what the thought process was. I just know it was somebody at UMass." See Gruden Dep., pp. 69:4-20. However, Dr. Gruden's belief is wrong, as it is undisputed that the reviewer was not affiliated with UMass Memorial.

independent review was performed as a targeted evaluation of a limited number of reads and conducted for a specific purpose; a purpose completely unknown to Dr. Gruden. It was not a part of UMass Memorial's normal peer review process.[9]

Dr. Gruden's sole fact-based criticism is that the review included reads from a limited period of time; "a small window in early 2017." See Gruden Report, pp. 2, 8. However, Dr. Gruden admits that he does not know why the time period was selected. See Gruden Dep., p. 187:21-24.[10] Without knowing anything about the purpose of the review or the methodology, any opinions by Dr. Gruden on the time period for the selection are specious and not based on expert knowledge and are not at all helpful to a jury.

In fact, Dr. Gruden admits that if the independent review was conducted as a targeted review based on a reason (as it was), he has no basis to opine that there was anything wrong with the way it was done.

> Q. And assuming it was a targeted review done for a reason, is there anything wrong or do you have any knowledge about whether there was anything wrong about it?
> A. No. I said I have no idea about Dr. Desai's performance on other cases or if there was a history of problems or if there's anything else that I'm -- I don't know anything about the situation. My opinion is strictly about these 50 cases.

Gruden Dep., p. 194:5-14.

Dr. Gruden simply does not have any basis to offer expert testimony regarding the methodology of the review, and admits as much. Any opinions Dr. Gruden may offer at trial

---

[9]  Dr. Gruden admitted that the "peer review process" he is referring to is something different than what this review would be. See Gruden Dep., p. 192:10-13. Dr. Gruden does not know what UMass Memorial's peer review process is and whether Plaintiff had prior peer reviews that showed a concern. See Gruden Dep., p. 192:14-19. Dr. Gruden opined that the independent review appears to be a review that is outside of the normal peer review process. See Gruden Dep., p. 193:18-21. Instead, he acknowledged that "this looks like a targeted review that was done for a reason." See Gruden Dep., p. 194:1-4.

[10] While he speculates as to reasons that selecting cases from a limited time period may impact the review, he is unable to offer any knowledge that it did or why it would have under the facts of this case. See Gruden Dep., pp. 188:1-189:22.

regarding the methodology or fairness of the independent review are therefore not only irrelevant and unhelpful to a jury, but they are not supported by facts, data, or reliable methods. Additionally, any probative value would be substantially outweighed by the unfair prejudice to Defendants, the confusion of the issues, and misleading of the jury, as described more fully above.

      F.      <u>Dr. Gruden's Testimony that He Performed a "Blinded Review" and Testimony Regarding Generalized Conclusions Should be Excluded.</u>

To the extent that Dr. Gruden is permitted to testify on any subject, the Court should bar any testimony or other reference to suggest that Dr. Gruden performed a blinded review of the CT studies included in the independent review. In addition to such opinions being irrelevant, any testimony on this subject is not based on any facts or data. In fact, Dr. Gruden has produced <u>no</u> factual support at all regarding a blinded review. He has produced no documents that reflect his impressions or findings from such a review, has not disclosed opinions regarding the outcome of such a review, and was unable to testify at deposition regarding any of his conclusions from a blinded or comprehensive review.[11] As described in detail above, the only opinions Dr. Gruden offers regarding the quality of the CT reads reflect his knowledge of the identity of the radiologists conducting the reads, which stands in sharp contrast to the blind review conducted by UMass Memorial's independent reviewer.

Further, Dr. Gruden should be barred from offering generalized conclusions about the quality of Plaintiff's reads as compared to the quality of the control group's reads. Dr. Gruden has not disclosed any impressions, findings, or conclusions as to any study that is not specifically

---

[11] To the extent Dr. Gruden intends to testify to what he recorded from his review without producing the original documentation of the review, such testimony should be excluded under the best-evidence rule. See Fed. R. Evid. 1002. Additionally, his destruction of his alleged recorded impressions constitutes spoliation that is significantly prejudicial to Defendants, and accordingly any evidence on this subject should be excluded as a sanction. See <u>Gordon v. DreamWorks Animation SKG, Inc.</u>, 935 F. Supp. 2d 306, 313-16 (D. Mass. 2013).

identified in his Expert Report – the vast majority. He offers opinions only on 16 out of the 50 studies, and the opinions he does offer are based entirely in the context of critiquing the independent reviewer's assessment. Dr. Gruden does not offer his own impressions from reviews of the underlying studies in his Expert Report and was unable to testify at deposition as to his impressions from his own reviews. Of course, a testifying expert is required to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2). Any testimony outside the scope of his disclosed opinions should be excluded. See Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003).

Accordingly, any testimony offered by Dr. Gruden regarding any blinded review he claims to have performed or generalized conclusions should be excluded as it is irrelevant, not supported by facts or expert methods as required by Rule 702, and is outside the scope of his opinions disclosed in discovery. Additionally, any probative value such testimony may have is substantially outweighed by the unfair prejudice it would cause to Defendants and the confusion of the issues and misleading of the jury that would result.

### III.     Conclusion

Dr. Gruden's opinions are not relevant, as they will not make any fact of consequence more or less probable, and his opinions will not assist the jury as to the factual issues it will be tasked with resolving. The relevant question for the jury to decide is whether the independent review and subsequent termination decision were based on discrimination, and Dr. Gruden's second-guessing of the independent reviewer's blinded assessment of certain cases bears no relevance to that question or facts related to it. Even if his opinions did have any probative value, permitting complex medical testimony regarding underlying studies in the review would

substantially prejudice Defendants and would confuse the issues and mislead the jury by shifting the focus of the trial from whether Defendants had discriminatory motives to an irrelevant re-assessment of medical questions that the decision maker never considered. Additionally, permitting this testimony would significantly increase the parties' time and expenses and will waste judicial resources. Accordingly, Defendants respectfully request that Dr. Gruden not be permitted to testify at trial.

Respectfully submitted,

**UMASS MEMORIAL MEDICAL GROUP, INC., and MAX ROSEN, M.D.**

By their attorneys,

*/s/Reid M. Wakefield*
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone 508.860.1474
Fax 508.983.6261
rkilroy@mirickoconnell.com
rwakefield@mirickoconnell.com

Dated:  October 12, 2022

CERTIFICATE OF SERVICE

I, Reid M. Wakefield, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

*/s/Reid M. Wakefield*
Reid M. Wakefield, Esq.

Dated: October 12, 2022