UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:19-CV-10520-TSH

| | |
|---|---|
| CHARU DESAI,<br>          Plaintiff,<br><br>          v.<br><br>UMASS MEMORIAL MEDICAL<br>CENTER, INC., et al.,<br>          Defendants. | **MOTION IN LIMINE TO<br>EXCLUDE REFERENCE TO<br>STATISTICAL UNRELIABIITY OF<br>EVIDENCE IN OPENING,<br>CLOSING AND/OR TRIAL<br>TESTIMONY** |

Defendants, UMass Memorial Medical Group, Inc. (the "Medical Group" or "UMass Memorial") and Max Rosen, M.D., move for an Order precluding Plaintiff, her counsel, and any of Plaintiff's trial witnesses from making reference to "statistical reliability" or "unreliability" of the independent review, its structure and/or methodology of review conducted by Defendants prior to the termination of Plaintiff's employment.  In support of this motion, Defendants respectfully submit their motion with incorporated Memorandum of Law.

Plaintiff alleges that she was unlawfully terminated from employment because of discrimination.  Defendants will produce evidence at trial of their legitimate, non-discriminatory rationale for termination of Plaintiff's employment as a Chest Radiologist.  In part, Defendants will rely on an independent review of a sampling of Plaintiff's Chest CT reads as a Chest Radiologist.  The evidence to be presented at trial will include that the Chair of the Department of Radiology, Dr. Max Rosen, directed that 25 of Plaintiff's Chest CT reads be randomly pulled for review, along with a random sampling of 25 Chest CT reads from other radiologists.  Those 50 Chest CTs were then completely de-identified and forwarded to an independent reviewer with experience in Thoracic Radiology – a physician not affiliated with UMass Memorial.

Dr. Rosen is not an expert in statistical analysis. At trial, he will testify that his focus in selecting 25 blinded Chest CTs of Plaintiff's and 25 Chest CTs of other radiologists was to ensure a comparative base for review and to provide a review that he believed would be fair to Dr. Desai.

Defendants have recently learned that Plaintiff intends to present evidence that the methodology and/or structure of the independent review as requested by Dr. Rosen is "statistically unreliable." A review of Plaintiff's disclosed experts and their expert reports reveals, however, that Plaintiff has not disclosed any expert who has been designated to proffer an opinion on statistical analysis or statistical reliability of the independent review, its methodology, or its structure. Indeed, there is no mention of statistical reliability in any of Plaintiff's expert reports. See Expert Report of Pogos H. Voskanian, M.D., Diplomate of American Board of Psychiatry and Neurology in Psychiatry and Forensic Psychiatry (opining on Plaintiff's diagnosis of major depressive disorder), attached as **Exhibit A**; Economic Report of Michael Morrison, Ph.D, Assistant Professor of Economics at Edinboro University of Pennsylvania and the Assistant Department Chair of the Department of Business and Economics (opining on the "present value of Plaintiff's lost past and future earnings" and "present value of Plaintiff's reduced quality of life associated with her major depressive disorder"), attached as **Exhibit B**; Expert Report of James F. Gruden, M.D., Board certified Radiologist (opining on his interpretation of Plaintiff's Chest CTs as used in the independent review; on the independent reviewer's findings; and on "the method of peer review" and whether it conformed to "any appropriate or well-known guidelines for a fair peer review process"), attached as **Exhibit C.**

Federal Rule of Civil Procedure 26(a)(2)(B) requires disclosure of a written report from any testifying expert. Such report "must contain," in part, "(i) a complete statement of all

opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; [and] (iv) the witness's qualifications . . . ."  There is no dispute that none of Plaintiff's three experts set forth a statement of opinion as to statistical reliability or unreliability of the independent review, its structure or methodology.  Likewise, it is undisputed that none of Plaintiff's three experts set forth facts or data related to any statistical analysis performed or any comparative analysis that would make a statistical analysis meaningful.  Moreover, a review of Plaintiff's experts' CVs fails to establish any "scientific, technical, or other specialized knowledge" specific to statistical analysis.  See Fed.R.Evid. 702 (requiring that an expert possess "scientific, technical, or other specialized knowledge").

