UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br>*Plaintiff*,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL GROUP, INC., et al.,<br>*Defendants*. | CIVIL ACTION NO. 4:19-cv-10520-TSH<br><br>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DR. LITMANOVICH. |

NOW COMES, Plaintiff Charu Desai (also referred to as "Plaintiff" or "Desai"), by and through her attorneys, Kolman Law, P.C., and the Upper Charles Legal Group, and files this Memorandum of Law in support of her motion *in limine* to exclude the testimony of Diana Litmanovich, MD.

## I. INTRODUCTION

Plaintiff requests this court to grant her motion in limine to exclude the testimony of Diana Litmanovich, MD. Defendants have falsely designated her as a 'fact witness' when Defendants have her testifying as an expert. Dr. Litmanovich is a *de facto* expert because she renders a medical opinion on the Plaintiff's CT scans. As argued *infra*, Defendants admit as much.

## II. RELEVANT FACTUAL BACKGROUND

### A. History of the Case

This motion arises from Plaintiff's age discrimination case against the University of Massachusetts Memorial Medical Group (the "Medical Group") and her claim of intentional

1

interference with advantageous relations against Max Rosen ("Dr. Rosen.).

The matter is scheduled for trial, starting with the selection of the jury on December December 2, 2022. Critical to the case is an alleged 'focused review' of 25 of Plaintiff's CT scans. On August 22, 2017, Dr. Rosen contacted Dr. Diana Litmanovich, a chest radiologist unaffiliated with the Medical Group, whom Dr. Rosen understood to be an expert in radiological interpretations, to conduct an independent review. Dr. Rosen asked Dr. Litmanovich whether she agreed or disagreed with each interpretation in the group of fifty anonymized studies and if she disagreed, whether it was a minor or major disagreement and whether in her opinion the disagreement would have an impact on patient care.

Dr. Litmanovich sent Dr. Rosen her findings on December 25, 2017. Among Dr. Desai's interpretations, Dr. Litmanovich identified five major errors and nine errors impacting patient care. Among the interpretations of other radiologists, Dr. Litmanovich identified one major error and five errors impacting patient care. Dr. Litmanovich noted that, overall, she did not find any life-threatening misses or misinterpretations, and that the technical quality of the studies was "very good."

In response, Dr. Desai hired an expert in radiology to review the fifty interpretations reviewed by Dr. Litmanovich. That expert, Dr. James Gruden, found that Dr. Desai made no significant errors, that her interpretations were "well within the expected standard of care at an urban teaching hospital," and that Dr. Litmanovich's criticism "was subjective."

On March 14, 2018, Dr. Rosen met with Dr. Desai to tell her that her employment would be terminated on March 17, 2019. At a later meeting, Dr. Rosen provided Dr. Desai with a summary of Dr. Litmanovich's independent review. Dr. Rosen represented that his decision to terminate Dr. Desai's employment was based on his assessment of Dr. Litmanovich's independent review.

### B.     False Designation of Dr. Litmanovich As a Fact Witness

On November 2, 2022, Defendants submitted their pretrial disclosures. These are attached and incorporated herein as Exhibit A. On page 1, marked 'Witnesses, Defendants enumerate the Witnesses they expect 'to present at trial'. Witness number 3 is Diana Litmanovich, M.D. *Id*.

Pursuant to this litigation, on December 15, 2021, Dr. Max Rosen MD., MPH, executed an affidavit, hereto attached and incorporated as Exhibit B. In paragraph ¶62 of this affidavit (highlighted in yellow), Dr. Rosen states 'I believe Dr. Litmanovich to be **an expert in the interpretation of thoracic CT images**." (Emphasis added). He continued stating that he had requested Dr. Litmanovich to review the images for each CT study and the corresponding report **and provide her opinion** whether she agreed or disagreed with the interpretation... and whether or not the disagreement would have an impact on patient care **in her opinion**." (Emphasis added). Id at ¶63. In¶ 64, Dr. Rosen states that Dr. Litmanovich had provided him with her 'findings'. Dr. Litmanovich had reached a conclusion which determined that Dr. Desai made 5 major errors and 9 errors which "**she opined would impact patient care**." *Id*. Emphasis added. Dr. Rosen continues to quote Dr. Litmanovich's conclusion that of the reads conducted by other radiologists, there was one error, and five errors **she opined would impact** patient care. *Id*. Emphasis added.

In his deposition on May 7, 2021, Dr. Rosen further referenced the medical opinion of Dr. Litmanovich. See pages 158:20-159:21 hereto attached and incorporated as Exhibit C.

### III.     CERTIFICATION OF CONFERENCE

Pursuant to D. Mass. Local Rule 7.1(a)(2), prior to the filing of this Motion, on October 19, 2022, and October 20, 2022 counsel for Plaintiff, Timothy M. Kolman engaged in email correspondence with Defendants, Robert L. Kilroy and Reid M. Wakefield, in a good faith attempt to resolve or narrow the issues raised herein, and no agreement could be reached.

## IV.  LEGAL ARGUMENT

### A. Dr. Litmanovich Has Never Been Designated As an Expert, and Cannot Testify As One.

Dr. Litmanovich has not been designated as an expert. This court required all trial experts to be designated by September 30, 2021. (ECF ¶47). The Defendants should not be allowed to use Dr. Litmanovich to support their defense. Rule 26(a)(2)(A) required the Defendants to disclose "any witness [he] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). The purpose of this rule is so that "opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26(a)(2) advisory committee"s note. Rule 702 requires that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702.

