# EXHIBIT B

61. The CT studies selected for inclusion in the review were thoracic/chest studies, but the studies were not limited to those read by radiologists specializing in chest imaging. Eighteen out of the 25 control group studies were read by radiologists who did not specialize in chest imaging.

62. I selected Diana Litmanovich, M.D., to conduct the independent review. Dr. Litmanovich is a thoracic radiologist at Beth Israel Deaconess Medical Center and is a faculty member of Harvard Medical School. Dr. Litmanovich is not employed by the Medical Group or affiliated with the UMass Memorial Health system. I believe Dr. Litmanovich to be an expert in the interpretation of thoracic CT images.

63. I requested that Dr. Litmanovich review the images for each CT study and the corresponding report and provide her opinion whether she agreed or disagreed with the interpretation, and if she disagreed, to indicate whether it was a minor or major disagreement and whether or not the disagreement would have an impact on patient care in her opinion.

64. Dr. Litmanovich provided me with her findings, and I un-blinded them through reference to their identifying numbers. Based on the findings, Dr. Litmanovich concluded that of the reads conducted by Dr. Desai, there were five major errors and nine errors she opined would impact patient care. Dr. Litmanovich concluded that of the reads conducted by other radiologists, there was one major error and five errors she opined would impact patient care.

65. As a result of my assessment of the results of the independent review, I determined that Dr. Desai's quality was not acceptable for the Department, and I made the decision that Dr. Desai could not continue to work in the Department in order to ensure patient safety and provide high quality services to patients.

66.     ==On March 14, 2018, I met with Dr. Desai and informed her that her employment will be terminated on March 17, 2019.==

67.     Pursuant to Dr. Desai's Employment Agreement, she was entitled to twelve months' notice prior to termination. Exhibit A, ¶ 7.2.

68.     I determined that in the time until Dr. Desai's employment ended, she would be restricted from reading CT images and would review only x-rays, due to the concerns raised regarding the quality of her CT reads from the independent review and my obligation to ensure patient safety and provide high quality services to patients.

69.     Neither I nor anyone else communicated the restriction of Dr. Desai from reading CTs throughout the Department, and this information was shared only in a discreet manner on a need-to-know basis for the purposes of scheduling and workflow for the reading of studies.

70.     On April 24, 2018, at Dr. Desai's request, I held a meeting with Dr. Desai and Vice Chair for Quality, Patient Safety and Process Improvement Steven Baccei, M.D., as well as Dr. Sarwat Hussain, a radiologist in the Department who Dr. Desai invited. At the meeting, I provided Dr. Desai with data from the independent reviewer's findings.

71.     I have made the decision to end the employment of other physicians in the Department due to performance concerns related to ability, including Ronald Garrell, M.D., separated June 23, 2017, Refky Nicola, D.O., separated May 31, 2017, and Abhijit Roychowdhury, M.D., separated December 12, 2015.

72.     An external independent review was performed of Dr. Garrell's competency prior to the decision to end his employment. In addition, I reviewed data from the quality assurance system to evaluate Dr. Garrell's performance.

73. An internal review and investigation was conducted of Dr. Nicola's performance prior to the decision to end his employment. Dr. Nicola was forty years of age at the time of his separation.

74. With respect to these physicians, I advised them that due to their performance, they would no longer be able to be employed with the Medical Group, and the physicians elected to resign in lieu of termination.

75. Stephen Tosi, M.D., was the President of UMass Memorial Medical Group, Inc., at the time of Dr. Desai's termination.

76. Following Dr. Desai's notice of termination, she was replaced in the Department by Maria Barile, M.D., who is a female.

77. In 2019, I hired a Division Chief for the Thoracic Division who is 59 years of age.

78. Presently, the Medical Group employs approximately 92 radiologists. The Department includes 24 radiologists who are age 60 years or older, and three over 70 years of age. I myself am 62 years of age.

79. During my tenure as Chair of the Department, I have hired 14 radiologists who were 60 years of age or older and two who were over 70 years of age, as well as 32 radiologists who are female.

80. I have made the decision to end the employment of eight regularly-employed radiologists as Chair (who either were terminated or elected to resign in lieu of termination), and seven were male, and seven were younger than Dr. Desai.

81. In 2016, the Medical Group conducted an internal review of the compensation of its radiologists as a part of an effort to standardize salaries to address pay inequities and increase compensation to align more closely with the market for all radiologists. The Medical Group also

engaged an outside resource to perform an external market study to assist in establishing a standardized compensation structure.

82. As a result of these efforts, the Medical Group was able to provide additional funds to the Radiology Department, and a large percentage of radiologists' salaries were increased.

83. Based on the evaluation, the Medical Group implemented a new, standardized salary structure for radiologists effective March 1, 2017. Under this pay structure, the Department set a base salary, with additional designated sums based on academic rank as well as leadership and administrative positions which carried with them additional job duties and responsibilities. A copy of my correspondence to diagnostic radiologists informing them of this new structure is attached as **Exhibit F**.

84. As a result of the implementation of the new compensation structure, Dr. Desai received a large increase in pay, from $302,575 to $340,000 per year. Her compensation was set based on the base salary for a diagnostic radiologist of $330,000, plus an additional $10,000 due to her rank as Associate Professor. A copy of my correspondence to Dr. Desai informing her of her new salary is attached as **Exhibit G**.

85. Dr. Desai did not hold any leadership roles or perform additional duties for the Department.

86. As a result of the new pay structure, every single full-time female radiologist who was employed as of March 1, 2017, whose pay was not already at the standard, received a pay increase, and they were paid in accordance with the standardized pay scale.

87. Dr. Desai was a diagnostic radiologist, and Dr. Aaron Harman is an interventional radiologist. Diagnostic radiology involves reviewing images of the body and making

interpretations, and interventional radiology is image-guided surgery. Interventional radiologists perform invasive procedures on patients, and the radiology component relates to the use of imaging such as fluoroscopy, CT, ultrasound, and MRI to guide their procedures. Interventional Radiologists also have completed additional training through an ACGME accredited Interventional Radiology fellowship and some (including Dr. Harman) have also taken an additional board-certifying examination (Certificate of Added Qualification) in Interventional Radiology.

88.     Interventional radiologists generally earn substantially more than diagnostic radiologists. Thus, the Department has implemented a different pay scale for interventional radiology than diagnostic radiology. Under this structure, Dr. Harman's salary was $365,000 per year, which is the base salary for an interventional radiologist.

89.     Dr. Eric Schmidlin specialized in chest imaging and worked within the Chest Division with the same duties as Dr. Desai. Dr. Schmidlin did not receive higher compensation than Dr. Desai. His starting salary in 2012 was $300,000 per year, less than Dr. Desai's salary, and at the time of his separation from regular employment, he earned $294,000 per year, less than Dr. Desai's salary. Dr. Schmidlin left regular employment with the Medical Group on June 28, 2016, and he continued to work on a per diem, hourly basis. His hourly rate since has been $162.50, and Dr. Desai's rate when calculated on an hourly basis is $163.46.

90.     Byron Chen, M.D., and Hemang Kotecha, M.D., have always earned less than Dr. Desai; each with a salary of $330,000 per year at the time of Dr. Desai's separation. Both worked in different divisions than Dr. Desai.

91.     Dr. Karin Dill's base salary was the same as Dr. Desai's. However, Dr. Dill served as a Division Chief, and was paid an additional sum for those duties and responsibilities.