UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br>*Plaintiff*,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL GROUP, INC., et al.,<br>*Defendants*. | CIVIL ACTION NO. 4:19-cv-10520-TSH<br><br>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF ELLA A. KAZEROONI, M.D. |

NOW COMES Plaintiff Charu Desai (also referred to as "Plaintiff" or "Dr. Desai"), by and through her attorneys, Kolman Law, P.C., and the Upper Charles Legal Group, and files this Memorandum of Law in support of her motion *in limine* to exclude the testimony of Ella A. Kazerooni, M.D.

## I. INTRODUCTION

Plaintiff requests this Court grant her motion *in limine* to exclude the testimony of Ella A. Kazerooni, M.D. ("Dr. Kazerooni"). Defendants seek to introduce Dr. Kazerooni's expert testimony for an improper purpose: to bolster the expert opinions of Defendants' fact witness Diana Litmanovich, M.D. ("Dr. Litmanovich") and the credibility of its fact witness Max Rosen, M.D. ("Dr. Rosen"). To that end, Defendants should have designated Dr. Litmanovich as an expert witness. As Defendants have repeatedly acknowledged, Defendants consulted and/or relied upon Dr. Litmanovich's "expert opinion" in deciding to terminate Plaintiff's employment. However, Defendants did not in any way consult or rely upon Dr. Kazerooni in deciding to terminate Plaintiff's employment, and thus Dr. Kazerooni's testimony is irrelevant. Furthermore, Defendants should not be allowed to use Dr. Litmanovich and Dr. Kazerooni for

1

the same purpose—to offer expert testimony as to the quality of Plaintiff's CT scan interpretations—as this would be cumulative, superfluous, misleading and confusing to the jury, and prejudicial to the Plaintiff to the extent she cannot use a second expert to bolster the expert testimony of Dr. James Gruden.

## II. RELEVANT FACTUAL BACKGROUND

### a. History of the Case

This Motion arises from Plaintiff's age discrimination case against the University of Massachusetts Memorial Medical Group (the "Medical Group") and her claim of intentional interference with advantageous relations against Dr. Rosen.

The matter is scheduled for trial, starting with the selection of the jury on December 2, 2022. Critical to the case is an alleged 'focused review' of 25 of Plaintiff's CT scans. On August 22, 2017, Dr. Rosen contacted Dr. Litmanovich, a chest radiologist unaffiliated with the Medical Group, whom Dr. Rosen understood to be an expert in radiological interpretations, to conduct an independent review. Dr. Rosen asked Dr. Litmanovich whether she agreed or disagreed with each interpretation in the group of fifty anonymized studies and if she disagreed, whether it was a minor or major disagreement and whether in her opinion the disagreement would have an impact on patient care.

Dr. Litmanovich sent Dr. Rosen her findings on December 25, 2017. Among Dr. Desai's interpretations, Dr. Litmanovich identified five major errors and nine errors impacting patient care. Among the interpretations of other radiologists, Dr. Litmanovich identified one major error and five errors impacting patient care. Dr. Litmanovich noted that, overall, she did not find any life-threatening misses or misinterpretations, and that the technical quality of the studies was "very good."

On March 14, 2018, Dr. Rosen met with Dr. Desai to tell her that her employment would be terminated on March 17, 2019. At a later meeting, Dr. Rosen provided Dr. Desai with a summary of Dr. Litmanovich's independent review. Dr. Rosen represented that his decision to terminate Dr. Desai's employment was based on his assessment of Dr. Litmanovich's independent review.

### b. Proffered Opinions of Dr. Kazerooni

Throughout this litigation, Defendants have repeatedly referred to Dr. Litmanovich as an expert in the interpretation of thoracic CT images. See e.g., Paragraph ¶62 of Affidavit of Dr. Max Rosen, M.D., M.P.H., dated December 15, 2021, attached and incorporated herein as Exhibit A. In his deposition on May 7, 2021, Dr. Rosen further referenced the medical opinion of Dr. Litmanovich. See Exhibit B, Transcript Excerpts, Deposition of Max Rosen, M.D. ("Rosen Dep."), p. 158:20-159:21. Dr. Rosen admits that he based his decision to terminate Dr. Desai's employment significantly upon Dr. Litmanovich's independent, expert review. See Rosen Dep., pp. 339:17-340:14.

As part of this litigation, Dr. Desai hired an expert in radiology to review the fifty interpretations reviewed by Dr. Litmanovich. That expert, Dr. James Gruden, found that Dr. Desai made no significant errors, that her interpretations were "well within the expected standard of care at an urban teaching hospital," and that Dr. Litmanovich's criticism was "subjective."

