# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br>    *Plaintiff,*<br><br>    v.<br><br>UMASS MEMORIAL MEDICAL GROUP,<br>INC., et al.,<br>    *Defendants.* | CIVIL ACTION NO. 4:19-cv-10520-TSH<br><br><br>**PLAINTIFF'S VOIR DIRE<br>QUESTIONS** |

Plaintiff Charu Desai, (also referred to as "Plaintiff" or "Desai"), by her attorneys, Kolman Law, P.C., and the Upper Charles Legal Group respectfully request that the Court include the following Case Summary and questions in its examination of prospective jurors, pursuant to Rule 47(a) of the Federal Rules of Civil Procedure.

## **Case Summary**

Plaintiff Charu Desai ("Dr. Desai") brings this action against defendants University of Massachusetts Memorial Medical Group (the "Medical Group"), and Max Rosen ("Dr. Rosen. Dr. Desai alleges that she was discriminated against based on her age, gender, and disability.

Dr. Desai was born in 1950 and graduated from medical school in 1972. She completed her residency and fellowship at the Medical School, and then entered private practice. In 1992, she returned to University of Massachusetts as a physician specializing in chest radiology at the Medical Group and an assistant (later associate) professor at the Medical Group.

Dr. Desai specialized in chest radiology, and at University of Massachusetts, she reviewed and interpreted radiological images for patients at multiple hospitals, including the Medical Group campuses and Marlborough Hospital.  She also regularly taught residents.  After twenty-seven years at University of Massachusetts, Dr. Desai's employment was terminated on March 17, 2019. Dr. Rosen is the Chair of the Department of Radiology (the "Department") at the University of Massachusetts and has been in that position since 2012.  As Chair, he supervises and manages all radiologists employed by the Medical Group.  Dr. Dill became Division Chief of the Department's Chest Division in February 2016.[2]  Dr. Stephen Tosi was the President of the Medical Group at the time of Dr. Desai's termination.

In 2000, Dr. Desai was diagnosed with a heart condition known as tachy-brady syndrome, which causes her to experience unpredictable spells of weakness and fatigue, typically lasting a few minutes.  The spells flare when she is overexerted.  In 2001, Dr. Desai had a pacemaker implanted, but it did not resolve her symptoms.  Beginning in 2015, Dr. Desai requested intermittent leave from work under the FLMA and was approved to take up to two days off from work every two months.

In the years leading to her termination, Dr. Desai requested three changes to her work conditions.  First, she requested that she be allotted "academic time," which, according to Department policy, allows physicians to take time away from clinical duties to perform "academic responsibilities," such as teaching and conference preparation, writing papers or texts, completing research projects, attending institutional and departmental committees, attending conferences, and serving on committees of local, regional, national, or international organizations.  Second, she requested that she be exempt from being on "call."  Radiologists in the Chest Division generally were required to be on call ten weekends per year but qualified "senior" radiologists were exempt.

Third, Dr. Desai requested that she be allowed to use a home workstation, which the Department granted to specific radiologists for remote work. Each of these requests was denied.

Dr. Desai was highly regarded among many of her colleagues. In letters of recommendation written over the years, including up until and past the date of her termination, colleagues described Dr. Desai as a "superb," "excellent," and "careful and observant" radiologist with "excellent command of the intricacies of interpretation in chest CT scans." Indeed, none of Dr. Desai's annual faculty performance reviews reflect any deficiencies in her performance.

Dr. Dill, however, complained to Dr. Rosen about the quality of Dr. Desai's CT interpretations and advised him that others had raised concerns. Dr. Dill told Dr. Rosen that treating physicians would ask her to re-read or review studies Dr. Desai had interpreted. On January 31, 2017, Dr. Rosen met with representatives from Marlborough Hospital to address, among other things, the quality of chest imaging at Marlborough Hospital. At this meeting, Dr. Kimberly Robinson, a treating pulmonologist at the hospital, also raised concerns regarding the quality of Dr. Desai's CT interpretations. Dr. Robinson told Dr. Rosen that she never believed Dr. Desai's reports and could not rely on them.

