UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br>*Plaintiff*,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL GROUP, INC., et al.,<br>*Defendants*. | CIVIL ACTION NO. 4:19-cv-10520-TSH<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF MICHAEL MORRISON, PH.D.** |

NOW COMES Plaintiff Charu Desai (also referred to as "Plaintiff" or "Desai"), by and through her attorneys, Kolman Law, P.C., and the Upper Charles Legal Group, and files this Memorandum of Law in opposition to Defendants' motion *in limine* to exclude the testimony of Michael Morrison, Ph.D.

## I.      RELEVANT FACTUAL BACKGROUND

Plaintiff Charu Desai ("Dr. Desai") brought an action against defendants University of Massachusetts Memorial Medical Group (the "Medical Group") and Max Rosen ("Dr. Rosen.) Dr. Desai alleged that she was discriminated against based on her age, gender, and disability.

Dr. Desai was born in 1950 and graduated from medical school in 1972. She completed her residency and fellowship at the Medical School and then entered private practice. In 1992, she returned to the University of Massachusetts as a physician specializing in chest radiology at the Medical Group and an assistant (later associate) professor at the Medical Group.

Dr. Desai specialized in chest radiology, and at the University of Massachusetts, she reviewed and interpreted radiological images for patients at multiple hospitals, including the Medical Group campuses and Marlborough Hospital. She also regularly taught residents. After

1

twenty-seven years at University of Massachusetts, Dr. Desai's employment was terminated on March 17, 2019.

Dr. Desai was highly regarded among many of her colleagues. In letters of recommendation written over the years, including up until and past the date of her termination, colleagues described Dr. Desai as a "superb," "excellent," and "careful and observant" radiologist with "excellent command of the intricacies of interpretation in chest CT scans." Indeed, none of Dr. Desai's annual faculty performance reviews reflect any deficiencies in her performance.

As part of this litigation, Dr. Desai hired an expert in the field of forensic psychiatry to offer testimony "regarding his assessment of the emotional distress Dr. Desai suffered and is likely to suffer moving forward as a result of her termination from her employment at the UMass Memorial Medical Center after about 30 years." Plaintiff's Expert Witness Disclosure, at p. 3, attached hereto as Exhibit A. That expert, Pogos Voskanian, M.D. ("Dr. Voskanian"), opined "with a reasonable degree of medical certainty that Dr. Charu Desai meets criteria for diagnosis of Major Depressive Disorder, which has become chronic." Expert Report of Pogos Voskanian, M.D., at p. 16, attached hereto as Exhibit B (curriculum vitae and other documents referred to in Expert Report not included).

As part of this litigation, Dr. Desai also hired an expert in the field of economics to testify on "issues related to lost economic benefits, including salary and retirement benefits, due to her employment discrimination." Plaintiff's Expert Witness Disclosure, at p. 2, attached hereto as Exhibit C. That expert, Michael Morrison, Ph.D. ("Dr. Morrison"), found that Dr. Desai's "present value present and future losses because of her termination and the resulting major depressive disorder diagnosis range from $12,072,551.88 to $18,653,954.13." Expert Report of Michael Morrison, Ph.D., at pp. 6-7, attached hereto as Exhibit D.

## II. DEFENDANT'S ARGUMENT TO EXCLUDE THE EXPERT TESTIMONY OF MICHAEL MORRISON, PH.D.

Defendants now wish to exclude the expert testimony of Dr. Morrison on the basis that Dr. Morrison's "opinions are unequivocally related to the valuation of Plaintiff's non-economic emotional distress damages." Defendants' Motion in Limine to Exclude Expert Testimony of Michael Morrison, Ph.D., as to Emotional Distress Damages, at p. 2 (emphasis in original). Defendants contend that "Dr. Morrison's opinion related to the calculation of damages based on a reduced quality of life in a discrimination case…fails to satisfy the Daubert standard for reliability of expert testimony in any respect." Id. Defendants further contend that "Dr. Morrison's proposed testimony is an attempt to circumvent controlling law prohibiting a plaintiff from specifying a specific dollar figure for alleged pain and suffering or emotional distress damages to a jury." Id.

Lastly, Defendants argue that Dr. Morrison's theory for calculating Dr. Desai's lost economic benefits "cannot be and has not been tested, it has not been subjected to peer review or publication, it has no known rate of error, there are no standards controlling its application or operation; and it is not generally accepted in the scientific community." Id. (citations omitted).

## III. PLAINTIFF'S ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE DR. MORRISON

### A. Contrary to Defendants' representation, Dr. Morrison's Proposed Testimony Does Not Involve a Determination of Dr. Desai's Level of Emotional Distress.

Defendants argue that "Dr. Morrison's proposed testimony is an attempt to circumvent controlling law prohibiting a plaintiff from specifying a specific dollar figure for alleged pain and suffering or emotional distress damages to a jury." Id. In essence, Defendants argue that Dr. Morrison purports to testify as to the *level* of emotional distress Dr. Desai has suffered as a result

of the termination of her employment. However, Defendants acknowledge that Dr. Morrison never claimed that he "has ever met Dr. Desai, has ever interviewed her, or has any specific knowledge of her emotional distress." Id. at p. 8.

