UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARU DESAI,<br><br>*Plaintiff*,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL GROUP, INC., et al.,<br><br>*Defendants*. | CIVIL ACTION NO. 4:19-cv-10520-TSH<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO STATISTICAL UNRELIABILITY OF EVIDENCE IN OPENING, CLOSING AND/OR TRIAL TESTIMONY** |

NOW COMES Plaintiff Charu Desai (also referred to as "Plaintiff" or "Desai"), by and through her attorneys, Kolman Law, P.C., and the Upper Charles Legal Group, and files this Memorandum of Law in opposition to Defendants' motion *in limine* to exclude reference to statistical unreliability of evidence in opening, closing and/or trial testimony.

I.   **RELEVANT FACTUAL BACKGROUND**

Plaintiff Charu Desai ("Dr. Desai") brought an action against defendants University of Massachusetts Memorial Medical Group (the "Medical Group") and Max Rosen ("Dr. Rosen.) Dr. Desai alleged that she was discriminated against based on her age, gender, and disability.

Dr. Desai was born in 1950 and graduated from medical school in 1972. She completed her residency and fellowship at the Medical School and then entered private practice. In 1992, she returned to the University of Massachusetts as a physician specializing in chest radiology at the Medical Group and an assistant (later associate) professor at the Medical Group. Dr. Desai specialized in chest radiology, and at the University of Massachusetts, she reviewed and interpreted

1

radiological images for patients at multiple hospitals, including the Medical Group campuses and Marlborough Hospital.  She also regularly taught residents.

Dr. Rosen is the Chair of the Department of Radiology (the "Department") at the University of Massachusetts and has been in that position since 2012.  As Chair, he supervised and managed all radiologists employed by the Medical Group.  Dr. Karin Dill ("Dr. Dill") became Division Chief of the Department's Chest Division in February 2016.  Dr. Stephen Tosi was the President of the Medical Group at the time of Dr. Desai's termination.

Dr. Desai was highly regarded among many of her colleagues.  In letters of recommendation written over the years, including up until and past the date of her termination, colleagues described Dr. Desai as a "superb," "excellent," and "careful and observant" radiologist with "excellent command of the intricacies of interpretation in chest CT scans."  Indeed, none of Dr. Desai's annual faculty performance reviews reflect any deficiencies in her performance.

Dr. Dill, however, complained to Dr. Rosen about the quality of Dr. Desai's CT interpretations and advised him that others had raised concerns.  Dr. Dill told Dr. Rosen that treating physicians would ask her to re-read or review studies Dr. Desai had interpreted.  On January 31, 2017, Dr. Rosen met with representatives from Marlborough Hospital to address, among other things, the quality of chest imaging at Marlborough Hospital.  At this meeting, Dr. Kimberly Robinson, a treating pulmonologist at the hospital, also raised concerns regarding the quality of Dr. Desai's CT interpretations.  Dr. Robinson told Dr. Rosen that she never believed Dr. Desai's reports and could not rely on them.

Dr. Rosen decided to conduct a focused review of Dr. Desai's CT interpretations.  On February 1, 2017, Dr. Rosen asked Department staff to randomly select twenty-five of Dr. Desai's chest CT interpretations and, as a control group, twenty-five chest CT interpretations from other

2

radiologists. On August 22, 2017, Dr. Rosen contacted Dr. Diana Litmanovich ("Dr. Litmanovich"), a chest radiologist unaffiliated with the Medical Group, whom Dr. Rosen understood to be an expert in radiological interpretations, to conduct an independent review. Dr. Rosen asked Dr. Litmanovich whether she agreed or disagreed with each interpretation in the group of fifty anonymized studies and if she disagreed, whether it was a minor or major disagreement and whether in her opinion the disagreement would have an impact on patient care.

Dr. Litmanovich sent Dr. Rosen her findings on December 25, 2017. Among Dr. Desai's interpretations, Dr. Litmanovich identified five major errors and nine errors impacting patient care. Among the interpretations of other radiologists, Dr. Litmanovich identified one major error and five errors impacting patient care. Dr. Litmanovich noted that, overall, she did not find any life-threatening misses or misinterpretations, and that the technical quality of the studies was "very good."

On March 14, 2018, Dr. Rosen met with Dr. Desai to tell her that her employment would be terminated on March 17, 2019. At a later meeting, Dr. Rosen provided Dr. Desai with a summary of Dr. Litmanovich's independent review. Dr. Rosen represented that his decision to terminate Dr. Desai's employment was based on his assessment of Dr. Litmanovich's independent review.

As part of this litigation, Dr. Desai hired an expert in radiology, Dr. James Gruden ("Dr. Gruden"), to "offer opinions on whether Dr. Desai made significant errors; whether the other radiologists made significant errors at Marlborough Hospital; and *whether the peer review process here was fair*." Expert Report of James F. Gruden, M.D., at pg. 1 (attached hereto as "Exhibit A") (emphasis added). Dr. Gruden opined that Dr. Desai made no significant errors, that her

3

interpretations were "well within the expected standard of care at an urban teaching hospital," and that Dr. Litmanovich's criticism "was subjective."

Dr. Gruden further opined that "the apparent methodology of [Dr. Litmanovich's] review…*does not conform to any appropriate or well-known guidelines for a fair peer review process*." Id. (emphasis added). In his deposition, Dr. Gruden explained that the methodology of the peer review process was not fair as it involved a "narrow window of time, [a] limited number of cases and [did] not…control[] for the complexity of the cases between…[those] Dr. Desai read versus others" and thus was not a "representative group of cases." See Transcript Excerpts, Deposition of James F. Gruden, M.D. ("Gruden Dep."), p. 196:18-197:7 (attached hereto as "Exhibit B").

