```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


Charu Desai,                    )
           Plaintiff,           )
                                )
                                )
vs.                             )    Case No. 19-cv-10520-TSH
                                )
                                )
UMass Memorial Medical Group    )
and Max Rosen,                  )
           Defendants.          )


BEFORE:  The Honorable Timothy S. Hillman


                     Jury Trial Day 11



                                United States District Court
                                Courtroom No. 2
                                595 Main Street
                                Worcester, Massachusetts
                                December 16, 2022
```

Marianne Kusa-Ryll, RDR, CRR
Official Court Reporter
United States District Court
595 Main Street, Room 514A
Worcester, MA 01608-2093
508-929-3399 justicehill@aol.com
Mechanical Steno - Transcript by Computer

```
 1     APPEARANCES:

 2     Upper Charles Law Group
       Joseph F. Comenzo, Esquire
 3     Timothy D. Rodden, Jr., Esquire
       10 Kearney Road, Suite 101
 4     Needham, Massachusetts 02494
       on behalf of the Plaintiff
 5
       Upper Charles Law Group, LLC
 6     David Cromwell Johnson, Jr., Esquire
       81 Hartwell Avenue
 7     Suite 101
       Lexington, Massachusetts 02421
 8     on behalf of the Plaintiff

 9     Kolman Law, PC
       Timothy M. Kolman, Esquire
10     414 Hulmeville Avenue
       Penndel, Pennsylvania 19047
11     on behalf of the Plaintiff

12     Mirick, O'Connell, DeMallie & Lougee, LLP
       Robert L. Kilroy, Esquire
13     Reid Michael Wakefield, Esquire
       1800 West Park Drive
14     Suite 400
       Westborough Massachusetts 01581-3926
15     on behalf of the Defendants

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            (The following proceedings were held in open court
 3   before the Honorable Timothy S. Hillman, United States District
 4   Judge, United States District Court, District of Massachusetts,
 5   at the Donohue Federal Building & United States Courthouse,
 6   595 Main Street, Worcester, Massachusetts, on December 16,
 7   2022.)
 8            THE CLERK:  All rise.
 9            THE COURT:  Good morning.  Good morning.
10            COUNSEL IN UNISON:  Good morning, your Honor.
11            THE CLERK:  Court is now open.  You may be seated.
12            THE COURT:  So thank you for your filings.  Here's
13   what I propose to do, and I'll happily hear your comments.
14            I'm going to, in the verdict form, strike the word
15   "minimally."  And we're going to reprint it actually, and I'm
16   going to give the -- this instruction.  Courts in this circuit
17   use the phrases "meeting employer's legitimate expectations"
18   and "qualified for the position" interchangeably.  This is an
19   objective test.  That means it does not depend on the
20   subjective perception of the employer.  It is not a
21   determination of whether the employee was excelling at her job,
22   but rather whether she was meeting the basic expectations of
23   her employer.
24            You first.
25            MR. JOHNSON:  Thank you, your Honor.
```

1           So I would -- so I'll start out by directing your
2    attention to recent case law within the First Circuit
3    concerning ADEA cases.  And essentially the first case is
4    *Melendez*, and I'll provide the court reporter with the citation
5    afterwards.
6           In *Melendez*, the First Circuit was presented with an
7    instance in which the reasons for which the defendant
8    terminated the plaintiff, the legitimate nondiscriminatory
9    reasons that they offered were that the plaintiff was not
10   meeting minimum expectations of her job.
11          So essentially the First Circuit said in that case
12   that it's improper for the plaintiff to have to prove as part
13   of her prima facie case that she was meeting the legitimate
14   expectations of the employer.  Because essentially that places
15   an onerous burden on her, at the first stage, at the prima
16   facie stage to prove pretext.  And I'll just quote from that
17   particular case.
18          The -- they said the Court explained that because the
19   defendant invoked the plaintiff's failure to meet the sales
20   quota and arguing that the plaintiff was dismissed for
21   nondiscriminatory reasons, we cannot rely on *Melendez*'s or
22   plaintiff's poor sales performance in whether he satisfied the
23   legitimate expectations prong of the prima facie case.
24          In particular the Court pointed out that, quote, if we
25   were to consider the defendant's stated reason for firing the