As Plaintiff has not disclosed an expert related to statistical analysis and/or statistical reliability with respect to the independent review, its structure or methodology, the Court should preclude Plaintiff's experts from testifying as to such statistical analysis or reliability.  See Fed.R.Civ.P. 26(a)(2); Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003) (holding that any expert testimony outside the scope of the experts' disclosed opinions in the expert report should be excluded).

To the extent Plaintiff claims that a fact witness should be permitted to testify as to statistical reliability or analysis, Defendants are not aware of any fact witness germane to this litigation who could competently testify as to statistical reliability of the independent review, nor does the topic of statistical reliability meet the standard for fact witness or lay witness testimony. As made clear in Federal Rule of Evidence 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception . . . and (c) not based on scientific, technical, or other specialized knowledge within

the scope of Rule 702." Fed.R.Evid. 701. In this instance, any witness testifying as to statistical reliability would necessarily be testifying "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Accordingly, the fact witness would be disqualified from offering a lay opinion as to statistical reliability of the independent review, its structure or methodology.

As Plaintiff can proffer no testimony as to statistical reliability or unreliability of the independent review, Plaintiff's counsel should be precluded from referencing such or making an argument as to such during opening and closing statements, as well as during questioning of witnesses.

## CERTIFICATION OF CONFERENCE

Pursuant to D. Mass. Local Rule 7.1(a)(2), prior to the filing of this Motion, on November 20, 2022, counsel for Defendants, Reid M. Wakefield, Esq. and Robert L. Kilroy, conferred with counsel for Plaintiff, Timothy M. Kolman, Esq., in a good-faith attempt to resolve or narrow the issues raised herein, and no agreement could be reached.

## MEMORANDUM OF LAW

### I.    Standard for Admission of Expert Testimony

A party may offer an expert witness to testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702. Prior to testifying, however, an expert witness must comply with Federal Rule of Civil Procedure 26 by disclosing "a complete statement of all opinions the witness will express and the basis and

reasons for them." Fed.R.Civ.P. 26(a)(2)(B).  In addition, the witness must disclose his or her

qualifications, including a list of all publications authored in the previous 10 years."  Id.

Federal Rule of Evidence 702 imposes on the trial judge a special "gatekeeping

obligation" to ensure that expert testimony is relevant and reliable.  See Kumho Tire Co. v.

Carmichael, 526 U.S. 137, 147 (1999).  This "screening function entails a preliminary evaluation

of the proffered expert testimony for both reliability and relevance."  United States v. Diaz, 300

F.3d 66, 73 (1st Cir. 2002).  "The proponent of the evidence bears the burden of demonstrating

its admissibility" and accordingly "must explain to the trial judge why the expert's testimony

meets the requirements of Rule 702, so that the court can make an appropriate assessment of its

admissibility."  United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013).  "[T]he trial court has

substantial discretion in determining the admissibility of expert testimony."  Coleman v. De

Minico, 730 F.2d 42, 45 (1st Cir. 1984).

Expert testimony "must be supported by appropriate validation – i.e., 'good grounds,'"

and based on "more than subjective belief or unsupported speculation."  Daubert, 509 U.S. at

590.  A court should not admit opinion evidence that "is connected to existing data only by the

*ipse dixit* of the expert."  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  The court "must

exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the

jury."  United States v. Two Elk, 536 F.3 890, 903 (8th Cir. 2008).

II.  **Argument**

A.  **Plaintiff Has Not Disclosed An Expert In Statistical Analysis or Statistical
Reliability**.

1.  *Plaintiff's Expert, Michael Morrison, Ph.D.*

Plaintiff's Expert Witness Disclosure as to Michael Morrison, Ph.D., identifies Dr.