The Federal Rules of Civil Procedure provide the basic framework for disclosure of experts. Rule 26 requires a party to "disclose to other parties the identity of any person who may be used at trial to present [expert] evidence." Fed.R.Civ.P. 26(a)(2)(A). Where a district court has established a disclosure date, as in this case, a party must disclose the expert's identity at this ordered time. *Id.* at (a)(2)(C). If a party's expert disclosure is untimely, the party is not allowed to use that witness or relevant expert information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

It is submitted that the Defendants should have designated Dr. Litmanovich as an expert, but failed to do so. As such, she should be precluded from testifying in this case.

### B. Even If Dr. Litmanovich Was Accepted As an Expert, the Methodology Used for Her Findings Is Fundamentally Flawed.

There has never been a proper foundation to permit Dr. Litmanovich to testify about the 50 CT scans. She has never been certified as an expert. Since 25 CT scans from Dr. Desai were put up against 25 CT scans from various other radiologists, the methodology to compare Dr. Desai to these other radiologists was fundamentally flawed. To be fair and reliable, Dr. Desai's 25 CT scans should have been compared to 25 CT scans from every other radiologist.

The plain language of Rule 702 requires that scientific testimony be helpful to the fact-finder, given by a qualified expert, and based upon sufficient facts or data, reliable principles and methods, and reliable application to the facts of the case. Fed. R. Evid. 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), articulated the threshold requirements that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The court noted that Rule 702 contemplates that the admission of expert testimony pertain to "scientific knowledge," which "must be derived by the scientific method" and "must be supported by appropriate validation – i.e., „good grounds," based on what is known." *Id.* at 590. Among the things the Supreme Court directs trial courts to consider are whether an expert"s opinion or methodology has been tested, whether it has been subjected to peer review and publication, whether it has a known (or potential) error rate, and whether it has gained general acceptance in the relevant community. *Id.*

Expert testimony cannot be admitted into evidence if it is too speculative. *See Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 681 (1st Cir. 1994) (citing *Quinones-Pacheco v. American Airlines, Inc.*, 979 F.2d 1, 6 (1st Cir. 1992) (excluding expert opinion where based on flawed assumptions)). And "[r]egardless of what factors are evaluated, the main inquiry

is whether the proffered expert"s testimony is sufficiently reliable." *Allen v.Brown Clinic, P.L.L.P.*, 531 F.3d 568, 574 (8th Cir. 2008). Indeed, the Supreme Court has held that neither *Daubert* nor the Federal Rules of Evidence require a court to admit opinion evidence that is connected to existing information only by the *ipse dixit*, or bare and unproven assertion, of the expert. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Zurich Ins. Co. v. Sunday River Skiway Corp.*, 2010 WL 1511495, *9 (D. Me. April 15, 2010) (citing *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)).

An expert is responsible for ensuring that his opinion is based on reliable data. *SMS Sys. Maint. Servs., Inc.* v. *Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999). Dr. Litmanovich has not explained how the comparison between 25 CT scans from Dr. Desai and 25 CT scans from other radiologists is a reliable methodology for determining the competence of Dr. Desai. ("[A]n **expert** must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession."); *Rand A Tech. Corp.* v. *Parametric Tech. Corp.*, No. 03-CV-11046-MEL, 2005 WL 6768210, at *1 (D. Mass. Oct. 19, 2005).

Daubert assigns the trial court the role of "gatekeeper," which requires courts to make an independent determination that "any and all scientific testimony or evidence admitted [at trial] is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm*., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Daubert court concluded, moreover, that Rule 702 displaced the "general acceptance" test of *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), under which "the admissibility of an expert opinion or technique turned on its 'general acceptance' vel non within the scientific community." Ruiz-Troche, 161 F.3d at 80. Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule, therefore, "necessitates an inquiry into the methodology and the basis for an expert's opinion." *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012). Reliability is a flexible inquiry, allowing for consideration of factors like whether the expert's methodology has been objectively tested; whether it has been subjected to peer review and publication; the technique's known or potential error rate; and whether the expert's technique has been generally accepted within the relevant industry. *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 14 (1st Cir. 2011) (citing *Daubert,* 509 U.S. at 593-94, 113 S.Ct. 2786). At the end of the day, however, "[t]he focus ... must be solely on principles and methodology[.]" *Daubert,* 509 U.S. at 594-95, 113 S.Ct. 2786.

In this case, Defendants' methodology to assess Plaintiff lacks any reputable scientific core and should therefore be excluded.

V.    **CONCLUSION**

Therefore, in light of the foregoing, the Plaintiff respectfully requests that the testimony of Dr. Litmanovich be excluded.

                                  Respectfully submitted,

                                  CHARU DESAI

                                By her attorneys,

                                *s/Timothy M. Kolman*

                                Timothy M. Kolman, Esq., Pro Hac Vice
                                Kolman Law, P.C.
                                414 Hulmeville Ave
                                Penndel, PA 19047
                                Phone: 215-750-3134
                                Fax: 215-750-3138
                                TKolman@KolmanLaw.com

                                And;

                                Timothy D. Rodden, Jr., Esq., BBO # 691228
                                John B. Koury, Esq., BBO # 694088
                                Joseph F. Comenzo, Esq., BBO # 667624
                                Upper Charles Law Group, LLC
                                81 Hartwell Avenue, Suite 101
                                Lexington, MA 02421
                                Phone: 617-600-7170
                                Fax: 781-444-2461
                                trodden@uclawgroup.com
                                jkoury@uclawgroup.com
                                jcomenzo@uclawgroup.com

Dated: November 21, 2022

CERTIFICATE OF SERVICE

      I, Timothy M. Kolman, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this day.

*/s/ Timothy M. Kolman*
Timothy M. Kolman, Esquire

Dated: November 21, 2022