In response, Defendants hired a (second) expert in radiology to review: the 50 CT scan interpretations; Dr. Litmanovich's expert opinions of those interpretations; and, Dr. Gruden's expert opinions. That expert, Dr. Kazerooni, testified in her deposition that she performed an initial blinded review on the 50 CT scan exams and interpretations, and formed an opinion about interpretation error and impact on care. See Exhibit C, Transcripts Excerpts, Deposition of Ella

A. Kazerooni, M.D. ("Kazerooni Dep."), p. 84:12-16. Dr. Kazerooni further testified that, for 25 of the CT scans, she formed an opinion as to whether she agreed with the reviewing radiologist's findings and whether or not errors may have impacted patient care. See Kazerooni Dep., p. 84:17-20. This is the same expert review Dr. Litmanovich performed. Dr. Kazerooni also testified in her deposition that she reviewed certain CT scan reviews Dr. Litmanovich performed. See Kazerooni Dep., p. 85:12-23. In summary, Dr. Kazerooni both agreed with and disagreed with Dr. Litmanovich's review of Dr. Desai's interpretations, see e.g., Kazerooni Dep., pp. 105:19-106:14, 133:20-134:3, 140:6-18, 142:8-12, 142:13-17, 143:16-144:2, 144:12-22, 144:23-145:15; and, both agreed with and disagreed with Dr. Gruden's review of Dr. Desai's interpretations and Dr. Litmanovich's review of those interpretations, see e.g., Kazerooni Dep., pp. 102:19-22, 105:19-106:14, 133:1-5, 134:4-8, 147:1-5, 147:6-9.

On November 2, 2022, Defendants submitted their pretrial disclosures. These are attached and incorporated herein as Exhibit D. On page 1, marked "Witnesses," Defendants enumerate the Witnesses they expect "to present at trial". Fact witness number 3 is Diana Litmanovich, M.D. See Exhibit D. Expert witness 9 is Ella Kazerooni, M.D. See id.

### III.     LEGAL ARGUMENT
#### a. Standard for Admission of Expert Testimony

A party may offer an expert witness to testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

4

Federal Rule of Evidence 702 imposes on the trial judge a special "gatekeeping obligation" to ensure that expert testimony is relevant and reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). "[T]he trial court has substantial discretion in determining the admissibility of expert testimony." Coleman v. De Minico, 730 F.2d 42, 45 (1st Cir. 1984).

Expert testimony must be relevant in order to be admitted at trial. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. For purposes of admitting expert testimony, relevance relates to whether there is a sufficient "fit" between the expert's opinion and the facts the jury is being asked to consider. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993). Even if an expert is qualified and follows appropriately reliable methodologies, if the opinion does not sufficiently bear on the issue at hand, it will be deemed irrelevant and inadmissible. See id.; United States v. Mehanna, 735 F.3d 32, 66 (1st Cir. 2014) (admitting the expert's testimony would "have been akin to inserting a square peg into a round hole"), cert. denied, 135 S.Ct. 49 (2014).

Federal Rule of Evidence 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See e.g., Old Chief v. U.S., 519 U.S. 172, 180–92, 117 S. Ct. 644, 136 L. Ed. 2d 574, 45 Fed. R. Evid. Serv. 835 (1997); U.S. v. Aguilar-Aranceta, 58 F.3d 796, 800–02, 42 Fed. R. Evid. Serv. 843 (1st Cir. 1995).

For example, courts within the First Circuit have disallowed an additional witness from taking the stand "solely for the purpose of further crediting one expert over another [as this] …intrude[d] on the role of the jury." Perez-Garcia v. Puerto Rico Ports Auth., 873 F. Supp. 2d

431, 435 (D.P.R. 2012), citing U.S. v. Pires, 642 F.3d 1, 12 (1st Cir. 2011) ("because of an expert's stature qua expert, jurors may assign more weight to expert testimony than it deserves."). As the First Circuit has held in the criminal context, a party may not use an expert to "bolster the credibility of [its] fact witnesses by mirroring their version of events." U.S. ex rel. Dyer v. Raytheon Co., No. CIV.A. 08-10341-DPW, 2013 WL 5348571, at *12 (D. Mass. 2013), quoting United States v. Montas, 41 F.3d 775, 784 n. 4 (1st Cir. 1994.). "This impermissibly impinges on the core function of the jury as finders of fact." U.S. ex rel. Dyer, at *12.

### b. Improper Use of Dr. Kazerooni as an Expert Witness

Defendants have disclosed that they intend to offer as expert testimony Dr. Kazerooni's opinions of the 25 CT scan interpretations Plaintiff performed and the 25 CT scan interpretations other radiologists performed. See Kazerooni Dep., p. 85:4. Defendants have also disclosed that they intend to offer as expert testimony Dr. Kazerooni's opinions of certain CT scan reviews Dr. Litmanovich performed. See Kazerooni Dep., p. 85:12-23.