Dr. Rosen decided to conduct a focused review of Dr. Desai's CT interpretations. On February 1, 2017, Dr. Rosen asked Department staff to randomly select twenty-five of Dr. Desai's chest CT interpretations and, as a control group, twenty-five chest CT interpretations from other radiologists. On August 22, 2017, Dr. Rosen contacted Dr. Diana Litmanovich, a chest radiologist unaffiliated with the Medical Group, whom Dr. Rosen understood to be an expert in radiological interpretations, to conduct an independent review. Dr. Rosen asked Dr. Litmanovich whether she agreed or disagreed with each interpretation in the group of fifty

anonymized studies, and if she disagreed, whether it was a minor or major disagreement and whether in her opinion the disagreement would have an impact on patient care.

On October 3, 2017 (before Dr. Litmanovich's review was complete), Dr. Rosen sent an email to several executives at the Medical Group, including Dr. Tosi, stating that he had found a "great" chest radiologist who was finishing his fellowship in June 2018. Dr. Rosen stated that he wanted to make the radiologist a job offer but that he had "not formally resolved Dr. Desai's employment - planned for 9/30/18." Dr. Rosen stated that "[i]f for some [r]eason Dr. Desai is still employed after 9/30/18," he would make other staffing adjustments to accommodate the new hire. Dr. Rosen further stated that he had been looking for a fellowship trained chest radiologist for three years and that if Dr. Desai left without a replacement, he would not be able to provide adequate clinical service in the Chest Division.

One of the executives responded with concern around the finances of having a potential three-month overlap between the end of Dr. Desai's employment and the start of the new radiologist's employment. Dr. Rosen responded with potential contingencies for mitigating the financial burden, such as adjusting contracts of other radiologists or asking the new radiologist to start later. Dr. Tosi approved the offer. That same day, Dr. Rosen sent an email to Kathleen Leblanc in Human Resources, asking to speak about Dr. Desai, stating, "I've been thinking a lot about how to do this - and want to run some things past you."

A week later, Dr. Joseph Ferrucci, a radiologist working per diem for the Department who had previously served as Chair of the Department, sent an email to Dr. Rosen stating that he had spoken with Dr. Desai and "told her that you wanted to be accommodating especially in recognition of her years of service[,] [b]ut that you also had an obligation as Chair to think about recruiting younger staff for service needs." Dr. Ferrucci stated that he had indicated to Dr. Desai

that Dr. Rosen was considering offering her a twelve-month contract or a per diem arrangement. Dr. Ferrucci ended the email by stating, "I think you can take the next step in the discussions. Good luck." Dr. Rosen responded, "Thanks."

Later that day, Leblanc sent an email to Dr. Rosen to follow up on a meeting from the day before. Leblanc stated, "all options have legal ramifications and we should discuss all options together." Dr. Rosen agreed to meet and stated, "Dr. Ferrucci used a conversation he [had] with Dr. Desai to potentially open a window for us."

Dr. Litmanovich sent Dr. Rosen her findings on December 25, 2017. Among Dr. Desai's interpretations, Dr. Litmanovich identified five major errors and nine errors impacting patient care. Among the interpretations of other radiologists, Dr. Litmanovich identified one major error and five errors impacting patient care. Dr. Litmanovich noted that, overall, she did not find any life-threatening misses or misinterpretations, and that the technical quality of the studies was "very good."

On February 16, 2018, Dr. Dill sent Dr. Rosen an email with the subject line, "confidential review," stating, "What I have so far is concerning. There are two signif[icant] problems caught so far upon my limited review." In response, Dr. Rosen asked Dr. Dill to "review the remainder" and send him a summary.

According to Dr. Rosen, the practice of radiology can involve a degree of probability and subjectivity. As part of this litigation, Dr. Desai hired an expert in radiology to review the fifty interpretations reviewed by Dr. Litmanovich. That expert, Dr. James Gruden, found that Dr. Desai made no significant errors, that her interpretations were "well within the expected standard of care at an urban teaching hospital," and that Dr. Litmanovich's criticism "was subjective."