Indeed, Dr. Morrison does not intend to testify to the *level* of emotional distress Dr. Desai has suffered. Rather, Dr. Desai hired an expert in the field of forensic psychiatry, Dr. Voskanian, to offer testimony "regarding his assessment of the emotional distress Dr. Desai suffered and is likely to suffer moving forward as a result of her termination from her employment at the UMass Memorial Medical Center after about 30 years." Exhibit A, at p. 3. Dr. Voskanian further opined "with a reasonable degree of medical certainty that Dr. Charu Desai meets criteria for diagnosis of Major Depressive Disorder, which has become chronic." Exhibit B, at p. 16.

While Dr. Morrison's conclusions are based on the understanding that Dr. Desai has been diagnosed with Major Depressive Disorder, see Exhibit D, at p. 1., his proposed testimony remains focused on Dr. Desai's economic damages and, more specifically, "the economic concept of *opportunity cost*." Id. at p. 2. As Dr. Morrison explains: "If, as a result of an illegal act, a person is deprived of the opportunity to earn a living, the resulting damages are equal to the cost of restoring the injured person's lost opportunity or providing what would have reasonably been the fruits of exercising it." Id.

> **B. Defendants are not qualified to evaluate the reliability of Dr. Morrison's conclusions or methodology, and Defendants have not otherwise hired their own expert to evaluate Dr. Morrison's reliability.**

A party may offer an expert witness to testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably

4

applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Federal Rule of Evidence 702 imposes on the trial judge a special "gatekeeping obligation" to ensure that expert testimony is relevant and reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). "[T]he trial court has substantial discretion in determining the admissibility of expert testimony." Coleman v. De Minico, 730 F.2d 42, 45 (1st Cir. 1984).

The Daubert inquiry is case-specific. See Lawes v. CSA Architects and Engineers LLP, 963 F.3d 72, 99 (1st Cir. 2020). Notably, "Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct"; rather, to satisfy Daubert's objective, the proponent must show "that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." Milward v. Acuity Specialty Products Group, Inc., 639 F.3d 11, 15 (1st Cir. 2011), quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998). In General Electric Co. v. Joiner, the Supreme Court acknowledged that "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." See 522 U.S. 136, 146 (1997).

For purposes of admitting expert testimony, relevance relates to whether there is a sufficient "fit" between the expert's opinion and the facts the jury is being asked to consider. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993). Although the court must focus "on principles and methodology, not on the conclusions they generate," id. at 595, this focus "need not completely [preclude] judicial consideration of an expert's conclusions." Ruiz-Troche, 161 F.3d at 81.

Here, Defendants argue that Dr. Morrison's proposed testimony is "wholly unsupported by peer reviewed publications," see Defendant's Motion to Exclude Morrison, at p. 5; is "wholly

5

unsupported by any scientific methodology or date," id. at p. 7; and, therefore, "must be excluded as unreliable," id. at 12. However, Defendants are not qualified to make these arguments or any such determination as to the reliability of Dr. Morrison's proposed testimony.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The Defendants *could have* moved for this Court to schedule a Daubert hearing to determine the reliability of Dr. Morrison's testimony; however, they did not. Similarly, Defendants *could have* hired their own expert to attack the reliability of Dr. Morrison's proposed testimony; again, they did not. Rather, Defendants argue without any expert authority of their own that "Dr. Morrison appears to have made up the methodology in his Economic Report out of whole cloth." Defendant's Motion to Exclude Morrison, at p. 11.

That Defendants do not understand, or have never heard of, Dr. Morrison's methodology is not an appropriate basis for excluding his proposed testimony. To that end, Defendants' arguments go to "the probative weight of [Dr. Morrison's] testimony, not to its admissibility. See Martinez v. United States, 33 F.4th 20, 33 (1st Cir. 2022), citing Daubert, 509 U.S. at 596.

## IV. CONCLUSION

Therefore, in light of the foregoing, the Plaintiff respectfully requests that the expert testimony of Mr. Morrison be permitted.

                                         Respectfully submitted,
                                         CHARU DESAI
                                         By her attorneys,

                                         */s/ Timothy D. Rodden, Jr.*
                                         _____

        Timothy D. Rodden, Jr., Esq., BBO # 691228
        John B. Koury, Esq., BBO # 694088
        Joseph F. Comenzo, Esq., BBO # 667624
        Upper Charles Law Group, LLC
        81 Hartwell Avenue, Suite 101
        Lexington, MA 02421
        Phone: 617-600-7170
        Fax: 781-444-2461
        trodden@uclawgroup.com
        jkoury@uclawgroup.com
        jcomenzo@uclawgroup.com

        And;

        Timothy M. Kolman, Esq., Pro Hac Vice
        Kolman Law, P.C.
        414 Hulmeville Ave
        Penndel, PA 19047
        Phone: 215-750-3134
        Fax: 215-750-3138
        TKolman@KolmanLaw.com

Dated: November 28, 2022