## II. DEFENDANT'S ARGUMENT TO EXCLUDE THE EXPERT TESTIMONY OF DR. JAMES R. GRUDEN

Defendants now wish to exclude reference to the statistical unreliability of evidence in opening, closing and/or trial testimony. Defendants contend that Dr. Desai "has not disclosed any expert who has been designated to proffer an opinion on statistical analysis or statistical reliability of the independent review, its methodology, or its structure." Defendants' Motion *In Limine* to Exclude Reference to Statistical Unreliability of Evidence in Opening, Closing and/or Trial Testimony ("Defendants' Motion"), at p. 2. Defendants further argue that "Dr. Gruden has not included any statement of opinion as to 'statistical reliability,' nor has he even referenced any level of statistical analysis with respect to the independent review, its structure or methodology." Id. at p. 8. Finally, Defendants argue that "Dr. Gruden does not know any information that is essential to be able to form a conclusion that the review was unfair, somehow performed improperly, or statistically unreliable." Id. at 9.

4

### III. PLAINTIFF'S ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE DR. GRUDEN

**A. Contrary to Defendants' Representation, Dr. Gruden Did Have Information Sufficient to Conclude that the Peer Review Process and its Methodology were Unfair and Targeted.**

Defendants wrongfully state that "Dr. Gruden does not know any information that is essential to be able to form a conclusion that the review was unfair, somehow performed improperly, or statistically unreliable." Id. For example, Defendants claim that Dr. Gruden "does not know which radiologists [performed each interpretation or] the number of radiologists [subjected for peer review.]" Id. However, in his deposition, Dr. Gruden testified that on July 28, 2020—nearly one year prior to the date of his Expert Report—he received an email and spreadsheet from Dr. Desai's (former) counsel listing each of the 50 CT scan interpretations and identifying the respective radiologist who performed the interpretation. See Gruden Dep., p. 48:13-49:11.

Defendants wrongfully state that Dr. Gruden "does not know when the review was performed or how long it took to perform the review." Defendants' Motion, at p. 9. However, in his deposition, Dr. Gruden testified that he understood at the time of his expert review that all 50 CT scan interpretations had been performed "over a one-month period." Gruden Dep., p. 189:12.

Dr. Gruden further testified that "a number of the discrepancies and the issues that were raised by the internal reviewer [Dr. Litmanovich]…I don't find significant." Id. at p. 195:5-8. As Dr. Gruden stated, "It's just for me being at many institutions that I've been at and the way we've done and do peer review, this is not normal, not the usual way to do it." Id. at p. 195:20-23.

In summary, Dr. Gruden explained that the methodology of the peer review process was not fair as it involved a "narrow window of time, [a] limited number of cases and [did]

not…control[] for the complexity of the cases between…[those] Dr. Desai read versus others" and thus was not a "representative group of cases." Id. at p. 196:18-197:7.

### B. Dr. Gruden's Opinions as to the Fairness of the Peer Review Process and its Methodology Are Reliable and Directly Relevant to the Pretextual Termination of Dr. Desai's Employment.

Although the court must focus "on principles and methodology, not on the conclusions they generate," Daubert v. Merrell Dow Pharm., 509 U.S. 579, 595 (1993), this focus "need not completely [preclude] judicial consideration of an expert's conclusions." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998). In General Electric Co. v. Joiner, the Supreme Court acknowledged that "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." See 522 U.S. 136, 146 (1997). An "analytical gap between the data and the opinion proffered" may provide the basis for the expert's exclusion. Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012), quoting Gen. Elec. Co., 522 U.S. at 146.

However, such an "analytical gap" is not present in Dr. Gruden's conclusions as to the methodology of the peer review process, and therefore, his expert testimony in this regard is reliable. See id. Moreover, Dr. Gruden's conclusions as to the fairness of the peer review process and its methodology are relevant to the facts at issue. Dr. Rosen admits that he based his decision to terminate Dr. Desai's employment significantly upon Dr. Litmanovich's independent, expert review. See Transcript Excerpts, Deposition of Max Rosen, M.D. ("Rosen Dep."), pp. 339:17-340:14 (attached hereto as "Exhibit C"). Dr. Gruden's expert testimony allows the jury to make that judgment and to determine whether Dr. Litmanovich's analysis, which Defendants used as the basis for Plaintiff's termination, was unfair and infected by an unlawful and discriminatory animus.

6

### IV.     CONCLUSION

Therefore, in light of the foregoing, the Plaintiff respectfully requests that this Court deny Defendants' motion in limine to exclude reference to the statistical unreliability of evidence in opening, closing and/or trial testimony.

        Respectfully submitted,
        CHARU DESAI
        By her attorneys,

*/s/ Timothy D. Rodden, Jr.*
_____
Timothy D. Rodden, Jr., Esq., BBO # 691228
John B. Koury, Esq., BBO # 694088
Joseph F. Comenzo, Esq., BBO # 667624
Upper Charles Law Group, LLC
81 Hartwell Avenue, Suite 101
Lexington, MA 02421
Phone: 617-600-7170
Fax: 781-444-2461
trodden@uclawgroup.com
jkoury@uclawgroup.com
jcomenzo@uclawgroup.com

And;

Timothy M. Kolman, Esq., Pro Hac Vice
Kolman Law, P.C.
414 Hulmeville Ave
Penndel, PA 19047
Phone: 215-750-3134
Fax: 215-750-3138
TKolman@KolmanLaw.com

Dated: November 29, 2022