1    plaintiff as evidence that the plaintiff was not meeting the
2    company's expectations, we would bypass the burden shifting
3    analysis and deprive the plaintiff of the opportunity to show
4    that the nondiscriminatory reason was in actuality a pretext
5    designed to mask discrimination.
6          So that being said, my -- the plaintiff's proposal is
7    that we strike the term "legitimate expectations" or -- or
8    "minimally qualified" from that first -- the first prong
9    of the -- that appears in the jury instruction form and the
10   jury verdict form.
11         THE COURT:  Thank you.
12         MR. WAKEFIELD:  Thank you, your Honor.
13         Our understanding is that the jury instructions were
14   not objected to and were agreed upon, and the issue we're here
15   today is to make sure the verdict form conforms with those
16   instructions, and we provided the Court, I think it's
17   undisputed, what the black-letter law is as far as meeting the
18   expectations standards.  I think that that should remain in the
19   cases that are cited by plaintiff, they approve of that very
20   element in those cases.  Those cases are summary judgment cases
21   where the First Circuit ruled that the District Court applied
22   too high of a standard when -- when meeting that element, not
23   that that element was not appropriate.
24         As far as whether we agree with your Honor's proposal,
25   could we request that you read it one more time for us to

1    evaluate.

2            THE COURT:  So I'm going to instruct the jury
3    that -- that I'm going to give them a new verdict form that is
4    going to take out the word "minimally" as part of do you find
5    that the plaintiff was qualified for her position at the time
6    of her termination.  And I'm going to tell them, as an
7    instruction on that, that courts in this circuit have used the
8    phrases "meeting employer's legitimate expectations" and
9    "qualified for the position" on this -- on this issue
10   interchangeably.  Excuse me.  This is an objective test.  That
11   means it does not depend on the subjective perception of the
12   employer.  It is not a determination of whether the employee
13   was excelling at her job, but rather whether she was meeting
14   the basic expectations of her employer.

15           MR. WAKEFIELD:  We agree with that, your Honor.

16           THE COURT:  All right.  Thank you.

17           MR. JOHNSON:  Your Honor, may I say one more thing?

18           THE COURT:  You can.

19           MR. JOHNSON:  The proposal that plaintiff is offering
20   now to strike reference to minimal qualifications or --

21           THE COURT:  That's my proposal, not theirs -- or
22   yours, I'm sorry.  Go ahead.

23           MR. JOHNSON:  Correct -- sorry, your proposal, which
24   the defense has agreed with.  Striking that from the first --
25   we'll call it the first prong of the jury verdict form or the

1  first prong of the jury instructions, that is consistent with
2  the defendant's proposed jury instructions that they submitted
3  to this Court.  Those --
4           THE COURT:  That happens.
5           MR. JOHNSON:  I'm sorry.
6           THE COURT:  That happens.  Go ahead.
7           MR. JOHNSON:  In the jury -- in the defendant's
8  proposed jury instructions they state that to prevail on her
9  claim, Dr. Desai must prove first that she was subjected to an
10 adverse action in the form of termination of employment;
11 second, she was 40 years or older when she was subjected to an
12 adverse action in the form of termination of employment; and
13 third, that UMass Memorial Medical Group would not have
14 terminated Dr. Desai's employment but for her age.
15          And again, this is not only the defendant's proposed
16 jury instructions.  This is also consistent with -- with First
17 Circuit case law, most recent First Circuit case law.
18          The case I cited earlier, *Melendez,* is from 2010, I
19 believe.  There's also another case that cites *Melendez* as
20 well, and that is from 2022.  That is *Dusel versus Factory*
21 *Mutual Insurance Company.*
22          Again, I will provide the court reporter with the
23 citation afterwards.  So.
24          THE COURT:  Thank you.
25          MR. JOHNSON:  Thank you.