Morrison as an economist who will "offer testimony on issues related to lost economic benefits,

including salary and retirement benefits, due to [Plaintiff's] employment discrimination."  See Plaintiff Charu Desai's Expert Witness Disclosure (for Dr. Morrison), dated August 1, 2021, attached as **Exhibit D**.  The Disclosure further recites:  "Dr. Morrison will testify concerning the below:

- The present value of Plaintiff's lost past and future earnings as a result of her termination; and

- The present value of Plaintiff's reduced quality of life associated with her major depressive disorder, which resulted from Dr. Desai's termination.

Id.  As stated in the Disclosure, "Dr. Morrison's report includes a complete statement of all opinions to be expressed and reasons therefore . . . ."  Id.  A review of Dr. Morrison's Economic Report, dated July 27, 2021, makes clear Dr. Morrison has not included any statement of opinion as to statistical reliability of the independent review, its structure or methodology.  See **Exhibit B**.

Based on the foregoing, it is clear the economist, Dr. Morrison, has not been properly designated by Plaintiff to testify as to the statistical reliability (or unreliability) of the independent review, its structure or methodology.

### 2. *Plaintiff's Expert, Pogos G. Voskanian, M.D.*

Plaintiff's Expert Witness Disclosure as to Pogos G. Voskanian, M.D., identifies Dr. Voskanian as a board certified forensic psychiatrist who "will offer testimony regarding his assessment of the emotional distress Dr. Desai suffered and is likely to suffer moving forward as a result of her termination from employment at the UMass Memorial Medical Center after about 30 years."  See Plaintiff Charu Desai's Expert Witness Disclosure (for Dr. Voskanian), dated August 1, 2021, attached as **Exhibit E**.  As stated in the Disclosure, "Dr. Voskanian's report

includes a complete statement of all opinions to be expressed and the basis and reasons therefore

. . . ."  Id.  A review of Dr. Voskanian's Expert Report, dated July 28, 2021, makes clear

Dr. Voskanian has not included any statement of opinion as to statistical reliability of the

independent review, its structure or methodology.  See **Exhibit A**.

Based on the foregoing, it is clear the psychiatrist, Dr. Voskanian, has not been properly

designated by Plaintiff to testify as to the statistical reliability (or unreliability) of the

independent review, its structure or methodology.

3.  *Plaintiff's Expert, James F. Gruden, M.D.*

Plaintiff's Expert Witness Disclosure as to James F. Gruden, M.D., identifies Dr. Gruden

as a Full Professor of Radiology at Weill Cornell Medical College and Attending Radiologist at

the New York-Presbyterian Hospital – Weill Cornell Campus who "will offer testimony on

issues related to Defendants' review of Plaintiff's CT scans."  See Plaintiff Charu Desai's Expert

Witness Disclosure (for Dr. Gruden), dated August 1, 2021, attached as **Exhibit F**.  The

Disclosure further recites:  "Dr. Gruden will testify concerning the below:

- His interpretation of the CT scan images and corresponding reports, which were
  listed in Dr. Litmanovich's findings as containing misreads by Dr. Desai.

- His interpretation of the CT scan images and corresponding reports, which were
  listed in Dr. Litmanovich's findings as having been read by radiologists other than
  Dr. Desai for Marlborough Hospital.

- Based on his experience as a radiologist at a major hospital and the apparent
  methodology of the review, whether the focused peer-review was a fair peer
  review process."

Id.

As stated in the Disclosure, "Dr. Gruden's report includes a complete statement of all opinions to be expressed and the basis and reasons therefore . . . ." Id.  A review of Dr. Gruden's Expert Report, dated July 28, 2021, makes clear Dr. Gruden has not included any statement of opinion as to "statistical reliability," nor has he even referenced any level of statistical analysis with respect to the independent review, its structure or methodology.  See **Exhibit C**.  Instead, the only opinion offered by Dr. Gruden as to the methodology of review is as follows:

> "Finally, based on my experience as a radiologist at a major hospital and the *apparent* methodology of the instant review (i.e., that all of the cases were submitted in a small window in early 2017), I have formed an opinion to a reasonable degree of certainty, that the method of peer review used in this case does not conform to any appropriate or well-known guidelines for a fair peer review process."