The Defendants should not be allowed to use Dr. Kazerooni as an expert witness to support their defense. Defendants never consulted or relied upon Dr. Kazerooni's expert opinion in deciding to terminate Dr. Desai's employment. Rather, Dr. Rosen consulted and relied upon Dr. Litmanovich's expert opinion in deciding to terminate Dr. Desai's employment. See Rosen Dep., pp. 339:17-340:14. For purposes of admitting expert testimony, relevance relates to whether there is a sufficient "fit" between the expert's opinion and the facts the jury is being asked to consider. See Daubert, 509 U.S. at 591. Here, the jury will be asked to consider the reliability of Dr. Litmanovich's independent, expert review, and Dr. Rosen's decision to terminate Dr. Desai's employment based on Dr. Litmanovich's expert review. On these issues, the jury will glean minimal to no benefit from Dr. Kazerooni's expert opinion. See id. (Even if an expert is qualified and follows appropriately reliable methodologies, if the opinion does not

sufficiently bear on the issue at hand, it will be deemed irrelevant and inadmissible). Defendants should have designated Dr. Litmanovich as the *relevant*, expert witness.

To the extent Defendants intend to use Dr. Kazerooni's expert testimony to bolster Dr. Litmanovich's credibility, or Dr. Rosen's credibility, this is an improper use of an expert. Courts within the First Circuit have routinely disallowed an additional expert from taking the stand "solely for the purpose of further crediting one expert over another [as this] …intrude[d] on the role of the jury." Perez-Garcia, 873 F. Supp. 2d at 435, citing Pires, 642 F.3d at 12. Defendants only hired Dr. Kazerooni in response to Plaintiff's retention of her own expert witness (Dr. Gruden) and to rehabilitate Dr. Litmanovich's credibility and Dr. Rosen's reliance on those opinions. Essentially, Defendants intend to use Dr. Kazerooni to perform a similar independent, expert review Dr. Litmanovich allegedly performed. However, Dr. Kazerooni testified that she agreed *and disagreed* with Dr. Litmanovich's assessment. See e.g., Kazerooni Dep., pp. 105:19-106:14, 133:20-134:3, 140:6-18, 142:8-12, 142:13-17, 143:16-144:2, 144:12-22, 144:23-145:15. Dr. Kazerooni also testified that she agreed *and disagreed* with Dr. Gruden's assessment. See e.g., Kazerooni Dep., pp. 102:19-22, 105:19-106:14, 133:1-5, 134:4-8, 147:1-5, 147:6-9.

The Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury…or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also Old Chief, 519 U.S. at 180-92; Aguilar-Aranceta, 58 F.3d at 800-02. Any probative value in Dr. Kazerooni's testimony would be substantially outweighed by the presentation of cumulative evidence concerning the reliability of Dr. Litmanovich's independent, expert review; the unfair prejudice to Plaintiff resulting from Defendants' use of two *de facto* expert witnesses in support of their defense; and, the danger that testimony from three *de facto* expert witnesses would

confuse and/or mislead the jury.

## IV.     CONCLUSION

Therefore, in light of the foregoing, the Plaintiff respectfully requests that the testimony of Dr. Kazerooni be excluded.

Respectfully submitted,
CHARU DESAI
By her attorneys,


/s/ Timothy D. Rodden Jr.
Timothy D. Rodden, Jr., Esq., BBO # 691228
John B. Koury, Esq., BBO # 694088
Joseph F. Comenzo, Esq., BBO # 667624
Upper Charles Law Group, LLC
81 Hartwell Avenue, Suite 101
Lexington, MA 02421
Phone: 617-600-7170
Fax: 781-444-2461
trodden@uclawgroup.com
jkoury@uclawgroup.com
jcomenzo@uclawgroup.com

And,

Timothy M. Kolman, Esq., Pro Hac Vice
Kolman Law, P.C.

Dated: November 21, 2022

**CERTIFICATION OF CONFERENCE**

Pursuant to D. Mass. Local Rule 7.1(a)(2), prior to the filing of this Motion, on November 20, 2022, counsel for Plaintiff, Timothy M. Kolman and Timothy D. Rodden, Jr., conferred with counsel for Defendants, Robert L. Kilroy and Reid M. Wakefield, in a good faith attempt to resolve or narrow the issues raised herein, and no agreement could be reached.

/s/ Timothy D. Rodden Jr.

Timothy D. Rodden Jr.