On March 14, 2018, Dr. Rosen met with Dr. Desai to tell her that her employment would

be terminated on March 17, 2019. Pursuant to her employment agreement with the Medical Group, Dr. Desai was entitled to twelve months' notice prior to termination. The agreement also permitted immediate termination "for cause," such as "material negligence or misconduct (other than by reason of disability or approved leave) in the performance of duties." Dr. Desai's termination was without cause. Dr. Rosen did not tell Dr. Desai that she could resign in lieu of termination, an option he had expressly given to other physicians with performance issues. At a later meeting, Dr. Rosen provided Dr. Desai with a summary of Dr. Litmanovich's independent review. Dr. Rosen represents that his decision to terminate Dr. Desai's employment was based on his assessment of Dr. Litmanovich's independent review.

On an "employee separation form" signed by Dr. Rosen on November 30, 2018, Dr. Rosen listed the reason for Dr. Desai's termination as "retirement," rather than selecting an option on the form for "performance issues." Dr. Rosen also selected that he would "maybe" re-employ Dr. Desai. Dr. Desai's employment with the Medical Group formally ended on March 17, 2019. This suit followed.

On the basis of this brief description, is there any reason why any of you would be unable to sit as jurors and decide this case only on the basis of the evidence that you hear and the law as the Court instructs you?

**Jurors' Familiarity with the Parties**

        **A.**      **Plaintiff**

        2.      Do any of you know the Plaintiff, Doctor Charu Desai, or any of her family members?

3.      Plaintiff was employed by the University of Massachusetts Medical Group. Do any of you know or have known employees of the University of Massachusetts Medical Group? Have any of you had any personal or business dealings with the University of Massachusetts Medical Group Union? Are any of you or your immediate family members employed by the University of Massachusetts Medical Group? If so, would that fact prevent you from reaching an unbiased verdict based only on the facts you would hear in this trial?

**B.      Defendants UMASS Medical Group, and Max Rosen, M.D.**

4.      Defendants are UMass Memorial Medical Group and Max Rosen, M.D.. Have you, any family member or any personal friend ever worked for UMass Memorial Medical Group or its predecessors? If so, when and in what capacity did you (or they) perform work?

5.      Events, in this case, are alleged to have occurred at the UMass Memorial Medical Group, Inc., University of Massachusetts Medical Center, University of Massachusetts Medical School, and Marlborough Hospital. Have you, any family member, or any personal friend ever worked at any of these institutions? If so, when and in what capacity did you (or they) perform work?

6.      Have you, any family member, or any personal friend ever received medical treatment at any of these institutions or at any of its locations or facilities, including inpatient or outpatient facilities? If so, were you, any family member, or any personal friend satisfied or dissatisfied with the treatment received at any of its locations or facilities, including inpatient or outpatient facilities?

7.     Have you, any family member, or any personal friend ever had a negative experience, been dissatisfied or unhappy with the treatment you received while a patient in any hospital?

8.     Have you or any family member ever chosen to be or not to be treated at or be a patient at UMass Memorial Medical Group, Inc., University of Massachusetts Medical Center, University of Massachusetts Medical School, and/or its Marlborough Hospital or any of its locations or facilities, including inpatient or outpatient facilities?  If so, for what reason?

9.     Have you or any family member ever had an x-ray or an MRI at UMass Memorial Medical Group, Inc., University of Massachusetts Medical Group, University of Massachusetts Medical School, and/or Marlborough Hospital? If so, were you concerned about the quality of the Health Care you received in any of these facilities?

10.     Do you, any family member, or any personal friend believe that you, or they, have ever been injured or hurt due to the conduct of a hospital, physician, or support staff? Do you or any family members dislike or have any reason to distrust hospitals, physicians, or the support staff, generally?

11.     Do you have an opinion or feelings at this time, either positive or negative, about UMass Memorial Medical Group, Inc., University of Massachusetts Medical Group, University of Massachusetts Medical School, and/or Marlborough Hospital, Inc., or any of its locations or facilities, including inpatient or outpatient facilities?

12.     UMass Memorial Medical Group, Inc., University of Massachusetts Medical Center, University of Massachusetts Medical School, and Marlborough Hospital., are occasionally in the news, either on television or in the newspaper. Have you read any newspaper articles or heard any news reports about these institutions in the last three years? If

so, what have you read or heard, and would it influence you in this proceeding?

13.     Have you or any member of your family ever worked in a hospital, physician's office, or for any health care provider? If so, in what capacity did you (or they) work? If you no longer work there, why did you leave? Do you or your family member's past employment in a hospital setting, physician's office, or for any health care provider prejudice you towards or against either party in this case?