1       THE COURT:  All right.  See you when the jurors get
2  here.
3       MR. COMENZO:  Your Honor --
4       THE COURT:  Yes.
5       MR. COMENZO:  -- could -- could I at least see a
6  copy of -- I'm an auditory learner, but I would like to see a
7  copy of what the judge proposes to instruct the jurors with, a
8  written copy?
9       THE COURT:  All I have is --
10      MR. COMENZO:  Is yours?
11      THE COURT:  Yeah, I haven't reduced it to writing.
12 It's my own rough notes.
13      MR. COMENZO:  Your own rough notes?
14      THE COURT:  Yeah.
15      MR. COMENZO:  Okay.  And will we have an opportunity
16 to see it before, because I assuming you're going to re-charge
17 the jury in some capacity?
18      THE COURT:  No, I'm going to do exactly what I said I
19 was going to is tell them that we're going to give them a new
20 verdict form striking out the word "minimally" and give out
21 those three sentences that I just read to you.
22      MR. COMENZO:  And we're not going to change
23 the charge?  The --
24      THE COURT:  No, the charge stays the same.  I'm going
25 to use these sentences as a clarification of that issue.  It's

1    basically a clarification of what you see on page 16.
2             All right.  Let me know when they're here.
3             (Recess from 8:57 a.m. until 9:00 a.m.)
4             THE CLERK:  All rise.
5             Court is now open.  You may be seated.
6             THE COURT:  Is the jury here?
7             MR. COMENZO:  Your Honor, first and foremost, based on
8    what the Court had said earlier, I want to make sure that it's
9    clear that the plaintiffs are lodging an objection to not
10   adjusting the jury charge, the jury instructions, as they have
11   been written and given to the jurors.
12            And in specific where the Court writes, The first
13   element in both statutes requires the plaintiff to make what is
14   called a prima facie case.  This requires the plaintiff to show
15   she was subject to an adverse employment action, her work met
16   her employer's expectation at the time of the action.  We
17   believe that if you're just changing the verdict and giving
18   them a sentence or three-sentence clarification and sending it
19   back with them or allowing them to have it back with them the
20   instructions as they're written, it's going to create -- the
21   same problem that was identified continues to exist.  Unless we
22   send them back with a jury instruction that is going to
23   be -- going to reflect what the Court's instruction is here,
24   it -- it creates a problem that we may very well have again or
25   the jury can rely on this instruction as is written and

1   have -- and end up coming to a decision that is based on this
2   and not necessarily the clarification the Court's about to
3   give.
4              I would request --
5              THE COURT:  Thank you.
6              All right.  Let's bring them in.
7              MR. JOHNSON:  Just to add -- sorry -- to the
8   objection, we're just objecting to the inclusion of -- of -- of
9   qualified or legitimate expectations in the first prong as part
10  of the prima facie case as well.
11             THE COURT:  Thank you.
12             Let's bring them in.
13             (At 9:02 a.m., the jury entered the courtroom.)
14             THE CLERK:  All rise.
15             THE COURT:  Good morning.
16             THE CLERK:  Court is now open.
17             You may be seated.
18             THE COURT:  Be seated.  Be seated.
19             Has anybody had any difficulty following my
20  instructions not to discuss the case with anyone including each
21  other?  Except in your deliberations.
22             (No response.)
23             THE COURT:  Has anybody seen or read or overheard
24  anything?
25             (No response.)

1       THE COURT:  And is there anything you wish to bring to
2  my attention?
3       Okay.  So when we left yesterday, we had an unanswered
4  question that had been submitted by the foreperson, and the
5  question is: Element Number 1, is the text "minimally qualified
6  for her position," as stated on the question document, meaning
7  the verdict form, or is the language "meeting employer
8  expectations," as stated in page 16 of the instructions what
9  should be understood?
10      So what I'm going to do is this.  First of all, we are
11 going to give you a new verdict form.  And on Question 1, we
12 are going to strike out the word "minimally."  That should not
13 have been in there, and that's a nice catch by you all.
14 So -- and we're -- we're in the process of printing those out
15 now.  So don't be afraid -- don't forget to write "original" on
16 your verdict form.
17      So the question will now read: "Do you find by a
18 preponderance of the evidence that plaintiff Dr. Charu Desai
19 was qualified for her position at the time of her termination,
20 she was at least 40 years old at the time of her termination,
21 and that she was replaced?"
22      Now, with respect to the phrases "meeting employer's
23 legitimate expectations and qualified for the position," the
24 courts in this circuit use those phrases interchangeably.  So
25 this is an objective test.  That does not depend on the