Id., at Section IV, Expert Opinions (italics added).

Naturally, the above opinion cannot form the basis for proffering an opinion at trial as to statistical reliability or unreliability.  In fact, Dr. Gruden fails to identify any level of statistical analysis or any statement as to reliability in his disclosed opinions.  The reason for this is clear – Dr. Gruden did not perform any level of statistical analysis or statistical comparisons in analyzing the independent review, nor is Dr. Gruden qualified to render an expert opinion based on statistical analysis.  In fact, a search for reported case law decisions in which Dr. Gruden served as an expert failed to uncover any reference to his expertise in statistics or statistical analysis.  Simply put, Dr. Gruden's education and training is limited to Radiology; it does not extend to expertise as a statistician.

Separate and apart from the undisputed facts that Dr. Gruden did not disclose any opinion, as required, to be able to testify as to statistical analysis and that his CV reveals no basis upon which to establish that he has any expertise in statistical analysis, he made clear at deposition that his opinion as to "the method of peer review" is not "based on sufficient facts or

data" that has been "applied . . . to the facts of the case" as required under Fed.R.Evid. 702.  In

fact, at deposition Dr. Gruden admitted he does not know anything at all about the methodology

of the independent review:

> Q:  So is it fair to say that you don't really know what the methodology was for the
> review done by UMass Memorial?
> A:  That's correct.

See Deposition Transcript for James Gruden, at 192:20-23 ("Gruden Dep."), attached as

**Exhibit G**.

Moreover, Dr. Gruden does not know any information that is essential to be able to form

a conclusion that the review was unfair, somehow performed improperly, or statistically

unreliable.  He does not know how the studies were selected for the review or who selected the

studies.  See Gruden Dep., at 71:16-20, 187:11-16.  He does not know which radiologists, the

number of radiologists, or the backgrounds or specialties of the radiologists who performed the

reads that were not performed by Plaintiff.  See Gruden Dep., at 76:15-77:4, 187:17-20.  He does

not know when the review was performed or how long it took to perform the review.  See

Gruden Dep., at 189:18-190:1.

Dr. Gruden does not "know anything about how [the independent review] was done" and

does not know what information the independent reviewer had in performing the review.  See

Gruden Dep., at 77:10-12.  He does not know whether the review was blind or whether the

reviewer knew the identity of the radiologists performing the reads.  See Gruden Dep., at 71:21-

24, 187:7-10.  He does not know the reason the review was conducted and does not know its

purpose.  See Gruden Dep., at 72:1-8, 185:24-2.  He does not know what triggered the review or

the nature of any complaints about Plaintiff that precipitated the independent review.  See

Gruden Dep., at 186:3-20.  He does not know the method that was used in conducting the

independent review. See Gruden Dep., at 72:6-8.  At the time of the submission of his Expert Report, he did not know the identity of the reviewer or whether the review was internal or external to UMass Memorial.  See Gruden Dep., at 68:17-69:5.