14.     Other than medical treatment or employment, have you, any family member, or any personal friend ever had any personal or business dealings with the UMass Memorial Medical Group, Inc.?  If so, what were your or their dealings?

15.     If any answer with respect to UMass Memorial Medical Group, Inc., University of Massachusetts Medical Group, University of Massachusetts Medical School, and Marlborough Hospital has been in the affirmative, would that fact prevent you from reaching an unbiased verdict based only on the facts that you would hear in this trial?

## Jurors' Familiarity With Counsel

16.    Let me introduce the attorneys to you.

a.     Timothy M. Kolman of Kolman Law, P.C. and Daryl Abbas, Joseph Comenzo, Timothy Fallon, John Koury, and Timothy Rodden, from the Upper Charles Law Group, are representing the Plaintiff.

b.     Robert L. Kilroy, and Reid M. Wakefield, of Mirick, O'Connell, DeMallie & Lougee, LLP, represent Defendants, UMass Memorial Medical Group., and Max Rosen M.D.

17.    Do any of you know any of the attorneys or law firms in this case?

18.     Do any of you know anyone who works for, has worked for, or has had dealings with any of the attorneys or law firms I just mentioned?

**Jurors' Familiarity With Witnesses**

19.     I am going to read a list of names of people who may be called as witnesses in this case. We need to learn from you if you know any of them. Please raise your hand if you think you know anyone on this list. The mere fact that I read the name to you does not necessarily mean that the person will actually be called as a witness. That decision is for the attorneys.

**LIST OF WITNESSES**

1.     Max Rosen, M.D.

2.     Karin Dill, M.D.

3.     Diana Litmanovich, M.D.

4.     Mona Korgaonkar, M.D.

5.     Joseph Ferrucci, M.D.

6.     Stephen Tosi, M.D

7.     Ella Kazerooni, M.D.

8.     Jeffrey R.Gruden MD

9.     Charu Desai M.D.

10.    Michael Morrison PhD

11.    Pogos Vaskanian M.D.

12.    Karl Fabian L Uy M.D.

13.    John Maklis M.D.

20.    As to any juror indicating that they know any witness:

   a.    Who do you know?

   b.    How do you know that person?

   c.    Would your acquaintance with/relationship to any of these witnesses affect any decision you may be required to make as a juror? If yes, how would this affect your decisions as a juror?

   d.    Would you be more likely to believe any of these witnesses, or would you assign more or less weight to anything that they might say because of your relationship?

21.    Although they may not be witnesses, you may hear other names during the course of this trial. These may include:



Do you know any of them?

**Jurors' Experience With Discrimination and Retaliation Claims**

18.     Have you, a family member or a close friend ever had any unpleasant experiences with an employer, including a job loss, layoff, termination, or denial of promotion?  If so, please describe.

19.     Have you, a family member, or a close friend ever been treated unfairly by an employer?  If so, on what did you or they base the feelings of unfair treatment?

20.     Have you, any member of your family, or close personal friend ever believed that you or they have been discriminated against or retaliated against by your or their employer in violation of law?  If so:

     a.     On what did you, or they, base the claim of discrimination, retaliation, or unlawful treatment?

     b.     Was a grievance or complaint filed with the employer?

     c.     Was a charge filed with any state or local government agency?

     d.     Was the complaint/charge resolved favorably to the individual?

     e.     Was a lawsuit ever filed in state or federal court?  If so:

          (1)     Did the lawsuit go to trial?

          (2)     Was the case tried before a jury?

(3)      Was the case resolved favorably for the plaintiff?

(4)      How did you feel about the judicial process after the lawsuit was settled or was determined by the court/jury?

21.    Do you believe an employee has the right to sue an employer for illegal age discrimination?

22.    Could you find in favor of Plaintiff if she meets her burden of proof?

**Jurors' Experience with the Legal System**

23.    Have you previously served as a member of a jury, whether a petit jury or grand jury?

a.    If so, when and in which court?

b.    What was the case about?

c.    Did you reach a verdict?

d.    Was your verdict for the plaintiff or defendant?

e.    Would the fact that you previously served on a jury prevent you from rendering a fair and impartial verdict according to the evidence and instructions of the Court?

f.      Has any member of your immediate family or a close personal friend told you about their service on a jury? If so, have they said anything that will influence you if you are picked on this jury?  Has any of those persons reported an unpleasant or unfavorable experience?