1  subjective perception of the employer.
2          It is not a determination of whether the employee was
3  excelling at her job, but rather whether she was meeting the
4  basic expectations of her employer.
5          Okay.  All right.  Good luck.  We'll have those
6  verdict forms with you in -- oh, we do, we've got them right
7  here.  All right.
8          Thank you, Ben.  Thank you, everybody.
9          THE CLERK:  All rise.
10         (Recess from 9:05 a.m. until 9:53 a.m.)
11         THE CLERK:  All rise.
12         (At 9:58 a.m., the jury entered the courtroom.)
13         THE CLERK:  Court is now open.  You may be seated.
14         Mr. Foreperson, has the jury reached a unanimous
15 verdict?
16         (Verdict form handed to the clerk.)
17         THE COURT:  It may be recorded.
18         THE CLERK:  In Case No. 19-cv-10520, Charu Desai
19 versus UMass Memorial Medical Group.
20         Jury verdict.
21         Question 1.  Do you find by a preponderance of the
22 evidence that plaintiff Dr. Charu Desai was qualified for her
23 position at the time of her termination, she was at least
24 40 years old at the time of her termination, and she was
25 replaced?

```
 1                Answer:  No.
 2                Question 2.  Do you find by a preponderance of the
 3     evidence that plaintiff Dr. Charu Desai was qualified for her
 4     position at the time of her termination, she was at least
 5     40 years old at the time of her termination, and she was
 6     replaced?
 7                Answer:  No.
 8                Question 3.  Do you find by a preponderance of the
 9     evidence that plaintiff Dr. Charu Desai was qualified for her
10     position at the time of her termination, she was at least
11     40 years old at the time of her termination, and she was
12     replaced?
13                Answer:  No.
14                Question 4.  Do you find by a preponderance of the
15     evidence that Dr. Max Rosen, knowingly, and with actual malice,
16     introduced [sic] a breaking of Dr. Desai's contractual
17     relationship with UMass Memorial?
18                Answer:  No.
19                Signed by the jury foreperson, dated December 16,
20     2022.
21                So say you, Mr. Foreperson, so say you all members of
22     the jury?
23                (Nod affirmatively.
24                THE COURT:  So, ladies and gentlemen, I want to thank
25     you on the record for your very hard work over the last couple
```

1   of weeks.
2          For those of you who want to remain, I would like to
3   personally thank you in the jury room and ask you some
4   questions about how we might do things differently or better.
5          Obviously, I cannot and will not inquire into your
6   deliberations, because I'm not -- I'm not able to do that, and
7   I won't do that.  But for those of you who would like to stay,
8   I'll be in in just a couple of minutes, okay?
9          So on behalf of all of us, thank you so much for your
10  hard work and your sacrifice.  Thank you.
11         We're in recess.
12         THE CLERK:  All rise.
13         (At 10:02 a.m., the jury left the courtroom.)
14         THE COURT:  All right.  Nice job, everybody.
15         MR. KOLMAN:  At this point, Judge, the plaintiff makes
16  a motion for judgment not withstanding the verdict.
17         THE COURT:  Denied.
18         Thank you.  Thank you.  Nice job, everybody.
19         COUNSEL IN UNISON:  Thank you, your Honor.
20         (At 10:03 a.m., court was adjourned.)
21
22
23
24
25

1        C E R T I F I C A T E

2

3           I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription of my stenographic notes before the Honorable

6    Timothy S. Hillman, to the best of my skill, knowledge, and

7    ability.

8

9

10       /s/ Marianne Kusa-Ryll                    02-09-2023

11       Marianne Kusa-Ryll, RDR, CRR              Date

12       Official Court Reporter