In fact, to the extent Dr. Gruden believes he does know something about how the independent review was performed, he is incorrect.[1]  Indeed, the very basis for Dr. Gruden's opinion that the review "does not conform to any appropriate or well-known guidelines for a fair peer review process" is based on the mistaken belief that the review was part of UMass Memorial's regular peer review process.  But, as the parties know, this is not accurate, and the independent review was performed as a targeted evaluation of a limited number of reads and conducted for a specific purpose; a purpose completely unknown to Dr. Gruden.  It was not a part of UMass Memorial's normal peer review process.[2]

Dr. Gruden's sole fact-based criticism is that the review included reads from a limited period of time; "a small window in early 2017."  See **Exhibit C** at 2, 8. However, Dr. Gruden admits that he does not know why the time period was selected.  See Gruden Dep., at 187:21-24.[3]  Without knowing anything about the purpose of the review or the methodology, any

---

[1]   Dr. Gruden testified that after the fact he learned that the review was performed by a reviewer internal at UMass Memorial, stating that he "now know[s] it was somebody internal, but I don't know … how they did it or what the thought process was. I just know it was somebody at UMass." See Gruden Dep., at 69:4-20. However, Dr. Gruden's belief is wrong, as it is undisputed that the reviewer was not affiliated with UMass Memorial.

[2]   Dr. Gruden admitted that the "peer review process" he is referring to is something different than what this review would be.  See Gruden Dep., at 192:10-13. Dr. Gruden does not know what UMass Memorial's peer review process is and whether Plaintiff had prior peer reviews that showed a concern. See Gruden Dep., at 192:14-19. Dr. Gruden opined that the independent review appears to be a review that is outside of the normal peer review process. See Gruden Dep., at 193:18-21. Instead, he acknowledged that "this looks like a targeted review that was done for a reason." See Gruden Dep., at 194:1-4.

[3]   While he speculates as to reasons that selecting cases from a limited time period may impact the review, he is unable to offer any knowledge that it did or why it would have under the facts of this case.  See Gruden Dep., at 188:1-189:22.

opinions by Dr. Gruden on the time period for the selection are specious and not based on expert knowledge, and, therefore, are not at all helpful to a jury.

In fact, Dr. Gruden admits that if the independent review was conducted as a targeted review (as it was), he has no basis to opine that there was anything wrong with the way it was done.

> Q. And assuming it was a targeted review done for a reason, is there anything wrong or do you have any knowledge about whether there was anything wrong about it?
> A. No. I said I have no idea about Dr. Desai's performance on other cases or if there was a history of problems or if there's anything else that I'm -- I don't know anything about the situation. My opinion is strictly about these 50 cases.

Gruden Dep., at 194:5-14.

Dr. Gruden simply does not have any basis to offer expert testimony regarding the methodology of the review, and admits as much.  More significantly for purposes of this motion, it is clear Dr. Gruden has no basis to offer expert testimony as to the statistical reliability (or unreliability) of the independent review, its structure or methodology.  Any statistical opinions Dr. Gruden may attempt to offer at trial regarding the independent review, its structure or methodology are clearly not supported by facts, data, or reliable methods, and have not been properly disclosed as part of Plaintiff's Expert Disclosure or as part of Dr. Gruden's Expert Report.

Based on the foregoing, Dr. Gruden is not competent to testify as to statistical reliability of the independent review, its structure or methodology, and he should be precluded from doing so.

### III.   Conclusion

In light of the foregoing, Defendants respectfully request that Plaintiff and her counsel be precluded from referencing statistical reliability or unreliability of the independent review, its

structure or methodology, or from making any argument as to such during opening and closing statements.  Defendants further request that Plaintiff and her counsel be precluded from offering witness testimony related to statistical reliability or unreliability of the independent review, its structure or methodology.

Respectfully submitted,

**UMASS MEMORIAL MEDICAL GROUP, INC., and MAX ROSEN, M.D.**

By their attorneys,

*/s/Robert L. Kilroy*
Robert L. Kilroy, Esq., BBO # 636853
Reid M. Wakefield, Esq., BBO # 569026
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone 508.860.1474
Fax 508.983.6261
Email:  rkilroy@mirickoconnell.com
Email:  rwakefield@mirickoconnell.com

Dated:  November 21, 2022

CERTIFICATE OF SERVICE

I, Robert L. Kilroy, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

*/s/Robert L. Kilroy*
Robert L. Kilroy, Esq.

Dated:  November 21, 2022