24.     Have you or any member of your immediate family, including your spouse, children, their spouses or children or any other close relative, or any personal or family friend, ever been involved in a legal claim or case for money damages in any role, including an employment discrimination case?   If so:

a.      What type of case was it?

b.      Were you the person suing or the person being sued?

c.      Was the case before a judge or jury?

d.      Who was the other party in the lawsuit?

e.      How did the court/jury rule?

f.      How did the handling of your case make you feel about the judicial process in general?

g.      When did this happen?

25.     Do you believe a case must have merit if it gets to trial?

26.     Sometimes, a natural reaction is to "feel sorry" for a Defendant in a lawsuit.

Could you allow any sympathy for the Defendant to affect your decision in this case?

27.     The functions of the judge and jury are very different. You, as jurors – and only you – decide the facts, that is, what happened. The judge– and only the judge – decides the law. I will tell you what the applicable law is at the close of the case, and you must apply that law to the facts as you find them, whether or not you agree with the law or think it is wise or just, or fair. You do not have any choice in that regard. Can each of you follow this instruction without any reservation?

28.     I will explain this in greater detail to you later during the trial. However, you should now be aware that, in general, the law provides that Plaintiff always has what is called the "burden of proof," that is, the Plaintiff ultimately has to convince you that Defendants' intentionally discriminated against her. Defendants' do not have to prove that they did not discriminate against Plaintiff. Do any of you have any difficulty accepting and applying that essential principle of law, whether or not you agree with it?

## UMass Memorial Medical Group's Corporate Status

29.     UMass Memorial Medical Group, Inc., is a not-for-profit corporation. As such, it presumably has greater economic resources than Plaintiff. The relative economic resources of Plaintiff and Defendants' are of no relevance whatsoever to the issues in the case, and this factor must not be allowed to enter into your decision-making. Do any of you feel that you cannot judge the evidence with complete indifference to the relative size and financial capabilities of the parties?

4866-4555-2190, v. 1

30.     Do any of you feel disposed to grant monetary damages to the Plaintiff– even if Plaintiff fails to prove her case in accordance with the rules, which I will explain to you later – simply because UMass Memorial Medical Group, Inc., is a corporation?

31.     Do any of you feel sympathetic or allied with persons who bring proceedings against corporations or other institutions in the courts or elsewhere?

32.     Would any of you be less likely to believe testimony offered by Defendants' witnesses because UMass Memorial Medical Group, Inc., is a corporation or because certain witnesses work or have worked for a corporation?

33.     Would any of you be more likely to believe the evidence offered by the Plaintiff because she is an individual or because she is suing their former employer?

## **Miscellaneous**

34.     Is there anything at all that any of you can think of that would prevent you from being entirely fair and impartial in this case?

Plaintiff respectfully reserves her right to supplement or amend the above-requested Voir Dire questions after the rulings on the motions in limine.


                                        Respectfully submitted,

                                        CHARU DESAI

                                        By her attorneys,

                                        s/Timothy M. Kolman
                                          Timothy M. Kolman, Esq., Pro Hac Vice
                                          Kolman Law, P.C.
                                          414 Hulmeville Ave
                                          Penndel, PA 19047
                                          Phone: 215-750-3134
                                          Fax: 215-750-3138
                                          TKolman@KolmanLaw.com

4866-4555-2190, v. 1

And;

Timothy D. Rodden, Jr., Esq., BBO # 691228
John B. Koury, Esq., BBO # 694088
Joseph F. Comenzo, Esq., BBO # 667624
Upper Charles Law Group, LLC
81 Hartwell Avenue, Suite 101
Lexington, MA 02421
Phone: 617-600-7170
Fax: 781-444-2461
trodden@uclawgroup.com
jkoury@uclawgroup.com
jcomenzo@uclawgroup.com

Dated: November 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the above document on all counsel of record

by the Electronic Court Filing System (ECF) of the United States District Court for the District

of Massachusetts.

*/s/ Timothy M. Kolman*
Timothy M. Kolman, Esquire

4866-4555-2190, v. 1